ORIGINAL

1  Dayna R. Catchings (Full Name)
2  Catchings-Dayna7@gmail (Email Address)
3  626 S. Alvarado St (Address Line 1)
4  Apartment 411 (Address Line 2)
5  323-373-5355 (Phone Number)
6  Plaintiff in Pro Per  LOS ANGELES, CA 90057

FILED
CLERK, U.S. DISTRICT COURT

NOV - 4 2019

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

7

8  **UNITED STATES DISTRICT COURT**
9  **CENTRAL DISTRICT OF CALIFORNIA**

10
11  Dayna R. Catchings,          Case No. **CV19-9480-** DSF (AGR)
12           Plaintiff,                    (To be supplied by the Clerk)
13  vs.
14  The City of Los Angeles       **Civil Rights Complaint Pursuant to**
15  The State of California        **42 U.S.C. § 1983 (non-prisoners)**
16  Sanitation Dept, LAPD
17  The Sheriffs Dept.            **Jury Trial Demanded:** ☑Yes ☐ No
18           Defendant(s).

19
20            *(All paragraphs and pages must be numbered.)*
21                    **I. JURISDICTION**
22  1. This court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.
23  Federal question jurisdiction arises pursuant to 42 U.S.C. § 1983.
24
25                      **II. VENUE**
26  2. Venue is proper pursuant to 28 U.S.C. § 1391 because All submitted
27  Evidence and supporting Documents and Exhibits, did
28  indeed happen in the City of Los Angeles and the State of California

1
Page Number

*Form prepared by Public Counsel.*
*© 2010, 2013 Public Counsel.*
*All rights reserved.*
*Revised: August 2013*

Civil Rights Complaint Pursuant to U.S.C. § 1983

## III PARTIES

3. Plaintiff DAYNA R. CATCHINGS _____ RESIDES At
(026 S. ALVARADO St. Apt. #411
LOS ANGELES, CA. 90057

4. DEFENDANT Officer ARMANDO CORTEZ WORKS At
The LOS ANGELES POLICE Dept. RAMPART DIVISION

DEFENDANT'S title OR position is Police OFFICER #38838

This DEFENDANT is SUED in his/her (check one or both):
☒ INDIVIDUAL CAPACITY      ☒ official CAPACITY

This DEFENDANT WAS ACTING UNDER color of LAW DECAUSE ON
11/22/16, the LAPD (through him) OFFERED me $1,670.00 FOR DAMAGES
that occured on 11/17/16, but NEVER FOLLOWED through with issuing PAYMENT.

5. DEFENDANT Sgt. JOEL MILLER _____ WORKS At
LAPD-RAMPART DIVISION

DEFENDANT'S title OR position is SERGEANT #35068

THIS DEFENDANT is SUED in his/her (check one or both):
☒ INDIVIDUAL CAPACITY      ☒ official CAPACITY

THIS DEFENDANT WAS ACTING UNDER color of LAW DECAUSE HE
violated DOJ Ruling of 2015 by Forcing me to move From the SIDEWALK
NEAR KOREAN AIR FOR NO LEGAL REASONS. No posted signs.

1  **b.** DEFENDANT _Officer Abner_ _____ WORKS AT

2  _LAPD Rampart Division_ _____

3

4  DEFENDANTS title or position is _Police Officer #35838_

5

6  This DEFENDANT is sued in his/her (check one or both):

   ☒ INDIVIDUAL CAPACITY    ☒ OFFICIAL CAPACITY

7

8  This DEFENDANT WAS Acting UNDER COLOR OF LAW because ON

9  4/18/17, I WAS WRONGFULLY AND ILLEGALLY TICKETED

10 FOR STILL HAVING MY TENT up AROUND 11AM. I PLED

11 NOT GUILTY ON 7/27/17 AND WAS FOUND NOT GUILTY ON

12 9/22/17 in CRIMINAL COURT by Judge GUS T. MAY, CASE NUMBER

13 E94137, because (just like on Wilshire Blvd.) there were NO

14 posted signs prohibiting me from camping AT the 110 Fwy & woods.

15

16 **7.** DEFENDANT _MR. Bobby BENSON_ _____ WORKS AT

17 _SANitation Dept.—STATE OF CALIFORNIA—Ex 46 p. 82 A+B_

18

19 DEFENDANTS title or position is ENViRonmental Compliance Inspector

20

21

22 This DEFENDANT is sued in his/her (check one or both)

   ☒ INDIVIDUAL CAPACITY    ☒ OFFICIAL CAPACITY

23

24 This DEFENDANT WAS Acting UNDER COLOR OF LAW because He

25 ASsured me through LAHSA to whom he referred me (see

26 Ex. 6A PAGE 41) that NO FURTHER DAMAGES would come

27 to me verbally AND by EMAIL confirmation BACK to him FROM me

28 ON 9/19/17 AT 12:52 pm, SEE Ex 46 PAGE 82 B. Ex. 46.

# IV. STATEMENT OF FACTS

*(Explain what happened in your own words. You do not have to cite legal authority in this section. Be specific about names, dates, and places. Explain what each Defendant did. Remember to number every paragraph.)*

8. ON OCTOBER 10, 2016, I WAS illegally EVICTED

*Insert ¶ #*

AS A direct RESult of MALICIOUS Prosecution, successfully established on both hearing dates of 10/2/18 AND 5/16/19 but WAS NOT GIVEN CREDIT FOR same DUE to Judicial AND Attorney misconduct FILED UNDER CASE number BC633373 in Los Angeles Superior Court, Their Exhibit #'s appear in the top right corner

9. AS A direct result, I was immediately

*Insert ¶ #*

RENDERED homeless on Wilshire Blvd in Front of KoreaN Air who harrassed me For No Reason As was told to them by LAPD OFc MUNOZ on 10/17/16, that under FederAl LAw I could not be Forced to move. DOJ Ruling 2015. However, on 11/17/16 Sgt. Joel Miller Also of Rampart LAPD, ordered me to move, which I Did But before I DID, most of my belongings were Destroyed. LAPD promised payment But I RECEIVED NO HOUSING REFERRALS From OFICERS MILLERS, MUNOZ or ABNER.

10. On 5/17/17, A CLAIM For DAMAGES AGAINST The City of Los Angeles

*Insert ¶ #*

For the $1,670.00 that was AppRoved to me by Ofc. Armando Cortez Also From Rampart DIVISION, by EMAil on 11/22/16, under CLAIM # C17-11722, which WAS DENIED on 8/28/17. On 3/16/18, A Second CLAIM was generated CASE # C18-04093 AgAiN For DEStruction of PERSONAL Property DUE to LAPD AND SanitatiON Dept (with the help of the Sheriff's Dept.) on 11/1/17. The Plaintiff was Found NOT Guilty in Criminal Court on 9/22/17, Due to no PostED Signs saying "NO CAMPING", which connects both CASE numbers. The circumstances AND outcome was the SAme.

**4**

Page Number

11. At the request of free counsel, on 10/14 and 10/15/2019 I made a final plea to the LAPD and the City of Los Angeles, in the person of Ofc. Cortez, for payment, in two emails (10/14/19) and (10/15/19), providing additional photographic evidence that connects both case numbers (claim numbers), citing for one thing conflicts of interest. The LAPD says I'm due payment, yet the City of LA has Murder denied the claim. Sgt. Miller himself undid all of the good things that Ofcr. Munoz (and others) did to help.

12. The illegal eviction occurred on 10/10/16, First encounter w/LAPD was on 10/10/16, ordered to leave McArthur Park; second encounter was on 10/17/16 w/Ofcr. Munoz; 3rd encounter was on 11/17/16 with Sgt. Miller, 4th encounter on 12/11/16 Ofcrs. Aguirre #42224 and Lluenas #34853 (Lluenas); 5th time on 1/30/17 Ofcr. Bertolira clearing (4th encounter involves moving my tent); 6th time 3/17/17 w/Ofcr. Guerrero #41407. All other Police contact is listed on Exs. 5A 5B 6A 6B 7A 7B, not otherwise noted.

13. This First claim involves, Conflicts of Interest (within the LAPD and regarding the LAPD and the City Attorney's Office, where granting the claim(s) were concerned. Breach of Contract—promises to pay damages, but did not. Negligence for not having appropriate signs; Fraud by Munoz clearing the violation, but Miller did not. Plaintiff was damaged by the misrepresentation; Personal Injury, Severe Emotional Distress and followed by Claim #2 for Malicious Prosecution regarding Exs. 27, 28 and 29, that occurred on 4/12/17 by Ofcr. Abner

Civil Rights Complaint Pursuant to U.S.C. § 1983

# V. CLAIMS

## Claim #1

1

2

3    *14.*  Plaintiff realleges and incorporates by reference all of the paragraphs above.

Insert ¶ #

4

5    *15.*  Plaintiff has a claim under 42 U.S.C. §1983 for violation of the following

Insert ¶ #

6    federal constitutional or statutory civil right:

The Department of Justice ruling of 2015 makes it illegal

7    for any City or State agency to remove a homeless person from the

8    sidewalk by citing it to be "cruel and unusual punishment" because

9    "They have no where else to go"

10

11    *16.*  The above civil right was violated by the following Defendants:

Insert ¶ #

12    The City of Los Angeles, the LAPD, The Sanitation

13    Dept. and the State of California and the Sheriff's

14    Dept. Sgt. Miller Rampart Division and after Above

15    *(You may list facts supporting your claim. Be specific about how each Defendant violated this particular civil right.)*

16    *17.*  The City of Los Angeles (by not honoring the claim) the

Insert ¶ #

17    LAPD (by violating the DOJ Ruling re: homeless people) the

18    Sanitation Dept. (for the same violation and destruction of

19    my personal property) The State of California (for refusing

20    to help through Assemblyman Miguel Santiago's office) and

21    the Sheriff's Dept. on 11/1/17 by not allowing me to move my

22    tent and belongings to the State side of the sidewalk while the

23    Sanitation Dept. cleaned the street.

24    *18.*  As a result of the Defendant's violation of the above civil right, Plaintiff

25    Insert ¶ #  was harmed in the following way:

26    Personal Injury as a direct result of illegal seizure and

27    destruction of my personal property and the combined acts contributed

28    to the violation of 4th Amendment rights Section 4, 42 U.S.C. 1983

Civil Rights Complaint Pursuant to U.S.C. § 1983

## Claim #2

*(insert Claim#)*

1

2

3   *19*. Plaintiff realleges and incorporates by reference all of the paragraphs above.
Insert ¶ #

4

*(List any other legal claim you have that is related to your civil rights claim.)*

5   *20*. The Plaintiff proceeds under Dodd v. Citizen Bank re: Exs.
Insert ¶ #

6   events on 4/12/17, that resulted in the

7   Plaintiff being criminally prosecuted for still

8   having one tent up by 11:00 am. See Exs. 27, 28 and

9   29. The Plaintiff was found not guilty on 9/22/17. There was

10   no posting that the tent could not still be up. Like on Wilshire.

11   *21*. Plaintiff alleges the above claim against the following Defendant(s):
Insert ¶ #

12

13   The City of Los Angeles

14   The Los Angeles Police Department

15   Rampart Division: Officer Abner

16   *(You may list facts supporting your claim. Be specific about how each Defendant violated the rights giving rise to this claim.)*

17   *22*. MALICIOUS PROSECUTION
Insert ¶ #

18   Similar to the incident on Wilshire Blvd, claim

19   # C17-11722, there was no posted sign denying camping

20   at the time of the infraction. See photos in Ex. 3 as email

21   attachment to Ofcr Armando Cortez on 10/15/19. By these

22   violations, it then caused claim # C18-04092 to occur by the

23   order of Sgt. Joel Miller, versus Ofc. Munoz. See Exs. 5A + 5B

24   *23*. As a result of the Defendant's violation of the rights giving rise to this
claim, Plaintiff was harmed in the following way:
Insert ¶ #

25

26   For the second time since 11/17/19, personal belongings and 2 tents

27   had to be replaced on 4/12/17. Personal belongings and a 3rd tent

28   were also to be stolen on 11/1/17. Infliction of Severe Emotional Distress

Civil Rights Complaint Pursuant to U.S.C. § 1983

## VI. REQUEST FOR RELIEF

WHEREFORE, the Plaintiff requests:

24. Treble Damages Compensatory of the $1,670.00

*Insert ¶ #*

Promised by Ofcr. Cortez on 11/22/16 As set forth in my Email
to him dated 10/14/19, to which there has been no objection
or Denial of same. Sgt. Miller revoked all of the good things Ofc. Munoz did.

25. Punitive Damages of 7.5 M because of Personal Injury

*Insert ¶ #*

Hospitalization in February 2017 for Dehydration and Exhaustion
And Psychiatric care in Spring/Summer of 2017 for Anxiety
And Depression due to the Ordeal involving the LAPD on 11/17/16. And
All Court Costs and Attorney's Fees

26. Many Emails to both the LAPD (Ofcr. Cortez) and

*Insert ¶ #*

the State of California (Miguel Santiago's Ofc.) And Extensive
Photographic Evidence to support this claim for Damages
Punitive Damages are Negotiable. 7 figure Range.

27. Personal Injury due to the Negligence of the LAPD to

*Insert ¶ #*

honor the DOJ Ruling of 2015, Breach of Contract to pay $1,670.00
Malicious Prosecution for a crime not committed and Fraud
by granting Damages but not paying them, to which the Plaintiff
relies upon to our detriment.

Dated: 10/30/19

Sign: *Dayna R. Catching*

Print Name: Dayna R. Catching

Civil Rights Complaint Pursuant to U.S.C. § 1983

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a jury trial on all issues raised in this complaint.

Dated: _10/30/19_

Sign: _Dwyna R. Catchings_

Print Name: _Dwyna R. Catchings_

**9**

Page Number

Civil Rights Complaint Pursuant to U.S.C. § 1983

FORM CONT. 100-A (Rev. 7/01)

# CLAIM FOR DAMAGES
## TO PERSON OR PROPERTY

RESERVE FOR FILING STAMP

CLAIM NO. C18-04092

(Ex. R72)
CASE # BC633373
BC633373

## INSTRUCTIONS

1. Claims for death, injury to person or to personal property must be filed not later than six months after the occurrence. (Gov. Code Sec. 911.2)

2. Claims for damages relating to any other type of occurrence must be filed not later than one year after the occurrence. (Gov. Code Sec. 911.2)

3. Read entire claim before filing. Claim can be mailed or filed in person. No faxes accepted.

4. See Page 2 for diagram upon which to locate place of accident.

5. This claim form must be signed on Page 2 at bottom.

6. Attach separate sheets, if necessary, to give full details. SIGN EACH SHEET.

7. Fill out in duplicate. ONE COPY TO BE RETAINED BY CLAIMANT.

8. Claim must be filed with CITY CLERK, (Gov. Code Sec. 915a)
200 NORTH SPRING STREET, ROOM 395, CITY HALL, LOS ANGELES, CA 90012

RECEIVED
CITY CLERK'S OFFICE
2018 MAR 16
CITY CLERK
DEPUTY

TO: CITY OF LOS ANGELES

| Name of Claimant | | Age of Claimant |
|---|---|---|
| Ms. Dayna R. Catchings L.A. CA 90081 | | 65 |

| Home address of Claimant | City, State and Zip Code | Home Telephone Number |
|---|---|---|
| P.O. Box 811661 | Los Angeles 90081 | 323-373-5355 |

| Business address of Claimant | City, State and Zip Code | Business Telephone Number |
|---|---|---|
| SAME | | |

Give address to which you desire notices or communications to be sent regarding this claim: SAME

**How did DAMAGE or INJURY occur?** Please include as much detail as possible. The most recent occurrence of this particular injury is directly connected to claim number C17-11727, happened on 11/11/17 during sanitation clean-up. LAHSA, and the Los Angeles Police Dept. were also involved as was the State of California i.e. the CHPD and Caltrans. The claimant was homeless but was not guilty of illegal camping.

**When did DAMAGE or INJURY occur?** Please include the date and time of the damage or injury. First on 4/12/17 is that the main damage happened on 11/11/17 when over 98% of the claimant's entire belongings had been destroyed, including all things that the court say that had destroyed under C17-11722, for which the CHPD agrees that the [illegible] was due to be paid $4,620.00, for those damages alone but was not paid.

**Where did DAMAGE or INJURY occur?** Please describe fully, and locate on the diagram on the reverse side of this sheet. Where appropriate, please give street names and addresses or measurements from specific landmarks: On 8th Pl. which connects the 110 freeway with both 8th St. and 9th St. near the UPS service center on James M. Wood St. near the 110 freeway.

**What particular ACT or OMISSION do you claim caused the injury or damage?** Please give names of City employees causing the injury or damage and identify any vehicles involved by license plate number, if known. C1 [illegible] personal belongings were destroyed for yet the 3rd time, due to the actions of certain members of both the LAPD and LAHSA for not providing housing to the plaintiff between 2/17 and 11/11/17 when a clear disposing shelter [illegible]

**Please list the names and address of Witnesses, Doctors, and Hospitals:** [illegible] all business cards both front and back on attached sheet enforced but this complaint and C17-18722. The claimant was at the windy federal building, but did contact the Federal Court House Judges Nutcha? Mr. Smith on 2/28/18.

SEE PAGE 2 (OVER)          PAGE 10 EX. A1          THIS CLAIM MUST BE SIGNED ON REVERSE SIDE

What DAMAGE or INJURIES do you claim resulted? Please give full extent of injuries or damages claimed: The failure to mang of the claimant not being paid what was promised, either directly or indirectly of the cards. The claimant who is victim of the illegal eviction that occured in October 2016. loss of personal property + emotional dist

What is the AMOUNT of your claim? Please itemize your damages: $1,670 time 3 because the assigned detective Bravo of Rampart police dept who received the police report that is charged to claim number C12 51222. who did not then return calls to the plaintiff after he was contacted Plus $10,000.00 for violating the federal DOJ ruling of 8/15, making it cruel and unusual punishment to force them from the sidewalk.

If you have received any insurance payments, please give the names of the insurance companies:
NO INSURANCE PAYMENTS RECEIVED

The claimant's last attempt to meet with the City Attorney's office was in person later on the sticker

For all accidents claims please place on the following diagram the names of the streets where the accident occurred and the nearest cross-streets; indicate the place of the accident by an "X" and by showing the nearest address and distances to street corners. Please indicate where North is on the diagram.

Note: if the diagram does not fit the situation, please attach your own diagram.

LOS ANGELES POLICE DEPARTMENT
VISITOR
DATE FEB 2 7 2018 FLOOR 6
15.22.00 (R.01/00)

SIDEWALK
CURB PARKWAY CURB
SIDEWALK

Signature of Claimant or person filing on claimant's behalf giving relationship to claimant:
Print Name: Dwayne R. Catchings    Date: 3/1/18

Catchings v. California Ex. A3

Ex. A2 PAGE 11

Doc# 1 Page# 164 - Doc ID = 1770695882 - Doc Type = Opposition (name extension)




*EX 59 A*

# NOTICE:

# MAJOR SIDEWALKS, ALLEYS, PARKS, AND OTHER PUBLIC ACCESS AREAS

## AN AREA CLEANING WILL COMMENCE AT THIS LOCATION ON:
## Wednesday, November 1, 2017 at 08:30 AM

## PLEASE REMOVE ALL PERSONAL BELONGINGS, INCLUDING BULKY ITEMS BY
## Wednesday, November 1, 2017 by 08:00 AM

This effort is designed to clean, improve and maintain a safe environment for the general public. The City may use power wash and street cleaning equipment to clean and disinfect the sidewalks, alleys, parks and other public access areas.

Please remove all personal belongings, including bulky items from sidewalks, alleys, parks, and public access areas. All property remaining will be removed by the City. Property left behind, except for items that pose an immediate threat to public health or safety, trash, and evidence of a crime or contraband, will be collected by the City and kept in a secure location for a period of 90 days during which time it may be retrieved by its rightful owner.

Items collected by the City may be retrieved at:

507 Towne Avenue
Los Angeles, CA 90013
Monday - Friday
(9:30 a.m. – 12:30 p.m. and 1:00 p.m. – 4:00 p.m.)
213-806-6355

The City of Los Angeles greatly appreciates your cooperation as we initiate necessary measures to ensure that your communities are safe and healthy.

*Ex. A3*
*PAGE 12*

*Ortegas v.*
*California*
*Ex. A3*



*(Ex. R 73)*

March 30, 2018

Dayna R. Catchings
P.O.BOX. 811661
Los Angeles, CA 90081

Claimant:  Dayna R. Catchings

The claim you submitted has been forwarded to the Office of the City Attorney in accordance with City Council rules. The number assigned to the claim is:

Claim Number: C18-04092 " *C17-11722 CONNECTED*

Correspondence or questions regarding the claim should be in writing and sent to:

**Claims Section**
**Office of the City Attorney**
**200 North Main Street**
**City Hall East, Room 600**
**Los Angeles, California 90012**
**(213) 978-7050**

*1:30pm.*
*FERNANDO*

An Equal Employment Opportunity - Affirmative Action Employer

*Ex. A4*
*PAGE 13*

*Catchings v.*
*California*
*Ex A4*

FORM CONT. 100-A (Rev. 7/01)

PLE 14

RESERVE FOR FILING STAMP

CLAIM NO. C17-11722

# CLAIM FOR DAMAGES
## TO PERSON OR PROPERTY

### INSTRUCTIONS

1. Claims for death, injury to person or to personal property must be filed not later than six months after the occurrence. (Gov. Code Sec. 911.2)

2. Claims for damages relating to any other type of occurrence must be filed not later than one year after the occurrence. (Gov. Code Sec. 911.2)

3. Read entire claim before filing. Claim can be mailed or filed in person. No faxes accepted.

4. See Page 2 for diagram upon which to locate place of accident.

5. This claim form must be signed on Page 2 at bottom.

6. Attach separate sheets, if necessary, to give full details. SIGN EACH SHEET.

7. Fill out in duplicate. ONE COPY TO BE RETAINED BY CLAIMANT.

8. Claim must be filed with CITY CLERK. (Gov. Code Sec. 915a)
200 NORTH SPRING STREET, ROOM 395, CITY HALL, LOS ANGELES, CA 90012

RECEIVED
MAY 1 7 2017
BY: CRA

TO: CITY OF LOS ANGELES

Name of Claimant: DAYMAR CATCHINGS HOMELESS

Age of Claimant: 65

Home Telephone Number: 323-373-5358

Home address of Claimant: 750 W. 7th St #811661

City, State and Zip Code: LA CA 90081

Business address of Claimant:

City, State and Zip Code:

Business Telephone Number:

Give address to which you desire notices or communications to be sent regarding this claim:
750 W. 7th St #811661 Los Angeles CA. 90081

How did DAMAGE or INJURY occur? Please include as much detail as possible.
2 CAUSES OF ACTION - the tent OCCURRED ON 11/17/16 in Front of KOREAN AIR ON WILSHIRE BLVD between Burlington and Boudre Drake my tent and most of its contents were destroyed by the sanitation Korean Air and the LAPD took no responsibility yet ADJUSTED my Claim $10,670.00 at 80.00 on 11/22/16

When did DAMAGE or INJURY occur? Please include the date and time of the damage or injury.
11/17/16 between 1150 am to 340 pm
OFFER COMPLETE

Where did DAMAGE or INJURY occur? Please describe fully, and locate on the diagram on the reverse side of this sheet. Where appropriate, please give street names and addresses or measurements from specific landmarks:
KOREAN AIR - WILSHIRE BLVD
POLICE REPORT NUMBER 161190018872

What particular ACT or OMISSION do you claim caused the injury or damage? Please give names of City employees causing the injury or damage and identify any vehicles involved by license plate number, if known. The LA.P.
Sgt. MILLER DID NOT SAFEGUARD my belongings from damage once I complied and lowered my tent by having Korean Air watch them since they Are the one who REPEATEDLY called the LAPD me for no legal reason

Please list the names and address of Witnesses, Doctors and Hospitals:
Sgt. MILLER LAPD RAMPART DIVISION

PAGE 14 Ex. B

Los Angeles Police Department
**INVESTIGATIVE REPORT**

CODE | | COMBINED EVID. REPORT | MULTIPLE DRS ON THIS REPORT

### CASE SCREENING FACTOR(S)

- [ ] SUSPECT/VEHICLE NOT SEEN
- [x] PRINTS OR OTHER EVIDENCE NOT PRESENT
- [ ] NO MO NOT DISTINCT
- [ ] PROPERTY LOSS LESS THAN $5,000
- [x] NO SERIOUS INJURY TO VICTIM
- [x] ONLY ONE VICTIM INVOLVED

**REPORT TITLE:**

INVEST. DIV. | INC # | DR #

LAST NAME, FIRST, MIDDLE (OR NAME OF BUSINESS) | SEX | DESC | HT | WT | AGE | DOB

**VICTIM**
ADDRESS
R-   ZIP   PHONE
B-

E-MAIL ADDRESS | CELL PHONE

**PREMISES** (SPECIFIC TYPE) [ ] ATM

DR. LIC. NO. (IF NONE, OTHER ID & NO.) | FOREIGN LANGUAGE SPOKEN | OCCUPATION

**ENTRY** 459/BFV POINT OF ENTRY     POINT OF EXIT
- [ ] FRONT
- [ ] REAR
- [ ] SIDE
- [ ] ROOF
- [ ] FLOOR
- [ ] OTHER

LOCATION OF OCCURRENCE | SAME AS V'S | [ ] RES. | [ ] BUS. | R.D.

PRINTS BY PREL. INV.
ATTEMPT [ ] Y [ ] N
OBTAINED [ ] Y [ ] N

METHOD

DATE & TIME OF OCCURRENCE | DATE & TIME REPORTED TO PD

INSTRUMENT/TOOL USED

TYPE PROPERTY STOLEN/LOST/DAMAGED | 03.04.00 GIVEN | STOLEN/LOST | RECOVERED | EST. DAMAGED ARSON / VAND.

**VICT'S VEH.** (IF INVOLVED) YEAR, MAKE, TYPE, COLOR, LIC. NO.

NOTIFICATION(S) (PERSON & AGENCY) | CONNECTED REPORT(S) (TYPE & DR #)

**MO** IF LONG FORM, LIST UNIQUE ACTIONS. IF SHORT FORM, DESCRIBE SUSPECT'S ACTIONS IN BRIEF PHRASES, INCLUDING WEAPON USED. DO NOT REPEAT ABOVE INFO BUT CLARIFY REPORT AS NECESSARY. IF ANY OF THE MISSING ITEMS ARE POTENTIALLY IDENTIFIABLE, ITEMIZE AND DESCRIBE ALL ITEMS MISSING IN THIS INCIDENT IN THE NARRATIVE.

MANDATORY MARSY'S RIGHTS CARD PROVIDED TO THE VICTIM [x] | MOTIVATED BY HATRED/PREJUDICE [ ] | DOMESTIC VIOLENCE [ ]

**REPORTING EMPLOYEE(S)**
INITIALS, LAST NAME | SERIAL NO. | DIV./DETAIL
PERSON REPORTING | SIGNATURE | [ ] OR RECEIVED BY PHONE

NOTE: IF SHORT FORM AND VICTIM PR ARE NOT THE SAME, ENTER PR INFORMATION IN INVOLVED PERSONS SECTION.

**THIS REPORT DOES NOT CONSTITUTE VALID IDENTIFICATION**

PLE-71

KEEP THIS REPORT FOR REFERENCE.  INSTRUCCIONES EN ESPANOL AL REVERSO.

*Your case will be assigned to a detective for follow-up investigation based upon specific facts obtained during the initial investigation. Studies have shown that the presence of these facts can predict whether a detailed follow-up investigation would likely result in the arrest and prosecution of the suspect(s) or the recovery of property, in a manner that is cost-effective to you, the taxpayer. Significant decreases in personnel have made it impossible for detectives to personally discuss each and every case with all crime victims. A detective will not routinely contact you, unless the detective requires additional information.*

**TO REPORT ADDITIONAL INFORMATION:**    If you have specific facts to provide which might assist in the investigation of your case, please contact the detective Monday through Friday, between 8:00 A.M. and 9:30 A.M., or between 2:30 P.M. and 4:00 P.M. at telephone number _____ . If the detective is not available when you call, please leave a message and include the telephone number where you can be reached.

**COPY OF REPORT:**  If you wish to purchase a copy of the complete report, phone (213) 486-8130 to obtain the purchase price.  Send a check or money order payable to the Los Angeles Police Department to Records and Identification Division, Box 30158, Los Angeles, CA 90030.  Include a copy of this report or the following information with your request: 1) Name and address of victims; 2) Type of report and DR number (if listed above); 3) Date and location of occurrence. NOTE: Requests not accompanied by proper payment will not be processed.

**DR NUMBER:**  If not entered on this form, the DR number may be obtained by writing to Records and Identification Division and giving the information needed to obtain a copy of the report (see above paragraph). Specify that you only want the DR number. It will be forwarded without delay.  There is no charge for this service.

**CREDIT CARDS/CHECKS:**  Immediately notify concerned credit corporation or banks to avoid possibility of being liable for someone else using your stolen or lost credit card or check.

**HOW YOU CAN HELP THE INVESTIGATION OF YOUR CASE:**

* Keep this memo for reference.
* If stolen items have serial numbers not available at time of report, attempt to locate them and phone them to the detective at the listed number.
* If you discover additional losses, complete and mail in the Supplemental Property Loss form given to you by the reporting employee.
* Promptly report recovery of property.
* Promptly report additional information such as a neighbor informing you of suspicious activity at time crime occurred.

**VICTIM-WITNESS ASSISTANCE PROGRAM:**  The Los Angeles City and County Victim-Witness Assistance Program (VWAP) can help to determine if you qualify for Victim of Violent Crime compensation. If you qualify, they will assist with filling your claim application. If you are a victim or a witness to a crime and will be going to court, they will explain the court procedures to you. Their staff may also assist you with other problems created by the crime.

To find the program location nearest to you, call the Victim-Witness Assistance Program at the Los Angeles City Attorney's Office (213) 485-6976, or the Los Angeles County District Attorney's Office (800) 380-3811.

**VICTIMS OF VIOLENT CRIME COMPENSATION:**  Refer to paragraph at bottom of reverse side.

PAGE 15 EX. C

CASDIVGS V.
CALIFORNIA

EXEM 8a PLE-83



May 24, 2017

Dayna R. Catchings
750 W. 7th Str., #811661
Los Angeles, CA 90081


Claimant: Dayna R. Catchings

The claim you submitted has been forwarded to the Office of the City Attorney in accordance with
City Council rules. The number assigned to the claim is:

Claim Number: C17-11722

Correspondence or questions regarding the claim should be in writing and sent to:

## Claims Section
## Office of the City Attorney
## 200 North Main Street
## City Hall East, Room 600
## Los Angeles, California 90012
## (213) 978-7050

An Equal Employment Opportunity - Affirmative Action Employer

PAGE 16                                          Ex. D.

## PROOF OF SERVICE BY MAIL

I, Fernando Diaz-Veliz, declare as follows:

I am over the age of 18 years and not a party to this action. My business address is 200 North Main Street, Room 600, City Hall East, Los Angeles, California 90012, which is located in the county where the mailing described below took place.

I am readily familiar with the business practice at my place of business for collection and processing correspondence for mailing via the United States Postal Service. Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business.

On August 28, 2017, at my place of business at Los Angeles, California, I mailed a Denial Letter for Claim Number C17-11722 by placing it, with postage thereon fully prepaid, for collection and mailing via the United States mail addressed as follows:

<div align="center">

Dayna R. Catchings
750 W. 7th Street, #811661
Los Angeles, CA 90081

</div>

I declare under penalty of perjury that the following is true and correct. Executed on August 28, 2017, at Los Angeles, California.

_Fernando Diaz-Veliz_
Fernando Diaz-Veliz

Ex D2
Page 17

Catchings vs
California
Ex. D2



**MICHAEL N. FEUER**
CITY ATTORNEY

August 28, 2017

Dayna R. Catchings
750 W. 7th Street, #811661
Los Angeles, CA 90081

    RE:        Our Claim No.: C17-11722

Dear Dayna Catchings:

The subject claim against the City has been referred to this office.

Upon review of the circumstances of your claim and the applicable law, it has been determined that your claim should be denied.

This letter represents a formal notice to you that said claim has been denied. In view of this action, we are required by law to give you the following warning:

***WARNING***

> "Subject to certain exceptions, you have only six (6) months from the date this notice was personally delivered or deposited in the mail to file a court action alleging state causes of action. The time within which federal causes of action must be filed is governed by federal statutes."

> "You may seek the advice of an attorney of your choice in connection with this matter. If you desire to consult an attorney, you should do so immediately."

Very truly yours,

Thomas Wong
Chief Claims Investigator

TWONG:fdiaz
Telephone: 213-978-7081
Enclosure(s)

Catchings v.
California
Ex E

PAGE 18

## PROOF OF SERVICE BY MAIL

I, Fernando Diaz-Veliz, declare as follows:

I am over the age of 18 years and not a party to this action. My business address is 200 North Main Street, Room 600, City Hall East, Los Angeles, California 90012, which is located in the county where the mailing described below took place.

I am readily familiar with the business practice at my place of business for collection and processing correspondence for mailing via the United States Postal Service. Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business.

On August 28, 2017, at my place of business at Los Angeles, California, I mailed a Denial Letter for Claim Number C17-11722 by placing it, with postage thereon fully prepaid, for collection and mailing via the United States mail addressed as follows:

Dayna R. Catchings
750 W. 7th Street, #811661
Los Angeles, CA 90081

I declare under penalty of perjury that the following is true and correct. Executed on August 28, 2017, at Los Angeles, California.

_____
Fernando Diaz-Veliz

Ex. F
Page 19

Catchings vs
California
Ex F

## ABC Los Angeles

| | |
|---|---|
| **From:** | dayna catchings <catchings.dayna7@gmail.com> |
| **Sent:** | Monday, October 28, 2019 8:19 AM |
| **To:** | ABC Los Angeles |
| **Subject:** | Fwd: Police Report dated11/19/16 |

Hello, ONE of TWO

I will be in shortly to pick these two emails plus the forwarded screenshot, before noon.


Thanks,

Dayna

---------- Forwarded message ---------
From: **dayna catchings** <catchings.dayna7@gmail.com>
Date: Mon, Oct 14, 2019, 9:22 AM
Subject: Re: Police Report dated11/19/16
To: Armando Cortez <38838@lapd.online>


Hello Armando,

I know that it's been a while since we last spoke about my damages, but neither you, nor ANY Detective that the case was assigned to, have failed, neglected and refused to tell me about the EXACT procedure to collect my money from then until now. I did file the claim as you advised, but there has been absolutely NO follow up or follow through from your Department. Why not??



There appears to be a SEVERE Conflicts of Interests between the City Attorneys Office and the Los Angeles Police Department, where my money is concerned.

The LAPD (through You) has said that after their initial investigation, I was entitled to $1,670.00.
Yet, the City Attorneys Office said no by phone when I called them approximately 6 months later after filing the complaint on March 16, 2018, when I didn't receive an answer by mail.

However, I DID receive an answer by mail to the SECOND Complaint filed on May 17, 2017, under case number C17-11722 (which was also denied by the City Attorney's Office on August 28, 2017), for the Violation of the DOJ Ruling in 2015, that makes it ILLEGAL for the LAPD to remove homeless people from the sidewalks (if they are NOT blocking the either the sidewalk, or entrances to buildings), which I DEFINITELY was NOT doing on Wilshire Blvd. when Sgt. Miller ORDERED me to move on 11/1/16 to the second location down by the 110 Fwy and where James M. Woods connects near the UPS Service center, to which I complied.

The DOJ Citing it as "cruel and unusual punishment" because "they have NOWHERE ELSE to go", and Officer Munoz TOLD Korean Air precisely that on 1017/16 at 1:30 p.m. when out of harassment, they called your Rampart Station AGAIN on me, and he and his partner responded.

CAtchinGSv.
CAlifORNIA
Ex.  1A

1

PAGE 20

I did site the damages that the LAPD quoted me (through you) to the City Attorneys Office under case number C18-04092, but they did nothing about it either, except to give mgs the run around (which can be very EASILY verified by my phone number on The City's call log).

Consequently, I will be filing my Federal Complaint for that DOJ Ruling as it pertains to BOTH Case Numbers mentioned, within the next couple of weeks by November 1, 2019.

The Compensatory damages will be based on the initial amount trebled plus interest, for BOTH violations by the LAPD (for the Wilshire Blvd. Incident on 11/17/16) and for the SECOND Violation on 11/1/17, which ALSO involved The LAPD and The State of California, through the actions of the Sanitation Department.

Because they BOTH are connected.

Had the FIRST incident not happened, the SECOND one would not have happened EITHER!

The Punitive damages have not yet calculated.

The Attorneys that I have spoken to, have asked me to ask your Department one final time for payment, before I proceed.

I await your response.


Thank you,

Ms. Dayna R. Catchings

On Tue, Nov 22, 2016, 11:01 AM Armando Cortez <38838@lapd.online> wrote:

Hello Miss Catchings,


the final total equals $1670.00.  Cosmetics/toiletries $100.  Tent $70.  Clothing $1000.  and shoes $500.  Legal and Personal documents have no dollar value loss.


Thank You

Officer Cortez 38838


---

**From:** dayna catchings <catchings.dayna7@gmail.com>
**Sent:** Sunday, November 20, 2016 10:38 AM
**To:** Armando Cortez
**Subject:** Police Report dated11/19/16

PAGE 21

CATchings v.
CALIFORNIA
Ex 1B

Hello Officer Cortez,

I was just checking over the stolen tent report that you took from me yesterday, and I noticed that the dollar amount listed is incorrect from what I had told you.

When I called Rampart and spoke to Officer Davis this morning, and told her of the omission, she suggested that I email you which is what I'm now doing.

It appears that you didn't correct the dollar amount for the toiletries from ten dollars (and you wrote that change down right in front of me) to one hundred and ten dollars as I had corrected you on, plus you didn't mention the stolen clothing and the shoes which I had plainly told you that the shoes  (two pair) were Air Jordan shoes valued at $150.00

I also had told you that I was going for the MAXIMUM dollar amount of ten thousand dollars regarding the personal and legal documents theft as well, and you had told me that I could do that at the time I filed the lawsuit.

The ACTUAL dollar amount SHOULD have been... $70.00 for the tent, $110.00 for the toiletries, and $150.00 for my shoes which equals $330.00, and NOT just the mere $80.00 as you reported.

Why was that COMPLETE dollar amount for my damages NOT listed?

Sincerely,

Ms. Dayna Catchings

Catchings v.
California
Ex. 1C

## ABC Los Angeles

| | |
|---|---|
| **From:** | dayna catchings <catchings.dayna7@gmail.com> |
| **Sent:** | Monday, October 28, 2019 8:21 AM |
| **To:** | ABC Los Angeles |
| **Subject:** | Fwd: Police Report dated11/19/16 |
| **Attachments:** | 20171101_104916.jpg; 20171101_110604.jpg; 20161222_144010.jpg; 20161116_101639.jpg; 20161116_101625.jpg |

TWO of TWO

Dayna

---------- Forwarded message ---------
From: **dayna catchings** <catchings.dayna7@gmail.com>
Date: Tue, Oct 15, 2019, 9:50 AM
Subject: Re: Police Report dated11/19/16
To: Armando Cortez <38838@lapd.online>

Good morning Armando,

Here are photos that CONFIRM the involvement of the State of California as represented by the presence of not only the Sanitation Department but also of the Sheriff's Department in addition to the LAPD's action of the Constitutional Rights Violation of the DOJ Ruling of 2015, as it pertains to November 1st, 2017, under Complaint case number C18-04092 (which is connected to Complaint case number C17-11722).

Speaking of timeline of events, as I think that I mentioned to you before, NONE of the contact between myself and the Entities mentioned would have NEVER HAPPENED had it not been for the Malicious Prosecution that resulted in the Illegal Eviction that caused me to become homeless in October of 2016, which is how and why I ended up on Wilshire Blvd. to begin with, filed under case number BC633373.

And THEN, we also have the other added elements to this story...

On 4/12/17, I was wrongfully ticketed for illegal camping under case number F94137 by Officer Abner (also from Rampart Division), I pled NOT GUILTY on 7/27/17, and was ultimately found NOT GUILTY on 9/22/17 by Criminal Court Judge Gus T. May and the verdict was entered on 9/25/17 BECAUSE...

"There was NO POSTED NOTICE saying or proving that by me having my tent still up at mid day was illegal"

1

(and therefore) I was NOT illegally camping on the sidewalk, just the same as Sgt. Miller had asserted on 11/17/16 when he ordered me to lower my tent and to vacate the sidewalk on Wilshire Blvd.

The attached photo which is time and date stamped PROVED that there was NO SIGN likewise on Wilshire Blvd. (even though there is NOW) at the time of Sgt. Miller's order, thereby representing yet ANOTHER violation of the law and of my rights, committed once again by the LAPD!!

In addition to the Conflicts of interests WITHIN the LAPD itself as represented by Officer Munoz versus Sgt. Miller regarding my Constitutional Rights, also.
What's up with that "good cop, bad cop" routine?!



You all are playing with people's LIVES. How can they not REALIZE that, or they do realize that, but they DON'T CARE!!

THIS is WHY the General Public cannot trust the Police... ONE will tell you one thing, and the NEXT one says that isn't so!!

The damages are far reaching...

Again, all photos are date and time stamped.


Thank you,

Dayna

On Mon, Oct 14, 2019, 9:22 AM dayna catchings <catchings.dayna7@gmail.com> wrote:
  Hello Armando,

I know that it's been a while since we last spoke about my damages, but neither you, nor ANY Detective that the case was assigned to, have failed, neglected and refused to tell me about the EXACT procedure to collect my money from then until now. I did file the claim as you advised, but there has been absolutely NO follow up or follow through from your Department. Why not??



There appears to be a SEVERE Conflicts of Interests between the City Attorneys Office and the Los Angeles Police Department, where my money is concerned.

The LAPD (through You) has said that after their initial investigation, I was entitled to $1,670.00.
Yet, the City Attorneys Office said no by phone when I called them approximately 6 months later after filing the complaint on March 16, 2018, when I didn't receive an answer by mail.

However, I DID receive an answer by mail to the SECOND Complaint filed on May 17, 2017, under case number C17-11722 (which was also denied by the City Attorney's Office on August 28, 2017), for the Violation of the DOJ Ruling in 2015, that makes it ILLEGAL for the LAPD to remove homeless people from the sidewalks (if they are NOT blocking the either the sidewalk, or entrances to buildings), which I DEFINITELY was NOT doing on Wilshire Blvd. when Sgt. Miller ORDERED me to move on 11/1/16 to the second location down by the 110 Fwy and where James M. Woods connects near the UPS Service center, to which I complied.

cAtchings v.
cAhifornia

2 B

2

PAGE 24

The DOJ Citing it as "cruel and unusual punishment" because "they have NOWHERE ELSE to go", and Officer Munoz TOLD Korean Air precisely that on 1017/16 at 1:30 p.m. when out of harassment, they called your Rampart Station AGAIN on me, and he and his partner responded.

I did site the damages that the LAPD quoted me (through you) to the City Attorneys Office under case number C18-04092, but they did nothing about it either, except to give mgs the run around (which can be very EASILY verified by my phone number on The City's call log).

Consequently, I will be filing my Federal Complaint for that DOJ Ruling as it pertains to BOTH Case Numbers mentioned, within the next couple of weeks by November 1, 2019.

The Compensatory damages will be based on the initial amount trebled plus interest, for BOTH violations by the LAPD (for the Wilshire Blvd. Incident on 11/17/16) and for the SECOND Violation on 11/1/17, which ALSO involved The LAPD and The State of California, through the actions of the Sanitation Department.

Because they BOTH are connected.

Had the FIRST incident not happened, the SECOND one would not have happened EITHER!

The Punitive damages have not yet calculated.

The Attorneys that I have spoken to, have asked me to ask your Department one final time for payment, before I proceed.

I await your response.


Thank you,

Ms. Dayna R. Catchings

On Tue, Nov 22, 2016, 11:01 AM Armando Cortez <38838@lapd.online> wrote:

 Hello Miss Catchings,



 the final total equals $1670.00.   Cosmetics/toiletries $100.  Tent $70.  Clothing $1000.  and shoes $500.  Legal and Personal documents have no dollar value loss.



 Thank You

 Officer Cortez 38838

---

**From:** dayna catchings <catchings.dayna7@gmail.com>
**Sent:** Sunday, November 20, 2016 10:38 AM

3

CAtchzgsv.
CAi;funw/A
2 c.

MC-025

SHORT TITLE: CATCHINGS v. California + Los Angeles

CASE NUMBER:

**ATTACHMENT** (Number): Exhibit 2

(This Attachment may be used with any Judicial Council form.)

These Attached photos were attached to the last Email sent to Ofcr. Cortez on 10/15/19 At 9:50 Am, confirmed by Email in Courts Exhibit #2.

EXS. 2 of 6 And 3 of 6 pertain to Claim# C18-04092 DC At ~~Wilshire Blvd.~~ 110 Flwy + James m. woods

EXS. 4, 5 And 6 of 6 pertain to Claim # C17-11122 ~~HP Flwy + James m. woods~~ DC

At Wilshire Blvd.

(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)

Page 1 of 6

(Add pages as required)

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT**
to Judicial Council Form

www.courtinfo.ca.gov

PAGE 26

CATchings v. California
Exr. 2D





PAGE 28

EX.
3 46



P9.79

Ex9.6



pq 30



staples.com

Search

Home / Colored Paper



● ○

## Staples Brights Multipurpose Paper, 24 lbs, 8.5" x 11", Blue, 500/Ream (20101)

Item #: 733072 | Model #: 20101

★★★★☆ 2 187 Reviews

Color: Light Blue 2



500/Ream
Open a Main Account
and save

⦿ Delivered by Tuesday, Oct 29
with next-day delivery

**$13.99**

View more purchasing options ⌄

## View full product details

Consider this similar product



Staples Pastel Multipurpose Paper, 20 lbs, 8.5" x 11",
Assorted, 400/Pack (14804)
**$18.49**
Add to cart

### Supplies and accessories

  

Staples Brights
Multipurpose Paper, 24...
★★★★☆ 1187
**$13.99**

Staples Brights
Multipurpose Paper, 24...
★★★★★ 2187
**$13.99**

● ○ ○ ○ ○ ○ ○ ○ ○ ○ ○ ○

### Product details

Brighten up presentations and memos with this Staples Brights blue paper.

Energize presentations and fliers with this blue paper. Compatible with all office machines for easy across-the-board use, this paper comes in a convenient 8.5 x 11-inch size, making it perfect for all types of presentations. This acid-free Staples blue paper doesn't degrade over time.

$13.99

PAGE 32

EX. 3







DATE _11/01/17_  TIME: _1165_  INC. NO. _2311_

POSTED CLEAN UP LOC 8TH
E/OF GARLAND W/OF 110 FWY
SANITATION / WATER SHED IN
CHARGE OF CLEAN UP
CALTRANS & CHP ON CALTRANS PROP

If you wish to comment on the level of service you received, please
contact a Department supervisor or telephone 800-339-6868, or
TTY for the hearing-impaired (213) 485-3604.

@ LOC FOR CLEAN UP

34

Ex. 4
B



**LEVON AROUSTAMIAN**
Adult Protective Services
Social Worker

Community and Senior Services
APS Mid-Wilshire Office

**(213) 738-2725** PHONE
(213) 738-2066 FAX

---

FAX: (213) 484-
TTY: (213) 847-5299
www.lapdonline.org
www.joinlapd.com

**LOS ANGELES POLICE DEPARTMENT**
RAMPART AREA
RAMPART PATROL DIVISION

2A5

By: MVN02  #31070    1401 W. 6th STREET
LOS ANGELES, CA 90017
JOIN THE LAPD  (866)444-LAPD  RECRUITMENT HOTLINE

---



**SERGEANT**
**JOEL MILLER**
SERIAL #35068

**RAMPART DIVISION**
**SPECIAL PROBLEMS UNIT**

1401 W. 6th STREET
LOS ANGELES, CA 90017

TEL: (213) 484-3400
FAX: (213) 484-3088

JOIN THE LAPD
(866) 444-LAPD
RECRUITMENT HOTLINE

---



Iris Santin
Senior Lead Officer
#35383

**1401 WEST 6TH STREET**         213 793-0778 CELL
**LOS ANGELES, CA 90017**        213 484-3400 DESK
                                 31383@lapd.lacity.org

---



**LOS ANGELES POLICE DEPARTMENT**

SENIOR LEAD OFFICER
**AMANDA SERRANO**
#26603
BASIC CAR AREA 2A69
RAMPART DIVISION

1401 West 6th Street
Los Angeles, CA 90017

Tel: (213) 793-0776
Fax: (213) 484-3088
TDD: (213) 847-5299
E-mail: 26603@lapd.lacity.org

---

PHONE (213) 484-  3400
FAX: (213) 484-
TTY: (213) 847-5299
www.lapdonline.org
www.joinlapd.com

2A91

**LOS ANGELES POLICE DEPARTMENT**
RAMPART AREA
RAMPART PATROL DIVISION

OFC PEREZ 34732
OFC NGUYEN 34541

By:

1401 W. 6TH STREET
LOS ANGELES, CA 90017
JOIN THE LAPD  (866)444-LAPD  RECRUITMENT HOTLINE

---

PHONE: (213) 484-  3400
FAX: (213) 484-
TTY: (213) 847-5299
www.lapdonline.org
www.joinlapd.com

**LOS ANGELES POLICE DEPARTMENT**
RAMPART AREA
RAMPART PATROL DIVISION

AGUIRRE 42224
By: DUENAS 34853

1401 W. 6TH STREET
LOS ANGELES, CA 90017
JOIN THE LAPD  (866)444-LAPD  RECRUITMENT HOTLINE

---

PHONE: (213) 484-  3400
FAX: (213) 484-
TTY: (213) 847-5299
www.lapdonline.org
www.joinlapd.com

**LOS ANGELES POLICE DEPARTMENT**
RAMPART AREA
RAMPART PATROL DIVISION

OFCR ESCOBAR # 34768   2A69  W3
OFCR MACIAS    #  41409
By:

1401 W. 6TH STREET
LOS ANGELES, CA 90017
JOIN THE LAPD  (866)444-LAPD  RECRUITMENT HOTLINE

 P.
 35

---

PHONE: (213) 484-  3619
FAX: (213) 484-
TTY: (213) 487-5299
www.lapdonline.org
www.joinlapd.com

**LOS ANGELES POLICE DEPARTMENT**
RAMPART AREA
RAMPART DETECTIVE DIVISION

DETECTIVE
RAUPP
By:

1401 W. 6TH STREET
LOS ANGELES, CA 90017
JOIN THE LAPD  (866) 444-LAPD  RECRUITMENT HOTLINE

EX. 5a



ON OR About 9/15/16

OfficerReyes 2134843495

DATE: 10-14-1 TIME: 1:30 PM INC. NO.:

DISPUTE W/ HOMELESS & BUSINESS OWNER KOREAN AIN.

NO CRIME.

If you wish to comment on the level of service you received, please contact a Department supervisor or telephone (800)-339-6868, or TTY for the hearing-impaired (213) 485-3604.

Date: 11/17/16 Time: 1030 Inc#: 1529

ADVISED/WARNED FOR VIOL OF 56.11.7 LAMC. COOPERATIVE

If you wish to comment on the level of service you received, please contact a Department supervisor or telephone 800-339-6868 or TDD 213-485-3604

CITY RESOURCES: 311 NON EMERGENCY: 1-877-ASK-LAPD (275-5273)

WWW.JOINLAPD.COM WWW.NIXLE.COM

Date 10/16 Time 830 INC/DR#

Comments:

WARNED NO CAMPING IN PARK

If a crime has just occurred or you have an emergency please call 911. Should you have information regarding a criminal investigation or activity, please contact your local police station or LAPD crime hotline at 1-877-529-3855

The Department is committed to providing quality service to the community. If you wish to comment on the level of service you received, please contact a Department supervisor or call 1-800- 339-6868 TDD (213) 485-3604

www.lapdonline.org

DATE: 2/14/15 TIME: 12 NOON INC. NO:

COMMENTS:

RESPONDED to ongoing complaint RE: RESIDENT JERRY in # 521

If a crime has just occurrred or you have an emergency please call 911, should you have information regarding a criminal investigation or activity, please contact your local police station or the LAPD crime hotline at 1-877-529-3855.

The Department is commited to providing quality service to the community. if you wish to comment on the level of services you received, please contac a departmet supervisor or telephone 1-800-339-6868. TDD# (213) 485-3604

DATE: 11/22/14 TIME: 1040 INC. NO.:

RE: NEIGHBOR DISTURBING PEACE.

If you wish to comment on the level of service you received, please contact a Department supervisor or telephone 800-339-6868, or TTY for the hearing-impaired (213) 485-3604.

DATE: 12/11/16 TIME: 0810 INC. NO.: 1283

ADVISED MRS. CATCHINGS TO MOVE HER TENT DUE TO IT BLOCKING THE SIDEWALK (AND FOR SAFETY FROM TRAFFIC GOING AROUND THE CURVE)

If you wish to comment on the level of service you received, please contact a Department supervisor or telephone (800) 339-6868, or TTY for the hearing-impaired (213) 485-3604.

DATE: 5-30-14 TIME: 5:45 AM INC. NO.: 0699

308 Lum Pr # 519

R/C NO CRIME, NEIGHBOR IN # 520 BEING DISRUPTIVE DURING NIGHT KEPT PEACE

If you wish to comment on the level of service you received, please contact a Department supervisor or telephone 800-339-6868, or TTY for the hearing-impaired (213) 485-3604.

I SPOKE w/ Sgt. GARCIA

DATE: 8/23/14 TIME: 1630 INC. NO.:

Report

7M9-003

If you wish to comment on the level of service you received, please contact a Department supervisor or telephone 800-339-6868, or TTY for the hearing-impaired (213) 485-3604.

P. 36

EX. 5B

Los Angeles Police Department

Sergeant
**David E. Rich**

Rampart Area
Patrol
32026@lapd.lacity.org

1401 W 6th Street
Los Angeles, CA 90017

---

PHONE: (213) 833-3746
FAX: (213) 485-9888
TTY: (877) 275-5273
www.lapd.com
wwww.joinlapd.com

**LOS ANGELES POLICE DEPARTMENT**
OPERATIONS CENTRAL BUREAU
CENTRAL TRAFFIC DIVISION

BY: BENTGWDI   R

251 E. 6TH STREET
LOS ANGELES, CA 90014-2116

JOIN THE LAPD. (866)444-LAPD Recruitment Hotline

---



**CLIFFORD I. IRIELE, M.D.**
*Psychiatrist*

1711 W. Temple Street, Suite 6642
Los Angeles, CA 90026

Phone: (213) 483-0246
Fax: (213) 483-0249

---

Los Angeles Police Department

Police Officer III+I
**Robert Solorio**

Rampart Area
Senior Lead Officer
36103@lapd.online

Tel: 213.484.3056
Fax: 213.484.3088
Cell: 213.793.0775
TDD: 213.847.5299

1401 W. 6th Street
Los Angeles, CA 90017

---



**Kimberly Lewis**
Supervisor, Homeless Services HOPE

811 Wilshire Blvd, 5th Floor
Los Angeles, CA 90017
TEL: (213) 797-4577
CELL: (213) 259-4505
FAX: (213) 892-0093
TTY: (213) 553-8488
E-MAIL: klewis@lahsa.org

**LAHSA**
LOS ANGELES
HOMELESS
SERVICES
AUTHORITY
www.lahsa.org

- A Joint Powers Authority Created by the City and County of Los Angeles -

---

Department of Public Works
LA Sanitation

**BOBBY BENSON**
Environmental Compliance Inspector

Watershed Protection Division
2714 Media Center Drive
Los Angeles, CA 90065

Mail Stop: 756
Phone: (323) 342-6156
Fax: (323) 342-1511
Bobby.Benson@lacity.org

---





PLE 172

EX 6A

Date: _____ Time: _____ Inc#

Comments:

END . REG
TEXT REWORK

OUR MISSION IS TO PROTECT PUBLIC HEALTH AND THE ENVIRONMENT

4/17/17 DC

LAHSA
Los Angeles
Housing
Services
- 31/

If you wish to comment on the level of service you received, please contact a Department supervisor or telephone 1.800.339.6868 or TTY #213.485.3604

DATE: 1/30/17 TIME: 8:45 AM INC. NO.:

Reported unhealthy living conditions re: rat infested garbage dump across from campsite. LAPD officer listed stated that he would put in a service request

If you wish to comment on the level of service you received, please contact a Department supervisor or telephone (800) 339-6868, or TTY for the hearing-impaired (213) 485-3604.

---

_____ has an appointment

☐ Mon  ☐ Tues  ☒ Wed  ☐ Thur  ☐ Fri  ☐ Sat

March 8th 2017 at 3:30 a.m./p.m.

if unable to keep appointment, kindly give 24 hrs. notice.

---

Date: 4-12-17 Time: 11:00 Inc#_____
Partner: _____ Serial#_____
Comments:

If you wish to comment on the service you received, please contact a department supervisor or telephone 1.800.339.6868 or TDD #213.485.3604

4/17/17

GM
6B
38





MIGUEL SANTIAGO
ASSEMBLYMEMBER, ___ DISTRICT

LIZETH ZARDENETA
FIELD REPRESENTATIVE

CAPITOL OFFICE
P.O. BOX 942849
SACRAMENTO, CA 94249-0053
(916) 319-2153
FAX (916) 319-2153
www.assembly.ca.gov/Santiago

DISTRICT OFFICE
___ STREET, SUITE 1050
LOS ANGELES, CA 90013
(213) 620-4646
FAX (213) 620-6319
Lizeth.Zardeneta@asm.ca.gov

LOS ANGELES POLICE DEPARTMENT
RAMPART AREA
RAMPART PATROL DIVISION

(213) 793-0776

J. CHONG # 3165

BY: SR. LEAD OFFICER

1401 W. 6TH STREET
LOS ANGELES, CA 90017
JOIN THE LAPD (866)444-LAPD Recruitment Hotline

Department of Public Works
LA Sanitation

BOBBY BENSON
Environmental Compliance Inspector

4/1/12

Watershed Protection Division
2714 Media Center Drive
Los Angeles, CA 90065

Mail Stop: 756
Phone: (323) 342-6156
Fax: (323) 342-1511
Bobby.Benson@lacity.org

Gilbert Jimenez
Supervisor, Homeless Services

LAHSA

811 Wilshire Blvd, 5th Floor
Los Angeles, CA 90017
TEL: (213) 225-6536
CELL: (213) 216-0429
FAX: (213) 892-0093
TTY: (213) 553-8488
E-MAIL: gjimenez@lahsa.org

· A Joint Powers Authority Created by the City and County of Los Angeles ·

11/13/17

920
AM

Kimberly Lewis
Supervisor, Homeless Services HOPE

LAHSA

811 Wilshire Blvd, 5th Floor
Los Angeles, CA 90017
TEL: (213) 797-4577
CELL: (213) 259-4505
FAX: (213) 892-0093
TTY: (213) 553-8488
E-MAIL: klewis@lahsa.org

· A Joint Powers Authority Created by the City and County of Los Angeles ·

Raquel Trinidad, M.A.
SPA 2 Regional Coordinator
Policy & Planning Department

LAHSA

811 Wilshire Blvd, 6th Floor
Los Angeles, CA 90017
TEL: (213) 689-4091
CELL: (213) 610-7144
FAX: (213) 892-0093
TTY: (213) 553-8488
E-MAIL: rtrinidad@lahsa.org

· A Joint Powers Authority Created by the City and County of Los Angeles ·

PHONE: (213) 484-3400
FAX: (213) 484-____
TTY: (213) 847-5299
www.lapdonline.org
www.joinlapd.org

LOS ANGELES POLICE DEPARTMENT
RAMPART AREA
RAMPART PATROL DIVISION

2592 W2

OFCR BRAGNUE 33655
BY: OFCR GRAS 35079

1401 W. 6TH STREET
LOS ANGELES, CA 90017
JOIN THE LAPD (866)444-LAPD Recruitment Hotline

EX 7A

213-326-1044

Liz Oh
E6 Case Manager
lizoh@hhcla.org
(o) 213-744-0724
(f) 213.342.3124
www.hhcla.org
2330 beverly blvd.
los angeles, ca 90057

PAGE 39

DEAR TOM; I MENTIONED TO RENE THIS MORNING
THAT I MUST START THE GRIEVANCE PROCEDURE
AGAINST ALL OF THOSE LISTED, ESPECIALLY LAHSA; WHO ARE
NOT ONLY RESPONSIBLE FOR MY HAVING HOUSING HERE, BUT WHO
ARE ALSO RESPONSIBLE FOR THE DAMAGES THAT OCCURED TO ME
ON NOVEMBER 1ST, 2017, THAT PUT ME HERE IN THE FIRST PLACE
I WANTED YOU TO HAVE THIS BEFORE OUR MEETING ON THURSDAY, DOUG

RE: 8/10/17 DC

Printed on Recycled Paper

Mon – Thurs 6AM – 4P.M

If you wish to comment on the level of service you received, please contact a Department supervisor or telephone (800) 339-6868, or TTY for the hearing-impaired (213) 485-3604.

OUR MISSION IS TO PROTECT PUBLIC HEALTH AND THE ENVIRONMENT 4/17/17 DC

LAHSA
Los Angeles
Housing
Services
→ 311

10/5/17

**Kimberly Lewis**
Supervisor, Homeless Services HOPE

811 Wilshire Blvd, 5th Floor
Los Angeles, CA 90017
TEL: (213) 797-4577
CELL: (213) 259-4505
FAX: (213) 892-0093
TTY: (213) 553-8488
E-MAIL: klewis@lahsa.org

- A Joint Powers Authority Created by the City and County of Los Angeles -

LAHSA

Raul Lopez, Regional Coordinator for SPA 4B
(213) 6833333
2/13/17 DC

DATE: 11/01/17   TIME: 1105   INC. NO: 2311
POSTED CLEAN UP LOC 8TH E/OF GARLAND W/OF 110 FWY
SANITATION / WATER SHED IN CHARGE OF CLEAN UP
CALTRANS & CHP ON CALTRANS PROP

If you wish to comment on the level of service you received, please contact a Department supervisor or telephone 800-339-6868, or TTY for the hearing-impaired (213) 485-3604.

② LOC FOR CLEAN UP

HOMELESS HEALTH CARE LOS ANGELES

EX 7B

40

EX 7B



PAGE
41

Ex. 8A



Ex. B



EX 9



11/1/17 - The aftermath of the ILLEGAL AND wrongful actions against
A SENIOR CITIZEN, Disabled BLACK & transgendered PERSON, who was
illegally evicted into the streets due to malicious prosecution by the
property owner. The City AND the State are visibly present
AND the CHAIN LINK FENCE separates the city SIDEWALK
from the State grassy area coming off the 110 Fwy. My
flattened tent represents not being able to move from
one side to the other side and consequently my tent and
personal property was destroyed a third time. The first time
was on 11/17/16 AND the second time was on 4/12/17.

PAGE 44                          EX. 10



7/19/17  12:19pm

The photos taken approx. 4 months earlier
proves that my immediate living area was
clean of debris and trash,

    The exact same scenario as
with the Wilshire Blvd. location, in front
of Korean Air parking lot.

415

Catches v.
California
Ex. 11



7/19/17 12:19pm

APRIL, if there was ANY trash, it was placed
At the off RAMP to be easily picked up by the clean up
CREWS that often come by ANYWAy.

Catching u
California
Ex. 12

46

EX. 72A



Photo taken 11/1/17 - LA Dept. of Sanitation Cleanup. Was referred
by Heritage Clinic who placed me at Hawkes Transitional Living
Center (Good Shepherd) until April 2018

47

Catchings,
California
EX. 13



11-7-17 - the SANitAtiON AND Sheriff's Dept.
CAN be seen in this photo.
( sanitAtiON DEpt- Sheriff's Dept.)

48

CATchings vs
CAliforniA
Ex, 14



Duplicate of Exhibit 10
by mistake
DZ

#49

Catchings v.
California 15
DEFX.理

Ofcr.
Arellano Det. BRAVO          M8re          11/19/16
                             213-484-3489
                                  484-3613

(Complaint) 9/19/17
called

pg. 50                                              EX.
                                                    15A

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**CONFORMED COPY**
ORIGINAL FILED
Superior Court of California
County of Los Angeles

**JUL 27 2017**

Sherri R. Carter, Executive Officer/Clerk
By _____, Deputy

**COURTHOUSE LOCATION:**
METROPOLITAN COURTHOUSE

**PLAINTIFF:**
PEOPLE OF THE STATE OF CALIFORNIA

**DEFENDANT:**
DAYNA CATCHINGS

### AGREEMENT TO APPEAR FOR TRIAL

**CITATION NUMBER:**
F94137-1942

The court has allowed me to proceed to trial without posting bail. If I fail to appear on the date set for court trial (either personally or through an attorney with the authority to appear on my behalf) the court may take any of the following actions:

- The court may deem that I have elected to have a trial by written declaration pursuant to Vehicle Code section 40903(a). As such, the court may hold a trial in my absence and will rely on information contained in the citation and any submitted documentation by the arresting officer or me. This means I waive the right to be present at a trial, to testify and/or present evidence on my behalf, to be represented by an attorney, to confront and cross-examine witnesses, and to use the subpoena power of the court to compel the attendance of witnesses.
- In the alternative, the court may issue a bench warrant for my arrest and set bail in an appropriate amount.
- Any of these actions may be heard and/or taken by a temporary judge, who is a qualified attorney, sworn and appointed by order of the Presiding Judge of the Superior Court and assigned to try the case, as authorized under California Rules of Court, rules 2.810-2.816. This means that in the event of my failure to appear at trial, I waive my right to have this case heard by a judge or commissioner of the Superior Court.
- If the court elects to proceed by a trial by declaration, and I am found guilty, a notice informing me (and/or my attorney of record) of the court's decision and of any fines due will be mailed to me and/or my attorney of record at the address on file with the court.
- If I fail to take action by the due date stated in that notice the court may impose a civil assessment up to $300 pursuant to Penal Code section 1214.1 and/or refer the matter to a collection agency.

### AGREEMENT TO APPEAR
**I have read and agree to the terms listed above. I agree to appear in court as indicated below.**

**DATE** 09/22/2017 **TIME** 01:30PM ☐A.M. ☑P.M. **DEPARTMENT** 67/ 5TH FLOOR

**COURT ADDRESS**
1945 S. HILL ST. LOS ANGELES, CA, 90007

**SIGNATURE OF PERSON WHO RECEIVED CITATION OR ATTORNEY** _[signature]_ **DATE** 07/27/2017

**DEFENDANT'S ADDRESS** (Street address, city, state, and ZIP code)

**DRIVER'S LICENSE NUMBER** | **BIRTH DATE**

TRAF 041 (Rev. 07/17)
LASC Approved (03/15)
For Mandatory Use

**AGREEMENT TO APPEAR FOR TRIAL**

Veh. Code §40903

DISTRIBUTION: Court Case File and Defendant



PLE-69





LOS ANGELES POLICE DEPARTMENT

## CHRISTIAN GUERRERO
POLICE OFFICER II #41407
OPERATION CENTRAL BUREAU
HOMELESS OUTREACH PROACTIVE ENGAGEMENT

STATION: 213.484.3400
E-MAIL: 41407@LAPD.ONLINE

RAMPART DIVISION
1401 W. 6TH ST.
LOS ANGELES CA. 90017

52A

Catchings
v. California
Ex 16

214

# The Washington Post

**Wonkblog**

# It's unconstitutional to ban the homeless from sleeping outside, the federal government says

**By Emily Badger**  August 13, 2015

We all need sleep, which is a fact of life but also a legally important point. Last week, the Department of Justice argued as much in a statement of interest it filed in a relatively obscure case in Boise, Idaho, that could impact how cities regulate and punish homelessness.

Boise, like many cities — the number of which has swelled since the recession — has an ordinance banning sleeping or camping in public places. But such laws, the DOJ says, effectively criminalize homelessness *itself* in situations where people simply have nowhere else to sleep. From the DOJ's filing:

> When adequate shelter space exists, individuals have a choice about whether or not to sleep in public. However, when adequate shelter space does not exist, there is no meaningful distinction between the status of being homeless and the conduct of sleeping in public. Sleeping is a life-sustaining activity — i.e., it must occur at some time in some place. If a person literally has nowhere else to go, then enforcement of the anti-camping ordinance against that person criminalizes her for being homeless.

Such laws, the DOJ argues, violate the Eighth Amendment protections against cruel and unusual punishment, making them unconstitutional. By weighing in on this case, the DOJ's first foray in two decades into this still-unsettled area of law, the federal government is warning cities far beyond Boise and backing up federal goals to treat homelessness more humanely.

Catchings n.
California
Ex. 17

Doc# 1 Page# 138 - Doc ID = 1724336029 - Doc Type = OTHER

"It's huge," says Eric Tars, a senior attorney for the <u>National Law Center on Homelessness & Poverty</u>, which originally filed the lawsuit against Boise, alongside Idaho Legal Aid Services.

*[Lifting bans on sleeping outside won't stop criminalization of homelessness]*

According to a <u>NLCHP report last year</u> that surveyed 187 cities between 2011 and 2014, 34 percent had citywide laws banning camping in public. Another 43 percent prohibited sleeping in vehicles, and 53 percent banned sitting or lying down in certain public places. All of these laws criminalize the kind of activities — sitting, resting, sleeping — that are arguably fundamental to human existence.

And they've criminalized that behavior in an environment where most cities have far more homeless than shelter beds. In 2014, the federal government estimates, there were about 153,000 unsheltered homeless on the street in the U.S. on any given night.

Laws like these have grown more common as that math has actually grown worse since the recession.

"Homelessness is just becoming more visible in communities, and when homelessness becomes more visible, there's more pressure on community leaders to do something about it," Tars says. "And rather than actually examining what's the best thing to do about homelessness, the knee-jerk response — as with so many other things in society — is 'we'll address this social issue with the criminal justice system.'"

It's also easier, he adds, for elected officials to argue for criminal penalties when the public costs of that policy are much harder to see than the costs of investing in shelters or services for the poor. Ultimately, though, advocates and the federal government have argued, it's much more expensive to ticket the homeless — with the court, prison and health costs associated with it — than to invest in <u>"housing first" solutions</u> that have worked in many parts of the country.

Criminal citations also compound the problem of homelessness, making it harder for people to qualify for jobs or housing in the future.

"You have to check those [criminal] boxes on the application forms," Tars says. "And they don't say 'were you arrested because you were trying to simply survive on the streets?' They say 'if you have an arrest record, we're not going to rent to you.'"



NLCHP's goal, Tars says, isn't to protect the rights of people to live on the street, but to prevent and end homelessness. That means adding a lot more shelter beds and housing options in places like Boise — which has three shelters run by two nonprofits — so people have options other than the street.

The DOJ's argument is based on the logic in an earlier Ninth Circuit decision, striking down a vagrancy law in Los Angeles, that was ultimately vacated in a settlement. That logic specifically says it's unconstitutional to punish people for sleeping outside if there aren't enough beds for them to sleep indoors. If there are, the constitutional question would be different, although the moral and policy implications may remain the same.

"Homelessness never left town because somebody gave it a ticket," Tars says. "The only way to end homelessness is to make sure everybody has access to affordable, decent housing."

💬 **Comments**

Emily Badger is a reporter for Wonkblog covering urban policy. She was previously a staff writer at The Atlantic Cities. 🐦 Follow @emilymbadger

Doc# 1 Page# 140 - Doc ID = 1724336029 - Doc Type = OTHER




NOW
Southern California Public Radio

LAW

# DOJ Says It's Unconstitutional To Ban The Homeless From Sleeping Outside

Listen · 2:48    ( Queue )  Download

Transcript

August 14, 2015 · 4:29 PM ET
Heard on All Things Considered

  CARRIE JOHNSON

The Justice Department weighs in on an Idaho case, arguing that homeless people should not be charged with crimes for sleeping outdoors when there is not enough housing in their communities.

MELISSA BLOCK, HOST:

Many cities with a homeless problem have responded by passing laws that crack down on camping or sleeping in public places. In some places, they've effectively criminalized homelessness. Well, now the Obama administration is weighing in, arguing that for those who have no choice, sleeping in public is not a crime. NPR's Carrie Johnson reports.

CARRIE JOHNSON, BYLINE: Seven homeless people in Boise, Idaho, are suing the city to overturn a ban on camping and sleeping because they've been punished under the local ordinances. This month, the U.S. Justice Department decided it wanted to use the Boise case to send this message.





VANITA GUPTA: Making it a crime for people who are homeless to sleep in public places when there's insufficient shelter space in a city really is a violation of the Eighth Amendment's prohibition of cruel and unusual punishment.

JOHNSON: Vanita Gupta leads the civil rights unit at Justice. She says handing out tickets and fines for an innocent activity like sleeping in public ties up courts and jails, and advocates say that pushing homeless people into the justice system is counterproductive. That's because having a criminal record hurts their chances when they apply for housing and jobs. Eric Tars works at the National Law Center on Homelessness and Poverty. He's involved in the Boise case too.

ERIC TARS: Most homeless people aren't criminals, but if you criminalize the simple acts that we all do every day to survive - sleeping, eating, even going to the bathroom - then you make homeless people into criminals, and then you have the criminal justice system dealing with a social problem.

JOHNSON: Tars says the number of ordinances that make it a crime to sleep, sit on the sidewalk or panhandle has gone up by double digits in the past three years. And he says the Justice Department filing in the Boise case could have wide impact since big cities, including Los Angeles, are still figuring out their approach.

TARS: The DOJ's brief sends a really strong signal to the city of Boise and to communities across the country that homeless people do not lose their constitutional rights when they lose their homes.

JOHNSON: In Boise, city officials say they're doing what they can in the face of a huge challenge. Mike Journee is spokesman for the mayor. Here he is talking to Boise State Public Radio.

(SOUNDBITE OF ARCHIVED BROADCAST)

Catchings v.
California

Ex. 21



Doc# 1 Page# 142 - Doc ID = 1724336029 - Doc Type = OTHER

MIKE JOURNEE: There are confrontations or bad sanitary situations where multiple families are living in the same area. We can't ignore that. That is something that has to be addressed. That is something that our constituents demand to be addressed.

JOHNSON: Journey says police in Boise have changed their behavior since the lawsuit began. He says they no longer hand out tickets when local shelters are full, but advocates say police don't take into account that some homeless people can't get into those shelters because of disabilities and mental illness. Both sides are due in court later this month for a hearing in the case. Carrie Johnson, NPR News, Washington.

*Copyright © 2015 NPR. All rights reserved. Visit our website terms of use and permissions pages at www.npr.org for further information.*

*NPR transcripts are created on a rush deadline by Verb8tm, Inc., an NPR contractor, and produced using a proprietary transcription process developed with NPR. This text may not be in its final form and may be updated or revised in the future. Accuracy and availability may vary. The authoritative record of NPR's programming is the audio record.*

# Get The Stories That Grabbed Us This Week

Delivered to your inbox every Sunday, these are the NPR stories that keep us scrolling.

What's your email?

SUBSCRIBE

By subscribing, you agree to NPR's terms of use and privacy policy.

01/09/2018



Catching in California

Ex. 2a

Doc# 1 Page# 143 - Doc ID = 1724336029 - Doc Type = OTHER

*2¹ N*

**theStranger**

MENU ≡



# SLOG

NEWS · CITY · SHELTER

# DOJ: Seattle Encampment Sweeps Legislation Recognizes Homeless People's Rights "Must Be Respected"

by Heidi Groover · Oct 13, 2016 at 5:14 pm

Like 331  Share      Tweet 



*Chdwing v.
California
Ex 23*

"The proposed ordinance would provide for fair notice and resources to those living in public spaces before being removed," writes Lisa Foster, director of the DOJ's Office for Access to Justice in a **letter to council members**, "while still allowing the city to address unsafe, unsuitable, hazardous, or emergency conditions."

The DOJ's read of the legislation runs counter to the narrative pushed by Mayor Ed Murray and Council Member Tim Burgess that the proposed legislation would tie the city's hands in dealing with homeless encampments.

It's not the first time the department has stood up for the rights of people sleeping outside. Last year, in a **statement** related to a case in Boise, ID, the DOJ said punishing homeless people for sleeping in public places when they have nowhere else to go is both unconstitutional and "poor public policy."

"Too often, local jurisdictions have tried to simply move people experiencing homelessness to another area," the new DOJ letter reads, "without crafting more effective and systemic policy solutions that implement a Housing First response to addressing the problem of homelessness... Those laws have sometimes been used to remove poor people from a particular location without adequate procedural protections, essentially criminalizing the status of being poor or homeless."

The department is careful to note their position does not mean "unfettered encampments is the appropriate policy response to homelessness. Rather, the legal position affirming the constitutional rights of people experiencing homelessness should be viewed as a starting point in crafting appropriate policy responses."

While Seattle officials say people here are not arrested simply for being homeless, a recent **series of reports** from the Seattle University School of Law documented how cities across Washington State are increasingly criminalizing homelessness. One of the reports estimated Seattle would spend $2.3 million over the course of five years enforcing just 16 percent of its criminalization ordinances, which include bans on camping in public and sitting or lying on certain sidewalks during the day.

The Seattle City Council's human services committee **will discuss** O'Brien's proposed legislation, as well as a competing version from Council Member Sally Bagshaw, Friday at 9:30 am.



Catching v.
California
Ex 20

**Maria De Leon**

| | |
|---|---|
| **From:** | dayna catchings <catchings.dayna7@gmail.com> |
| **Sent:** | Tuesday, November 14, 2017 2:43 PM |
| **To:** | Maria De Leon |
| **Subject:** | Re: Link of DOJ Relaetd Articles |

Hi Maria,

Thank you for printing out the links to the Department of Justice rulings and related cases for me.

Dayna

On Oct 31, 2017 4:22 PM, "Rosario Medina" <RMedina@sbssla.org> wrote:

I was not able to find the specific document from the DOJ. I was able to find similar articles related to what we had spoken about.

http://www.npr.org/2015/08/14/432280606/doj-says-its-unconstitutional-to-ban-the-homeless-from-sleeping-outside

https://www.washingtonpost.com/news/wonk/wp/2015/08/13/its-unconstitutional-to-ban-the-homeless-from-sleeping-outside-the-federal-government-says/?utm_term=.dccf20b4403f

http://www.thestranger.com/slog/2016/10/13/24620200/doj-seattle-encampment-sweeps-legislation-recognizes-homeless-peoples-rights-must-be-respected

Rosario Medina, BA Gerontology

Administrative Assistant,

Development/Program & Services

St. Barnabas Senior Services

Office General: (213)388-4444 ext. 215

Office Direct: (213) 355-8541

Catchings v.
California
Ex 25

1 

EX. R59





# NOTICE: MAJOR CLEANING

### INCLUDES SIDEWALKS, ALLEYS, PARKS, BEACH, PARKING LOTS, AND OTHER PUBLIC ACCESS AREAS

### AN AREA CLEANING WILL COMMENCE AT THIS LOCATION ON:

## Wednesday, April 12, 2017 at 08:30 a.m.

### PLEASE REMOVE ALL PERSONAL BELONGINGS, INCLUDING BULKY ITEMS BY

## Wednesday, April 12, 2017 by 08:00 a.m.

This effort is designed to clean, improve and maintain a safe environment for the general public.   The City may use power wash and street cleaning equipment to clean and disinfect the sidewalks, alleys, parks and other public access areas.

Please remove all personal belongings, including bulky items from sidewalks, alleys, parks, and public access areas.   All property remaining may be removed by the City. Property left behind, except for items that pose an immediate threat to public health or safety, trash, and evidence of a crime or contraband, may be collected by the City and kept in a secure location for a period of 90 days during which time it may be retrieved by its rightful owner.

**Items collected by the City may be retrieved at:**

**507 Towne Avenue**
**Los Angeles, CA  90013**
**Monday - Friday**
**(9:30 a.m. – 12:30 p.m. and 1:00 p.m. – 5:00 p.m.)**
**Saturday**
**(9:00 a.m. – 1:00 p.m)**
**213:806-6355**

The City of Los Angeles greatly appreciates your cooperation as we initiate necessary measures to ensure that your communities are safe and healthy.

**Location:**

Catching v.
California
EX. 26



LOS ANGELES POLICE DEPARTMENT
CITY OF LOS ANGELES ☐ MISDEMEANOR ☑ INFRACTION **F94137**
**NOTICE TO APPEAR** **NONTRAFFIC** (Citation No.)

*Ex. 21p*

| Date of Violation 04/12/17 | Time ☐ AM ☐ PM 1205 | Day of Week S M T (W) T F S | Arrest DR No. | Evidence DR No. 170209000 |

Name (First, Middle, Last)
DAYNA CATCHINGS

Address 750 W 7TH ST #81161 LA 90081

City LOS ANGELES   State CA   ZIP Code 90081

| Driver's No. D11767938 | State CA | Class ID | Age 65 | Birth Date 04 01 52 |

| Sex F | Hair BLK | Eyes BRN | Height 602 | Weight 200 | Race BLK | Other Description |

| Code | Ordinance | Description | Misdemeanor or Infraction (Circle) |
|---|---|---|---|
| | 56.11 (10)(b) LAMC - SUSP HAD | | M (I) |
| | TENT ERECT (RED & GREY) BTWN | | M I |
| | THE HOURS OF 6AM AND 9PM | | M I |
| | SUSP ALSO ATTEMPTED TO IMPEDE | | M I |
| | THE SCHEDULED CLEAN-UP BY | | M I |
| | LA SANITATION WORKERS | | M I |
| | | | M I |
| | | | M I |

Location of Violation(s)   City and County of Los Angeles
JAMES M WOOD @ 110 FWY

Comments (Including RD number)   ☐ Booking Required (see reverse)
RD0269

☐ Violations not committed in my presence, declared on information and belief.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct.

ABNER   ☐ TE ☐ CT DIV. RAMP   35838 PAST
Arresting or Citing Officer   Serial No.   Dates Off

04/12/17
Date   Name of Arresting Officer, if different from Citing Officer   Serial No.   Dates Off   to

WITHOUT ADMITTING GUILT, I PROMISE TO APPEAR AT THE TIME AND PLACE INDICATED BELOW.
X Signature _____

WHEN: ON THIS DATE 04/12/17   TIME 0830 ☑ AM ☐ PM
WHAT TO DO: FOLLOW THE INSTRUCTIONS ON THE REVERSE.
WHERE:
☑ Metropolitan, 1945 South Hill Street, Los Angeles, 90007
☐ Long Beach, 275 Magnolia Avenue, Long Beach, 90802
☐ Van Nuys, 14400 Erwin Street Mall, Van Nuys, 91401
☐ San Fernando, 900 Third Street, San Fernando, 91340
☐ Chatsworth, 9425 Penfield Avenue, Chatsworth, 91311
☐ Airport, 11701 South La Cienega Boulevard, Los Angeles, 90045
☐ East Los Angeles, 4848 E. Civic Center Way, Los Angeles, 90022
☐ Beverly Hills, 9355 Burton Way, Beverly Hills, 90210
☐ _____
☐ _____
☐ TO BE NOTIFIED   ☐ COURT CLERK

01/09/2018

‖‖‖ x F 9 4 1 3 7 x ‖‖‖   COURT COPY

Notice to Appear form approved by the Judicial Council of California.   TR-120
Rev. 07-01-13 (Pen. Code, § 853.9)   FORM 05.02.02 (08/14)

*Catchings
California
Ex 27*

Doc ID: (1695304062) : LCIT - Doc 1 Page 1
Doc# 1 Page# 149 - Doc ID = 1724336029 - Doc Type = OTHER

**LOS ANGELES SUPERIOR COURT -    METROPOLITAN BRANCH**    Ref:  AR008
**1945 SO. HILL STREET  LOS ANGELES, CA  90007**

ISSUE DATE:    April 12, 2017
**ARRAIGNMENT DOCKET**

CASE NO.  F94137      LEA:  1942    VLN: PED        DOB:  04/01/52    OLN:  D1467938

DEFENDANT:  DAYNA CATCHINGS                TRUE NAME:

CHARGE(S)  LA Mun Code
1)  561110B                                    DUE AMT: $ 234.00
Susp Haci Tenf Gact Btwn The HR of 6AM and 9AM    4)

$ 35.00        $                $            $

Type of Bail:  OR    DMV Required:  N    Priors:  0    T/S Eligible:  N    Date Posted:

DATE: July 27, 2017    TIME: 8:30am    DEPT: 064    CLERK  Elaine Markulis        CSR#:

JUDGE/COMMISSIONER/TEMP JUDGE :  William Beverly        STIP FILED [ ]    PROSECUTOR:

INTERPRETER:                    CERT/REG#:        LANGUAGE: SPANISH [ ]
FOR: DEF [ ]                    (THIS COURT HAS VERIFIED INTERPRETER'S BADGE AND OATH IS ON FILE)

DEFENDANT IN COURT WITHOUT              COUNSEL, GIVES TRUE NAME AS CHARGED.

( ) INFRACTION: Defendant duly arraigned and informed of the charges against him. Defendant advised that he is entitled to a public trial, within 45 days; to the aid of the Court in producing witnesses in his behalf; to be confronted by and question the witnesses against him; to be admitted to reasonable bail, and to be represented by a lawyer of his own choosing.

( )  MISDEMEANOR: Complaint read and defendant advised that he is entitled to a public trial within  30/45  days; to the aid of the Court in producing witnesses in his behalf; to be confronted with the witnesses against him in the presence of the Court; to a trial by jury; to be admitted to reasonable bail; to be represented by a lawyer of his own choosing or to have counsel provided to him if financially unable to employ counsel.

( ) PURSUANT TO P.C. 17d2: The Court, with the consent of the defendant, determines that the offense is an infraction in which event the case shall proceed as if the defendant has been arraigned on an infraction complaint.

( )  DEFENDANT EXPRESSLY WAIVES HIS RIGHT TO:
( ) Remain Silent      ( ) Hire a lawyer
( ) Court Trial      ( ) Witnesses, subpoena, confrontation
( ) Jury Trial

( ) ATTORNEYS JOIN

( ) DEFENDANT ADVISED OF THE ELEMENTS OF THE CHARGE(S)
( ) The maximum and minimum sentence, and other consequences of plea of guilty or nolo contendere
( ) Advised of vehicle forfeiture pursuant to 14607.6 V.C

( ) AFTER INQUIRY BY THE COURT, THE COURT FINDS THAT:
( ) All waivers were knowingly, intelligently and understandingly made.
( ) The plea is freely and voluntarily made
( ) There is a factual basis for the plea
( ) Plea is accepted by the court

ACCUSED PLEADS    NG    BAIL $

COUNT I  $            COUNT II  $
COUNT III  $            COUNT IV  $
COUNT V  $            COUNT VI  $
COUNT(S)                DISMISSED        T/S

Motion to proceed to trial without posting bail is granted.  Defendant advised that if he/she fails to appear on the date set for trial, he/she may be tried in absentia.

O. R.

As part of your sentence, you are ordered to return to satisfy the following conditions:

( ) Fine payment of $
Due on                    ( ) AM   ( ) PM
( ) Traffic School
( ) Fee due on
( ) Completion due on
( ) Community Service                hours
Due on                    ( ) AM   ( ) PM
( ) Post Bail of $        on
Trial date  1/22/17            Dept  10
Time  1:00pm
( ) Other  Abner 358356/ Ramp
( ) Release issued #
( ) Commitment issued
( ) Remand issued

( ) Bail Refund card issued #

DEFENDANT:
( ) Failed to appear
( ) Hold/Warrant to (re)issue
( ) Bench Warrant ordered.  Bail $
( ) Paid fine in full
( ) Partial payment $        . Balance due $
( ) Requested continuance for fine payment.
Continued to
( ) Submitted C/S completion
( ) Submitted T/S completion
( ) Satisfied all conditions indicated above
Date:            Deputy Clerk

CIVIL ASSESSMENT
( ) Civil Assessments in the amount of $300 levied.
( ) Good Cause Shown: Civil Assessment Set Aside.

Catchings
California
Ex. 28

Created: 07/19/17

(Page 1 of 1)

*Ex. 21R.*

| 1 previous JDOCs in TRIS |
|---|

LOS ANGELES SUPERIOR COURT - METROPOLITAN BRANCH          **Ref: CT002**
1945 SO. HILL STREET LOS ANGELES, CA 90007

**TRIAL DOCKET**

CASE NO.: F94137      LEA: 1942    VLN: PED      DOB: 04/01/52   OLN: D1467938

DEFENDANT: DAYNA CATCHINGS          TRUE NAME: _____

CHARGE(S):                                                    DUE AMT: $ 234.00
1) 561110B          2)                3)                4)

*property blocking sidewalk*
$ 35.00            $              $              $

Type of Bail: OR     DMV Abstractable: Y     Priors: 0          Traffic School Eligible: N

Bail Amount: $    Receipt #:         Date Posted: //      Date Issued: April 12, 2017

DATE: September 22, 2017    TIME: 1:30pm   DEPT: 067    CLERK:  Keith Ryan       CSR#:

**GUS T. MAY**

JUDGE/COMMISSIONER/TEMP JUDGE: ~~Commissioner M. Acevedo~~     STIP FILED [ ]  PROSECUTOR: _____

INTERPRETER: _____   CERT/REG#: _____   LANGUAGE: SPANISH [ ] _____
FOR/ DEF [ ]          (THIS COURT HAS VERIFIED INTERPRETER'S BADGE AND OATH IS ON FILE.)

CAUSE CALLED FOR TRIAL

[ ] DEFENDANT NOT IN COURT
  [ ] The court deems that the defendant  has elected to proceed by way of Trial by Written Declaration in Absentia pursuant to Vehicle Code section 40903.
  [ ] The court reviewed the defendant's notice to appear.
  [ ] Bail forfeited. No further proceedings. Time_____  [ ] Bench warrant ordered. Bail $ _____  [ ] Hold/Warrant to (re) issue
[ ] DEFENDANT IN COURT  [ ] Without counsel.  [ ] Represented by counsel _____
[ ] Defendant duly arraigned and informed of the charges against him.  Defendant advised of the right to counsel of choice or public defender, to a speedy trial by court, confrontation and cross-examination of witnesses, process of the court to subpoena witnesses in own behalf and against self-incrimination.
[ ] PURSUANT TO P.C. 1742: The Court, with the consent of the defendant, determines that the offense is an infraction in which event the case shall proceed as if the defendant had been arraigned on an infraction complaint.
[ ] Defendant personally acknowledges understanding of the above. Defendant pleads not guilty and demands trial forthwith.
[ ] Defendant waives time for trial.
  [ ] Court accepts defendant's change of plea:    [ ] guilty         [ ] nolo contendere
  [ ] People not ready to proceed.  Case dismissed pursuant to 1385 P.C.
  [ ] Dismissed - Officer not present to testify   [ ] Dismissed - Officer has no recollection
[ ] Dismissed-
  [ ] On motion of (COURT) (PEOPLE ) (DEFENDANT) case reset for trial to _____ m. in Dept._____
  [ ] Defendant  [ ] Officer   sworn and examined.    ENTERED ETRS
[ ] Additional witnesses sworn and examined for _____

SEP 25 2017

(50)

[ ] Both parties rest.

[ ] DEFENDANT ADJUDGED GUILTY   [ ] Defendant in Court and arraignment and time for judgement and sentence having been waived and there being no cause why judgement should not now be pronounced, it is adjudged and ordered by the Court  that as a sentence for the violations charged, the defendant shall pay a fine in the sum of $_____ plus penalty assessment as to Count(s) _____          [ ] Cash Bail Applied.

As to remaining Counts _____ ; [ ] Sentence Suspended  [ ] Not Guilty [ ] Dismissed
[ ] DEFENDANT ADJUDGED NOT GUILTY ON ALL COUNTS
  [ ] Bail Ordered Exonerated          [ ] The clerk is ordered to notify the defendant.
[ ] DEFENDANT PERMITTED TO ATTEND 8-HOUR TRAFFIC SCHOOL IF ELIGIBLE PURSUANT TO CRC 4.104
[ ] COMMENTS: _____

_____
_____
_____

Created:09/14/17



65

*Catchings v. California Ex.29*



# Assemblymember Miguel Santiago to visit SBSS

*2017*

### Join us Thursday August 10th for a lunch time visit from
### Miguel Santiago, CA State Assembly District 53

Join us for a discussion on:

- **Healthcare**

- **Affordable Housing**

- **Economic Security**

- **Caregiving**



**LOCATION:**

**St. Barnabas Senior Center**

675 S. Carondelet Street

Los Angeles, CA 90057

Free giveaway for seniors who attend.





MIGUEL SANTIAGO
ASSEMBLYMEMBER, 53RD DISTRICT

LIZETH ZARDENETA
FIELD REPRESENTATIVE

CAPITOL OFFICE
P.O. Box 942849
SACRAMENTO, CA 94249-0053
(916) 319-2053
FAX (916) 319-2153
www.assembly.ca.gov/Santiago

DISTRICT OFFICE
320 WEST 4TH STREET, SUITE 1050
LOS ANGELES, CA 90013
(213) 620-4646
FAX (213) 620-6319
Lizeth.Zardeneta@asm.ca.gov


Exh. 3D

**Maria De Leon**                                                                     *EX. JH*

| | |
|---|---|
| **From:** | dayna catchings <catchings.dayna7@gmail.com> |
| **Sent:** | Wednesday, August 15, 2018 12:05 PM |
| **To:** | Maria De Leon |
| **Subject:** | Fwd: Union Rescue Mission |
| **Attachments:** | image001.png |

Good Afternoon Maria,

Today I will be emailing you the emails between Lizeth and me regarding what happened on November 1st of 2017, last year. I'm about to file that Federal Claim against the City, and I'm going to the class on Friday afternoon.
Obviously, not only the City of Los Angeles was involved and responsible for the damages, but ALSO the State of California as well.

This was her initial response on November 1st, just a referral to a shelter.

This was also the day that Dr. Amy Crowder from Heritage Clinic came to pick me up, put me in a motel until the 3rd on November when I was placed at Hawke's Transitional Living Center.

What I DON'T get or understand is exactly WHY you all at St. Barnabas didn't get me off that street and out of danger LONG BEFORE Heritage Clinic did!!

They did that for me in just a few hours in just ONE DAY.

But you all at St. Barnabas knew for well over A YEAR at that point, but failed, neglected and refused to get me off that street!

WHY??

Both you and Gordon KNEW that I was discriminated against at Hotel Dieu (because the manager REFUSED to let me in even though I had an appointment, called her from the bus stop before I got there, but once she saw me on camera she refused to answer. Just as I told both you and Gordon).

You, Gordon and St. Barnabas ALLOWED me to be discriminated against and had my rights to be violated, and didn't say or do ANYTHING about it!

I should have been off of those streets and out of danger...And you ALL know that!
I could have, should have and would have been spared those ADDITIONAL damages that happened to me on November 1st.

You all knew what had happened to me on Wilshire Blvd.(and did nothing); you all knew about the ticket issue and me almost going to jail for trying to protect my belongings (and did NOTHING to help me off the street then, either).. even though on that particular Friday regarding the ticket, I asked both you and Gordon to help me (around 2pm) and you both left after 4p.m. and didn't say or do ANYTHING further to help me.
As you were leaving you even told me to have a "nice weekend"!! Smh...

1    

As a matter of fact, Gordon outright lied to Sandy Llamas when she questioned him for me about the hotel housing, by telling her that he didn't know or remember ANYTHING about me and Hotel Dieu, yet he gave me his business card to show the manager (instead of going over there with me HIMSELF to make SURE that I got housing), and told me that he called her (just once obviously) and she never returned his call!!

SERIOUSLY??


Oh, well...

Dayna

---------- Forwarded message ---------
From: **Zardeneta, Lizeth** <<u>Lizeth.Zardeneta@asm.ca.gov</u>>
Date: Wed, Nov 1, 2017, 12:06 PM
Subject: Union Rescue Mission
To: <u>catchings.dayna7@gmail.com</u> <<u>catchings.dayna7@gmail.com</u>>


**General Information**
Union Rescue Mission
545 S. San Pedro St.
Los Angeles, CA 90013
(213) 347-6300
<u>thewayhome@urm.org</u>

Women's Contact Center


**Lizeth Zardeneta**

*Field Representative*

Assemblymember Miguel Santiago, 53rd District

320 W. 4th Street, Suite 1050

Los Angeles, CA 90013

(213) 620-4646 | <u>Lizeth.Zardeneta@asm.ca.gov</u>

2
67B

*EX. N*

**Maria De Leon**

| | |
|---|---|
| **From:** | dayna catchings <catchings.dayna7@gmail.com> |
| **Sent:** | Wednesday, August 15, 2018 12:10 PM |
| **To:** | Maria De Leon |
| **Subject:** | Fwd: Photos of what happened on November 1st, 2017 |

Dayna

---------- Forwarded message ---------
From: **dayna catchings** <catchings.dayna7@gmail.com>
Date: Fri, Nov 24, 2017, 1:44 PM
Subject: Re: Photos of what happened on November 1st, 2017
To: <Lizeth.Zardeneta@asm.ca.gov>

Hi Lizeth,

Therefore, in summary...

The State of California, (The State Highway Patrol), the City of Los Angeles, (the LAPD), People Concern (AJ Apodaca), The County of Los Angeles (LAHSA) and Homeless Healthcare (Liz Oh)...ALL CONTRIBUTED TO MY DAMAGES!!

Physical, financial, emotional and psychological damages, to be specific.

And therefore, must ALL BE HELD ACCOUNTABLE for their actions, and lack thereof.

Sincerely,

Dayna

On Nov 24, 2017 1:35 PM, "dayna catchings" <catchings.dayna7@gmail.com> wrote:
  Hi Lizeth,

  Here are a few more photos, but not ALL of them.
  Because of the file limitations that I spoke of.

  Thank you,

  Dayna

On Nov 24, 2017 1:29 PM, "dayna catchings" <catchings.dayna7@gmail.com> wrote:
  Hi Lizeth,

  I just noticed NONE of the photos that were attached to your email, didn't send.

1



Catchings v
California
Ex. 32

Physical, financial, emotional and psychological damages, to be specific.

And therefore, must ALL BE HELD ACCOUNTABLE for their actions, and lack thereof.


Sincerely,

Dayna

On Nov 24, 2017 1:35 PM, "dayna catchings" <catchings.dayna7@gmail.com> wrote:
  Hi Lizeth,

  Here are a few more photos, but not ALL of them.
  Because of the file limitations that I spoke of.


  Thank you,

  Dayna

On Nov 24, 2017 1:29 PM, "dayna catchings" <catchings.dayna7@gmail.com> wrote:
  Hi Lizeth,

  I just noticed NONE of the photos that were attached to your email, didn't send.

  So, here they are...

  Dayna

## Maria De Leon

| | |
|---|---|
| **From:** | dayna catchings <catchings.dayna7@gmail.com> |
| **Sent:** | Wednesday, August 15, 2018 12:11 PM |
| **To:** | Maria De Leon |
| **Subject:** | Fwd: Photos of what happened on November 1st, 2017 |

Dayna

---------- Forwarded message ---------
From: **dayna catchings** <catchings.dayna7@gmail.com>
Date: Fri, Nov 24, 2017, 2:12 PM
Subject: Re: Photos of what happened on November 1st, 2017
To: <Lizeth.Zardeneta@asm.ca.gov>

See Lizeth, I feel like this...

THERE WAS NO HARM in allowing me (and others) to let our ONLY BELONGINGS (that "they" knew about) REMAIN ON THAT SIDE of the fence until the clean-up was done, and the ALLOWED US TO MOVE THEM BACK onto the sidewalk (Per DOJ RULING...), then....NONE OF THIS would have EVER had to happen to me.

YES, it was all done with malicious and with willful intent, and YES, as a result it caused MAJOR DAMAGES and MAJOR PROBLEMS.....for EVERYONE involved, up to and including Mr. Santiago himself!

And of course YES, I'M SORRY to have to say that to Mr. Santiago and to his office, but Lizeth it's TRUE....

FEDERAL LAW has a broken here.

When it ALL WAS AVOIDABLE & PREVENTABLE, just as I had said to Liz Oh by either text message or by e-mail, very recently.

Thank you,

Dayna

On Nov 24, 2017 1:44 PM, "dayna catchings" <catchings.dayna7@gmail.com> wrote:
 Hi Lizeth,

 Therefore, in summary...

 The State of California, (The State Highway Patrol), the City of Los Angeles, (the LAPD), People Concern (AJ Apodaca), The County of Los Angeles (LAHSA) and Homeless Healthcare (Liz Oh)...ALL CONTRIBUTED TO MY DAMAGES!!



1

Catchings v.
California
Ex. 33

**Maria De Leon**

| | |
|---|---|
| **From:** | dayna catchings <catchings.dayna7@gmail.com> |
| **Sent:** | Wednesday, August 15, 2018 12:13 PM |
| **To:** | Maria De Leon |
| **Subject:** | Fwd: Photos of what happened on November 1st, 2017 |

Dayna

---------- Forwarded message ---------
From: **dayna catchings** <catchings.dayna7@gmail.com>
Date: Fri, Nov 24, 2017, 2:25 PM
Subject: Re: Photos of what happened on November 1st, 2017
To: <Lizeth.Zardeneta@asm.ca.gov>

P.S Lizeth,

Oh, YES... WE MUST NOT FORGET about the Criminal Court ruling where I was found NOT GUILTY of
illegal camping ".... on any and all counts"!!
By Judge May.

So, WHY THEN would ALL of those who were listed, even possibly allow this to happen, thereby
VIOLATING A CRIMINAL COURT ORDER as well!!??

OMGOSH....Oh, well.

But, yet it DID happen, didn't it....

Dayna

On Nov 24, 2017 2:12 PM, "dayna catchings" <catchings.dayna7@gmail.com> wrote:
  See Lizeth, I feel like this...

THERE WAS NO HARM in allowing me (and others) to let our ONLY BELONGINGS (that "they" knew
about) REMAIN ON THAT SIDE of the fence until the clean-up was done, and the ALLOWED US TO
MOVE THEM BACK onto the sidewalk (Per DOJ RULING...), then....NONE OF THIS would have EVER
had to happen to me.

YES, it was all done with malicious and with willful intent, and YES, as a result it caused MAJOR
DAMAGES and MAJOR PROBLEMS.....for EVERYONE involved, up to and including Mr. Santiago
himself!

And of course YES, I'M SORRY to have to say that to Mr. Santiago and to his office, but Lizeth it's TRUE....


1



FEDERAL LAW has a broken here.

When it ALL WAS AVOIDABLE & PREVENTABLE, just as I had said to Liz Oh by either text message or by e-mail, very recently.


Thank you,

Dayna

On Nov 24, 2017 1:44 PM, "dayna catchings" <catchings.dayna7@gmail.com> wrote:
 Hi Lizeth,

Therefore, in summary...

The State of California, (The State Highway Patrol), the City of Los Angeles, (the LAPD), People Concern (AJ Apodaca), The County of Los Angeles (LAHSA) and Homeless Healthcare (Liz Oh)...ALL CONTRIBUTED TO MY DAMAGES!!

Physical, financial, emotional and psychological damages, to be specific.

And therefore, must ALL BE HELD ACCOUNTABLE for their actions, and lack thereof.


Sincerely,

Dayna

On Nov 24, 2017 1:35 PM, "dayna catchings" <catchings.dayna7@gmail.com> wrote:
 Hi Lizeth,

Here are a few more photos, but not ALL of them.
Because of the file limitations that I spoke of.


Thank you,

Dayna

On Nov 24, 2017 1:29 PM, "dayna catchings" <catchings.dayna7@gmail.com> wrote:
 Hi Lizeth,

I just noticed NONE of the photos that were attached to your email, didn't send.

So, here they are...

Dayna

## Maria De Leon

| | |
|---|---|
| **From:** | dayna catchings <catchings.dayna7@gmail.com> |
| **Sent:** | Wednesday, August 15, 2018 12:14 PM |
| **To:** | Maria De Leon |
| **Subject:** | Fwd: Photos of what happened on November 1st, 2017 |

Dayna

---------- Forwarded message ---------
From: **dayna catchings** <catchings.dayna7@gmail.com>
Date: Sat, Dec 2, 2017, 10:08 AM
Subject: Re: Photos of what happened on November 1st, 2017
To: <Lizeth.Zardeneta@asm.ca.gov>

Hi Lizeth,

I was REALLY looking forward to hearing from you this past week.

I only have until February to file the Federal Law Suit suggested to me by the City Attorneys office, as their response to NOT paying me for that Wilshire Blvd. incident where I was AGAIN ILLEGALLY REMOVED FROM THE SIDEWALK by Sgt. Miller on November 17th, 2016 exactly one year ago when now in December of 2017, I'm NOW living in a shelter without over 90 percent of my original belongings.  WHY??
They AWARDED ME $1,670.00 in damages... remember that??
STILL haven't gotten paid, and now the City of Los Angeles wants me to have to step into a FEDERAL COURT room, in order to collect?!
SERIOUSLY??

Okay, then. Since that's what THEY want me to do...

Well, guess what... that's EXACTLY what I'm going to do between now and the end of January.

That was count ONE.

Count TWO happened under the 110 bridge back in April by officers Solario and Abner (who actually wrote the ticket);

And, NOW Count THREE by what happened on November the 1st...

All of this is TOTALLY unbelievable and very MUCH unacceptable, because it ALL could have been avoided!!

Yes, THIS is what I'm going to be filing as "cruel and unusual punishment" of ME...a black transgendered, and disabled homeless senior citizen... that ALL CONCERNED had promised to look out for my well being and health (All, but obviously NOT the LAPD).



Catchings v.
California
EX-35

1

This is going to make EXCELLENT copy, because I cross so MANY cultural lines and categories.


Sincerely,


Dayna


On Nov 24, 2017 2:25 PM, "dayna catchings" <catchings.dayna7@gmail.com> wrote:
   P.S Lizeth,

   Oh, YES... WE MUST NOT FORGET about the Criminal Court ruling where I was found NOT GUILTY of
   illegal camping ".... on any and all counts"!!
   By Judge May.

   So, WHY THEN would ALL of those who were listed, even possibly allow this to happen, thereby
   VIOLATING A CRIMINAL COURT ORDER as well!!??

   OMGOSH....Oh, well.

   But, yet it DID happen, didn't it....



   Dayna

On Nov 24, 2017 2:12 PM, "dayna catchings" <catchings.dayna7@gmail.com> wrote:
   See Lizeth, I feel like this...

   THERE WAS NO HARM in allowing me (and others) to let our ONLY BELONGINGS (that "they" knew
   about) REMAIN ON THAT SIDE of the fence until the clean-up was done, and the ALLOWED US TO
   MOVE THEM BACK onto the sidewalk (Per DOJ RULING...), then....NONE OF THIS would have EVER
   had to happen to me.

   YES, it was all done with malicious and with willful intent, and YES, as a result it caused MAJOR
   DAMAGES and MAJOR PROBLEMS.....for EVERYONE involved, up to and including Mr. Santiago
   himself!

   And of course YES, I'M SORRY to have to say that to Mr. Santiago and to his office, but Lizeth it's TRUE....

   FEDERAL LAW has a broken here.

   When it ALL WAS AVOIDABLE & PREVENTABLE, just as I had said to Liz Oh by either text message or
   by e-mail, very recently.


   Thank you,

## Maria De Leon

| | |
|---|---|
| **From:** | dayna catchings <catchings.dayna7@gmail.com> |
| **Sent:** | Wednesday, August 15, 2018 12:15 PM |
| **To:** | Maria De Leon |
| **Subject:** | Fwd: Photos of what happened on November 1st, 2017 |
| **Attachments:** | 20171101_111353.jpg; 20171202_152820.jpg; 20171202_152839.jpg |

Dayna

---------- Forwarded message ---------
From: **dayna catchings** <catchings.dayna7@gmail.com>
Date: Sat, Dec 2, 2017, 3:33 PM
Subject: Re: Photos of what happened on November 1st, 2017
To: <Lizeth.Zardeneta@asm.ca.gov>

Hi Lizeth,

(By the way, if you're wondering WHY I'm doing all of this e-mailing over the weekend, it's because I DO
REALIZE that if I were to do this during normal business hours, you would NEVER get anything else done.
You would be CONSTANTLY reading e-mails.
But, by me doing it THIS way, you can take your time and not be interrupted.)

Now, on to the matter at hand.

YOU ALL (Including Mr. Santiago) NEEDS to find out WHO is in that black car at the top left of a photo that
in about to send you.

THAT or THOSE individuals were the one's who were obviously, evidently and apparently giving THE
ORDERS and overseeing the whole, ENTIRE operation and procedure.

When THIS photo is enlarged, you can see ALL KINDS of detail... like the two female officers, standing to the
left.

I'm also attaching a front and back copy of THEIR business card as well.

They point to yet ANOTHER culprit in this whole mess that I had forgotten to add this agency to that list.

And, that would be...

"THE SANITATION DEPARTMENT"

THEY are the ones who did the actual disposing of my belongings, PLUS they had let that wooden structure
remain UP AND INTACT, but would not let me finish getting my belongings??
You can plainly see that MY tent is flattened!!

1



And, as you can also plainly see, they are pointing DIRECTLY TO the Sanitation Department!!

How about THAT...

It's part of text message and e-mail material that I'm going to have pulled off my phone and printed.

Dayna

On Dec 2, 2017 10:08 AM, "dayna catchings" <catchings.dayna7@gmail.com> wrote:
Hi Lizeth,

I was REALLY looking forward to hearing from you this past week.

I only have until February to file the Federal Law Suit suggested to me by the City Attorneys office, as their response to NOT paying me for that Wilshire Blvd. incident where I was AGAIN ILLEGALLY REMOVED FROM THE SIDEWALK by Sgt. Miller on November 17th, 2016 exactly one year ago when now in December of 2017, I'm NOW living in a shelter without over 90 percent of my original belongings. WHY?? They AWARDED ME $1,670.00 in damages... remember that??
STILL haven't gotten paid, and now the City of Los Angeles wants me to have to step into a FEDERAL COURT room, in order to collect?!
SERIOUSLY??

Okay, then. Since that's what THEY want me to do...

Well, guess what... that's EXACTLY what I'm going to do between now and the end of January.

That was count ONE.

Count TWO happened under the 110 bridge back in April by officers Solario and Abner (who actually wrote the ticket);

And, NOW Count THREE by what happened on November the 1st...

All of this is TOTALLY unbelievable and very MUCH unacceptable, because it ALL could have been avoided!!

Yes, THIS is what I'm going to be filing as "cruel and unusual punishment" of ME...a black transgendered, and disabled homeless senior citizen... that ALL CONCERNED had promised to look out for my well being and health (All, but obviously NOT the LAPD).

This is going to make EXCELLENT copy, because I cross so MANY cultural lines and categories.

Sincerely,

72B

Dayna

On Nov 24, 2017 2:25 PM, "dayna catchings" <catchings.dayna7@gmail.com> wrote:
P.S Lizeth,

Oh, YES... WE MUST NOT FORGET about the Criminal Court ruling where I was found NOT GUILTY of illegal camping "…. on any and all counts"!!
By Judge May.

So, WHY THEN would ALL of those who were listed, even possibly allow this to happen, thereby VIOLATING A CRIMINAL COURT ORDER as well!!??

OMGOSH....Oh, well.

But, yet it DID happen, didn't it....

Dayna

On Nov 24, 2017 2:12 PM, "dayna catchings" <catchings.dayna7@gmail.com> wrote:
See Lizeth, I feel like this...

THERE WAS NO HARM in allowing me (and others) to let our ONLY BELONGINGS (that "they" knew about) REMAIN ON THAT SIDE of the fence until the clean-up was done, and the ALLOWED US TO MOVE THEM BACK onto the sidewalk (Per DOJ RULING...), then....NONE OF THIS would have EVER had to happen to me.

YES, it was all done with malicious and with willful intent, and YES, as a result it caused MAJOR DAMAGES and MAJOR PROBLEMS.....for EVERYONE involved, up to and including Mr. Santiago himself!

And of course YES, I'M SORRY to have to say that to Mr. Santiago and to his office, but Lizeth it's TRUE....

FEDERAL LAW has a broken here.

When it ALL WAS AVOIDABLE & PREVENTABLE, just as I had said to Liz Oh by either text message or by e-mail, very recently.

Thank you,

Dayna

On Nov 24, 2017 1:44 PM, "dayna catchings" <catchings.dayna7@gmail.com> wrote:
Hi Lizeth,

Therefore, in summary...

3    73A



The State of California, (The State Highway Patrol), the City of Los Angeles, (the LAPD), People Concern (AJ Apodaca), The County of Los Angeles (LAHSA) and Homeless Healthcare (Liz Oh)...ALL CONTRIBUTED TO MY DAMAGES!!

Physical, financial, emotional and psychological damages, to be specific.

And therefore, must ALL BE HELD ACCOUNTABLE for their actions, and lack thereof.


Sincerely,

Dayna

On Nov 24, 2017 1:35 PM, "dayna catchings" <catchings.dayna7@gmail.com> wrote:
  Hi Lizeth,

Here are a few more photos, but not ALL of them.
Because of the file limitations that I spoke of.


Thank you,

Dayna

On Nov 24, 2017 1:29 PM, "dayna catchings" <catchings.dayna7@gmail.com> wrote:
  Hi Lizeth,

I just noticed NONE of the photos that were attached to your email, didn't send.

So, here they are...

Dayna

73R

**Maria De Leon**

| | |
|---|---|
| **From:** | dayna catchings <catchings.dayna7@gmail.com> |
| **Sent:** | Wednesday, August 15, 2018 12:16 PM |
| **To:** | Maria De Leon |
| **Subject:** | Fwd: Incidents that happened on November 1st, 2017. |

Dayna

---------- Forwarded message ---------
From: **dayna catchings** <catchings.dayna7@gmail.com>
Date: Fri, Nov 24, 2017, 1:22 PM
Subject: Re: Incidents that happened on November 1st, 2017.
To: Zardeneta, Lizeth <Lizeth.Zardeneta@asm.ca.gov>

Good Morning, Lizeth...

Attached is just one of the MANY photos that I took that day.

This attached photo clearly proves and shows exactly HOW the State of California became involved into this situation, with the obvious and apparent help of not ONLY the LAPD, but Homeless Healthcare agency that Liz Oh is connected; but also People Concern that AJ Apodaca works for as well; PLUS the City of Los Angeles, regarding the actions of Gilbert Jimenez.

Yes, I do know that you gave me the information on what to do about LAHSA, and I went yesterday to the Board of Supervisors and picked up the complaint form, I then while I was there, I also spoke by phone with Lydia at Mr. Mark Riddley-Thomas's office, letting her know that I had a PACKET to drop off, not just a one page complaint. She responded okay.

I STILL have not heard back from Ricardo at Mr Cedillo's office, either.

I missed by accident my OWN Court day appearance by showing up on Friday the 17th INSTEAD OF Thursday the 16th!

But, the GOOD NEWS is, the Judge WILL allow me to file my Motion for Reconsideration for hearing on December 6th.

GUESS what I'm going to tell her and show her, as well, as to EXACTLY WHY I wasn't there and because of WHO.

In addition to following your advice, I also think and feel that I will also need to update my complaint against the LAPD and my tent, YET ONCE AGAIN, for the THIRD time!!

Enough is enough!!





1

As I said to you on the phone, TOO MANY people knew besides just YOU, as to what was going on, and why and how did ANYTHING affect me?!.

So, therefore, instead of just getting the run around with OTHER people (obviously, not counting you...), I feel that it would be MORE in my best interest to just file the FEDERAL lawsuit against the the City of Los Angeles, in their September letter to me regarding their decision regarding the Wilshire boulevard incident that PUT me into this position without just cause, because it was ruled in my FAVOR that I was braking NO Laws by having my tent up between 6 a.m. and 9 p.m., rain or shine EVERY DAY....
I was adjudged NOT GUILTY ON ALL COUNTS, (The documented proof you already have PROVES that you); then PLEASE explain what just happened!!

The ONLY recourse for me (NOW), is to file that Federal lawsuit by February, that encompasses everything and EVERYONE who was involved, just like just like City Attorneys office recommends the I do.
Get this over with, and get my money, and get one with it . just as Simple as that...

BUT... IS THAT WHAT THEY REALLY WANT ME TO DO???

IJS...


HERE are the photo of that day I mentioned... all date and timed stamped.


Looking forward to hearing form you, and again please apologize to Mr. Santiago for any problems and inconvenience that all of this might just be causeing him but..

I'M not involving the State of California, the LAPD and the Cut of Los Angeles are EXACTLY the one's who are...
THEY are!!

NOT because ANYTHING that I'VE done wrong...I emptied my tent early that morning and put it on the STATE side of the fence, all in order. Then the highway patrol shows up and ORDERS me to put it BACK on the sidewalk (on the CITY side of the fence), or the STATE was going to take it!!

Therefore, I'm feeling that I LOST almost ALL of my personal belongings because of the ACTIONS of the State of California (through) The State Highway Patrol, by MAKING me put my belongings in danger and in jeopardy, and that Officer KNEW THAT, but he did not CARE!!

The bottom photo is of ALL of my belongings except a few things that were left inside... I'll send you the additional photos next, because this file would be too large to send by my phone.


Thanks again, Lizeth for not only your help, but Mr. Santiago's help as well.


Sincerely,


Dayna

On Nov 1, 2017 12:06 PM, "Zardeneta, Lizeth" <Lizeth.Zardeneta@asm.ca.gov> wrote:

**General Information**
Union Rescue Mission
545 S. San Pedro St.
Los Angeles, CA 90013
(213) 347-6300
thewayhome@urm.org

Women's Contact Center



**Lizeth Zardeneta**

*Field Representative*

Assemblymember Miguel Santiago, 53rd District

320 W. 4th Street, Suite 1050

Los Angeles, CA 90013

(213) 620-4646 | Lizeth.Zardeneta@asm.ca.gov

3



**Maria De Leon**

| | |
|---|---|
| **From:** | dayna catchings <catchings.dayna7@gmail.com> |
| **Sent:** | Wednesday, August 15, 2018 12:14 PM |
| **To:** | Maria De Leon |
| **Subject:** | Fwd: Photos of what happened on November 1st, 2017 |

Dayna

---------- Forwarded message ---------
From: **dayna catchings** <<u>catchings.dayna7@gmail.com</u>>
Date: Sat, Dec 2, 2017, 10:08 AM
Subject: Re: Photos of what happened on November 1st, 2017
To: <<u>Lizeth.Zardeneta@asm.ca.gov</u>>

Hi Lizeth,

I was REALLY looking forward to hearing from you this past week.

I only have until February to file the Federal Law Suit suggested to me by the City Attorneys office, as their response to NOT paying me for that Wilshire Blvd. incident where I was AGAIN ILLEGALLY REMOVED FROM THE SIDEWALK by Sgt. Miller on November 17th, 2016 exactly one year ago when now in December of 2017, I'm NOW living in a shelter without over 90 percent of my original belongings.  WHY??
They AWARDED ME $1,670.00 in damages... remember that??
STILL haven't gotten paid, and now the City of Los Angeles wants me to have to step into a FEDERAL COURT room, in order to collect?!
SERIOUSLY??

Okay, then. Since that's what THEY want me to do...

Well, guess what... that's EXACTLY what I'm going to do between now and the end of January.

That was count ONE.

Count TWO happened under the 110 bridge back in April by officers Solario and Abner (who actually wrote the ticket);

And, NOW Count THREE by what happened on November the 1st...

All of this is TOTALLY unbelievable and very MUCH unacceptable, because it ALL could have been avoided!!

Yes, THIS is what I'm going to be filing as "cruel and unusual punishment" of ME...a black transgendered, and disabled homeless senior citizen... that ALL CONCERNED had promised to look out for my well being and health (All, but obviously NOT the LAPD).

1

*76 A*

*CAtchings v.*
*CAliforniA*
*Ex-AD*

This is going to make EXCELLENT copy, because I cross so MANY cultural lines and categories.

Sincerely,

Dayna

On Nov 24, 2017 2:25 PM, "dayna catchings" <catchings.dayna7@gmail.com> wrote:
 P.S Lizeth,

Oh, YES... WE MUST NOT FORGET about the Criminal Court ruling where I was found NOT GUILTY of illegal camping ".... on any and all counts"!!
By Judge May.

So, WHY THEN would ALL of those who were listed, even possibly allow this to happen, thereby VIOLATING A CRIMINAL COURT ORDER as well!!??

OMGOSH....Oh, well.

But, yet it DID happen, didn't it....

Dayna

On Nov 24, 2017 2:12 PM, "dayna catchings" <catchings.dayna7@gmail.com> wrote:
 See Lizeth, I feel like this...

THERE WAS NO HARM in allowing me (and others) to let our ONLY BELONGINGS (that "they" knew about) REMAIN ON THAT SIDE of the fence until the clean-up was done, and the ALLOWED US TO MOVE THEM BACK onto the sidewalk (Per DOJ RULING...), then....NONE OF THIS would have EVER had to happen to me.

YES, it was all done with malicious and with willful intent, and YES, as a result it caused MAJOR DAMAGES and MAJOR PROBLEMS.....for EVERYONE involved, up to and including Mr. Santiago himself!

And of course YES, I'M SORRY to have to say that to Mr. Santiago and to his office, but Lizeth it's TRUE....

FEDERAL LAW has a broken here.

When it ALL WAS AVOIDABLE & PREVENTABLE, just as I had said to Liz Oh by either text message or by e-mail, very recently.

Thank you,

Dayna

On Nov 24, 2017 1:44 PM, "dayna catchings" <catchings.dayna7@gmail.com> wrote:
  Hi Lizeth,

Therefore, in summary...

The State of California, (The State Highway Patrol), the City of Los Angeles, (the LAPD), People Concern (AJ Apodaca), The County of Los Angeles (LAHSA) and Homeless Healthcare (Liz Oh)...ALL CONTRIBUTED TO MY DAMAGES!!

Physical, financial, emotional and psychological damages, to be specific.

And therefore, must ALL BE HELD ACCOUNTABLE for their actions, and lack thereof.

Sincerely,

Dayna

On Nov 24, 2017 1:35 PM, "dayna catchings" <catchings.dayna7@gmail.com> wrote:
  Hi Lizeth,

Here are a few more photos, but not ALL of them.
Because of the file limitations that I spoke of.

Thank you,

Dayna

On Nov 24, 2017 1:29 PM, "dayna catchings" <catchings.dayna7@gmail.com> wrote:
  Hi Lizeth,

I just noticed NONE of the photos that were attached to your email, didn't send.

So, here they are...

Dayna



3

Catchings v.
California
Ex.41

**Maria De Leon**

| | |
|---|---|
| **From:** | dayna catchings <catchings.dayna7@gmail.com> |
| **Sent:** | Wednesday, August 15, 2018 12:15 PM |
| **To:** | Maria De Leon |
| **Subject:** | Fwd: Photos of what happened on November 1st, 2017 |
| **Attachments:** | 20171202_153949.jpg; 20171202_154017.jpg |

Dayna

---------- Forwarded message ---------
From: **dayna catchings** <catchings.dayna7@gmail.com>
Date: Sat, Dec 2, 2017, 3:51 PM
Subject: Re: Photos of what happened on November 1st, 2017
To: <Lizeth.Zardeneta@asm.ca.gov>

OHHH, yes Lizeth...

Check out THESE TWO business/ contact cards, from BOTH the Sanitation Department  (Bobby Benson) and LAHSA Supervisor (Kimberly Lewis).

BOTH dated on 4/17/17, when they both HELPED ME to remain DUE TO my age and health problems.

But, yet on November 1st, NEITHER REPRESENTATIVE should up to come to my assistance? SERIOUSLY??

WHY exactly was THAT?!!

Sounds like shades of conspiracy to me.

(Things that make you go....hmmm)

Dayna

On Dec 2, 2017 3:33 PM, "dayna catchings" <catchings.dayna7@gmail.com> wrote:
 Hi Lizeth,

(By the way, if you're wondering WHY I'm doing all of this e-mailing over the weekend, it's because I DO REALIZE that if I were to do this during normal business hours, you would NEVER get anything else done. You would be CONSTANTLY reading e-mails.
But, by me doing it THIS way, you can take your time and not be interrupted.)

1



Now, on to the matter at hand.

YOU ALL (Including Mr. Santiago) NEEDS to find out WHO is in that black car at the top left of a photo that in about to send you.

THAT or THOSE individuals were the one's who were obviously, evidently and apparently giving THE ORDERS and overseeing the whole, ENTIRE operation and procedure.

When THIS photo is enlarged, you can see ALL KINDS of detail... like the two female officers, standing to the left.

I'm also attaching a front and back copy of THEIR business card as well.

They point to yet ANOTHER culprit in this whole mess that I had forgotten to add this agency to that list.

And, that would be...

"THE SANITATION DEPARTMENT"

THEY are the ones who did the actual disposing of my belongings, PLUS they had let that wooden structure remain UP AND INTACT, but would not let me finish getting my belongings??
You can plainly see that MY tent is flattened!!

And, as you can also plainly see, they are pointing DIRECTLY TO the Sanitation Department!!

How about THAT...

It's part of text message and e-mail  material that I'm going to have pulled off my phone and printed.



Dayna

On Dec 2, 2017 10:08 AM, "dayna catchings" <catchings.dayna7@gmail.com> wrote:
 Hi Lizeth,

I was REALLY looking forward to hearing from you this past week.

I only have until February to file the Federal Law Suit suggested to me by the City Attorneys office, as their response to NOT paying me for that Wilshire Blvd. incident where I was AGAIN ILLEGALLY REMOVED FROM THE SIDEWALK by Sgt. Miller on November 17th, 2016 exactly one year ago when now in December of 2017, I'm NOW living in a shelter without over 90 percent of my original belongings.  WHY??
They AWARDED ME $1,670.00 in damages... remember that??
STILL haven't gotten paid, and now the City of Los Angeles wants me to have to step into a FEDERAL COURT ROOM, in order to collect?!
SERIOUSLY??

Okay, then. Since that's what THEY want me to do...

Well, guess what... that's EXACTLY what I'm going to do between now and the end of January.

2

So, here they are...

Dayna





**Maria De Leon**

| | |
|---|---|
| **From:** | dayna catchings <catchings.dayna7@gmail.com> |
| **Sent:** | Wednesday, August 15, 2018 12:18 PM |
| **To:** | Maria De Leon |
| **Subject:** | Fwd: The matter at hand. |

Dayna

---------- Forwarded message ---------
From: **dayna catchings** <catchings.dayna7@gmail.com>
Date: Thu, Dec 21, 2017, 6:57 AM
Subject: Re: The matter at hand.
To: Zardeneta, Lizeth <Lizeth.Zardeneta@asm.ca.gov>

Hi Lizeth,

I know that you received my message regarding our failed scheduled telephone conference last Friday, because you were in a meeting.

But I haven't heard ANYTHING back from you at all, and today is Thursday.

What's up?

Dayna

**Maria De Leon**

| | |
|---|---|
| **From:** | dayna catchings <catchings.dayna7@gmail.com> |
| **Sent:** | Wednesday, August 15, 2018 12:18 PM |
| **To:** | Maria De Leon |
| **Subject:** | Fwd: Trash and debris removal. |
| **Attachments:** | 20170719_122009.jpg; 20170719_121957.jpg; 20170719_121952.jpg |

Dayna

---------- Forwarded message ---------
From: **dayna catchings** <catchings.dayna7@gmail.com>
Date: Sat, Aug 26, 2017, 3:56 PM
Subject: Fwd: Trash and debris removal.
To: <assembly.ca.gov/Santiago@gmail.com>

Good afternoon Mr. Santiago

It was such a PLEASURE to meet you at St. Barnabus on the 10th of August. I did give Lizeth all of the information regarding my present living situation as you had suggested that I do, but as of this writing I have not heard back from her or anyone else from your office as she had promised me that I would.

The e-mail information that I'm forwarding to you is regarding the clean-up due to take place on Monday.

As you can see, I was promised by BOTH the Sanitation Department through Mr. Bobby Benson, and by LAHSA that due to my medical conditions that I would NOT have to move my tent in order for them to clean and sanitize the area. As you can see, the area around MY tent is clean.
The problem is that they (the City of Los Angeles) obviously cannot be trusted to keep their word to me, which is why I'm informing you myself of this serious breakdown in communication.

I don't want nor am I expecting ANY problems from either the LAPD, or the Sanitation Department on Monday.

I am OBVIOUSLY in no position to move my entire tent with its contents, nor based on our agreement, should I have to.

Your help and attention to this matter is GREATLY appreciated and needed by me.

If we as Citizens cannot TRUST what we are told, then everyone's rights are violated.

Looking forward to hearing back from you.

Thank you,





Dayna
---------- Forwarded message ----------
From: "dayna catchings" <catchings.dayna7@gmail.com>
Date: Jul 19, 2017 12:52 PM
Subject: Trash and debris removal.
To: <Bobby.Benson@lacity.org>
Cc:

Hello, Mr. Benson,

Attached you will find photos of the huge AMOUNT of trash and debris that really NEEDS TO be removed as quickly and as soon as possible.
As many times as the City of Los Angeles has driven by this stretch of road, then WHY hasn't any clean up efforts been done that protect the homeless from disease and from spreading diseases as well??

On another subject, both yourself and LAHSA guaranteed me that after your last visit, that my tent would no longer be an issue.
But it WAS an issue on 4/25/17 when Officer Victor Gutierrez accompanied the next clean up crew. He knew NOTHING about our prior agreement, which he SHOULD have known about, but didn't. Therefore, I had to disassemble my tent AGAIN and move everything out of it and then back into it again!!
In the hot heat of the mid day sun, DEFINITELY a hazard to my chronic health problems that is already known by both yourself and LAHSA.
But, neither yourself or LAHSA or even officer Christian Guerrero of the homeless outreach proactive engagement unit.
REALLY??

Speaking of LAHSA, I have not heard anything back from either Ms. Lewis since April 25th, or her co worker named Darryl since May 22nd, not only about the trash issue, but also about my housing needs issues.
The job and task at hand of helping me to find housing, was on themselves and through no fault of my own that it didn't happen from then until now.
I do have all of the text and photographic information and evidence to back up EVERYTHING that I'm saying to you.

MANY PROMISES were made to me on the day of our meeting, yet NOT EVEN ONE of them has been kept to me, from that date of 4/17/17 until this date of 7/19/17.

This all is TOTALLY unacceptable!!

Please let me know when these issues can be quickly resolved.

The photos are all date and time stamped, PROVING that the problem and health hazards are all ACROSS the street and in close proximity to myself, and NOT from the encampment itself.
Which is being well kept and orderly.

Awaiting your response...


Sincerely,


Ms. Dayna R. Catchings

Dayna

On Nov 24, 2017 1:44 PM, "dayna catchings" <catchings.dayna7@gmail.com> wrote:
  Hi Lizeth,

Therefore, in summary...

The State of California, (The State Highway Patrol), the City of Los Angeles, (the LAPD), People Concern (AJ Apodaca), The County of Los Angeles (LAHSA) and Homeless Healthcare (Liz Oh)...ALL CONTRIBUTED TO MY DAMAGES!!

Physical, financial, emotional and psychological damages, to be specific.

And therefore, must ALL BE HELD ACCOUNTABLE for their actions, and lack thereof.


Sincerely,

Dayna

On Nov 24, 2017 1:35 PM, "dayna catchings" <catchings.dayna7@gmail.com> wrote:
  Hi Lizeth,

Here are a few more photos, but not ALL of them.
Because of the file limitations that I spoke of.


Thank you,

Dayna

On Nov 24, 2017 1:29 PM, "dayna catchings" <catchings.dayna7@gmail.com> wrote:
  Hi Lizeth,

I just noticed NONE of the photos that were attached to your email, didn't send.

So, here they are...

Dayna

82



Catchings v.
California
Ex 177

And, as you can also plainly see, they are pointing DIRECTLY TO the Sanitation Department!!

How about THAT...

It's part of text message and e-mail material that I'm going to have pulled off my phone and printed.


Dayna

On Dec 2, 2017 10:08 AM, "dayna catchings" <catchings.dayna7@gmail.com> wrote:
Hi Lizeth,

I was REALLY looking forward to hearing from you this past week.

I only have until February to file the Federal Law Suit suggested to me by the City Attorneys office, as their response to NOT paying me for that Wilshire Blvd. incident where I was AGAIN ILLEGALLY REMOVED FROM THE SIDEWALK by Sgt. Miller on November 17th, 2016 exactly one year ago when now in December of 2017, I'm NOW living in a shelter without over 90 percent of my original belongings.  WHY?? They AWARDED ME $1,670.00 in damages... remember that??
STILL haven't gotten paid, and now the City of Los Angeles wants me to have to step into a FEDERAL COURT room, in order to collect?!
SERIOUSLY??

Okay, then. Since that's what THEY want me to do...

Well, guess what... that's EXACTLY what I'm going to do between now and the end of January.

That was count ONE.

Count TWO happened under the 110 bridge back in April by officers Solario and Abner (who actually wrote the ticket);

And, NOW Count THREE by what happened on November the 1st...

All of this is TOTALLY unbelievable and very MUCH unacceptable, because it ALL could have been avoided!!

Yes, THIS is what I'm going to be filing as "cruel and unusual punishment" of ME...a black transgendered, and disabled homeless senior citizen... that ALL CONCERNED had promised to look out for my well being and health (All, but obviously NOT the LAPD).

This is going to make EXCELLENT copy, because I cross so MANY cultural lines and categories.


Sincerely,



2

**Maria De Leon**

| | |
|---|---|
| **From:** | dayna catchings <catchings.dayna7@gmail.com> |
| **Sent:** | Wednesday, August 15, 2018 12:15 PM |
| **To:** | Maria De Leon |
| **Subject:** | Fwd: Photos of what happened on November 1st, 2017 |
| **Attachments:** | 20171101_111353.jpg; 20171202_152820.jpg; 20171202_152839.jpg |

Dayna

---------- Forwarded message ---------
From: **dayna catchings** <catchings.dayna7@gmail.com>
Date: Sat, Dec 2, 2017, 3:33 PM
Subject: Re: Photos of what happened on November 1st, 2017
To: <Lizeth.Zardeneta@asm.ca.gov>

Hi Lizeth,

(By the way, if you're wondering WHY I'm doing all of this e-mailing over the weekend, it's because I DO REALIZE that if I were to do this during normal business hours, you would NEVER get anything else done. You would be CONSTANTLY reading e-mails.
But, by me doing it THIS way, you can take your time and not be interrupted.)

Now, on to the matter at hand.

YOU ALL (Including Mr. Santiago) NEEDS to find out WHO is in that black car at the top left of a photo that in about to send you.

THAT or THOSE individuals were the one's who were obviously, evidently and apparently giving THE ORDERS and overseeing the whole, ENTIRE operation and procedure.

When THIS photo is enlarged, you can see ALL KINDS of detail... like the two female officers, standing to the left.

I'm also attaching a front and back copy of THEIR business card as well.

They point to yet ANOTHER culprit in this whole mess that I had forgotten to add this agency to that list.

And, that would be...

"THE SANITATION DEPARTMENT"

THEY are the ones who did the actual disposing of my belongings, PLUS they had let that wooden structure remain UP AND INTACT, but would not let me finish getting my belongings??
You can plainly see that MY tent is flattened!!

1

$84 R

**Maria De Leon**

| | |
|---|---|
| **From:** | dayna catchings <catchings.dayna7@gmail.com> |
| **Sent:** | Wednesday, August 15, 2018 12:18 PM |
| **To:** | Maria De Leon |
| **Subject:** | Fwd: The matter at hand. |

Dayna

---------- Forwarded message ---------
From: **dayna catchings** <catchings.dayna7@gmail.com>
Date: Thu, Dec 21, 2017, 6:57 AM
Subject: Re: The matter at hand.
To: Zardeneta, Lizeth <Lizeth.Zardeneta@asm.ca.gov>

 Hi Lizeth,

I know that you received my message regarding our failed scheduled telephone conference last Friday, because you were in a meeting.

But I haven't heard ANYTHING back from you at all, and today is Thursday.

What's up?

Dayna

1

**Maria De Leon**

| | |
|---|---|
| **From:** | dayna catchings <catchings.dayna7@gmail.com> |
| **Sent:** | Wednesday, August 15, 2018 12:16 PM |
| **To:** | Maria De Leon |
| **Subject:** | Fwd: Incidents that happened on November 1st, 2017. |

Dayna

---------- Forwarded message ---------
From: **dayna catchings** <catchings.dayna7@gmail.com>
Date: Fri, Nov 24, 2017, 1:22 PM
Subject: Re: Incidents that happened on November 1st, 2017.
To: Zardeneta, Lizeth <Lizeth.Zardeneta@asm.ca.gov>

Good Morning, Lizeth...

Attached is just one of the MANY photos that I took that day.

This attached photo clearly proves and shows exactly HOW the State of California became involved into this situation, with the obvious and apparent help of not ONLY the LAPD, but Homeless Healthcare agency that Liz Oh is connected; but also People Concern that AJ Apodaca works for as well; PLUS the City of Los Angeles, regarding the actions of Gilbert Jimenez.

Yes, I do know that you gave me the information on what to do about LAHSA, and I went yesterday to the Board of Supervisors and picked up the complaint form, I then while I was there, I also spoke by phone with Lydia at Mr. Mark Riddley-Thomas's office, letting her know that I had a PACKET to drop off, not just a one page complaint. She responded okay.

I STILL have not heard back from Ricardo at Mr Cedillo's office, either.

I missed by accident my OWN Court day appearance by showing up on Friday the 17th INSTEAD OF Thursday the 16th!

But, the GOOD NEWS is, the Judge WILL allow me to file my Motion for Reconsideration for hearing on December 6th.

GUESS what I'm going to tell her and show her, as well, as to EXACTLY WHY I wasn't there and because of WHO.

In addition to following your advice, I also think and feel that I will also need to update my complaint against the LAPD and my tent, YET ONCE AGAIN, for the THIRD time!!

Enough is enough!!

Catchings v.
California
Ex-50



1

As I said to you on the phone, TOO MANY people knew besides just YOU, as to what was going on, and why and how did ANYTHING affect me?!.

So, therefore, instead of just getting the run around with OTHER people (obviously, not counting you...), I feel that it would be MORE in my best interest to just file the FEDERAL lawsuit against the the City of Los Angeles, in their September letter to me regarding their decision regarding the Wilshire boulevard incident that PUT me into this position without just cause, because it was ruled in my FAVOR that I was  braking NO Laws by having my tent up between 6 a.m. and 9 p.m., rain or shine EVERY DAY....
I was adjudged NOT GUILTY ON ALL COUNTS, (The documented proof you already have PROVES that you); then PLEASE explain what just happened!!

The ONLY recourse for me (NOW), is to file that Federal lawsuit by February,  that encompasses  everything and EVERYONE who was involved, just like just like City Attorneys office recommends the I do.
Get this over with, and get my money, and get one with it .  just as Simple as that...

BUT... IS THAT WHAT THEY REALLY WANT ME TO DO???

IJS...


HERE are the photo  of that day I mentioned... all date and timed stamped.


Looking forward to hearing form you, and again please apologize to Mr. Santiago for any problems and inconvenience that all of this might just be causeing him but..

I'M not involving the State of California, the LAPD and the Cut of Los Angeles are EXACTLY the one's who are...
THEY are!!

NOT because ANYTHING that I'VE done wrong...I emptied my tent early that morning and put it on the STATE side of the fence, all in order. Then the highway patrol shows up and ORDERS me to put it BACK on the sidewalk (on the CITY side of the fence), or the STATE was going to take it!!

Therefore, I'm feeling that I LOST almost ALL of my personal belongings because of the ACTIONS of the State of California (through) The State Highway Patrol, by MAKING me put my belongings in danger and in jeopardy, and that Officer KNEW THAT, but he did not CARE!!

The bottom photo is of ALL of my belongings except a few things that were left inside... I'll send you the additional photos next, because this file would be too large to send by my phone.


Thanks again, Lizeth for not only your help, but Mr. Santiago's help as well.


Sincerely,


Dayna



**Maria De Leon**

| | |
|---|---|
| **From:** | dayna catchings <catchings.dayna7@gmail.com> |
| **Sent:** | Wednesday, August 15, 2018 12:15 PM |
| **To:** | Maria De Leon |
| **Subject:** | Fwd: Photos of what happened on November 1st, 2017 |
| **Attachments:** | 20171202_153949.jpg; 20171202_154017.jpg |

Dayna

---------- Forwarded message ---------
From: **dayna catchings** <catchings.dayna7@gmail.com>
Date: Sat, Dec 2, 2017, 3:51 PM
Subject: Re: Photos of what happened on November 1st, 2017
To: <Lizeth.Zardeneta@asm.ca.gov>

OHHH, yes Lizeth...

Check out THESE TWO business/ contact cards, from BOTH the Sanitation Department  (Bobby Benson) and LAHSA Supervisor (Kimberly Lewis).

BOTH dated on 4/17/17, when they both HELPED ME to remain DUE TO my age and health problems.

But, yet on November 1st, NEITHER REPRESENTATIVE should up to come to my assistance? SERIOUSLY??

WHY exactly was THAT?!!

Sounds like shades of conspiracy to me.

(Things that make you go....hmmm)

Dayna

On Dec 2, 2017 3:33 PM, "dayna catchings" <catchings.dayna7@gmail.com> wrote:
 Hi Lizeth,

 (By the way, if you're wondering WHY I'm doing all of this e-mailing over the weekend, it's because I DO REALIZE that if I were to do this during normal business hours, you would NEVER get anything else done. You would be CONSTANTLY reading e-mails.
 But, by me doing it THIS way, you can take your time and not be interrupted.)

1





Now, on to the matter at hand.

YOU ALL (Including Mr. Santiago) NEEDS to find out WHO is in that black car at the top left of a photo that in about to send you.

THAT or THOSE individuals were the one's who were obviously, evidently and apparently giving THE ORDERS and overseeing the whole, ENTIRE operation and procedure.

When THIS photo is enlarged, you can see ALL KINDS of detail... like the two female officers, standing to the left.

I'm also attaching a front and back copy of THEIR business card as well.

They point to yet ANOTHER culprit in this whole mess that I had forgotten to add this agency to that list.

And, that would be...

"THE SANITATION DEPARTMENT"

THEY are the ones who did the actual disposing of my belongings, PLUS they had let that wooden structure remain UP AND INTACT, but would not let me finish getting my belongings??
You can plainly see that MY tent is flattened!!

And, as you can also plainly see, they are pointing DIRECTLY TO the Sanitation Department!!

How about THAT...

It's part of text message and e-mail material that I'm going to have pulled off my phone and printed.


Dayna

On Dec 2, 2017 10:08 AM, "dayna catchings" <catchings.dayna7@gmail.com> wrote:
Hi Lizeth,

I was REALLY looking forward to hearing from you this past week.

I only have until February to file the Federal Law Suit suggested to me by the City Attorneys office, as their response to NOT paying me for that Wilshire Blvd. incident where I was AGAIN ILLEGALLY REMOVED FROM THE SIDEWALK by Sgt. Miller on November 17th, 2016 exactly one year ago when now in December of 2017, I'm NOW living in a shelter without over 90 percent of my original belongings.  WHY??
They AWARDED ME $1,670.00 in damages... remember that??
STILL haven't gotten paid, and now the City of Los Angeles wants me to have to step into a FEDERAL COURT room, in order to collect?!
SERIOUSLY??

Okay, then. Since that's what THEY want me to do...

Well, guess what... that's EXACTLY what I'm going to do between now and the end of January.

2



That was count ONE.

Count TWO happened under the 110 bridge back in April by officers Solario and Abner (who actually wrote the ticket);

And, NOW Count THREE by what happened on November the 1st...

All of this is TOTALLY unbelievable and very MUCH unacceptable, because it ALL could have been avoided!!

Yes, THIS is what I'm going to be filing as "cruel and unusual punishment" of ME...a black transgendered, and disabled homeless senior citizen... that ALL CONCERNED had promised to look out for my well being and health (All, but obviously NOT the LAPD).

This is going to make EXCELLENT copy, because I cross so MANY cultural lines and categories.


Sincerely,


Dayna


On Nov 24, 2017 2:25 PM, "dayna catchings" <catchings.dayna7@gmail.com> wrote:
  P.S Lizeth,

  Oh, YES... WE MUST NOT FORGET about the Criminal Court ruling where I was found NOT GUILTY of illegal camping ".... on any and all counts"!!
  By Judge May.

  So, WHY THEN would ALL of those who were listed, even possibly allow this to happen, thereby VIOLATING A CRIMINAL COURT ORDER as well!!??

  OMGOSH....Oh, well.

  But, yet it DID happen, didn't it....


  Dayna

On Nov 24, 2017 2:12 PM, "dayna catchings" <catchings.dayna7@gmail.com> wrote:
  See Lizeth, I feel like this...

  THERE WAS NO HARM in allowing me (and others) to let our ONLY BELONGINGS (that "they" knew about) REMAIN ON THAT SIDE of the fence until the clean-up was done, and the ALLOWED US TO MOVE THEM BACK onto the sidewalk (Per DOJ RULING...), then....NONE OF THIS would have EVER had to happen to me.

3

88 A

Catchings vs
California
Ex. 52

YES, it was all done with malicious and with willful intent, and YES, as a result it caused MAJOR DAMAGES and MAJOR PROBLEMS.....for EVERYONE involved, up to and including Mr. Santiago himself!

And of course YES, I'M SORRY to have to say that to Mr. Santiago and to his office, but Lizeth it's TRUE....

FEDERAL LAW has a broken here.

When it ALL WAS AVOIDABLE & PREVENTABLE, just as I had said to Liz Oh by either text message or by e-mail, very recently.


Thank you,

Dayna

On Nov 24, 2017 1:44 PM, "dayna catchings" <catchings.dayna7@gmail.com> wrote:
  Hi Lizeth,

Therefore, in summary...

The State of California, (The State Highway Patrol), the City of Los Angeles, (the LAPD), People Concern (AJ Apodaca), The County of Los Angeles (LAHSA) and Homeless Healthcare (Liz Oh)...ALL CONTRIBUTED TO MY DAMAGES!!

Physical, financial, emotional and psychological damages, to be specific.

And therefore, must ALL BE HELD ACCOUNTABLE for their actions, and lack thereof.


Sincerely,

Dayna

On Nov 24, 2017 1:35 PM, "dayna catchings" <catchings.dayna7@gmail.com> wrote:
  Hi Lizeth,

Here are a few more photos, but not ALL of them.
Because of the file limitations that I spoke of.


Thank you,

Dayna

On Nov 24, 2017 1:29 PM, "dayna catchings" <catchings.dayna7@gmail.com> wrote:
  Hi Lizeth,

I just noticed NONE of the photos that were attached to your email, didn't send.

4

88B

**Maria De Leon**

| | |
|---|---|
| **From:** | dayna catchings <catchings.dayna7@gmail.com> |
| **Sent:** | Friday, June 1, 2018 8:02 AM |
| **To:** | Maria De Leon |
| **Subject:** | Fwd: Police Report dated11/19/16 |

Good Morning Maria,

I'm forwarding 7 emails to you so you can please print them out for me, regarding the incident on Wilshire Blvd. that happened on 11/17/16, involving my tent and the actions of Korean Air and the LAPD.

There are TWO case numbers involved here.

The ORIGINAL one --- C17-11722 regarding the Wilshire Blvd. incident that happened on 11/17/16 and,

The SECOND one C18-04092 Which involves the 110 freeway incident which happened on 11/1/17.

The City Attorney's Office "deleted" the second one claiming that it was a duplication of the FIRST claim, even though the DATES and LOCATION are different.

They "closed" the FIRST one without paying me the promised damages, which are what these emails between myself and Officer Cortez prove.


Thank you,

Dayna

---------- Forwarded message ---------
From: dayna catchings <catchings.dayna7@gmail.com>
Date: Sun, Nov 20, 2016, 10:38 AM
Subject: Police Report dated11/19/16
To: <38838@lapd.online>


Hello Officer Cortez,

I was just checking over the stolen tent report that you took from me yesterday, and I noticed that the dollar amount listed is incorrect from what I had told you.

When I called Rampart and spoke to Officer Davis this morning, and told her of the omission, she suggested that I email you which is what I'm now doing.

It appears that you didn't correct the dollar amount for the toiletries from ten dollars (and you wrote that change down right in front of me) to one hundred and ten dollars as I had corrected you on, plus you didn't mention the stolen clothing and the shoes which I had plainly told you that the shoes  (two pair) were Air Jordan shoes valued at $150.00

1

Catchings v.
California
EX 53

I also had told you that I was going for the MAXIMUM dollar amount of ten thousand dollars regarding the personal and legal documents theft as well, and you had told me that I could do that at the time I filed the lawsuit.

The ACTUAL dollar amount SHOULD have been... $70.00 for the tent, $110.00 for the toiletries, and $150.00 for my shoes which equals $330.00, and NOT just the mere $80.00 as you reported.

Why was that COMPLETE dollar amount for my damages NOT listed?

Sincerely,

Ms. Dayna Catchings

**Maria De Leon**

| | |
|---|---|
| **From:** | dayna catchings <catchings.dayna7@gmail.com> |
| **Sent:** | Friday, June 1, 2018 8:08 AM |
| **To:** | Maria De Leon |
| **Subject:** | Fwd: Police Report dated11/19/16 |
| **Attachments:** | 20161116_101625.jpg; 20161116_101639.jpg |

5 of 7

Dayna

---------- Forwarded message ---------
From: dayna catchings <catchings.dayna7@gmail.com>
Date: Wed, Nov 23, 2016, 9:29 AM
Subject: Re: Police Report dated11/19/16
To: Armando Cortez <38838@lapd.online>

Good morning Officer Cortez,

In return for your GENEROUS appraisals of my property, I would like to give to you and Sargeant Miller two photos (come to find out, the LAST photos) of my tent on the day and time that the threat was made by the tall older Security Guard who had continually harassed me long after Officer Munoz had told him and the owners (I suspect because the other two men from Korean Air were wearing white shirts and ties) on October 17th to leave both me and the tent ALONE, by threatening to spray paint my tent by "pretending" to be spray painting the chain link fence (who PAINTS a chain link fence?!).

I hope that these date and time stamped exhibits helps your investigation.

Please note that the white paper plate was still there when Sargeant Miller complimented me on having a clean campsite.

Once again, Thank You...and

Happy Thanksgiving!

Sincerely,

Dayna

On Nov 22, 2016 3:31 PM, "dayna catchings" <catchings.dayna7@gmail.com> wrote:
>
> Thank you Officer Cortez,
>
> Greatly appreciated...
>
> Sincerely,
>



Catchings v.
California
Ex-54

1

> Dayna
>
> On Nov 22, 2016 11:01 AM, "Armando Cortez" <38838@lapd.online> wrote:
> >
> > Hello Miss Catchings,
> >
> >
> > the final total equals $1670.00.  Cosmetics/toiletries $100.  Tent $70.  Clothing $1000.  and shoes $500.  Legal and Personal documents have no dollar value loss.
> >
> >
> > Thank You
> >
> > Officer Cortez 38838
> >
> >
> >
> > _____
> > From: dayna catchings <catchings.dayna7@gmail.com>
> > Sent: Sunday, November 20, 2016 10:38 AM
> > To: Armando Cortez
> > Subject: Police Report dated11/19/16
> >
> >
> > Hello Officer Cortez,
> >
> > I was just checking over the stolen tent report that you took from me yesterday, and I noticed that the dollar amount listed is incorrect from what I had told you.
> >
> > When I called Rampart and spoke to Officer Davis this morning, and told her of the omission, she suggested that I email you which is what I'm now doing.
> >
> > It appears that you didn't correct the dollar amount for the toiletries from ten dollars (and you wrote that change down right in front of me) to one hundred and ten dollars as I had corrected you on, plus you didn't mention the stolen clothing and the shoes which I had plainly told you that the shoes  (two pair) were Air Jordan shoes valued at $150.00
> >
> > I also had told you that I was going for the MAXIMUM dollar amount of ten thousand dollars regarding the personal and legal documents theft as well, and you had told me that I could do that at the time I filed the lawsuit.
> >
> > The ACTUAL dollar amount SHOULD have been... $70.00 for the tent, $110.00 for the toiletries, and $150.00 for my shoes which equals $330.00, and NOT just the mere $80.00 as you reported.
> >
> > Why was that COMPLETE dollar amount for my damages NOT listed?
> >
> > Sincerely,
> >
> > Ms. Dayna Catchings

*Ana*

**Maria De Leon**

| | |
|---|---|
| **From:** | dayna catchings <catchings.dayna7@gmail.com> |
| **Sent:** | Friday, June 1, 2018 8:08 AM |
| **To:** | Maria De Leon |
| **Subject:** | Fwd: Police Report dated11/19/16 |

6 of 7

Dayna

---------- Forwarded message ---------
From: dayna catchings <catchings.dayna7@gmail.com>
Date: Mon, Nov 28, 2016, 12:22 PM
Subject: Re: Police Report dated11/19/16
To: Armando Cortez <38838@lapd.online>

Good afternoon Officer Cortez,

I've been trying to locate the off-site location where the 311 operator said that the tent would be held for 30 days but never gave me the location.

I did try calling the Bureau of Sanitation directly, but there was no menu option for my request and couldn't speak to a live operator.

Could you please find out that information for me?

Thank you,

Dayna

On Nov 20, 2016 10:38 AM, "dayna catchings" <catchings.dayna7@gmail.com> wrote:
>
> Hello Officer Cortez,
>
> I was just checking over the stolen tent report that you took from me yesterday, and I noticed that the dollar amount listed is incorrect from what I had told you.
>
> When I called Rampart and spoke to Officer Davis this morning, and told her of the omission, she suggested that I email you which is what I'm now doing.
>
> It appears that you didn't correct the dollar amount for the toiletries from ten dollars (and you wrote that change down right in front of me) to one hundred and ten dollars as I had corrected you on, plus you didn't mention the stolen clothing and the shoes which I had plainly told you that the shoes  (two pair) were Air Jordan shoes valued at $150.00
>
> I also had told you that I was going for the MAXIMUM dollar amount of ten thousand dollars regarding the personal and legal documents theft as well, and you had told me that I could do that at the time I filed the

1



lawsuit.
>
> The ACTUAL dollar amount SHOULD have been... $70.00 for the tent, $110.00 for the toiletries, and $150.00 for my shoes which equals $330.00, and NOT just the mere $80.00 as you reported.
>
> Why was that COMPLETE dollar amount for my damages NOT listed?
>
> Sincerely,
>
> Ms. Dayna Catchings

## Maria De Leon

| | |
|---|---|
| **From:** | dayna catchings <catchings.dayna7@gmail.com> |
| **Sent:** | Friday, June 1, 2018 8:10 AM |
| **To:** | Maria De Leon |
| **Subject:** | Fwd: Police Report dated11/19/16 |
| **Attachments:** | 20161017_100339.jpg; 20161017_090941.jpg; 20161017_091524.jpg |

7 of 7

Thank you, Maria for your help (again)... lol

Dayna

---------- Forwarded message ---------
From: dayna catchings <catchings.dayna7@gmail.com>
Date: Mon, Nov 28, 2016, 4:40 PM
Subject: Re: Police Report dated11/19/16
To: Armando Cortez <38838@lapd.online>

...Oh yes, and by the way Officer Cortez,  here are a couple of other photos of the tent showingthe exact location in relation to the property in question itself.
Including a picture of the guard in question who issued the threat, all dated on Monday October 17th, the day of Officer Munoz visit.

Proving that there was NO OBSTRUCTION to their property or to the sidewalk itself.
Their actions were motivated by hatred and bigotry.

I'm pretty sure that these photos will prove useful in the investigation and persecution of the offenders (in my opinion being Korean Air...they had motive, means and opportunity).

Also, my new MAILING address is:

Dayna Catchings
750 W. 7th Street unit 811661
Los Angeles, California 90081

Thank you again, for your help.

Dayna

On Nov 28, 2016 12:22 PM, "dayna catchings" <catchings.dayna7@gmail.com> wrote:

Good afternoon Officer Cortez,

*Catchings v. California*

*Ex. 56*

1



I've been trying to locate the off-site location where the 311 operator said that the tent would be held for 30 days but never gave me the location.

I did try calling the Bureau of Sanitation directly, but there was no menu option for my request and couldn't speak to a live operator.

Could you please find out that information for me?

Thank you,

Dayna

On Nov 20, 2016 10:38 AM, "dayna catchings" <catchings.dayna7@gmail.com> wrote:
>
> Hello Officer Cortez,
>
> I was just checking over the stolen tent report that you took from me yesterday, and I noticed that the dollar amount listed is incorrect from what I had told you.
>
> When I called Rampart and spoke to Officer Davis this morning, and told her of the omission, she suggested that I email you which is what I'm now doing.
>
> It appears that you didn't correct the dollar amount for the toiletries from ten dollars (and you wrote that change down right in front of me) to one hundred and ten dollars as I had corrected you on, plus you didn't mention the stolen clothing and the shoes which I had plainly told you that the shoes  (two pair) were Air Jordan shoes valued at $150.00
>
> I also had told you that I was going for the MAXIMUM dollar amount of ten thousand dollars regarding the personal and legal documents theft as well, and you had told me that I could do that at the time I filed the lawsuit.
>
> The ACTUAL dollar amount SHOULD have been... $70.00 for the tent, $110.00 for the toiletries, and $150.00 for my shoes which equals $330.00, and NOT just the mere $80.00 as you reported.
>
> Why was that COMPLETE dollar amount for my damages NOT listed?
>
> Sincerely,
>
> Ms. Dayna Catchings

*Ex. L₂*

## Maria De Leon

| | |
|---|---|
| **From:** | dayna catchings <catchings.dayna7@gmail.com> |
| **Sent:** | Tuesday, June 5, 2018 10:15 AM |
| **To:** | Maria De Leon |
| **Subject:** | Fwd: Meeting you |

Hi Maria,

This is an email to the Los Angeles Times photographer, Mr. Luis Sinco regarding the incidents of the LAPD, The State of California and the Sanitation Department on November 1, 2017 (Case Number ---- C18-04092).

Which came AFTER the Wilshire Blvd. incident involving Korean Air on November 17, 2016 (Case Number C17-11722).

Both complaints have been filed with the City Attorney's Office, and this past Friday I wad referred to "Tom" the Supervisor of the City of Office.
I was scheduled to speak with him yesterday, I called and left word for him but haven't heard back from him.

The C18 complaint was deleted with no reason WHY it was deleted.

The C17 complaint was denied with no reason as to WHY, either...

BASED ON THE EVIDENCE!

BOTH were timely filed.

Nevertheless, their time to resolve this issue of THEIRS, is quickly running out.
Therefore, I'm going to attend the walk in legal clinic for Federal Court on either Friday or Monday afternoon, from 2-4 p.m.

I feel as if I'm just getting the runaround from them, so I MUST proceed forward at this point. I HAVE them an opportunity to resolve this on their own.
But they didn't and haven't.


My email to Mr. Sinco is very self explanatory.

There are also seven more that contain MORE information plus photographs of what all occurred on November 1st of last year, 2017.

The other seven I'll email to you later on.


Thanks Maria,

Dayna

1



----------Forwarded message ---------
From: dayna catchings <catchings.dayna7@gmail.com>
Date: Mon, Jan 15, 2018, 10:23 AM
Subject: Re: Meeting you
To: Sinco, Luis <Lee.Sinco@latimes.com>


Hello Luis...

Have I got a NEW story update on my recent homeless situation for you, and the general public as well, concerning a Department of Justice ruling in August of 2015 that makes it ILLEGAL to remove homeless people from sidewalks... it's considered to be, and was turned to be "cruel and unusual punishment"!!

But that's EXACTLY what happened to me on November 1st of last year.

That information was given to me by State of California Assemblyman Mr. Miguel Santiago in October of last year.
However both he and his office are unwilling to bring both the LAPD and LAHSA into accountability for their illegal actions against me, where at least 90% of my remaining property was destroyed on that date.

I'm now living at Hawke's Transitional Living Center.

I'm going to forward to you the links on that ruling that were given to me by St. Barnabus Senior Services Center, where Mr. Santiago spoke back in October.

This is TOTALLY UNACCEPTABLE.

A State of California ASSEMBLYMAN refuses to enforce the very law that he spoke of by his office saying to me "we don't get involved with (situations) like that".   WTH?!

Yet that SAME field representative named Lizeth Zardeneta had told me regarding the initial illegal eviction towards me that "Since the matter has ALREADY been to court we cannot get involved with that now."

But, THIS illegal action committed by the City of Los Angeles LAPD, with the involvement of LAHSA and the State Highway Patrol (which DIRECTLY involves his State of California office); has NOT been takento court yet, but that's EXACTLY where I'm going to be taking it, directly to the Federal Courthouse on Wilshire Blvd. in West Los Angeles within the next week or so, because there are deadlines to filing complaints.

So, NOW what is his office's excuse fur not upholding the law even though I've provided Lizeth with e-mail and photographic evidence to support this allegation. In OTHER words, they are attempting to COVER UP illegal actions committed by the County of Los Angeles (LAHSA--- who allowed me to REMAIN homeless for 9 MONTHS after first making contact with me in February of last year), the City of Los Angeles  (the LAPD), and now ALSO the State of California (due to the involvement of the State Highway Patrol).

The general public wants to CONSTANTLY COMPLAIN about the homeless situation/problem not knowing that there ARE those of us who DO want and need housing, but the promises of "help" WERE not and ARE not being honored.

HOMELESS PEOPLE HAVE RIGHTS!!

*Ex M*
*10 PAGES*

**Maria De Leon**

| | |
|---|---|
| **From:** | dayna catchings <catchings.dayna7@gmail.com> |
| **Sent:** | Friday, June 1, 2018 8:02 AM |
| **To:** | Maria De Leon |
| **Subject:** | Fwd: Police Report dated11/19/16 |

Good Morning Maria,

I'm forwarding 7 emails to you so you can please print them out for me, regarding the incident on Wilshire Blvd. that happened on 11/17/16, involving my tent and the actions of Korean Air and the LAPD.

There are TWO case numbers involved here.

The ORIGINAL one --- C17-11722 regarding the Wilshire Blvd. incident that happened on 11/17/16 and,

The SECOND one C18-04092 Which involves the 110 freeway incident which happened on 11/1/17.

The City Attorney's Office "deleted" the second one claiming that it was a duplication of the FIRST claim, even though the DATES and LOCATION are different.

They "closed" the FIRST one without paying me the promised damages, which are what these emails between myself and Officer Cortez prove.


Thank you,

Dayna

---------- Forwarded message ---------
From: dayna catchings <catchings.dayna7@gmail.com>
Date: Sun, Nov 20, 2016, 10:38 AM
Subject: Police Report dated11/19/16
To: <38838@lapd.online>


Hello Officer Cortez,

I was just checking over the stolen tent report that you took from me yesterday, and I noticed that the dollar amount listed is incorrect from what I had told you.

When I called Rampart and spoke to Officer Davis this morning, and told her of the omission, she suggested that I email you which is what I'm now doing.

It appears that you didn't correct the dollar amount for the toiletries from ten dollars (and you wrote that change down right in front of me) to one hundred and ten dollars as I had corrected you on, plus you didn't mention the stolen clothing and the shoes which I had plainly told you that the shoes  (two pair) were Air Jordan shoes valued at $150.00

*Catchings v.*
*California*
*Ex-58*

1



I also had told you that I was going for the MAXIMUM dollar amount of ten thousand dollars regarding the personal and legal documents theft as well, and you had told me that I could do that at the time I filed the lawsuit.

The ACTUAL dollar amount SHOULD have been... $70.00 for the tent, $110.00 for the toiletries, and $150.00 for my shoes which equals $330.00, and NOT just the mere $80.00 as you reported.

Why was that COMPLETE dollar amount for my damages NOT listed?

Sincerely,

Ms. Dayna Catchings

**Maria De Leon**

| | |
|---|---|
| **From:** | dayna catchings <catchings.dayna7@gmail.com> |
| **Sent:** | Friday, June 1, 2018 8:03 AM |
| **To:** | Maria De Leon |
| **Subject:** | Fwd: Police Report dated 11/19/16 |

2 of 7

Dayna

---------- Forwarded message ---------
From: dayna catchings <catchings.dayna7@gmail.com>
Date: Sun, Nov 20, 2016, 1:15 PM
Subject: Re: Police Report dated 11/19/16
To: <38838@lapd.online>

Hi...Post Script Officer Cortez,

I also remember you telling me that the DETAILS of the report would be included in your narrative that you had planned to write based on the notes on that little white writing pad of yours where you had made the changes in the dollar amounts, which is why I didn't bother to check what you had put into the actual written report that you gave to me be before I signed it, because you knew the ACTUAL dollar amounts BEFORE you wrote up the report.

As I had said to you upon first meeting you in regards to my meeting Sargent Miller to have my back because I had DID as he had requested me to do by lowering my tent, I do honestly feel that it was then therefore HIS and the Department's responsibility to safeguard my belongings now laying directly on the street, with the Sanitation Department to MAKE SURE that absolutely NOTHING happened to them...PERIOD. including telling Korean Air to STOP HARASSING ME (by the many phone calls that they had made, all the way to the Commander who then contacted the Chief who then contacted Sargeant Miller, I believe that was the order in the chain of command that he told me about himself).

Remember also that I had mentioned to you in front of the female Officer that had come up during our conversation, that just a couple of days before then, the tall older Security guard came to me THREATENING to spray paint my tent by "pretending" to be painting the chain link fence....oh no wait, she had sat down in your chair as you went to get the incident report; and her eyes got big as saucers!

And to further make sure that they THEMSELVES guard my belongings since THEY are the one's who keeps REPEATEDLY calling your office about me long since Officer Munoz had told them to leave me ALONE because I was doing NOTHING illegal as I had said and explained to you.

But, apparently he did not do that.

And also as I had discussed with you, ALL of the general public must be ABLE to TRUST and BELIEVE you (the Department) that you will SERVE and PROTECT all of our rights, whether we are homeless or not. Especially when we COMPLY WITH what is being asked of us to do!

catchings v. California
Ex.59

1



It's also painfully obvious that in THIS case, that was not done.

Sincerely,

Ms. Dayna Catchings


On Nov 20, 2016 10:38 AM, "dayna catchings" <catchings.dayna7@gmail.com> wrote:

Hello Officer Cortez,

I was just checking over the stolen tent report that you took from me yesterday, and I noticed that the dollar amount listed is incorrect from what I had told you.

When I called Rampart and spoke to Officer Davis this morning, and told her of the omission, she suggested that I email you which is what I'm now doing.

It appears that you didn't correct the dollar amount for the toiletries from ten dollars (and you wrote that change down right in front of me) to one hundred and ten dollars as I had corrected you on, plus you didn't mention the stolen clothing and the shoes which I had plainly told you that the shoes (two pair) were Air Jordan shoes valued at $150.00

I also had told you that I was going for the MAXIMUM dollar amount of ten thousand dollars regarding the personal and legal documents theft as well, and you had told me that I could do that at the time I filed the lawsuit.

The ACTUAL dollar amount SHOULD have been... $70.00 for the tent, $110.00 for the toiletries, and $150.00 for my shoes which equals $330.00, and NOT just the mere $80.00 as you reported.

Why was that COMPLETE dollar amount for my damages NOT listed?

Sincerely,

Ms. Dayna Catchings

**Maria De Leon**

| | |
|---|---|
| **From:** | dayna catchings <catchings.dayna7@gmail.com> |
| **Sent:** | Friday, June 1, 2018 8:03 AM |
| **To:** | Maria De Leon |
| **Subject:** | Fwd: Police Report dated11/19/16 |

3 of 7

Dayna

---------- Forwarded message ---------
From: Armando Cortez <38838@lapd.online>
Date: Tue, Nov 22, 2016, 11:01 AM
Subject: Re: Police Report dated11/19/16
To: dayna catchings <catchings.dayna7@gmail.com>

Hello Miss Catchings,

the final total equals $1670.00.   Cosmetics/toiletries $100.  Tent $70.  Clothing $1000.  and shoes $500.  Legal and Personal documents have no dollar value loss.

Thank You

Officer Cortez 38838

---

**From:** dayna catchings <catchings.dayna7@gmail.com>
**Sent:** Sunday, November 20, 2016 10:38 AM
**To:** Armando Cortez
**Subject:** Police Report dated11/19/16

Hello Officer Cortez,

I was just checking over the stolen tent report that you took from me yesterday, and I noticed that the dollar amount listed is incorrect from what I had told you.

When I called Rampart and spoke to Officer Davis this morning, and told her of the omission, she suggested that I email you which is what I'm now doing.

Catchings v. California

Ex.60



It appears that you didn't correct the dollar amount for the toiletries from ten dollars (and you wrote that change down right in front of me) to one hundred and ten dollars as I had corrected you on, plus you didn't mention the stolen clothing and the shoes which I had plainly told you that the shoes (two pair) were Air Jordan shoes valued at $150.00

I also had told you that I was going for the MAXIMUM dollar amount of ten thousand dollars regarding the personal and legal documents theft as well, and you had told me that I could do that at the time I filed the lawsuit.

The ACTUAL dollar amount SHOULD have been... $70.00 for the tent, $110.00 for the toiletries, and $150.00 for my shoes which equals $330.00, and NOT just the mere $80.00 as you reported.

Why was that COMPLETE dollar amount for my damages NOT listed?

Sincerely,

Ms. Dayna Catchings

**Maria De Leon**

| | |
|---|---|
| **From:** | dayna catchings <catchings.dayna7@gmail.com> |
| **Sent:** | Friday, June 1, 2018 8:04 AM |
| **To:** | Maria De Leon |
| **Subject:** | Fwd: Police Report dated11/19/16 |

4 of 7

Dayna

---------- Forwarded message ---------
From: dayna catchings <catchings.dayna7@gmail.com>
Date: Tue, Nov 22, 2016, 3:31 PM
Subject: Re: Police Report dated11/19/16
To: Armando Cortez <38838@lapd.online>


Thank you Officer Cortez,

Greatly appreciated...

Sincerely,

Dayna

On Nov 22, 2016 11:01 AM, "Armando Cortez" <38838@lapd.online> wrote:
>
> Hello Miss Catchings,
>
>
> the final total equals $1670.00.  Cosmetics/toiletries $100.  Tent $70.  Clothing $1000.  and shoes $500.  Legal and Personal documents have no dollar value loss.
>
>
> Thank You
>
> Officer Cortez 38838
>
>
>
> _____
> From: dayna catchings <catchings.dayna7@gmail.com>
> Sent: Sunday, November 20, 2016 10:38 AM
> To: Armando Cortez
> Subject: Police Report dated11/19/16
>
>
> Hello Officer Cortez,



G7a

Catchings v.
California
Exhibit

>

> I was just checking over the stolen tent report that you took from me yesterday, and I noticed that the dollar amount listed is incorrect from what I had told you.

>

> When I called Rampart and spoke to Officer Davis this morning, and told her of the omission, she suggested that I email you which is what I'm now doing.

>

> It appears that you didn't correct the dollar amount for the toiletries from ten dollars (and you wrote that change down right in front of me) to one hundred and ten dollars as I had corrected you on, plus you didn't mention the stolen clothing and the shoes which I had plainly told you that the shoes (two pair) were Air Jordan shoes valued at $150.00

>

> I also had told you that I was going for the MAXIMUM dollar amount of ten thousand dollars regarding the personal and legal documents theft as well, and you had told me that I could do that at the time I filed the lawsuit.

>

> The ACTUAL dollar amount SHOULD have been... $70.00 for the tent, $110.00 for the toiletries, and $150.00 for my shoes which equals $330.00, and NOT just the mere $80.00 as you reported.

>

> Why was that COMPLETE dollar amount for my damages NOT listed?

>

> Sincerely,

>

> Ms. Dayna Catchings

**Maria De Leon**

| | |
|---|---|
| From: | dayna catchings <catchings.dayna7@gmail.com> |
| Sent: | Friday, June 1, 2018 8:08 AM |
| To: | Maria De Leon |
| Subject: | Fwd: Police Report dated11/19/16 |
| Attachments: | 20161116_101625.jpg; 20161116_101639.jpg |

5 of 7

Dayna

---------- Forwarded message ---------
From: dayna catchings <catchings.dayna7@gmail.com>
Date: Wed, Nov 23, 2016, 9:29 AM
Subject: Re: Police Report dated11/19/16
To: Armando Cortez <38838@lapd.online>

Good morning Officer Cortez,

In return for your GENEROUS appraisals of my property, I would like to give to you and Sargeant Miller two photos (come to find out, the LAST photos) of my tent on the day and time that the threat was made by the tall older Security Guard who had continually harassed me long after Officer Munoz had told him and the owners (I suspect because the other two men from Korean Air were wearing white shirts and ties) on October 17th to leave both me and the tent ALONE, by threatening to spray paint my tent by "pretending" to be spray painting the chain link fence (who PAINTS a chain link fence?!).

I hope that these date and time stamped exhibits helps your investigation.

Please note that the white paper plate was still there when Sargeant Miller complimented me on having a clean campsite.

Once again, Thank You...and

Happy Thanksgiving!

Sincerely,

Dayna

On Nov 22, 2016 3:31 PM, "dayna catchings" <catchings.dayna7@gmail.com> wrote:
>
> Thank you Officer Cortez,
>
> Greatly appreciated...
>
> Sincerely,
>

CAtchings v.
CAlifornia

Ex. 12



> Dayna
>
> On Nov 22, 2016 11:01 AM, "Armando Cortez" <38838@lapd.online> wrote:
> >
> > Hello Miss Catchings,
> >
> >
> > the final total equals $1670.00.   Cosmetics/toiletries $100.  Tent $70.  Clothing $1000.  and shoes $500.  Legal and Personal documents have no dollar value loss.
> >
> >
> > Thank You
> >
> > Officer Cortez 38838
> >
> >
> >
> > _____
> > From: dayna catchings <catchings.dayna7@gmail.com>
> > Sent: Sunday, November 20, 2016 10:38 AM
> > To: Armando Cortez
> > Subject: Police Report dated11/19/16
> >
> >
> > Hello Officer Cortez,
> >
> > I was just checking over the stolen tent report that you took from me yesterday, and I noticed that the dollar amount listed is incorrect from what I had told you.
> >
> > When I called Rampart and spoke to Officer Davis this morning, and told her of the omission, she suggested that I email you which is what I'm now doing.
> >
> > It appears that you didn't correct the dollar amount for the toiletries from ten dollars (and you wrote that change down right in front of me) to one hundred and ten dollars as I had corrected you on, plus you didn't mention the stolen clothing and the shoes which I had plainly told you that the shoes  (two pair) were Air Jordan shoes valued at $150.00
> >
> > I also had told you that I was going for the MAXIMUM dollar amount of ten thousand dollars regarding the personal and legal documents theft as well, and you had told me that I could do that at the time I filed the lawsuit.
> >
> > The ACTUAL dollar amount SHOULD have been... $70.00 for the tent, $110.00 for the toiletries, and $150.00 for my shoes which equals $330.00, and NOT just the mere $80.00 as you reported.
> >
> > Why was that COMPLETE dollar amount for my damages NOT listed?
> >
> > Sincerely,
> >
> > Ms. Dayna Catchings



**Waitlist Notification Letter**

**Madison Avenue Senior Housing**

November 29, 2016

DAYNA CATCHINGS
750 W. 7TH AVE #811661
LOS ANGELES, CA 90081

Dear Applicant(s):

Thank you for your interest in Menorah Housing Foundation. On November 18, 2016 we held a lottery for placement on our Madison Senior Housing waiting list. Unfortunately, your application number **#1666** was not selected in the lottery, and you will not be added to the Madison Senior Housing waiting list.

To find out about waiting list opportunities within our organization, please call our Information Line at (310) 477-1476. The information line will notify you if we currently have any waiting lists open or if we plan on opening any waiting lists in the near future. We recommend calling this number once a month.

If you have additional questions, you may contact the management office directly at (310) 475-6083 ext. 200 or ext. 210.

Sincerely,

Menorah Housing Foundation



99



**SBSS**
**St. Barnabas Senior Services**
Live Well • Feel Well • Age Well

PLE Exhibit 49

January 30, 2017

To whom it may concern,

I am writing this letter as an update to the first letter I wrote for Ms. Dayna Catchings. Since the first letter, I have continued to assist Ms. Catchings with her case by providing her with copies of her documents to create her packages she will use in court. Organizing these packages has not been an easy task for my client or myself. We have spent hours and energy copying and organizing all documentation to prove Dayna was evicted unlawfully. Although, I would've loved to provide Ms. Catchings with more of my time I was limited. I had to attend to my other clients and responsibilities. I worked with Ms. Catchings on 01/25/17 at 8:30am and 01/26/17 at 2pm because during the week of 01/09/17 Ms. Catchings had a cold in which she was only able to come to the center on Monday 01/09/17 and Wednesday 01/11/17 but I had other clients I was assisting already. During the week of 01/16/17, we had Monday off due to the holiday of MLK day, Dayna had pain on her hip in which she was not able to come into the center on 01/17/17 so we continued to work on this case on 01/18/17 up until today 01/30/17 at 1pm. We finalized all six packages on 01/27/17 and just added any last touches today 01/30/17. I have only been able to provide Ms. Catchings 1-2 hours of my time during these days due to my busy schedule. I continue to witness the necessity of finding Ms. Catchings a home where she can be safe and rest. The camp site she is currently staying at is filled with rats due to trash pilling up because of a nearby business dumpster not being empty out. Today, Dayna encountered police officer Bertolo at the camp site investigating about the complaint the business owner made of the rats entering his building. Ms. Catchings now has to worry if her belongings will be safe there when she returns for the night. The housing situation in Los Angeles has made it a bigger challenge in finding Dayna a place to lay her head. Our center will continue to provide Ms. Catchings with a place to come during the day and a hot meal. We are hopeful her case will find resolution during her case management conference.

*Maria De Leon, BSW*
*Case Manager/ Care Manager for BALLAD*
*St. Barnabas Senior Services (Mid-City)*
*675 S. Carondelet St.*
*Los Angeles, CA 90057*
*Tel: 213-388-4444 ext 228*
*Fax: 213-738-9467*

675 S. Carondelet Street Los Angeles • California 90057-3309
Telephone (213) 388-4444 Fax (213) 739-2972 E-mail info@sbssla.org
www.sbssla.org



PLE Exhibit 42A

| DATE | SBSS Care Plan for Entire Term of Service |
|------|-------------------------------------------|

INTAKE CONDUCTED BY: Maria De Leon          DATE OF INTAKE: 11/03/16

IN-HOME ASSESSMENT DATE: _____

### CLIENT'S NEEDS AND DESIRED RESULTS/OUTCOMES FROM CASE MANAGEMENT SERVICES

- Client is currently homeless and looking for affordable housing due to being evicted from Clark Residence unlawfully. Client is currently in trial with Property Management. Client needs assistance locating permanent housing

- Client will need financial assistance once apartment is found to move in.

- Client needs referral to legal services.

- CH scored "6" on GDS: CM referred client to PCP.

### SERVICES TO BE PROVIDED ACCORDING TO CLIENT'S NEEDS

| Start Date | Completion Date | Type of Service | Service Provider | Contact Person's Phone |
|-----------|-----------------|-----------------|------------------|------------------------|
| 11/03/16 | 05/03/17 | CM | SBSS | 213 383-4444 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Additional comments:

### Required Signatures:

| I agree to these services. | I agree to support client in obtaining these services |
|----------------------------|--------------------------------------------------------|
| X _Dayna Catchings_  11/3/16 | X |
| Client signature        Date | For client (surrogate decision maker)    Date |
| CASE MGR. & Phone: | CASE MANAGER'S SUPERVISOR'S APPROVAL |
| X _Maria De Leon_   11/03/16 | X _De Leon De_   12/6/16 |
| Manager's Signature    Date | Supervisor's Signature    Date |

...ntial information is provided to
...nce with applicable Welfare and
...Section. Duplication of this
...ther disclosure is prohibited
...tten consent of the
...sentative to whom it
...wise permitted by law.

CLIENT NAME:

Catchings, Dayna

Catchings Svs
California
Ex. 05

101



**SBSS**

**St. Barnabas Senior Services**
Live Well • Feel Well • Age Well

PLE Exhibit 49

December 29, 2016

To whom it may concern,

My name is Maria De Leon, I am a case manager at St. Barnabas Senior Services located in Los
Angeles. Dayna Catchings became my client in November 03, 2016 in which I conducted an
assessment to learn Ms. Catchings areas of assistance. It was clear Ms. Catchings would need
assistance locating affordable housing and referrals to legal agencies that would guide her
through the eviction process. Ms. Catchings and I have been working collaboratively with
locating housing to get her off the street during this harsh cold weather. Our main goal is getting
her off the street and in a safe place where she can rest and not cause her medical conditions to
worsen. I have been assisting Dayna with making copies and organizing all her documents that
show how she was evicted illegally and wrongfully. I am aware that organizing all these
documents has not been an easy task for her and her health as I am not always available to help
her due to having other clients. I have also assisted her with mailing the Proof of Service and
serving The Lee Law Group, P.C. firm with important documents regarding the case. I have not
provided any legal advice or services as law is out of my scope but have been here to provide her
with emotional support or any assistance that is in my field. Our agency hopes this case finds
resolution quickly to get Ms. Catchings off the street in a safe and warm place during the
holidays.

Maria De Leon, BSW.
Case Manager/ Care Manager for BALLAD
St. Barnabas Senior Services (Mid-City)
675 S. Carondelet St.
Los Angeles, CA 90057
Tel: 213-388-4444 ext 228
Fax: 213-738-9467
Email: mdeleon@sbssla.org

675 S. Carondelet Street Los Angeles • California 90057-3309
Telephone (213) 388-4444 Fax (213) 739-2972 E-mail info@sbssla.org
www.sbssla.org

Catchings v.
California
Ex.66





PLE Exhibit 45

February 17, 2017

To whom it may concern,

I am writing this letter to inform all parties of the incident that happen on February 14, 2017 at 12pm in our center located at 675 S Carondelet St. Los Angeles, CA 90057. Ms. Catchings comes to our center daily to get a meal and stay out of the harsh weather outside. On this day, Ms. Catchings was in the dining room finishing her meal when the seniors around her noticed her slowly tipping sideways on her chair. Our senior director Gordon Gibb was called to the scene to assist further. With Ms. Catchings permission the paramedics were called to assess her and give her treatment. When the EMTs arrived to our center they found Ms. Catchings conscious but her breathing was faint. Ms. Catchings mentioned feeling dizzy, difficulty breathing and sweating. EMTs checked Ms. Catchings vitals but were very faint 90/60. EMTs spoke of Ms. Catchings possibly being dehydrated and would need to start IV. EMTs took Ms. Catchings into the van for further assessment. After their assessment Ms. Catchings was taken to Good Samaritan Hospital at 12:35pm. Ms. Catchings called me later to inform me she was admitted and was having tests done. Doctor decided to keep her overnight to continue monitoring her. Ms. Catchings called me Thursday February 16, 2017 to let me know she would be staying in her tent to rest because she was not feeling well. Ms. Catchings came down today to the center and appeared to be feeling better.

Thank you,

Maria De Leon, BSW
Case Manager/ Care Manager for BALLAD
St. Barnabas Senior Services (Mid-City)
675 S. Carondelet St.
Los Angeles, CA 90057
Tel: 213-388-4444 ext 228
Fax: 213-738-9467
Email: mdeleon@sbssla.org



675 S. Carondelet Street Los Angeles • California 90057-3309
Telephone (213) 388-4444 Fax (213) 739-2972 E-mail info@sbssla.org
www.sbssla.org

CATchings v.
CALIFORNIA
EX 67

EX C.120
(EX.C20)



**Heritage**
CLINIC
Est 1979

12/21/17

447 N. El Molino Ave.
Pasadena, CA 91101
(626) 577-8480
Fax (626) 577-8978

Los Angeles Office
(213) 382-4400
Fax (213) 382-4494

1037 W. Avenue N
Suite 205
Palmdale, CA 93551
(661) 575-9365
Fax (661) 575-9502

3939 Atlantic Ave.
Suite 103
Long Beach, CA 90807
(562) 264-6001
Fax (562) 264-6006

The Community Assistance
Program for Seniors
Alzheimer's Day Care Centers

3740 E. Sierra Madre Blvd.
Pasadena, CA 91107
(626) 351-5427
Fax (626) 351-2308

2501 E. Cortez St.
North Wing 14-16
West Covina, CA 91791
(626) 917-4484
Fax (626) 917-4475

Website
www.heritageclinic.org

a nonprofit agency

To Whom It May Concern:

I psychiatrically assessed Ms. Dayna Catchings on 12/19/17. During that assessment, I diagnosed Ms. Catchings with Bipolar I Disorder, most recent episode manic as she demonstrated the symptoms as indicated in the Diagnostic and Statistical Manual, 5th Edition, which is used for all psychiatric diagnoses.

If there are further questions, please feel free to contact me at the number indicated in the letterhead.

Sincerely,

_____, M.D.

Stacia Mills, M.D.
Lic #A124146
Staff Psychiatrist
Heritage Clinic

Catchings v.
California
Ex68

104 

Maria De Leon

*Ex 21*

| | |
|---|---|
| **From:** | Abel Apodaca <aapodaca@thepeopleconcern.org> |
| **Sent:** | Tuesday, September 26, 2017 9:30 AM |
| **To:** | Maria De Leon |
| **Cc:** | Laura Stella Ocampo; lizoh@hhcla.org |
| **Subject:** | Revised Support Letter for Client Dayna |
| **Attachments:** | The People Concern Support Letter Dayna.docx |

Thank you



# AJ Apodaca, MPA
E-6 Peer Case Manager

**THE PEOPLE CONCERN | OPCC & LAMP COMMUNITY UNITED**

M: (213) 326 - 0632
F: (213) 935 – 8148
A: 222 South Hill Street, Suite 700
Los Angeles, CA 90012

W: www.thepeopleconcern.org   E: aapodaca@thepeopleconcern.org

 

*OPCC & Lamp Community are united under one name and one mission. Click here to learn more. (DTLA website link)*



1

105

*Cooldmass v.*
*California*
*EX 69*



# THE**PEOPLE**CONCERN

Because everyone should be housed, healthy and safe.
OPCC & LAMP COMMUNITY UNITED

September 21, 2017

Dayna Catchings
DOB: 04-01-1952

**Re: Dayna Catchings**

To Whom It May Concern,

Thank you for your consideration to work with one of our clients. We are thrilled to start a potential partnership with you. The People Concern (formerly LAMP Community and OPPC) is a 501(c) (3) nonprofit organization that works in partnership to provide both case management and wrap-around services. These social services include linkage to and provision of supportive mental and medical services, substance abuse services, and housing to support our clients and promote housing stability. Our belief is that housing is the cornerstone of health, well-being and independence for our clients. Our goal is to ensure that our clients are able to gain maximum control of their life and achieve self-sufficiency.

This letter is in regards to **Dayna Catchings** who has been working with us since 09/14/2017. Per **Dayna Catchings**, she has been homeless since October 10th, 2016. **Dayna Catchings** reports that she has been living on the streets.

**Dayna Catchings** is currently working with us and we are helping her towards getting housing. The primary goal of the E6 program is to explore and support **Dayna Catchings** through applying for housing programs that she might be eligible for and connect her to resources such as: medical care, mental health, food banks, toiletries, and clothes as needed. The primary goal is to provide my client with permanent housing, so she can continue to improve her physical and mental health.

If you have any questions, or need additional clarification regarding her history of homelessness or the opportunity that she has been presented with by our agency, please feel free to contact me at the number listed below. We look forward to working with you.

Sincerely,

**Aj Apodaca, MPA**
**Peer Case Manager**
**aapodace@thepeopleconcern.org**
**213-326-0632**

Downtown Office: 526 San Pedro Street, Los Angeles, CA 90013  Tel: 213.488.9559  Fax: 213.270.9060  www.lampcommunity.org  Tax ID: #95-3993742
Westside Office: 1453 16th Street, Santa Monica, CA 90404  Tel: 310.264.6646  Fax: 310.264.6647  www.opcc.org  Tax ID: #95-6143865



Doc# 1 Page# 166 – Doc ID – 1724336029 – Doc Type = OTHER



# Heritage Clinic

H e r i t a g e   C l i n i c

December 7, 2017

**Heritage Clinic**

447 N. El Molino Ave.
Pasadena, CA 91101
(626) 577-8480
Fax (626) 577-8978

3939 Atlantic Ave.
Suite 103
Long Beach, CA 90807
(562) 264-6001
Fax (562) 264-6006

155 N. Occidental Blvd.
Suite 243
Los Angeles, CA 90026
(213) 382-4400
Fax (213) 382-4494

1037 West Avenue N
Suite 205
Palmdale, CA 93551
(661) 575-9365
Fax (661) 575-9502

**CAPS Alzheimer's
Day Care Centers**

3740 E. Sierra Madre Blvd.
Pasadena, CA 91107
(626) 351-5427
Fax (626) 351-2308

2501 E. Cortez Street
West Covina, CA 91791
(626) 917-4484
Fax (626) 917-4475

**Website**
www.heritageclinic.org

Barker Management, Inc
P.O. Box 148
Anaheim, Ca 92815

Appeal Letter for letter of ineligibility
Re: Dayna Catching, SS# ~~xxxxxxx~~ *DC 5/13/18*

To: Vichaka Tang

This letter is in support of Dayna Catchings, a client of our Full Service Partnership (FSP) program since October 19th, 2017. FSP is a program sponsored by the Los Angeles County Department of Mental Health that provides in-home psychotherapy, case management, and medication support (psychiatry). Ms. Catchings was referred to Heritage Clinic by Homeless Healthcare LA, an outreach team assisting Ms. Catchings with housing.

Ms. Catchings received a letter of ineligibility on on 11/30/2017 due to missing her housing interview appointment on 11/27/17 and requesting to reschedule for 2 weeks later. Ms. Catchings is asking that this decision be reconsidered due to missing her appointment due to circumstances outside of her control.

Client reports that in early November the police and sanitation department came out to the street she was sleeping in a tent and gave her "10 minutes" to remove all of her belongings or they would remove her belongings. Client reported that prior to that day she had received a notice from the court that her things were not to be taken and she would be left alone, but on the day the police and sanitation department came to remove her from the street they did not allow her to provide any documentation.

Client reports that she had notified the outreach team of the sanitation department coming out to remove her items from the street and had provided support for her a couple days prior to the incident; however, were not present on the day of the incident. Client reports that due to the lack of support on the day the sanitation department came to clean the street she lost most of her belongings, including clothing, her tent, and other items.

Client reports that due to the loss of her items she has had to replace clothing for the cold whether which has caused her to fall behind on her storage unit payment and has focused most of her attention and time on trying to get compensation for the personal items she lost so that she can pay the past due balance for her storage unit and prevent loss of more items.

*a nonprofit agency*

107

# Heritage Clinic

Furthermore, client would like to explain that the reason for missing the appointment for her housing interview was not due to being "irresponsible or sleeping in" but rather because she has been trying to prepare for a court hearing for an eviction and has also been trying to survive through her homeless status. Client is very interested in becoming housed but is asking for further assistance with allowing her to complete the application process in a more timely manner due to many challenges she faces as a homeless individual.

I appreciate your time in reviewing this appeal and if you have further questions please feel free to contact me at 626-577-8480 ext 0.

Sincerely,

Sandra Llamas, BA
MHRS

Jamie Garis, PsyD
FSP Program Director

*a nonprofit agency*



H e r i t a g e   C l i n i c     *Ex. R65*

**Heritage Clinic**

447 N. El Molino Ave.
Pasadena, CA 91101
(626) 577-8480
Fax (626) 577-8978

3939 Atlantic Ave.
Suite 103
Long Beach, CA 90807
(562) 264-6001
Fax (562) 264-6006

155 N. Occidental Blvd.
Suite 243
Los Angeles, CA 90026
(213) 382-4400
Fax (213) 382-4494

1037 West Avenue N
Suite 205
Palmdale, CA 93551
(661) 575-9365
Fax (661) 575-9502

**CAPS Alzheimer's
Day Care Centers**

3740 E. Sierra Madre Blvd.
Pasadena, CA 91107
(626) 351-5427
Fax (626) 351-2308

2501 E. Cortez Street
West Covina, CA 91791
(626) 917-4484
Fax (626) 917-4475

**Website**
www.heritageclinic.org

To Whom it may concern,

This letter is on behalf of Dayna Catchings who has been a client with Heritage Clinic since her intake date of October 19th, 2017.  I had my first session with Ms. Catchings on October 25th, 2017 and have seen Ms. Catchings in six face-to-face therapy sessions to date.  Ms. Catchings initially presented as highly frustrated and agitated specifically regarding her history related to homelessness and the injustices she feels she has experienced related to these events below.  I helped assist Ms. Catchings on November 1st, 2017 when her belongings were reportedly removed from the street by the sanitation department.  Since the incident Ms. Catchings has displayed increasing psychological distress related to the reported loss of her belongings and experience of being forcibly removed from her home (Ms. Catchings' tent dwelling).  Ms. Catchings has clearly been impacted by the events on November 1st and she reported that her rights have been violated by the sanitation department which reportedly removed her belongings without her expressed permission. Further Ms. Catchings reported the "caseworkers at Homeless Healthcare, People Concern, LAHSA willfully failed to do their due diligence and broke confidences with [Ms. Catchings] by not being present during the event on November 1st and that LAHSA disobeyed the order from the state of California through the offices  city counsel member Gil Cedillo office" by removing her belongings.  Ms. Catchings has spent a great deal of time and energy in session expressing anger, frustration, anxiety, and escalation when discussing these issues which would indicate they have been traumatic for her.

Respectfully yous,

Amy Crowder, Psy.D.
Wavered Psychologist

*Psy.D.*

Supervisor:
Jamie Garis, Psy.D. PSY 17307

*a nonprofit agency*



*Catchings v.
California
Ex. 73*



Heritage Clinic

**Heritage Clinic**

447 N. El Molino Ave.
Pasadena, CA 91101
(626) 577-8480
Fax (626) 577-8978

3939 Atlantic Ave.
Suite 103
Long Beach, CA 90807
(562) 264-6001
Fax (562) 264-6006

155 N. Occidental Blvd.
Suite 243
Los Angeles, CA 90026
(213) 382-4400
Fax (213) 382-4494

1037 West Avenue N
Suite 205
Palmdale, CA 93551
(661) 575-9365
Fax (661) 575-9502

**CAPS Alzheimer's
Day Care Centers**

3740 E. Sierra Madre Blvd.
Pasadena, CA 91107
(626) 351-5427
Fax (626) 351-2308

2501 E. Cortez Street
West Covina, CA 91791
(626) 917-4484
Fax (626) 917-4475

**Website**
www.heritageclinic.org

To Whom it may concern,

This letter is on behalf of Dayna Catchings who has been a client with Heritage Clinic since her intake date of October 19th, 2017. I had my first session with Ms. Catchings on October 25th, 2017 and have seen Ms. Catchings in nineteen face-to-face therapy sessions to date. In our most recent session client showed me her most recent demure with clearly missing relevant and pertinent information in which she reported that she has taken responsibility for this missing information. In the time I have worked with Ms. Catchings she has discussed with me a number of experiences that have caused her a great deal of anxiety. Ms. Catchings initially presented as highly frustrated and agitated specifically regarding her history related to homelessness and the injustices she feels she has experienced related to these events below. I helped assist Ms. Catchings on November 1st, 2017 when her belongings were reportedly removed from the street by the sanitation department. Since the incident Ms. Catchings has displayed increasing psychological distress related to the reported loss of her belongings and experience of being forcibly removed from her home (Ms. Catchings' tent dwelling). Ms. Catchings has clearly been impacted by the events on and after November 1st and she reported that her rights have been violated by the sanitation department which reportedly removed her belongings without her expressed permission. Ms. Catchings has spent a great deal of time and energy in session expressing anger, frustration, anxiety, and escalation when discussing these issues which would indicate they have been traumatic for her. Further, Miss Catchings has expressed incidence of verbal assault from other residence in the shelter she was staying and and since has had the additional stressors of moving into a new residence while also managing financial issues and navigating complex social services. It is in my opinion that navigating these difficulties that Ms. Catchings usually acute attention to detail may have impacted.

Respectfully yous,

Amy Crowder, Psy.D.
Clinical Psychologist
PSY 30036

Supervisor:
Jamie Garis, Psy.D.
Clinical Psychologist
PSY 17307



*a nonprofit agency*

# LETTER OF INELIGIBILITY

Date: November 30, 2017

Dayna Catchings
447 E. El Molino Ave
Pasadena, CA 91101

Dear **Applicant:**

It was determined that you are not eligible for admission at <u>Parkview on the Park</u> Apartments, for the following reason(s):

**APPLICATION:**
- ☐ Incomplete application
- ☐ False information
- ☐ Insufficient references
- ☐ Family Composition

**CREDIT HISTORY:**
- ☐ Delinquent debts
- ☐ Excessive financial obligations
- ☐ Bankruptcy

**RENTAL HISTORY:**
- ☐ Unable to verify references
- ☐ Unable to obtain landlord reference
- ☐ Garnishment, repossession, law-suit, etc
- ☐ Unable to verify residence
- ☐ Unsatisfactory previous occupancy

**INCOME:**
- ☐ Unable to verify employment
- ☐ Unable to verify income
- ☐ Income over the maximum income limit

**IN HOME VISIT:**
- ☐ Poor House Inspection

**CRIMINAL RECORD:**
- ☐ Conviction within the last (5) years for any crimes involving physical violence to persons or property or illegal drug activity of any kind.
- ☐ Eviction of any household member within the last (3) years from federally assisted housing for drug related criminal activity.

☒ **OTHER:** <u>**You were not able to attend an Interview Appointment on Monday, 11/27/17; plus requesting for an appointment 2 weeks from now.   Please be informed we are moving forward.**</u>

You have the right to make a written request within 14 days of receipt of this notice to request a meeting to discuss your ineligibility status (*Note Persons with disabilities have the right to request reasonable accommodations to participate in the informal hearing process).
Send your inquiry to:

> Barker Management, Inc.
> P.O. Box 148
> Anaheim, CA 92815

Please be informed that we conform to all Local, State and Federal laws prohibiting discrimination against applicants wishing to rent an apartment, A response does not preclude any applicant from exercising their right to pursue other avenues if the applicant feels he/she is being discriminated against on the basis of race, color, religion, sex, handicap, familial status, or national origin. Thank you for your interest in our apartments.

_____
Authorized Agent

p.o. box 148, anaheim, ca. 92815-0148 – 1101 east orangewood ave., anaheim, california 92805
(714) 533-3450   (213) 628-1036   FAX (714) 533-8608



Catchings
v. California
Ex. 75



H e r i t a g e   C l i n i c

**Heritage Clinic**

447 N. El Molino Ave.
Pasadena, CA 91101
(626) 577-8480
Fax (626) 577-8978

3939 Atlantic Ave.
Suite 103
Long Beach, CA 90807
(562) 264-6001
Fax (562) 264-6006

155 N. Occidental Blvd.
Suite 243
Los Angeles, CA 90026
(213) 382-4400
Fax (213) 382-4494

1037 West Avenue N
Suite 205
Palmdale, CA 93551
(661) 575-9365
Fax (661) 575-9502

**CAPS Alzheimer's
Day Care Centers**

3740 E. Sierra Madre Blvd.
Pasadena, CA 91107
(626) 351-5427
Fax (626) 351-2308

2501 E. Cortez Street
West Covina, CA 91791
(626) 917-4484
Fax (626) 917-4475

**Website**
www.heritageclinic.org

December 7, 2017

Barker Management, Inc
P.O. Box 148
Anaheim, Ca 92815

Appeal Letter for letter of ineligibility
Re: Dayna Catching, SS# 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

To: Vichaka Tang

This letter is in support of Dayna Catchings, a client of our Full Service Partnership (FSP) program since October 19th, 2017. FSP is a program sponsored by the Los Angeles County Department of Mental Health that provides in-home psychotherapy, case management, and medication support (psychiatry). Ms. Catchings was referred to Heritage Clinic by Homeless Healthcare LA, an outreach team assisting Ms. Catchings with housing.

Ms. Catchings received a letter of ineligibility on on 11/30/2017 due to missing her housing interview appointment on 11/27/17 and requesting to reschedule for 2 weeks later. Ms. Catchings is asking that this decision be reconsidered due to missing her appointment due to circumstances outside of her control.

Client reports that in early November the police and sanitation department came out to the street she was sleeping in a tent and gave her "10 minutes" to remove all of her belongings or they would remove her belongings. Client reported that prior to that day she had received a notice from the court that her things were not to be taken and she would be left alone, but on the day the police and sanitation department came to remove her from the street they did not allow her to provide any documentation.

Client reports that she had notified the outreach team of the sanitation department coming out to remove her items from the street and had provided support for her a couple days prior to the incident; however, were not present on the day of the incident. Client reports that due to the lack of support on the day the sanitation department came to clean the street she lost most of her belongings, including clothing, her tent, and other items.

Client reports that due to the loss of her items she has had to replace clothing for the cold whether which has caused her to fall behind on her storage unit payment and has focused most of her attention and time on trying to get compensation for the personal items she lost so that she can pay the past due balance for her storage unit and prevent loss of more items.

*a nonprofit agency*



Catchings
v. California

Ex 16

# H e r i t a g e   C l i n i c

Furthermore, client would like to explain that the reason for missing the appointment for her housing interview was not due to being "irresponsible or sleeping in" but rather because she has been trying to prepare for a court hearing for an eviction and has also been trying to survive through her homeless status. Client is very interested in becoming housed but is asking for further assistance with allowing her to complete the application process in a more timely manner due to many challenges she faces as a homeless individual.

I appreciate your time in reviewing this appeal and if you have further questions please feel free to contact me at 626-577-8480 ext 0.

Sincerely,

Sandra Llamas, BA
MHRS

Jamie Garis, PsyD
FSP Program Director

*a nonprofit agency*

113

PLE Exhibit - twenty-three



**AHF DOWNTOWN HEALTHCARE CENTER**
1400 S. Grand Ave., Suite 801
Los Angeles, CA 90015
Tel  213.741.9727
Fax  213.741.0867

To whom it may concern,

Dayna Catchings (DOB 4/1/1952) is a patient of our clinic. Due to multiple chronic health conditions, as defined in the attached documents, we feel it would be beneficial for her to obtain housing, and that her medical condition would deteriorate if she were to be homeless. Please see the attached medication list, problem list, and recent progress note for documentation purposes. If there is further information that is required please contact our office.

D. Tellalian, MD

Medical Director

AIDS Healthcare Foundation

Date 1/6/2017

114

Catchings v.
Carl Jonnas

Fx 79

Ex.21s



# Certificate of Completion

is hereby granted to:

*Dayna Catchings*

Who has, with fortitude and strength, completed
her radiation treatment plan on this day,
The 19th of November 2015.

**ADVANCED**
radiation center
of beverly hills

Ex 21s

Doc# 1 Page# 153 - Doc ID = 1724336029 - Doc Type = OTHER

115

catchings
v. californer
Ex 8

*EX. 27A*

## IN-HOME SUPPORTIVE SERVICES (IHSS) PROGRAM HEALTH CARE CERTIFICATION FORM

| Applicant/Recipient Name:<br>CATCHINGS, DAYNA | IHSS Case #:<br>0845380 |
| --- | --- |

### C. HEALTH CARE INFORMATION (To be completed by a Licensed Health Care Professional Only)

**NOTE: ITEMS #1 & 2 (AND 3 & 4, IF APPLICABLE) _MUST BE COMPLETED AS A CONDITION OF IHSS ELIGIBILITY._**

| | |
| --- | --- |
| 1. Is this individual **unable** to independently perform one or more activities of daily living (e.g., eating, bathing, dressing, using the toilet, walking, etc.) or instrumental activities of daily living (e.g., housekeeping, preparing meals, shopping for food, etc.)? *May need assistance if side effects are severe.* | ☑ YES ☐ NO |
| 2. In your opinion, is one or more IHSS service recommended in order to prevent the need for out-of-home care (See description of IHSS services on Page 1)? | ☑ YES ☐ NO |

*If you answered "NO" to either Question #1 OR #2, skip Questions #3 and #4 below, and complete the rest of the form including the certification in PART D at the bottom of the form.*

*If you answered "YES" to both Question #1 AND #2, respond to Questions #3 and #4 below, and complete the certification in PART D at the bottom of the form.*

| | |
| --- | --- |
| 3. Provide a description of any physical and/or mental condition or functional limitation that has resulted in or contributed to this individual's need for assistance from the IHSS program:<br><br>*Patient will be receiving daily radiation treatments for prostate cancer. Side effects during treatment may include fatigue, urinary frequency, incontinence, diarrhea, infection or constipation.* | |
| 4. Is the individual's condition(s) or functional limitation(s) expected to last at least 12 consecutive months? | ☐ YES ☑ NO |

*Please complete Items #5 - 8, to the extent you are able, to further assist the IHSS worker in determining this individual's eligibility.*

5. Describe the nature of the services you provide to this individual (e.g., medical treatment, nursing care, discharge planning, etc.):

6. How long have you provided service(s) to this individual?

7. Describe the frequency of contact with this individual (e.g., monthly, yearly, etc.):

8. Indicate the date you last provided services to this individual:  ____ / ____ / ____

**NOTE:  THE IHSS WORKER MAY CONTACT YOU FOR ADDITIONAL INFORMATION OR TO CLARIFY THE RESPONSES YOU PROVIDED ABOVE.**

### D. LICENSED HEALTH CARE PROFESSIONAL CERTIFICATION

By signing this form, I certify that I am licensed in the State of California and/or certified as a Medi-Cal provider, and all information provided above is correct.

| Name:<br>Rosalyn Morrell | Title:<br>Physician |
| --- | --- |
| Address:<br>8929 Wilshire Blvd, Suite 100, Beverly Hills, CA 90211 | |
| Phone #:<br>424-249-7500 | Fax #:<br>424-249-7609 |
| Signature:<br>*Rosalyn Morrell, M.D.* | Date:<br>9-11-15 |
| Professional License Number:<br>A109788 | Licensing Authority:<br>Medical Board of California |

PLEASE RETURN THIS FORM TO THE IHSS WORKER LISTED ON PAGE 1.

SOC 873 (11/11)    PAGE 2 OF 2

*Catchings*
*California*
*EX-81*

116



**UROLOGY GROUP OF SOUTHERN CALIFORNIA**
JOHN J. KOWALCZYK, D.O., F.A.C.O.S. – ABBEY B. GASKE, M.D.

*Ex 1c*

December 27, 2016

Re: Catchings, Dayna
DOB: 04/01/1952

To Whom It May Concern:

Ms. Dayna Catchings has been diagnosed with cancer of the prostate. This causes frequent outpatient office visits and continued treatment. It would be beneficial to the patients health if there were permanent housing.

If you have any further questions or concerns please call my office (213)977-1176.

John J. Kowalczyk, D.O., F.A.C.O.S.



Catchings v.
California
Ex 82





**Notice of Authorization for Medical Services**

**12/05/2016**

DAYNA CATCHINGS                                                          Member ID:820991694
306 LOMA DR APT 519
LOS ANGELES, CA 90017, UNITED STATES

Dear DAYNA R CATCHINGS:

PHP (HMO SNP) has approved the referral request from IRIELE, CLIFFORD I. for you to get the medical services described from the provider(s) below:

| Approved Service | Approved Provider | Phone |
|---|---|---|
| PSYCH DIAG EVAL W/MED SRVCS | IRIELE, CLIFFORD I | 213-483-0246 |

If you have not contacted the provider(s) above to make an appointment, please do so now. The approval for these services expires on 04/05/2017.

Only the services above are approved. If you need more services, your provider(s) will need to contact us to get another approval.

If you have questions about this referral, please contact IRIELE, CLIFFORD I at 213-483-0246

If you have any questions about this approval, please call Member Services at (800) 263-0067. TTY users should call 711. We are open 8:00 a.m. to 8:00 p.m., seven days a week.

PHP is an HMO plan with a Medicare contract. Enrollment in PHP depends on contract renewal.

This information is available for free in other languages. Please call our Member Services number at (800) 263-0067. 8:00 a.m. to 8:00 p.m., seven days a week.

Esta información está disponible de forma gratuita en otros idiomas. Por favor, llame a nuestro número del Departamento de servicios para miembros a (800) 263-0067. 8:00 a.m. hasta 8:00 p.m., siete días a la semana.

MEMBER SERVICES P.O. Box 46160, Los Angeles, CA 90046 • (800) 263-0067 • TTY 711 • www.php-ca.org

Catchings
v. California
Ex 83





*Item 81 - PL8 82*



**CLIFFORD I. IRIELE, M.D., INC.**
*Psychiatrist*



1711 W. Temple Street, Suite 6642
Los Angeles, CA 90026
Telephone: (213) 483-0246
Fax: (213) 483-0249

To whom it may concern,

RE: Catchings, Dayna

The above named attends my clinic for her anxiety disorder.

Currently, she is taking Wellbutin SR 100mg PO daily ,Klonopin 0.5 mg PO  Q 120 prx.
Patients last visit was on 06/21/17.

Please, direct your questions to (213)483-0246.

Dr.Iriele

*179*

*Catchings v.
California
Ex.84*



CLIFFORD I. IRIELE, M.D., INC.
CLIFFORD I. IRIELE, M.D.
1711 W Temple Street, Suite 6642, Los Angeles, CA  90026
(213) 483-0246
Fax (213) 483-0249

110315/A24493   #003641

LIC# A102196
DEA # F1074515

THIS DOCUMENT CONTAINS VOID PANTOGRAPH, MICROPRINT PEN LINE, QUANTITY, RX SECURITY LAYERS ARE NOT OBVIOUS. THE HIGH TECH OF REALISTIC, SECURITY FEATURES...

Name  Cofcd ng Dong As  Date 2/2/

Address

☐ 1-24
☐ 25-49
☐ 50-74
☐ 75-100
☐ 101-150
☐ 151 and over

Units

Wellbutrin 75mg - qd
#30

Clonidine 0.1 mg #30

Refill NR 1 2 3 4 5
Void after ____
☐ Do Not Substitute-Dispense As Written
SP01          Prescription is void if the number of drugs prescribed is not noted:

Signature

120

Cofchrngs
v astifornin
Ex.85

# THE DOCTOR'S
## Physician's Statement & Recommendation

California Health and Safety Code Section 11362.5

| Patient Name: | DAYNA R CATCHINGS | I.D. No: | D1467938 |
|---|---|---|---|
| Recommendation Identification No: | 2445 6366 0102 6528 | | |
| Date of issue: | 02/11/2016 | Date of Expiration: | 02/10/2017 |

The purpose of this medical document is to identify the individual indicated above as a patient whose possession and/or cultivation of medical cannabis is permissible pursuant to California Health and Safety Code Section 11362.5, Compassionate Use Act of 1996 (i.e., Prop 215) and Senate Bill 420.

This document affirms the fact that the patient whose name is indicated above has undergone an examination and evaluation whereby the physician, who is licensed to practice medicine in the State of California and whose name and license number are indicated below recommends that the above mentioned patient qualifies for the use of cannabis for medical purposes under California Health and Safety Code Section 11362.5, Compassionate Use Act of 1996 (i.e., Prop 215) and Senate Bill 420. The physician acts only as a consultant and not a primary care provider. The patient affirms the fact that the potential medical benefits and risks of cannabis use were discussed during the evaluation. The patient further affirms the fact that they have been informed not to drive, operate heavy machinery or engage in any activity that requires alertness while using medical marijuana. The patient assumes full responsibility for any and all risks associated with this treatment option.

| 24 Hour Telephone Verification: | (213) 631-3990 |
|---|---|
| On-Line Verification: | http://verifymyrec.com |

This patient hereby authorizes this office to discuss the nature of their condition(s) and the information contained in this document only for verification purposes. This is a non-transferable document. This document is the property of the physician indicated on this document and can be revoked at any time without notice. Void after date of expiration, if altered or misused. Please direct all questions to the office that issued this recommendation.

By signing below, I confirm that I have been advised and fully understand that the daily and prolonged use of Medical Marijuana (i.e., Cannabis) in any form may cause damage to any of the organs and cells of the human body.

I understand that this recomendation is valid ONLY in the State of California and is void if used across state lines.

| Physician Signature: | Patient Signature: |
|---|---|

**Physician's Information**

HOWARD K RAGLAND M.D.
State of CA. License No: A51837
1439 N. HIGHLAND AVE.
HOLLYWOOD, CA, 90028
(323) 463-5000 - Main line
(323) 366-2968 - Fax
therecommendationstation@gmail.com

Powered by
MediBook
system





ℓ.  +PACkET E
EX ID

**SBSS**

St. Barnabas Senior Services
Live Well · Feel Well · Age Well

February 17, 2017

To whom it may concern,

I am writing this letter to inform all parties of the incident that happen on February 14, 2017 at 12pm in our center located at 675 S Carondelet St. Los Angeles, CA 90057. Ms. Catchings comes to our center daily to get a meal and stay out of the harsh weather outside. On this day, Ms. Catchings was in the dining room finishing her meal when the seniors around her noticed her slowly tipping sideways on her chair. Our senior director Gordon Gibb was called to the scene to assist further. With Ms. Catchings permission the paramedics were called to assess her and give her treatment. When the EMTs arrived to our center they found Ms. Catchings conscious but her breathing was faint. Ms. Catchings mentioned feeling dizzy, difficulty breathing and sweating. EMTs checked Ms. Catchings vitals but were very faint 90/60. EMTs spoke of Ms. Catchings possibly being dehydrated and would need to start IV. EMTs took Ms. Catchings into the van for further assessment. After their assessment Ms. Catchings was taken to Good Samaritan Hospital at 12:35pm. Ms. Catchings called me later to inform me she was admitted and was having tests done. Doctor decided to keep her overnight to continue monitoring her. Ms. Catchings called me Thursday February 16, 2017 to let me know she would be staying in her tent to rest because she was not feeling well. Ms. Catchings came down today to the center and appeared to be feeling better.

Thank you,

Maria De Leon, BSW
Case Manager/ Care Manager for BALLAD
St. Barnabas Senior Services (Mid-City)
675 S. Carondelet St.
Los Angeles, CA 90057
Tel: 213-388-4444 ext 228
Fax: 213-738-9467
Email: mdeleon@sbssla.org

675 S. Carondelet Street Los Angeles · California 90057-3309
Telephone (213) 388-4444 Fax (213) 739-2972 E-mail info@sbssla.org
www.sbssla.org

Catchings
v. CalVeterans
EX.89

122

PLE-58

**Good Samaritan Hospital**
**Department of Diagnostic Imaging Service**
**1225 Wilshire Blvd., Los Angeles, CA  90017-2395**
**(213) 977-2140  Fax: (213) 977-2149**

*Diagnostic Radiology Consultation Report*

**PATIENT NAME:  CATCHINGS,DAYNA**                    **PT ACCT.#:  V00018645333**

**ADMITTING DX:  RA 6 WEAK**              **ORDER DATE: 02/14/17**
                                          **REPORT DATE:  02/14/17**

PROCEDURE: XR Chest.

CLINICAL INDICATION: Chest pain.

TECHNIQUE: Single frontal radiograph.

COMPARISON: None.

FINDINGS:
No focal consolidation, pneumothorax, or pleural effusions.

Heart size is within normal limits.

There are aortic calcifications.

IMPRESSION:
No acute cardiopulmonary process.

RPTAT: EE

*** Final ***
Dictated By: CHOI, EUGENE ()
Signed By: CHOI, EUGENE (02/14/2017 14:37)

ELECTRONICALLY SIGNED BY

Eugene K. Choi MD

S: 02/14/17 1437

Attend:
Admit:
Primary: NS
Ordering:Shin, Yong S NP
Family:
Other:

Patient: CATCHINGS,DAYNA
Unit #: M000316662
Acct #: V00018645333
DOB:    04/01/1953
Room:
Location: ELCHU
Order No: 0214-0047
Report No:0211-6174



123 



PLE - 59

**Good Samaritan Hospital**
**Department of Diagnostic Imaging Service**
**1225 Wilshire Blvd., Los Angeles, CA  90017-2395**
**(213) 977-2140  Fax: (213) 977-2149**

*Diagnostic Radiology Consultation Report*

PATIENT NAME:  CATCHINGS,DAYNA                          PT ACCT.#: V00018645333

ADMITTING DX:  RA 6 WEAK              ORDER DATE:  02/14/17
                                     REPORT DATE:  02/14/17

PROCEDURE: CT Brain without contrast.

CLINICAL INDICATION: Syncope

TECHNIQUE: Helical axial CT the brain was obtained without contrast and reformatted in multiple planes. Total dose DLP is 792.9 mGycm. One of the following dose reduction techniques was utilized: automated exposure control, adjustment of the mA and/or kV, or iterative reconstruction.

COMPARISON: None

FINDINGS:

Brain: Mild atrophy and minimal multifocal white matter chronic ischemic change present. No acute hemorrhage or mass effect
Ventricles: Unremarkable. No ventriculomegaly.
Bones/Scalp: No acute fracture.

Sinuses: Unremarkable as visualized. No acute sinusitis.
Mastoid air cells: Unremarkable as visualized. No mastoid effusion.
Other: None.

IMPRESSION:
Atrophy and chronic ischemic change without acute hemorrhage or mass effect.

RPTAT:AAHH

*** Final ***
Dictated By: WALLACE, ERIC ()
Signed By: WALLACE, ERIC (02/14/2017 14:11)

ELECTRONICALLY SIGNED BY

Eric Wallace MD

S: 02/14/17 1411

Attend:                                    Patient: CATCHINGS,DAYNA
Admit:                                        Unit #: M000316660
Primary: Dr                                   Acct #: V00018645333
Ordering: Shin, Ying S NP                       DOB:   04/01/1952
Family:                                      Location: 2DCDU
Other:                                        Room:
                                            Order No: 0214-0223
                                           Report No: 0214-0159

Catchings
v.
California

Ex 89

124 

Name: CATCHINGS, DAYNA
MedRec: M000916662
AcctNum: V000186645333
CONDITIONS OF ADMISSIO
Tue Feb 14, 2017 15:28
Page 004

FORM 8-1

# CONDITIONS OF ADMISSION

Patient's Name: _____                    CATCHINGS DAYNA

## CONSENT TO MEDICAL AND SURGICAL PROCEDURES

I consent to the procedures that may be performed during this hospitalization or while I am an outpatient. These may include, but are not limited to, emergency treatment or services, laboratory procedures, X-ray examinations, medical or surgical treatment or procedures, telehealth services, anesthesia, or hospital services provided to me under the general and special instructions of my physician or surgeon. I understand that the practice of medicine and surgery is not an exact science and that diagnosis and treatment may involve risks of injury or even death. I acknowledge that no guarantees have been made to me regarding the result of examination or treatment in this hospital.

## NURSING CARE

This Hospital provides only general nursing care and care ordered by the physician(s). If I want a private duty nurse, I agree to make such arrangements. The Hospital is not responsible for failure to provide a private duty nurse and is hereby released from any and all liability arising from the fact that the hospital does not provide this additional care.

## LEGAL RELATIONSHIP BETWEEN HOSPITAL AND PHYSICIANS

All physicians and surgeons providing services to me, including the radiologist, pathologist, emergency physicians, anesthesiologist and others, are not employees, representatives or agents of the hospital. They have been granted the privilege of using the hospital for the care and treatment of their patients, but they are not employees, representatives or agents of the hospital. They are independent practitioners.

Patient's initials: _____

I understand that I am under the care and supervision of my attending physician. The Hospital and its nursing staff are responsible for carrying out my physician's instructions. My physician or surgeon is responsible for obtaining my informed consent, when required, to medical or surgical treatment, special diagnostic or therapeutic procedures, or hospital services provided to me under my physician's general and special instructions.

## MATERNITY PATIENTS

If I deliver an infant(s) while a patient of this hospital, I agree that these same Conditions of Admissions apply to the infant(s).

## PERSONAL BELONGINGS

As a patient, I am encouraged to leave personal items at home. The hospital maintains a fireproof safe for the safekeeping of money and valuables. The hospital is not liable for the loss or damage to any money, jewelry, documents, eyeglasses, dentures, hearing aids, cell phones, laptops, other personal electronic devices, or other articles that are not placed in the safe. Hospital liability for loss of any personal property deposited with the hospital for safekeeping is limited by law to five hundred dollars ($500) unless I receive a written receipt for a greater amount from the hospital.

Good Samaritan Hospital
1225 Wilshire Blvd.
Los Angeles, CA 90017

FOR PRINTER

# CONDITIONS OF ADMISSION

V000186645333
M000916662
CATCHINGS DAYNA

MR08-177 (REV 04/14)          PAGE 1 OF 1



Catchings
Conform 154
Ex. 91

125

# LEAVING HOSPITAL AGAINST MEDICAL ADVICE

PLE - 60

Patient's Name: _____

I am voluntarily leaving the hospital against the advice of Dr. _____ and a representative of the hospital administration.

I have been told by the doctor about the risks and consequences involved in leaving the hospital at this time, the benefits of continued treatment and hospitalization, and the alternatives, if any, to continued treatment and hospitalization.

I hereby release the doctor, any other doctors involved in my care, the hospital and its employees and agents, from all responsibility for any injury or ill effects which may result from this action.

I understand that the doctor named above and other doctors who provide services to me are not employees or agents of the hospital. They are independent medical practitioners.

Date: _____ Time: _____ AM/PM

Signature: _____
                          (patient/parent/conservator/guardian)

If signed by other than the patient, indicate relationship: _____

Witness: _____

_____

I declare that I have personally explained to the patient the risks and consequences involved in leaving the hospital at this time, the benefits of continued treatment and hospitalization, and the alternatives, if any, to continued treatment and hospitalization.

Remarks: _____

_____

_____

Date: _____ Time: _____ AM/PM   Signature: _____
                                                                        (physician)

---

Good Samaritan Hospital
1225 Wilshire Blvd.
Los Angeles, CA 90017

IMPRINTER

**LEAVING HOSPITAL AGAINST
MEDICAL ADVICE**

MR91093 (REV 05 13)

VC00018645333  02/14/17  F  64
M000916662   DOB  04/01/1952
CATCHINGS, DAYNA
ATT  Mohip Anil MD



126

# AUTHORIZATION TO RELEASE INFORMATION

**EXPLANATION:**

☐ This authorization for use or disclosure of medical information is being requested of you to comply with the terms of the Confidentiality of Medical Information Act of 1981, Section 56 et. seq., California Civil Code.

☐ This authorization for use or disclosure of the results of a blood test to detect antibodies to the Human Immuno-deficiency Virus (HIV), the probable causative agent of Acquired Immune Deficiency Syndrome (AIDS), is being requested of you to comply with terms of the Confidentiality of Medical Information Act, Civil Code Section 56 et.seq. and Health Safety Code Section 199.21(g).

**AUTHORIZATION:** I hereby authorize my records to be released to:

Name of Requestor: _____

Address: _____

City/Zip: _____

**RESTRICTIONS:** (Please initial on the appropriate lines below)

☐ This consent is subject to revocation by the undersigned at any time expect to the extent that action has been taken in reliance hereon, and if not earlier revoked, it shall remain in effect until _____ (Date).

☐ I hereby consent to the release of any and all records containing alcohol and/or drug abuse and/or psychiatric diagnosis under the same consideration as outlined above. I understand that such information cannot be released without my specific consent, except in accordance with a court order.

☐ I understand that I have a right to receive a copy of this authorization upon my request.
Copy requested/received: ☐ Yes  ☐ No  Initial_____

☐ I understand that the requestor may not further use or disclose this medical information unless authorization is obtained from me or unless disclosure is specifically required or permitted by law.

**USES:**

The requestor may use the information for any purpose subject only to the following limitations: _____

_____

**INFORMATION REQUESTED:**

☐ Discharge Summary          ☐ History and Physical          ☐ Other: _____

☐ Operative Report          ☐ Consultation Report          ☐ Other: _____

☐ Results of Blood Test for Antibodies to the HIV

**SIGNATURE:**  Signed: _____  Date: _____
*(Patient Legal Representative Spouse)*

**PATIENT INFORMATION TO LOCATE RECORDS:** *(Please Print)*

Patient Name _____          AKA: _____

Address _____          Phone: (_____) _____

_____          Date of Birth: _____

Date Treatment Dept.: _____          Social Security No.: _____

---

Good Samaritan Hospital
1225 Wilshire Blvd.
Los Angeles, CA 90017                    IMPRINTER

## AUTHORIZATION TO RELEASE INFORMATION



127

Catching
v.
Californ...
EX 93

Patient should retain pink copy
Original-Medical Records • Yellow-Receiving Party • Pink-Patient

**GOOD SAMARITAN HOSPITAL**
**EMERGENCY RECORD**

CATCHINGS, DAYNA
DOB: 4/1/1952 F64
Wt/Ht: 86.18 Kg 187.96 cm.
MedRec: M000916662
AcctNum: V00018645333

─────────────── Patient Data ───────────────

**Complaint:** RA 6 WEAK
**Triage Time:** Tue Feb 14, 2017 12:48
**Urgency:** ESI 3
**Bed:** ED ED3
**Initial Vital Signs:** 2/14/2017 12:43
  **BP:**89/54
  **MAP:**
  **T:**97.7 (ORAL)
  **Pain:**0

**ED Attending:** Truong, DO, Tammy
**Primary RN:** Torrecampo, Toni

**R:**18 (NON−LABORED)
**P:**54
**O2 sat:**99 on (ROOM AIR)
**End−Tidal CO2:**

**ALLERGY** (12:49 DAH)
*No Known Drug Allergies*

**COMMUNICATIONS**
*COMMUNICATIONS:* Notes: **CALLED AIDS HEALTHCARE FOUNDATION, AT 800 474 1434 SPOKE WITH EVELYN, SHE TRANSFER TO BEVERLY BROWN, LEFT MESSAGE FOR HER TO CALL BACK.** (14:53 IRA)
Notes: **CALLED AIDS FOUNDATION, SPOKE WITH BEVERLY BROWN, CARE MANAGER, GAVE VERBAL AUTHO. TO ADMIT, REQUESTED FACESHEET TO BE FAX AT 888 238 7463.** (15:16 IRA)
Physician, contacted/paged at 323 573 2022 AT 1636, ANIL MOHIN, Reason for notification CONSULTANT, Returned call at 1636, NP YONG−SOON, SPOKE WITH DR. MOHIN REGARDING PATIENT. (16:37 IRA)

**TRIAGE** (Tue Feb 14, 2017 12:48 DAH)
*TRIAGE NOTES:* **NEAR SYNCOPAL, WEAKNESS, FATIGUE, HYPOTENSIVE (88/60, HR 94) ON SCENE PER EMS**
  **BG IN FIELD: 88 MG/DL**
  **NKDA**
  **MALE TO FEMALE TRANSGENDER**
  **PMH: PROSTATE CA.** (Tue Feb 14, 2017 12:48 DAH)
*PATIENT:* AGE: 64, GENDER: female, DOB: Tue Apr 01, 1952, TIME OF GREET: Tue Feb 14, 2017 12:41, PREFERRED LANGUAGE: ENGLISH, ETHNICITY: NON HISPANIC, Zip Code: 90017, KG WEIGHT: 86.18, HEIGHT/LENGTH: 187.96cm, BMI: 24.39, PHONE: (323)373−5355, MEDICAL RECORD NUMBER: M000916662, ACCOUNT NUMBER: V00018645333, PAYMENT: OTHER HMO SENIOR, Primary Care: MORRELL, ROSELYN. (Tue Feb 14, 2017 12:48 DAH)
(14:57)
NAME: Catchings, Dayna. (18:04 TONI)
NAME: Catchings, Dayna. (18:04 TONI)
*COMPLAINT:* RA 6 WEAK. (Tue Feb 14, 2017 12:48 DAH)
*ADMISSION:* URGENCY: ESI 3, ADMISSION SOURCE: WORK, TRANSPORT: ALS−RA 6, BED: WAITING. (Tue Feb 14, 2017 12:48 DAH)
*TRIAGE SCREENINGS:* No suicidal ideation indicated, Patient denies presence of domestic violence, nutritional screen completed, Denies problems, Pregnancy Screen, Not Applicable, patient is male, No, a dysphagia screen is not indicated. (18:04 TONI)
*DVT RISK ASSESSMENT:* Patient's age group is >61 (4 pts), Patient is ambulatory (0 pts), Patient has no trauma (0 pts), Patient has no high risk diseases (o pts), Patient has a BMI of 19−25 Ideal/Average (1 pts), Patient has had No Surgery (0 pts), Patient is at no risk for DVT. (18:04 TONI)
*VITAL SIGNS:* BP: 89/54, Pulse: 54, Resp: 18 (NON−LABORED), Temp: 97.7 (ORAL), Pain: 0, O2 sat: 99 on (ROOM AIR), Time: 2/14/2017 12:43. (12:43 DAH)

**MEDICATION SERVICE**
*sodium chloride 0.9 % intravenous:* Order: sodium chloride 0.9 % intravenous (0.9 % sodium chloride) − **Dose:** 1 L : IV−HYDRATION



─────────────────────────────────────────────
| Prepared: Fri Feb 17, 2017 09:07 by GONM | Page: 1 of 12 |

**GOOD SAMARITAN HOSPITAL**
**EMERGENCY RECORD**

CATCHINGS, DAYNA
DOB: 4/1/1952 F64
Wt/Ht: 86.18 Kg 187.96 cm.
MedRec: M000916662
AcctNum: V00018645333

Ordered by: Yong S Shin, NP
Entered by: Yong S Shin, NP Tue Feb 14, 2017 13:03 ,
Acknowledged by: Vaiyani, PHARMD Sana Tue Feb 14, 2017 13:05
Documented as given by: Toni Torrecampo Tue Feb 14, 2017 14:10
Patient, Medication, Dose, Route, Schedule, Notes verified prior to administration., Amount given:
1000 mL, IV SITE #1 into left antecubital, IV SITE #1 IV fluids established, IV SITE #1 1st bag hung,
amount 1 Liter, IV SITE #1 bolus of 1000 ml established, IV SITE #1 Rate of bolus, wide open, via
primary tubing, Connections checked prior to administration, Line traced prior to administration,
Catheter placement confirmed via flush prior to administration, IV site without signs or symptoms of
infiltration during medication administration, No swelling during administration, No drainage during
administration, IV flushed after administration, Correct patient, time, route, dose and medication
confirmed prior to administration, Patient advised of actions and side-effects prior to
administration, Allergies confirmed and medications reviewed prior to administration.
: *Follow Up :* No signs or symptoms of allergic reaction noted, _IV SITE #1:_, IV fluid infusion
discontinued, on Tue Feb 14, 2017 15:40, Total fluid hydration time IV site 1 1 hour, 30 minutes, ., Total
amount infused: **1000**, IV Line flushed after administration. (15.40 TONI)

## EVENTS

*ATTENDING:* Truong, DO, Tammy saw and examined the patient at the time specified at the top
of the attending sectionTue Feb 14, 2017 13:15. (13:15 TAT)
*DOCTOR EXTENDER:* Shin, NP, Yong SI saw and examined the patient at the time specified at
the top of the attending sectionTue Feb 14, 2017 13:00. (13:00 SHI)
Shin, NP, Yong SI saw and examined the patient at the time specified at the top of the attending
sectionTue Feb 14, 2017 13:00. (13:00 SHI)
*TRANSFER:* Triage to Emergency WAITING. (12:48 DAH)
Emergency WAITING to ED 3 _01A. (13:00 SHI)
Removed from Emergency ED 3 _01A. (20:23 KES)

## PRESENTING PROBLEM (12:48 DAH)

Presenting problems: Syncope/Near Syncope.

## HPI SYNCOPE (13:05 SHI)

*HISTORY OF PRESENT ILLNESS:* 65 Y/O TRANSGENDER FEMALE PRESENTS TO ED
FOR NEAR SYNCOPAL EPISODE. WAS HYPOTENSIVE 88/60 AT FIELD. 89/54 AT TRIAGE. C/O
LIGHTHEADEDNESS, GENERAL WEAKNESS. DENIES FEVER, CHILLS, SOB, CP, N/V/D,
HEADACHE, BLURRED VISION, FOCAL NEURO DEFICIT. *CHIEF COMPLAINT:* **Patient
presents for evaluation of near syncope.** *HISTORIAN:* History provided by patient.
*LOCATION:* No localizing symptoms. *QUALITY:* **Symptom quality described as
lightheadedness**, Denies vertigo, Denies dizziness. *SEVERITY:* **Maximum severity of
pain rated as 10/10**, Current severity of pain rated as 0/10. *TIME COURSE:* **Sudden onset
of symptoms, just prior to arrival.** *ASSOCIATED WITH:* No associated abdominal pain,
No associated back pain, No associated change in speech, No associated chest pain.
*EXACERBATED BY:* **Patient's condition exacerbated by position.** *RELIEVED BY:*
Patient's condition relieved by rest. *WELLS CRITERIA FOR PE:* No clinical signs and
symptoms of a DVT (0), Patient's heart rate is less than 100 (0), Patient has no history of
immobilization within 3 days, nor any surgical history within the past 4 weeks (0), Patient has not had
an objectively diagnosed PE or DVT previously (0), Patient does not have hemoptysis (0), Patient
has not had treatment for malignancy within the last 6 months, nor palliative (0).

## PAST MEDICAL HISTORY (13:10 SHI)

*MEDICAL HISTORY:* Notes: **TRANSGENDER, Past medical history includes history
of malignancy, primary site prostate, treated with radiation**, treated with surgery.
*SURGICAL HISTORY FEMALE:* **TURP.**
*PSYCHIATRIC HISTORY:* No previous psychiatric history.

**GOOD SAMARITAN HOSPITAL**
**EMERGENCY RECORD**

CATCHINGS, DAYNA
DOB: 4/1/1952 F64
Wt/Ht: 86.18 Kg 187.96 cm.
MedRec: M000916662
AcctNum: V00018645333

*SOCIAL HISTORY:* Patient has no smoking history, Patient denies alcohol use, Patient denies drug use.
*NOTES:* Nursing records reviewed, Agree with nursing records.

## CURRENT MEDICATIONS
*lisinopril:*
   **Patient Dose:** Unknown. (12:50 DAH)
*lansoprazole:*
   **Patient Dose:** Unknown. (12:51 DAH)

## ROS (13:10 SHI)
*CONSTITUTIONAL:* Historian denies chills, **Historian reports fatigue**, Historian denies fever, **Historian reports malaise, weakness.**
*EYES:* Historian denies eye pain, eye redness, nystagmus, photophobia, vision changes.
*ENT:* Historian denies drooling, dysphagia, dysphonia, hearing changes, otalgia, sinus pain, sore throat, tinnitus.
*CARDIOVASCULAR:* Historian denies chest pain, no radiation, Historian denies edema, orthopnea. **HAD NEAR SYNCOPAL EPISODE.**
*RESPIRATORY:* Historian denies cough, cyanosis, shortness of breath.
*GI:* Historian denies abdominal pain, diarrhea, melena, nausea, vomiting.
*MUSCULOSKELETAL:* Historian denies deformity.
*SKIN:* Historian denies skin changes.
*NEUROLOGIC:* Historian denies focal weakness.
*ENDOCRINE:* Historian denies skin changes.

## PHYSICAL EXAM
*CONSTITUTIONAL:* Vital Signs Reviewed, Patient afebrile, **Pulse, bradycardic, Blood pressure, hypotensive,** Respiratory rate normal, Patient appears non toxic, Patient appears pain free, Patient alert and oriented to person, place and time. (13:10 SHI)
*HEAD:* Head exam included findings of head atraumatic, normocephalic. (13:10 SHI)
*EYES:* Pupils equally round and reactive to light, Left pupil 2 mm in size, Right pupil 2 mm in size, Extraocular muscles intact, Conjunctiva normal, Sclera normal, no nystagmus. (13:10 SHI)
*ENT:* Ear exam normal, external ear normal, tympanic membranes normal, Nose exam normal, **Pharynx, injected bilaterally,** no swelling, symmetrical, Tonsil exam normal, not enlarged, no exudates, Mouth exam normal, mucous membranes moist, Sinus exam included findings of frontal sinuses normal, no tenderness, maxillary sinuses normal, no tenderness. (13:34 SHI)
*NECK:* no meningeal signs, **neck supple.** (13:10 SHI)
*RESPIRATORY CHEST:* Respiratory exam included findings of no respiratory distress, Breath sounds clear, Chest exam included findings of chest movement symmetrical, no tenderness. (13:10 SHI)
*CARDIOVASCULAR:* Cardiovascular exam included findings of heart rate regular rate and rhythm, Heart sounds normal. (13:10 SHI)
*ABDOMEN FEMALE:* Bowel sounds normal, **Abdominal exam included findings of abdomen nontender, no distension.** (13:10 SHI)
*BACK:* Back exam included findings of normal inspection. (13:10 SHI)
*UPPER EXTREMITY:* Radial pulse normal, no edema. (13:10 SHI)
*LOWER EXTREMITY:* Pedal pulse normal, no edema. (13:10 SHI)
*NEURO:* Neuro exam findings include patient oriented to person, place and time, Speech normal, Glasgow coma scale 15, Memory normal, Cranial nerves intact, no focal motor deficits, no focal sensory deficits. (13:10 SHI)
*LYMPHATIC:* Lymphatic exam included findings of cervical nodes normal, Submandibular normal, Tonsillar nodes normal, Occipital nodes normal. (13:36 SHI)
*SKIN:* Skin exam included findings of skin warm, dry. (13:10 SHI)

| Prepared: Fri Feb 17, 2017 09:07 by GONM | Page: 3 of 12 |
| --- | --- |



CATCHINGS, DAYNA
DOB: 4/1/1952 F64
Wt/Ht: 86.18 Kg 187.96 cm.
MedRec: M000916662
AcctNum: V00018645333

# GOOD SAMARITAN HOSPITAL
# EMERGENCY RECORD

## MEDICATION ADMINISTRATION SUMMARY

| Drug Name | Dose Ordered | Route | Status | Time |
|---|---|---|---|---|
| sodium chloride 0.9 % intravenous | 1 L | IV-HYDRATION | Given | 14:10 2/14/2017 |

Detailed record available in Medication Service section.

## EKG INTERPRETATION (13:29 TAT)

*12 LEAD EKG INTERPRETATION:* 12 lead EKG interpreted by Emergency Department Physician, The EKG is used to help diagnose the presence or absence of cardiac disease, **RATE 57 , SR, AXIS: normal, no ST elevation, PR/QRS/QT intervals: wnl.**

## RADIOLOGY INTERPRETATION (18:00 SHI)

*INTERPRETER:* Preliminary review of x-rays by, Radiologist, Preliminary review of CT scans by, Radiologist.
*HEAD:* Head CT negative, without contrast, Atrophy and chronic ischemic change without acute hemorrhage or mass effect.
*CHEST:* Chest films negative, No acute cardiopulmonary process.

## RESULTS

*RADIOLOGY:* CR Observe DT: Tue Feb 14, 2017 13:05,
CXR1 PROCEDURE: XR Chest. CLINICAL INDICATION: Chest pain. TECHNIQUE: Single frontal radiograph. COMPARISON: None. FINDINGS: No focal consolidation, pneumothorax, or pleural effusions. Heart size is within normal limits. There are aortic calcifications. IMPRESSION: No acute cardiopulmonary process. RPTAT: EE *** Final *** Dictated By: CHOI, EUGENE () Signed By: CHOI, EUGENE (02/14/2017 14:37) . (17:33 TAT)

*CAT SCAN:* CT Observe DT: Tue Feb 14, 2017 13:08,
CTBRAIN3 PROCEDURE: CT Brain without contrast. CLINICAL INDICATION: Syncope TECHNIQUE: Helical axial CT the brain was obtained without contrast and reformatted in multiple planes. Total dose DLP is 792.9 mGycm. One of the following dose reduction techniques was utilized: automated exposure control, adjustment of the mA and/or kV, or iterative reconstruction. COMPARISON: None FINDINGS: Brain: Mild atrophy and minimal multifocal white matter chronic ischemic change present. No acute hemorrhage or mass effect Ventricles: Unremarkable. No ventriculomegaly. Bones/Scalp: No acute fracture. Sinuses: Unremarkable as visualized. No acute sinusitis. Mastoid air cells: Unremarkable as visualized. No mastoid effusion. Other: None. IMPRESSION: Atrophy and chronic ischemic change without acute hemorrhage or mass effect. RPTAT:AAHH *** Final *** Dictated By: WALLACE, ERIC () Signed By: WALLACE, ERIC (02/14/2017 14:11) . (14:30 SHI)

*LABORATORY:*  (15:34 SHI)

| Measurement | Result | Units | Range |
|---|---|---|---|
| CBC WITH AUTO DIFF Observe DT: Tue Feb 14, 2017 15:10 | | | |
| See comment below | | | |
| LAB TO DRAW BED 1A TONIE 14:06 | | | |
| WBC | 10.0 | K/ul | 4.8–10.5 |
| **ABS NEUT** | **8.5 – H** | **K/ul** | **1.5–6.7** |
| **% NEUT** | **84.8 – H** | **%** | **48–68** |
| **ABS LYM** | **0.8 – L** | **K/ul** | **1.0–4.0** |
| **% LYM** | **7.7 – L** | **%** | **20.0–35.0** |
| ABS MONO | 0.7 | K/ul | 0.2–0.9 |
| % MONO | 6.5 | % | 4.0–12.0 |
| ABS EOS | 0.1 | K/ul | 0.0–0.5 |
| % EOS | 1 | % | 0.0–5.0 |
| ABS BASO | 0.0 | K/ul | 0.0–0.2 |
| % BASO | 0 | % | 0.0–2.0 |
| IGAB | 0.01 | X10E3/uL | 0.00–0.08 |
| IGRE | 0.10 | % | 0.00–0.83 |



# GOOD SAMARITAN HOSPITAL
# EMERGENCY RECORD

CATCHINGS, DAYNA
DOB: 4/1/1952 F64
Wt/Ht: 86.18 Kg 187.96 cm.
MedRec: M000916662
AcctNum: V00018645333

| | | | |
|---|---|---|---|
| RBC | 4.29 | M/ul | 3.70–4.90 |
| HGB | 13.5 | g/dl | 11.5–14.5 |
| HCT | 40.6 | % | 33.7–42.7 |
| MCV | 94.6 | fl | 80.0–100 |
| MCH | 31.5 | pg | 27.0–33.0 |
| MCHC | 33.3 | g/dl | 32.0–37.0 |
| RDWSD | 47.7 | fl | 39.3–49.7 |
| PLT | 146 | K/ul | 140–440 |
| MPV | 12.3 | fl | 9.4–12.4 |
| NRBCAB | 0.00 | X10E3/uL | |
| NRBCRE | 0.0 | /100 WBC | |

(17.33 TAT)

| Measurement | Result | Units | Range |
|---|---|---|---|
| POC GLUCOSE Observe DT: Tue Feb 14, 2017 16:53 | | | |
| PGLUC | 110 | mg/dl | 70–110 |

(17.33 TAT)

| Measurement | Result | Units | Range |
|---|---|---|---|
| UA W/CULT IF INDICATED Observe DT: Tue Feb 14, 2017 15:42 | | | |
| See comment below | | | |
| Specimen Description CLEAN CATCH | | | |
| U GLUC | NEGATIVE | | NEGATIVE |
| U PROT | NEGATIVE | | TRACE |
| U BILI | NEGATIVE | | NEGATIVE |
| U UBG | NEGATIVE | | NORMAL |
| U PH | 6.0 | | 5.0–8.0 |
| U OCCBLD | NEGATIVE | | NEGATIVE |
| U KET | NEGATIVE | | NEGATIVE |
| U NIT | NEGATIVE | | NEGATIVE |
| U LEUK EST | NEGATIVE | | NEGATIVE |
| U CLARITY | CLEAR | | CLEAR |
| U SG | 1.019 | | 1.002–1.035 |
| U COLOR | YELLOW | | YELLOW |
| U ASA | NEGATIVE | | NEGATIVE |

(17.33 TAT)

| Measurement | Result | Units | Range |
|---|---|---|---|
| TROPONIN (iStat) Observe DT: Tue Feb 14, 2017 16:14 | | | |
| TROPED | 0.00 | ng/mL | 0.00–0.08 |
| ************************************************ ******** | | | |
| Negative: 0.00 – 0.08 ng/mL (ug/L) | | | |
| Positive: Greater than or equal to 0.09 ng/mL (ug/L) | | | |

(17.33 TAT)

| Measurement | Result | Units | Range |
|---|---|---|---|
| URINE TOX SCREEN ER Observe DT: Tue Feb 14, 2017 15:42 | | | |
| UAMP | Negative | | Negative |
| UBAR | Negative | | Negative |
| UBEN | Negative | | Negative |
| UCOC | Negative | | Negative |
| UOPI | Negative | | Negative |
| **UTHC** | **POSITIVE – H** | | **Negative** |
| URINE THC DRUG SCREENING BY ENZYME IMMUNOASSAY (EIA) IS | | | |
| screened for clinically relevant levels. Subclinical levels | | | |
| may not be detected. This screening test is intended for | | | |
| clinical use only. Drug concentrations above the cut-off | | | |



| Prepared: Fri Feb 17, 2017 09:07 by GONM | Page: 5 of 12 |
|---|---|

CATCHINGS, DAYNA
DOB: 4/1/1952 F64
Wt/Ht: 86.18 Kg 187.96 cm.
MedRec: M000916662
AcctNum: V00018645333

# GOOD SAMARITAN HOSPITAL
# EMERGENCY RECORD

| | | |
|---|---|---|
| limit are reported as positive: | | |
| DRUG CLASS TESTED:        Cut–off level: | | |
| | | |
| Cannabinoids (THC)        50 ng/mL | | |
| | | |
| | | |
| UPCPER | Negative | Negative |
| URINE DRUG SCREENING BY ENZYME IMMUNOASSAY (EIA). | | |
| The drugs | | |
| listed below are screened for clinically relevant levels. | | |
| Subclinical levels may not be detected. Drug concentrations | | |
| above the cut–off limits are reported as positive: | | |
| DRUG CLASS TESTED:        Cut–off level: | | |
| | | |
| Amphetamine/methamphetamine   1,000 ng/mL | | |
| Barbiturate class        200 ng/mL | | |
| Benzodiazepine        200 ng/mL | | |
| Cocaine/benzoylecgonine     300 ng/mL | | |
| Opiates        2,000 ng/mL | | |
| Cannabinoids (THC)        50 ng/mL | | |
| Phencyclidine (PCP)        25 ng/mL | | |
| This screening test is intended for clinical use only; | | |
| positive results are not routinely sent for confirmation by | | |
| GC/MS methods. | | |

(17:33 TAT)

| Measurement | Result | Units | Range |
|---|---|---|---|
| B–TYPE NATRIURETIC PEPTIDE Observe DT: Tue Feb 14, 2017 15:10 | | | |
| See comment below | | | |
| LAB TO DRAW BED 1A TONIE 14:06 | | | |
| BNP | 38 | pg/mL | 0–100 |

(17:33 TAT)

| Measurement | Result | Units | Range |
|---|---|---|---|
| SERUM TOX SCREEN ER ONLY Observe DT: Tue Feb 14, 2017 15:10 | | | |
| See comment below | | | |
| LAB TO DRAW BED 1A TONIE 14:06 | | | |
| ALC | < 5.0 | mg/dL | Less than 10 |
| SALICYLA LEVEL | < 4.0 – L | mg/dL | 10.0–30.0 |
| ACETA | < 10.0 – L | ug/mL | 10–30 |

(17:33 TAT)

| Measurement | Result | Units | Range |
|---|---|---|---|
| MAGNESIUM Observe DT: Tue Feb 14, 2017 15:10 | | | |
| See comment below | | | |
| LAB TO DRAW BED 1A TONIE 14:06 | | | |
| MG LEVEL | 2.18 | mg/dL | 1.80–2.50 |
| MAGNESIUM: Some gadolinium magnetic resonance contrast | | | |
| agents such as Omniscan, Optimark, and Magnevist may | | | |
| interfere with this method. | | | |

(17:33 TAT)

| Measurement | Result | Units | Range |
|---|---|---|---|
| BASIC METABOLIC PANEL Observe DT: Tue Feb 14, 2017 15:10 | | | |
| See comment below | | | |
| LAB TO DRAW BED 1A TONIE 14:06 | | | |
| NA | 139 | mmol/L | 134–144 |

| | |
|---|---|
| Prepared: Fri Feb 17, 2017 09:07 by GONM | Page: 6 of 12 |



122

CATCHINGS, DAYNA
DOB: 4/1/1952 F64
Wt/Ht: 86.18 Kg 187.96 cm.
MedRec: M000916662
AcctNum: V00018645333

# GOOD SAMARITAN HOSPITAL
# EMERGENCY RECORD

| | | | |
|---|---|---|---|
| K LEVEL | 4.1 | mmol/L | 3.4–5.2 |
| CL | 109 | mmol/mL | 98–111 |
| CO2 | 24.3 | mmol/L | 22–32 |
| **GLUC** | **69 – L** | mg/dL | 70–118 |
| UREA | 11.0 | mg/dL | 6.0–22.0 |
| **CREA LEVEL** | **1.36 – H** | **mg/dL** | **0.40–1.10** |
| GFRAA | 47 | mL/min/ | Above 60 |
| GFRN | 39 | mL/min/ | Above 60 |
| CALCIUM | 8.7 | mg/dL | 8.6–10.6 |

(17:33 TAT)

| Measurement | Result | Units | Range |
|---|---|---|---|
| CARDIAC ENZYME PANEL Observe DT: Tue Feb 14, 2017 15:10 | | | |
| See comment below | | | |
| LAB TO DRAW BED 1A TONIE 14:06 | | | |
| **CKLX** | **261 – H** | **IU/L** | **20–240** |
| LD LDH | 161 | IU/L | 80–210 |

(17:33 TAT)

| Measurement | Result | Units | Range |
|---|---|---|---|
| LIVER FUNCTION PANEL Observe DT: Tue Feb 14, 2017 15:10 | | | |
| See comment below | | | |
| LAB TO DRAW BED 1A TONIE 14:06 | | | |
| PROT TOT | 7.1 | g/dL | 6.1–8.2 |
| ALBU | 3.4 | g/dL | 3.4–4.8 |
| TBIL | 0.4 | mg/dL | 0.2–1.3 |
| DBIL | 0.1 | mg/dL | 0.1–0.5 |
| ALP LEVEL | 77 | IU/L | 30–110 |
| ALT L | 12 | IU/L | 5–54 |
| AST LEVEL | 18 | IU/L | 15–41 |

(17:33 TAT)

| Measurement | Result | Units | Range |
|---|---|---|---|
| PARTIAL THROMBOPLASTIN TIME Observe DT: Tue Feb 14, 2017 15:10 | | | |
| See comment below | | | |
| LAB TO DRAW BED 1A TONIE 14:06 | | | |
| APTT | 27.7 | Sec | 24–38 |

(17:33 TAT)

| Measurement | Result | Units | Range |
|---|---|---|---|
| PROTIME Observe DT: Tue Feb 14, 2017 15:10 | | | |
| See comment below | | | |
| LAB TO DRAW BED 1A TONIE 14:06 | | | |
| **PPT** | **14.7 – H** | **SEC** | **11.6–14.2** |
| INR | 1.1 | Units | 0.9–1.1 |

## LAB INTERPRETATION (18:00 SHI)
*INTERPRETATION:* **CBC abnormal, Neutrophils elevated, Lymphocytes decreased**, CBC otherwise normal, **Chemistry abnormal, Glucose decreased**, Chemistry otherwise normal, Cardiac enzymes normal, Urinalysis normal, **Urine toxicology, positive for tricyclics.**

## ED COURSE – MDM SYNCOPE (19:00 SHI)
*CONDITIONS FEMALE:* Syncope medical decision making includes presentation findings of, near syncope, with no loss of consciousness, Symptoms do not include altered mental status, Symptoms do not include abdominal pain, Symptoms do not include chest pain, Symptoms do not include back pain, Symptoms do not include fever, Symptoms do not include patient diaphoretic, Symptoms do not include change in speech, Symptoms do not include diarrhea, Symptoms do not



| | |
|---|---|
| Prepared: Fri Feb 17, 2017 09:07 by GONM | Page: 7 of 12 |

**GOOD SAMARITAN HOSPITAL**
**EMERGENCY RECORD**

CATCHINGS, DAYNA
DOB: 4/1/1952 F64
Wt/Ht: 86.18 Kg 187.96 cm.
MedRec: M000916662
AcctNum: V00018645333

include headache, Symptoms do not include vomiting, Symptoms do not include seizure, **Vital signs unstable**, Blood pressure SYSTOLIC 88, Cardiac monitoring normal, Exam findings include no visual changes, Exam findings include no neuro deficits, Exam findings include no gait disturbance, Exam findings include no open wounds, Documented evidence that patient not at risk for falls on admission.

*DIAGNOSIS FEMALE:* **Differential diagnosis includes near syncope**, as a working diagnosis, **Differential diagnosis includes, HYPOTENSION**, as a working diagnosis.

*RISK:* Clinical risk factors include, **advanced age**, Condition with likely therapeutic response and or uncertain diagnosis to be clarified in less than 24 hours.

*ED TREATMENT:* Emergency department treatments include IV fluids, amount (mLs) 1L, NS.

**DOCTOR NOTES**

*MEDICAL DECISION MAKING:* 65 Y/O TRANSGENDER FEMALE PRESENTS TO ED FOR NEAR SYNCOPAL EPISODE. WAS HYPOTENSIVE 88/60 AT FIELD. 89/54 AT TRIAGE. C/O LIGHTHEADEDNESS, GENERAL WEAKNESS. DENIES FEVER, CHILLS, SOB, CP, N/V/D, HEADACHE, BLURRED VISION, FOCAL NEURO DEFICIT. SYMPTOM IMPROVED AFTER IV NS HYDRATION, ORTHOSTATIC BP NEGATIVE. LAB RESULT BS 69–JUICE GIVEN THE RECHECK BS:
CT SCAN BRAIN: Atrophy and chronic ischemic change without acute hemorrhage or mass effect. EKG:RATE 57 , SR, AXIS: normal, no ST elevation, PR/QRS/QT intervals: wnl.
PT STILL C/O LIGHTHEADEDNESS AND GENERAL WEAKNESS. PLAN: ADMIT TO TELE FOR OBSERVATION. (16:30 SHI)

*PATIENT PLAN:* The patient will be admitted to the hospital, Admission discussed with MOHIN, Admitting physician agrees with admission type, of Observation, The patient requires telemetry, the patient will be admitted to telemetry unit, **DR. MOHIN WILL SEE THE PATIENT.** (16:39 SHI)

*PATIENT STATUS:* Patient has stabilized since arrival to emergency department. (16:39 SHI)

*D/W:* Discussed this case with Dr. MOHIN, the on call physician, SPOKE W/ DR MOHIN FOR AMDISSION TELE OBSERVATION. (16:00 SHI)

**ORDERS**

*EKG – Electrocardiogram:* Ordered by: De Santiago, RN, Darlene
   Ordered for: Fagan, MD, Philip
   Status: Done by: System – Tue Feb 14, 2017 15:01. (12:52 DAH)
*ORDERS INITIATED PER PROTOCOL:* Ordered by: De Santiago, RN, Darlene
   Ordered for: Fagan, MD, Philip
   Status: Done by: Torrecampo, Toni – Tue Feb 14, 2017 16:04. (12:52 DAH)
*APTT ( PTT ):* Ordered by: Shin, NP, Yong S
   Ordered for: Shin, NP, Yong S
   Status: Done by: System – Tue Feb 14, 2017 15:34. (13:03 SHI)
*B–TYPE NATRIURETIC PEPTIDE:* Ordered by: Shin, NP, Yong S
   Ordered for: Shin, NP, Yong S
   Status: Done by: System – Tue Feb 14, 2017 16:03. (13:03 SHI)
*BASIC METABOLIC PANEL (BMP):* Ordered by: Shin, NP, Yong S
   Ordered for: Shin, NP, Yong S
   Status: Done by: System – Tue Feb 14, 2017 15:57. (13:03 SHI)
*CARDIAC ENZYME PANEL:* Ordered by: Shin, NP, Yong S
   Ordered for: Shin, NP, Yong S
   Status: Done by: System – Tue Feb 14, 2017 15:57. (13:03 SHI)
*CARDIAC MONITORING:* Ordered by: Shin, NP, Yong S
   Ordered for: Shin, NP, Yong S
   Status: Done by: Torrecampo, Toni – Tue Feb 14, 2017 16:04. (13:03 SHI)
*CBC WITH AUTO DIFF:* Ordered by: Shin, NP, Yong S

Catchings vs California
Ex.
101

**GOOD SAMARITAN HOSPITAL
EMERGENCY RECORD**

CATCHINGS, DAYNA
DOB: 4/1/1952 F64
Wt/Ht: 86.18 Kg 187.96 cm.
MedRec: M000916662
AcctNum: V00018645333

Ordered for: Shin, NP, Yong S
Status: Done by: System – Tue Feb 14, 2017 15:23. (13:03 SHI)
*CHEST SINGLE VIEW FRONTAL:* Ordered by: Shin, NP, Yong S
Ordered for: Shin, NP, Yong S
Status: Done by: System – Tue Feb 14, 2017 14:37. (13:03 SHI)
*CONTINUOUS PULSE OX MONITORING:* Ordered by: Shin, NP, Yong S
Ordered for: Shin, NP, Yong S
Status: Done by: Torrecampo, Toni – Tue Feb 14, 2017 16:04. (13:03 SHI)
*LIVER– HEPATIC FUNCTION PANEL:* Ordered by: Shin, NP, Yong S
Ordered for: Shin, NP, Yong S
Status: Done by: System – Tue Feb 14, 2017 15:57. (13:03 SHI)
*MAGNESIUM (MG):* Ordered by: Shin, NP, Yong S
Ordered for: Shin, NP, Yong S
Status: Done by: System – Tue Feb 14, 2017 15:57. (13:03 SHI)
*PROTIME ( PT/ INR):* Ordered by: Shin, NP, Yong S
Ordered for: Shin, NP, Yong S
Status: Done by: System – Tue Feb 14, 2017 15:34. (13:03 SHI)
*START IV:* Ordered by: Shin, NP, Yong S
Ordered for: Shin, NP, Yong S
Status: Done by: Torrecampo, Toni – Tue Feb 14, 2017 16:04. (13:03 SHI)
*TROPONIN ED:* Ordered by: Shin, NP, Yong S
Ordered for: Shin, NP, Yong S
Status: Done by: Torrecampo, Toni – Tue Feb 14, 2017 16:03. (13:03 SHI)
*UA W/CULT IF INDICATED:* Ordered by: Shin, NP, Yong S
Ordered for: Shin, NP, Yong S
Status: Done by: System – Tue Feb 14, 2017 16:33. (13:03 SHI)
*CT BRAIN W/O CONTRAST:* Ordered by: Shin, NP, Yong S
Ordered for: Shin, NP, Yong S
Status: Done by: System – Tue Feb 14, 2017 14:11. (13:07 SHI)
*FINGER STICK BLOOD SUGAR:* Ordered by: Shin, NP, Yong S
Ordered for: Shin, NP, Yong S
Status: Done by: Torrecampo, Toni – Tue Feb 14, 2017 16:04. (13:08 SHI)
*SERUM TOX SCREEN ER:* Ordered by: Shin, NP, Yong S
Ordered for: Shin, NP, Yong S
Status: Canceled by: System – Tue Feb 14, 2017 15:16. (13:08 SHI)
*URINE TOX SCREEN ER:* Ordered by: Shin, NP, Yong S
Ordered for: Shin, NP, Yong S
Status: Done by: System – Tue Feb 14, 2017 16:08. (13 08 SHI)
*ORTHOSTATIC VS:* Ordered by: Shin, NP, Yong S
Ordered for: Shin, NP, Yong S
Status: Done by: Torrecampo, Toni – Tue Feb 14, 2017 16:04. (15:08 SHI)
*FINGER STICK BLOOD SUGAR:* Ordered by: Shin, NP, Yong S
Ordered for: Shin, NP, Yong S
Status: Done by: Torrecampo, Toni – Tue Feb 14, 2017 16:56. (16:35 SHI)
*TROPONIN ED:* Ordered by: Shin, NP, Yong S
Ordered for: Shin, NP, Yong S
Status: Active. (18:15 SHI)

**DIAGNOSIS** (14:38 SHI)
*FINAL:* PRIMARY: **SYNCOPE AND COLLAPSE**, ADDITIONAL: **HYPOTENSION
UNSPECIFIED, MUSCLE WEAKNESS GENERALIZED**.

**DISPOSITION**
*PATIENT:* Disposition Type: PHYSICIAN ORDER for Observation, Disposition:



Prepared: Fri Feb 17, 2017 09:07 by GONM

**GOOD SAMARITAN HOSPITAL**
**EMERGENCY RECORD**

CATCHINGS, DAYNA
DOB: 4/1/1952 F64
Wt/Ht: 86.18 Kg 187.96 cm.
MedRec: M000916662
AcctNum: V00018645333

---

TELEMETRY, Condition: STABLE. (15:08 SHI)
Patient left the department. (20:23 KES)

## O2SAT INTERPRETATION (13:00 SHI)
*O2SAT:* Continuous pulse oximetry, Oxygen saturation 99%, on room air, Oxygen saturation
  interpretation: Normal, No intervention required.

## ATTENDING (13:15 TAT)
*ATTENDING:* I was present and available for consultation during this visit and have
  supervised the key and critical portions of completed procedures.

## NURSING ASSESSMENT: FOCUSED (14:40 TONI)
*CONSTITUTIONAL:* Patient arrives ambulatory, Gait steady, Patient appears comfortable,
  Patient cooperative, Patient alert, Oriented to person, place and time, Skin warm, Skin dry, Skin
  normal in color, Mucous membranes pink, Mucous membranes moist, Patient is well−groomed.
*PAIN:* Patient Denies Pain.
*MORSE FALL RISK:* Patient has no history of falls., Patient does not have a secondary
  diagnosis., Patient uses not ambulatory aids or is on bedrest. (0 pts), **Patient has am IV or saline
  lock inplace (20 pts)**, Patient has a normal gait and can transfer, on bedrest, or is immobile.,
  Patient is oreinted to their own ability., Patient has no risk of falls., No fall protocol initated.
*SKIN:* Skin assessment findings include skin warm, Skin dry, Skin normal in color.
*EYES:* Patient Denies Pain or Visual Concerns, Focused eye assessment finding include
  pupils equally round and reactive to light.
*NEURO:* Patient Denies Neurological Concerns or Deficits., Focused neuro assessment
  findings include patient alert, cooperative, No facial droop noted, Speech coherent, no weakness,
  no numbness, **Loss of consciousness for unknown length of time.**
*GCS:* Eye opening: (4) − Spontaneous, Verbal: (5) − Oriented/conversive, Motor: (6) −
  Obeys commands/Spontaneous, GCS Total: **15.**
*CARDIOVASCULAR:* Cardiovascular assessment findings include heart rate normal, Heart
  rhythm normal sinus, Heart sounds normal, S1, S2, Left radial pulse +3(easily palpated, considered
  normal), Right radial pulse +3(easily palpated, considered normal).
*RESPIRATORY:* Focused respiratory assessment findings include breath sounds clear.
*ABDOMEN:* Focused abdominal assessment findings include abdomen soft, no complaint of
  nausea, no vomiting, Bowel sounds present.
*GENITOURINARY FEMALE:* No Urinary complaints.
*MUSCULOSKELETAL:* Focused musculoskeletal assessment findings include normal range of
  motion.
*SAFETY:* Side rails up, Cart/Stretcher in lowest position, Call light within reach, Hospital ID
  band on.

## NURSING PROCEDURE: ADMISSION (19:31 TONI)
*ADMISSION:* Nursing unit notified of pending admission, Bed is ready and report is given at
  02/14/2017 19:20, Report called to, Marillu, RN, Provided opportunity to answer questions, Summary
  of Care printed, Patient admitted to a telemetry unit, room number 460, Transported via stretcher,
  Accompanied by transport, Accompanied by registered nurse, Transported with monitor, advanced
  life support care.
*BELONGINGS:* pants, scarf, shirt, shoes, other items:, Description small black travel bag.

## NURSING PROCEDURE: BEDSIDE TESTING (16:55 TONI)
*GLUCOSE:* Capillary blood sample, Result (mg/dl) 110.

## NURSING PROCEDURE: CARDIAC MONITOR (14:09 TONI)
*CARDIAC MONITOR:* Patient placed on cardiac monitor, Patient placed on non−invasive
  blood pressure monitor, with disposable blood pressure cuff applied, Patient placed on continuous



Catchings v.
California
Ex.
108

| Prepared: Fri Feb 17, 2017 09:07 by GONM | Page: 10 of 12 |

**GOOD SAMARITAN HOSPITAL
EMERGENCY RECORD**

CATCHINGS, DAYNA
DOB: 4/1/1952 F64
Wt/Ht: 86.18 Kg 187.96 cm.
MedRec: M000916662
AcctNum: V00018645333

pulse oximetry, Adult/pediatric oxisensor applied.
*FOLLOW–UP:* After procedure, alarms set and on, After procedure, patient tolerating
  monitoring.

**NURSING PROCEDURE: EKG CHART** (12 52 DAH)
*PATIENT IDENTIFIER:* Patient's identity verified by hospital ID bracelet, Patient's identity
  verified with RN/MD.
*EKG:* EKG done by the EKG Tech, 12 lead EKG performed on the left chest.
*FOLLOW–UP:* After procedure, EKG for interpretation given to Dr. DR. FAGAN.
*SAFETY:* Side rails up, Cart/Stretcher in lowest position, Call light within reach, Hospital ID
  band on.

**NURSING PROCEDURE: INTAKE AND OUTPUT** (15:40 TONI)
*INTAKE AND OUTPUT:* IV intake(ml): 1000, Total Intake (ml): **1000ml**, Total Output (ml):
  **0ml**, Grand Total: Intake is greater than output by 1000mls.

**NURSING PROCEDURE: IV** (13:30 TONI)
*IV SITE 1:* Flushed with normal saline (mls): 10, Notes: **#18g L AC IV access established PTA
  by medics. Poor return. Flushed easily with 10 mL 0.9% NS.**
*FOLLOW–UP SITE 1:* After procedure, sterile transparent dressing applied, After
  procedure, no drainage at IV site, After procedure, no swelling at IV site, After procedure, no
  redness at IV site.

**NURSING PROCEDURE: LAB DRAW** (16:55 TONI)
*I–STAT:* i–STAT machine number: ER 3, Troponin results are: **0.00.**

**NURSING PROCEDURE: NURSE NOTES**
*NURSES NOTES:* Notes: **Pt is a hard stick. Unable to obtain blood. Call made to lab to send
  phlebotomist for blood draw.** (14:11 TONI)
Patient is awaiting In–House bed, Notes: **OSVS WNL. Pt denies any dizziness, weakness or any
  other complaints @ this time. Ambulated to restroom and back to bed with steady gait without incident.
  No visible distress noted. Pt to be admitted to hospital. Pt aware of plan of care. Awaiting inp bed
  assignment.** (16:02 TONI)
Notes: **Pt's glucose 69. Given two boxes of orange juice per VO NP Shin.** (16:19 TONI)

**NURSING PROCEDURE: TRANSPORT TO TESTS**
*TRANSPORT TO TESTS:* Patient being taken for radiology exam by:, Patient being taken for
  radiology exam by transport tech, Transport indicated to facilitate diagnosis, Patient transported to
  CT scan, via cart, Accompanied by transport technician. (13:37 TONI)
*FOLLOW–UP:* After procedure, patient returned to emergency department, Notes:
  **Returned from CT scan without incident. Awaiting results.** (14:08 TONI)

**VITAL SIGNS**
*VITAL SIGNS:* BP: 89/54, Pulse: 54, Resp: 18 (NON–LABORED), Temp: 97.7 (ORAL), Pain: 0,
  O2 sat: 99 on (ROOM AIR), Time: 2/14/2017 12:43. (12:43 DAH)
  BP: 118/72 (RIGHT ARM), Pulse: −63− (NORMAL), Resp: −20− (NON–LABORED), Pain: 0, O2
  sat: −98− on (ROOM AIR), Time: 2/14/2017 14:12. (14:12 TONI)
  BP: 125/72 (RIGHT ARM), MAP: lying, Pulse: −60− (NORMAL), Resp: −18− (NON–LABORED),
  Pain: 0, O2 sat: 97 on (ROOM AIR), Time: 2/14/2017 15:50. (15:50 TONI)
  BP: 119/71 (RIGHT ARM), MAP: sitting, Pulse: −53− (NORMAL), Resp: −18− (NON–LABORED),
  O2 sat: 98 on (ROOM AIR), Time: 2/14/2017 15:54. (15:54 TONI)
  BP: 123/74 (RIGHT ARM), MAP: standing, Pulse: −52− (NORMAL), Resp: −16−
  (NON–LABORED), Pain: 0, O2 sat: 99 on (ROOM AIR), Time: 2/14/2017 15:56. (15:56 TONI)
  BP: 129/71 (RIGHT ARM), Pulse: −51− (NORMAL), Resp: −18− (NON–LABORED), O2 sat: 98 on

Catchings v.
California

Ex.

1.04



**GOOD SAMARITAN HOSPITAL**
**EMERGENCY RECORD**

CATCHINGS, DAYNA
DOB: 4/1/1952 F64
Wt/Ht: 86.18 Kg 187.96 cm.
MedRec: M000916662
AcctNum: V00018645333

(ROOM AIR), Time: 2/14/2017 16:44. (16:44 TONI)
BP: 127/72 (RIGHT ARM), Pulse: −54− (NORMAL), Resp: −20− (NON−LABORED), Pain: 0, O2
sat: 99 on (ROOM AIR), Time: 2/14/2017 17:29. (17:29 TONI)
BP: 123/76 (RIGHT ARM), Pulse: −60− (NORMAL), Resp: −18− (NON−LABORED), Pain: 0, O2
sat: 98 on (ROOM AIR), Time: 2/14/2017 18:58. (18:58 TONI)

## ADMIN
*DIGITAL SIGNATURE:* Torrecampo, Toni. (19:33 TONI)
Shin, NP, Yong S. (20:33 SHI)
Truong, DO, Tammy. (21:51 TAT)
Fagan, MD, Philip. (Wed Feb 15, 2017 13:19 PF)

## PRESCRIPTION
No recorded prescriptions

## ADMIN
*PATIENT DATA CHANGE:* A04 255586−1166359975 by Interface, Name: CATCHINGS,
DAYNA, Primary Care Doctor: NS, , SSN: 275522128. (12:53)
A04 255586−1166359975 by Interface, Primary Care Doctor: NS, . (12:53)
Doctor Extender changed from (none) to Yong S Shin, NP. (13:00 SHI)
A08 255599−1166360969 by Interface, Primary Care Doctor: NS, . (13:10)
Attending changed from (none) to Tammy Truong, DO. (13:15 TAT)
Primary Nurse changed from (none) to Toni Torrecampo. (13:23 TONI)
Name: Catchings, Dayna, REGISTRATION: Registration Complete, CO−PAY: CO−PAY NOT
REQUIRED, Triage Source: . (14:48 JG)
A08 255670−1166367310 by Interface, Primary Care Doctor: NS, , Name: CATCHINGS,
DAYNA. (14:57)
Admitting Doctor: Mohin, Anil. (16:41 SHI)
Name: Catchings, Dayna, Race: (none). (18:04 TONI)
Admit Room: 460. (18:55 DSE)

## IMAGING
*FACESHEET/INSURANCE:* Image captured from scanner. (15:27 IRA)
Page 2 added. Image captured from scanner. (15:28 IRA)
Page 3 added. Image captured from scanner. (15:28 IRA)
Page 4 added. Image captured from scanner. (15:28 IRA)
*CONDITIONS OF ADMISSION:* Image captured from scanner. (15:28 IRA)
Page 2 added. Image captured from scanner. (15:28 IRA)
Page 3 added. Image captured from scanner. (15:29 IRA)
Page 4 added. Image captured from scanner. (15:29 IRA)
Page 5 added. Image captured from scanner. (15:29 IRA)
*ADMISSION REQUEST:* Image captured from scanner. (16:45 IRA)
*EKG:* Image captured from scanner. (20:24 IRA)
*FAX NOTES:* Image captured from scanner. (20:27 IRA)
Page 2 added. Image captured from scanner. (20:27 IRA)
Page 3 added. Image captured from scanner. (20:27 IRA)

**Key:**
**DAH=De Santiago, RN, Darlene DSE=Sears, Doyle Ann IRA=Alegria Cna, Iraida JG=Guerra, Jovanna**
**KES=Kessler, Beth PF=Fagan, MD, Philip SHI=Shin, NP, Yong S TAT=Truong, DO, Tammy**
**TONI=Torrecampo, Toni**

*Catchings v,*
*California*
*Etc*
*105*

Expenditure Request Form

Page 1 of 2



## Heritage CLINIC
**Expenditure Request Form**

Ex. 219

| Your Name * | Your Email * | Expected Expense Date * | Form ID |
|---|---|---|---|
| Jessie Torres | jtorres@heritageclinic.org | 11/1/2017 | 2,246 |

**Is this Uber or Transportation?**
No
*Client must sign before leaving.*

**Is this housing/rent?**
No
*All rent requests go to Jamie Garis.*

**Is this a non-client request?**
No
*For internal fixed assets.*

**Request Approval to Purchase (list item/s) ***

| Motel-2 nights | **Amount *** $180.00 |
|---|---|

*Obtain written or verbal approval before making purchases for clients.*

**Supervisor ***
Jamie Garis

**Supervisor Email ***
jgaris@cfar1.org

**Client Name ***
Dayna Catchings

**IBHIS No. ***
4405860

☐ Client Can/Cannot Sign
*Check this box if client CANNOT or refuses to sign and put the reason in the note.*

By signing electronically below, I acknowledge that I received the items or services listed above from Heritage Clinic. I also understand that my name and phone number may be given and used by a third party to aid in transportation services.

**Date**
11/2/17

**Signature**

*Dayna Catchings*

**For Supervisor Approval**

**Supervisor Name**            **Date**            **Approve or Deny request**

Catchings
v. California
Ex. 106



Case 2:19-cv-09480-DSF-AGR     Document 1     Filed 11/04/19     Page 170 of 178   Page ID #:170

EX. 29

Expenditure Request Form

Page 2 of 2

| Jamie Garis | 11/1/2017 | 📅 | ⦿ Approved  ○ Denied |

**Signature**

❌

**Supervisor Note to Staff**

[ Submit ]

Catchings.
Catchings
Ex. 10'



Doc# 1 Page# 168 - Doc ID = 1724336029 - Doc Type = OTHER

*Ex. 224*



**Good Shepherd Center
Administration**
1671 Beverly Blvd.
Los Angeles, CA  90026
213.235.1460 O • 213.235.1468 F

November 30, 2017

Re: Dayna Catchings

To Whom It May Concern,

My name is Maria G. Barron and I am the Residential Shelter Manager at Good Shepherd Center.  Good Shepherd Center provides Crisis and Bridge Shelter for women who are currently experiencing homelessness.

I am writing this letter in support of Ms. Dayna Catchings a current resident at our facility.  This letter is certifying that on the night of November 15th Ms. Catching was experiencing an intense amount of anxiety and had to request a leave so she could lower her anxiety levels.  Ms. Catchings missed curfew due to this anxiety episode which is very uncommon for her.

On the night of November 22nd the paramedics were called in order to asses Ms. Catchings due to her having a panic attack that mirrored a seizure. The paramedics concluded that the panic attack was triggered due to vast amounts of stress and anxiety.

It is my opinion that due to the trauma and the stress of experiencing homelessness has caused Ms. Catchings to experience these anxiety episodes.  Ms. Catchings is always punctual and considerate during her appointments with me and is in good standing at the Good Shepherd Center.  Ms. Catchings would never deliberating miss an appointment unless it is during a time of an anxiety episode.

If you have any questions in regards to Ms. Catchings please feel free to call me at (213) 235-1467 or email me at mbarron@gschomeless.org.

Thank you

Maria G. Barron

*Catchings v.
California
Ex. 108*

142



*Ex. 22B*

## Catholic Charities of Los Angeles, Inc

### CLIENT RIGHTS AND RESPONSIBILITIES

Each person applying for or receiving services from Catholic Charities of Los Angeles, Inc. shall have rights and responsibilities that include, but are not limited to, the following:

#### CLIENT RIGHTS

- To be treated with dignity and respect

- To receive services free from any form of discrimination

- To receive services in a safe and comfortable setting

- To be fully informed about services and any cost involved

- To have personal information protected by confidentiality

- To fully participate in any service planning process

- To accept or refuse to participate in any service

- To receive information about how to file a complaint

- To evaluate and comment upon any service received

#### CLIENT RESPONSIBILITIES

- To ask questions about services

- To provide necessary information about what is needed

- To recommend ways to improve the quality of service

- To treat agency staff and others with dignity and respect

**How to File a Complaint**: I acknowledge that I received a copy and understand the rights and responsibilities of clients as specified above. I also understand that I have the right to file a complaint according to the guidelines set forth by Catholic Charities of Los Angeles if I am unsatisfied with any service rendered or I believe that the agency has failed to comply with my rights, as described above. To initiate the complaint process, simply contact a case manager or other program representative and request a complaint form.

Client Signature: ___1 / 3 / 17___          Date: _____

*Cutchings v.*
*California Ex. 109*

143



Reference
Number

76A

Hutchings v.
California
Exh. 110

144



RESP 18

BIP 108/72 84R

Pulse 84R

CHEM 240

TimE 18:50

CATCHINGS V.
CALIFORNIA
EX. 111

145

(EX. C47)



CASE NUMBER BC633373   THE iLLEgAL EVICTION THAT
STARTED iT ALL, on 10/10/16.
THAT's THE DAY THE PLAINTIFF LEFT THE PROPERTY
AND NOT AFTER 10/17/16, THE DATE ON THE NOTICE
THE CITY OF LOS ANGELES AND THE LAPD RAMPART DIVISION
CAN ALL VERIFY THAT ON THE 17TH, OFFICER MUNOZ
INTERVIED ME ON WILSHIRE BLVD. FRAUD WAS
COMMITTED HERE.      146      EX. 112

To the Court:                              11/3/19

In yet ANOTHER hardship (no attorney, not able to pay filing costs) on Friday 11/1/19, in A serious attempt to comply by the filing DEADLINE, errors occurred during the printing and copying process itself, by ABC Imaging which resulted in the owner doing the hole punching for FREE, as opposed to A PENNY A PAGE for All 5 sets that I ordered (as noted on their attached receipt dated November 1, 2019), which were not the fault of the Plaintiff (including bottom of the page that is cut off by the printing machine and MANY pages had to be RENUMBERED by me over this weekend for ALL 5 sests), backs of Ex. 116, page 52, which will have to be REDONE on MONDAY 11/4/19.

In ADDITION, more copies of the Request For Counsel were made, RATHER than the initial Amount REQUESTED, while copies of The Proof of Service, The Request to Proceed FORMA PAUPERIS with DECLARATION In Support and The CERTIFICATION AND notice of INTERESTED PARTIES, 3 of the most CRITICAL DOCUMENTS, but were not done AND will have to be done on Monday 11/4/19.

As the Court can see the Plaintiff FINISHED AND SIGNED ALL DOCUMENTS ON 10/30/19, two DAYS before they were due to be filed. Ex. 112 pg. 146 was printed, not copied

147                                    EX. 113A

PAGE 2 of 2

Therefore there is no NEGLIGENCE on the part of the Plaintiffs nor can the Plaintiff be held responsible for the Actions of a third party being ABC Imaging. As we just stated Ex 112 pg 146, was to be punched but not copied or attached

Respectfully Submitted,

by Clifford Catching
Plaintiff Pro se

148

Ex. 113B



# COD Work Order

Thank you for the opportunity to be of service to you.



ABC Imaging - Los Angeles, CA Store
3550 Wilshire Blvd, Suite 124
Los Angeles, CA 90010
Phone: 213-624-9626

| Date | Work Order No. |
|---|---|
| 11/01/2019 | 19630940 |
| **Store** | **Ticket No.** |
| 4001 | 20395018-4008125 |
| **CSR** | **P.O. Number** |
| SAUL.BANUELOS | |
| **Status** | Open |

**Bill To:**

COD CA
**Dayna Catchings**

| Due Date | Ordered By | Job Name |
|---|---|---|
| 11/01/2019 | Dayna Catchings | |
| **Time** | **Company** | **Job Number** |
| 5:30 PM | Dayna Catchings | |

| Item Code | Description | Unit Size | Originals | Copies | Unit Price | Extended Price |
|---|---|---|---|---|---|---|
| 6100XPS8511 | Xerox Copy*8.5x11 - per impression | -- | 145 | 4 | $ 0.07 | $ 40.60 |
| 6100XPS8511 | Xerox Copy*8.5x11 - per impression | -- | 9 | 3 | $ 0.07 | $ 1.89 |
| 6100XPS8511 | Xerox Copy*8.5x11 - per impression | -- | 4 | 5 | $ 0.07 | $ 1.40 |
| 6100XPS8511 | Xerox Copy*8.5x11 - per impression | -- | 4 | 3 | $ 0.07 | $ 0.84 |
| 6100XPS8511 | Xerox Copy*8.5x11 - per impression | -- | 4 | 5 | $ 0.07 | $ 1.40 |

| | |
|---|---|
| Subtotal | $ 46.13 |
| **90010 - LOS ANGELES (CA) (9.50000%)** | $ 4.38 |
| Total | $ 50.51 |
| Payments | $ 50.51 |
| Balance | $ 0.00 |

**Comments**

Complimentary 2 hole punch

**This is not a bill. Invoice to follow.**

I-49

EX. 114