1  DAYNA R. CATCHINGS (Full Name)

2  0265. Alvarado St #411 (Address Line 1)

3  Los Angeles, CA. 90057 (Address Line 2)

4  323-373-5355 _____ (Phone Number)

5  Plaintiff in Pro Per

**FILED**
CLERK, U.S. DISTRICT COURT

12/07/2020

CENTRAL DISTRICT OF CALIFORNIA
BY: KL     DEPUTY

6

7

8          **UNITED STATES DISTRICT COURT**

9          **CENTRAL DISTRICT OF CALIFORNIA**

10

11  DAYNA R. Catchings,          )  Case No.: CV19-9480DSF(AGR)
                                               (To be supplied by the Clerk)
12          **Plaintiff,**         )
                                   )
13  vs.                           )  **Civil Rights Complaint Pursuant to**
                                   )  **42 U.S.C. § 1983 (non-prisoners)**
14  The City of Los Angeles,       )
                                   )
15  The LAPD, the Sanitation       )  **Jury Trial Demanded:** ☒ Yes  ☐ No
                                   )
16  Dept                          )  Plaintiff's First Amended
                                   )  Complaint, which is now
17  _____        )  connected to case number
                                   )  20STEV45298, is Los Angeles
18          **Defendant(s).**      )  Superior Court. its
19  (MR. LAUBER corrected the submission on 12/1/2020. NO
                                                          CONNECTION
20          (All paragraphs and pages must be numbered.)

21          **I. JURISDICTION**

22  1.     This court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

23  Federal question jurisdiction arises pursuant to 42 U.S.C. § 1983.

24

25          **II. VENUE**

26  2.     Venue is proper pursuant to 28 U.S.C. § 1391 because All submitted

27  evidence and supporting documents and exhibits did indeed

28  happen in the City of Los Angeles, and the State of California

                                   1

## III. PARTIES

3.   Plaintiff _DAYNA R. CATCHINGS_ resides at:
*(your full name)*

_626 S. ALVARADO St. Apt. 411_

_LOS ANGELES, CA. 90057_ .
*(your address)*

*(You should specifically identify each Defendant you intend to sue in a separate, numbered paragraph.)*

4.   Defendant _JASON ABNER_ works at
*(full name of Defendant)*

_LOS ANGELES POLICE DEPT. RAMPART DIVISION_ .
*(Defendant's place of work)*

Defendant's title or position is _POLICE OFFICER #35838_ .
*(Defendant's title or position at place of work)*

This Defendant is sued in his/her (check one or both):

☒ individual capacity          ☒ official capacity

This Defendant was acting under color of law because: _HE IS A POLICE_
_OFFICER who is GOVERNED by the CODE OF Ethics_
_which he violATED DELIBERATELY AND willfully On_
_WRONGFUL ARREST AND RESULTING MALICIOUS PROSECUTION_

5.   Defendant _Nicholas LAWLER DCA_ works at
*(full name of Defendant)*

_City of Los Angeles, City Attorney's office_ .
*(Defendant's place of work)*

Defendant's title or position is _DEPUTY CITY ATTORNEY_ .
*(Defendant's title or position at place of work)*

This Defendant is sued in his/her (check one or both):

☒ individual capacity          ☒ official capacity

This Defendant was acting under color of law because: _hE took pARt in_
_violating LAw EnforcEMENT CODE of EThics RE: supporting the_
_Actions of Bobby BENSON who is ADMittEdLy NOT oNE of his_
_clients_

_2_

Pro Se Clinic Form                    *Page Number*

6. Defendant _Bobby BENSON_ works at
*Insert ¶ #*   *(full name of Defendant)*

_Sanitation Dept. City of Los Angeles_.
*(Defendant's place of work)*

Defendant's title or position is _Environmental Compliance Inspector_.
*(Defendant's title or position at place of work)*

This Defendant is sued in his/her (check one or both):

☒ individual capacity          ☒ official capacity

This Defendant was acting under color of law because _he assured me protection as long as I continued to comply which I did. He violated the Law Enforcement Code of Ethics by not being present on 11/1/17. He breaches the contract. Had he been there, no further damage to either myself or the city would have occurred._

7. Defendant _Ofcr. Giras #35059_ works at
*Insert ¶ #*   *(full name of Defendant)*

_LAPD - Rampart Division_
*(Defendant's place of work)*

Defendant's title or position is _Police Officer_
*(Defendant's title or position at place of work)*

This Defendant is sued in his/her (check one or both):

☒ individual capacity          ☒ official capacity

This Defendant was acting under color of law because _she also violated the Bell v. City of Boise et. Al. ruling of 2015, by allowing my personal property to be destroyed thereby also violating the Law Enforcement Code of Ethics as well._

3

Pro Se Clinic Form                    *Page Number*

8. Defendant _ARMANDO CORTEZ_ works at
Insert ¶ # (full name of Defendant)

_LAPD RAMPART DIVISION_.
(Defendant's place of work)

Defendant's title or position is _Police Officer #38838_
(Defendant's title or position at place of work)

This Defendant is sued in his/her (check one or both):

☒ individual capacity          ☒ official capacity

This Defendant was acting under color of law because _On 11/22/16, the_
_LAPD offered me $1,620.00 For the DAMAGES of 11/12/16, As_
_A Direct Result of Sgt. Miller's involvement by violating_
_Bell v. Boise on Boise et. Al. 2015 DOJ Ruling, with no follow_
_up or follow through as evidenced by Interrogatory_
_Response page 4 item # 9. He thereby also violated the_
_Law Enforcement Code of Ethics_

9. Defendant _Joel Miller_ works at
Insert ¶ # (full name of Defendant)

_LAPD Rampart Division_.
(Defendant's place of work)

Defendant's title or position is _Sergeant #35068_
(Defendant's title or position at place of work)

This Defendant is sued in his/her (check one or both):

☒ individual capacity          ☒ official capacity

This Defendant was acting under color of law because _he violated_
_the Bell v. City of Boise et. Al 2015 DOJ Ruling by Forcing me_
_From a location of Mr. Munoz gave permission for. No posted_
_Signs at that time. He consequently also violated the Law_
_Enforcement Code of Ethics by doing so._

4

## IV. STATEMENT OF FACTS

*(Explain what happened in your own words. You do not have to cite legal authority in this section. Be specific about names, dates, and places. Explain what each Defendant did. Remember to number every paragraph.)*

1

2

3

4  Insert ¶ #

10. NEW PHOTO EVIDENCE RE: JASON ABNER'S MALICIOUS

5  PROSECUTION (see pgs. 9-14 EX. 117) PROVING THERE WERE

6  NO "NO CAMPING" SIGNS AT THE ENCAMPMENT SGT. MILLER

7  REFERRED me to, just AS they were NOT ON WILSHIRE BLVD ON

8  11/17/16 (pgs. 29 + 30) but THERE is A SIGN THERE NOW (pg. 31) plus

9  A NEW photo (EX. 117 pg. 45) proving NO violation of Korean Air's

10  rights. My tent WAS blocking NOTHING of theirs, just AS OFC. MUNOZ

11  HAD VERIFIED ON 10/17/16. ALL NEW PHOTOS CAN STAND ALONE ON THEIR OWN.

12  Insert ¶ #

11. NEW PHOTO EVIDENCE OF LAPD involvement ON 11/13/2020,

13  11/10/2020 (INVOLVING ASSAULT AND STOLEN GROCERIES) AND 7/24/19

14  RE: NOISY NEIGHBOR ISSUE (pgs. 46 + 47 EX. 117), POLICE Officers

15  CAMPBELL AND CALZADILLAS FALSELY REPORTED "NO CRIME" or

16  ASSAULT by MANAGER SEROBYAN, yet BASED ON DEFINITIONS ALONE

17  A CRIME of ASSAULT WAS COMMITTED (pgs. 46-52), (pgs 53-56) STOLEN

18  FOODS ISSUE AND NOISY NEIGHBOR COMPLAINTS ALL ARE EXS. 117. (pgs. 57 + 58)

19  Phone CALL LOG INFORMATION (EX 116 pgs. 1+2) (EX. 117 pg. 59).

20  Insert ¶ #

12. Nicholas LAUBER WAS ACTING under the Color of LAW

21  WHEN he willfully AND DELIBERATELY ASKED this Court on

22  9/2/2020 within his submission to have Bobby BENSON

23  DISMISSED From the Complaint (who is NOT his client). He confirms

24  obstruction of Justice (AGAINST MR. BENSON) Conflicts of Interests

25  (because he is not his client) AND CONSPIRACY between the LAPD

26  AND the SANITATION Dept. Mr. LAUBER is held AT AN EVEN higher

27  STANDARD than those of the Officers that he REPRESENTS, AND by

28  Doing so, he attempted to violate ALL of the Plaintiff's rights

AGAINST Bobby BENSON AND the SANITATION Dept.

Pro Se Clinic Form                    Page Number

13. The Plaintiff has been made aware to keep the FAC brief. However, unsee this new complaint, there are a lot of moving parts that were not there in the beginning. 1. The St. Barnabas Complaint and Relevance 2. The issue of Bobby Benson raised by Mr. Lamber on 9/2/2020 3. The addition of Ofcr. Gras and amending all of it to Ofcr. Cortez, who is linked by the actions of Sgt. Miller...

14. Then we have the issue regarding Mr. Lamber himself. The Plaintiff is not pleased that we had to go there, but we did. He put himself into those situations, and not I. I had the utmost respect for him for what he did in July to get this extension. We had worked together. That's not what happened on 9/2/2020, proven by evidence contained within the Table of Contents Law Enforcement Code of Ethics Issues have now come up.

15. In order to keep this statement itself brief, the Plaintiff will be using Doss. V. Citizen's Bank of Costa Mesa. re: the use of the Exhibits that are all constraints within the table of Contents regarding Mr. Lamber, Officer Gras, Bobby Benson, Sgt. Miller, Officer Cortez and Officer Abner. Who did what, when, where + how, and who said the same. There is a lot of new evidence and connections to contend with.

Pro Se Clinic Form

6

*Page Number*

# V. CLAIMS

## Claim #1

1
2
3 *16.* Plaintiff realleges and incorporates by reference all of the paragraphs above.
4 Insert ¶ #

5 *17.* Plaintiff has a claim under 42 U.S.C. §1983 for violation of the following
Insert ¶ # federal constitutional or statutory civil right: The DOJ Ruling of
6 2015 BELL V. City of Boise et. Al. citing it As "cRUEL ANd
7 uNusual punishment" by being homeless because "they have
8 no place Else to go" thereby Also violating the LAW
9 ENFORCEMENT CODE OF Ethics, Acting under Color of
10 LAW

11 *18.* The above civil right was violated by the following Defendants:
Insert ¶ #
12 Sgt. Joel Miller, JASON AbNER, Officer GRAS
13 And Bobby BENSON.

14

15 *(You may list facts supporting your claim. Be specific about how each Defendant violated this particular civil right.)*
16 *19.* JOEL MILLER Forcing me to move wrongfully; JASON AbNER
Insert ¶ #
17 FALSE ARREST AND MALicious PROSECUTION; Officer GRAS by Also
18 violAting the SAME DOJ Ruling, thereby Also violating the LAW
19 ENFORCEMENT CODE OF Ethics; AND Bobby BENSON by not
20 being present on 11/1/17 to offer ASSistance if NEEDED, AND thereby
21 CAUSED the conflict w/ Ofcr GRAS, which violated his verbal
22 agreement, thereby Also violating the LAW ENFORCEMENT
23 CODE OF Ethics. NONE of the SAFEGUARDED my PROPERty
EXCEPT OFFICER MUNOZ.
24 *20.* As a result of the Defendant's violation of the above civil right, Plaintiff
25 Insert ¶ # was harmed in the following way: PERSONAL INJURY AS A
26 DIRECT RESULT of having my property DESTROYED 3 times.
27 WAS PROMISED PAYMENT, NEVER RECEIVED. Their combined
28 wrongful Acts which ultimately violATED the LAW
ENFORCEMENT CODE of Ethics As well, Supported by Exhibits
AND EVIDENCE in the TAble
OF CONTENTS

1

**Claim #( 2 )**
*(insert Claim#)*

2

3    *2 1.* Plaintiff realleges and incorporates by reference all of the paragraphs above.
*Insert ¶ #*

4    *(List any other legal claim you have that is related to your civil rights claim.)*

5    *22.* LAW ENFORCEMENT CODE OF Ethics
*Insert ¶ #*

6    Violations by not protecting this citizens

7    rights or personal property, by not responding to

8    requests for the $1,6000 that he felt was the value

9    of the property, nor helping with the City Attorneys

10   office complaint.

11   *23.* Plaintiff alleges the above claim against the following Defendant(s):
*Insert ¶ #*

12   OFFICER ARMANDO CORTEZ

13

14

15

16   *(You may list facts supporting your claim. Be specific about how each Defendant violated the rights giving rise to this claim.)*

17   *24.* He ASSESED A dollar amount FOR DAMAGES of $1,620.00
*Insert ¶ #*

18   but then he FAILED, NEGLECTED AND REFUSED to follow up or

19   to follow through, EVEN when he KNEW that the

20   City Attorney's Office hAD REJECTED the claim

21

22

23

24   *25.* As a result of the Defendant's violation of the rights giving rise to this
claim, Plaintiff was harmed in the following way: That money
*Insert ¶ #*

25

26   was very bADLY NEEDED AND COULD hAVE hELPED

27   the Plaintiff to Obtain Housing, which could have

28   AND would hAVE pREVENTED ONLY FURTHER DAMAGE
CAUSED by the LAPD And/or the City of Los Angeles

1

**Claim #( 3 )**
*(insert Claim#)*

2

3    *26* Plaintiff realleges and incorporates by reference all of the paragraphs above.
*Insert ¶ #*

4    *(List any other legal claim you have that is related to your civil rights claim.)*

5    *27.* LAW ENFORCEMENT CODE OF ETHICS
*Insert ¶ #*

6    VIOLATIONS, CONFLICTS OF INTERESTS,

7    Obstruction of Justice AND CONSPIRACY. IN

8    ADDITION to DEFYING A DIRECT COURT ORDER FOR us to

9    WORK together, AND NOT AGAINST EACH other AS he

10    DID in his submission DATED 9/2/2020

11    *28.* Plaintiff alleges the above claim against the following Defendant(s):
*Insert ¶ #*

12    Nicholas LAUBER D CA

13    _____

14    _____

15

16    *(You may list facts supporting your claim. Be specific about how each Defendant violated the rights giving rise to this claim.)*

17    *29.* IN April of 2020 Mr. LAUBER FURNISHED FORWARDING
*Insert ¶ #*

18    contact information For Bobby BENSON who is not his client.

19    In July he helped the Plaintiff to get an extension of time

20    but then in September, he went AGAINST the Plaintiff by

21    REQUESTING the Court to DISMISS ALL claims AGAINST both his

22    clients AND Bobby BENSON. IN ADDITION to CONCEALING

23    MATERIAL FACTS RELATING to the Pro SE Clinic.

24    *30.* As a result of the Defendant's violation of the rights giving rise to this
25    *Insert ¶ #* claim, Plaintiff was harmed in the following way: In total, this
26    Court OVERRULED Magistrate Judge ROSENBERG's
27    ruling of 8/17/2020 granting the Plaintiff's opposition to the
28    DEFENDANTS Motion to Dismiss. Had this Court Known
the complete series of EVENTS, it MAY have RULED Differently
REQUESTED CORRECTION MADE   9   SEE EX 11 PG. 80 1 PAGE
+ photo

**VI. REQUEST FOR RELIEF**

WHEREFORE, the Plaintiff requests:

___. The AFOREMENTIONED Amount of 7.5 m to be ~~ASSESSED~~ *GRANTED*

*Insert ¶ #*

to 7.5₀₅m BASED UPON the ~~CONNECTED CASE # 20STCV45298~~

~~And~~ the NEW EVIDENCE PRESENTED in our FAC, which

supports our ORIGINAL Complaint. MANY similarities between

the two. IN ADDITION to the NEW MEDICAL EVIDENCE,

AND ALL COURT COSTS.

___. CONFLICTS of Interests (Ofc. Munoz/Sgt. Miller; Ofcs.

*Insert ¶ #*

CAmpbell + CALzadillas (AN ASSAULT DID HAPPEN, yet they said

"NO CRIME" / PARKVIEW on the PARK; resulting in LAW

ENFORCEMENT CODE of Ethics Violations, which is ALSO

___. Similar to Ofc. Abner committing Perjury by

*Insert ¶ #*

MALicious Prosecution when I was illegally ARRESTED

when HE stated there WAS, WHEN in FACT there WAS

"NO CRIME" Committed by me AND I WAS FOUND N.G. in

September 2017. NEW photo EVIDENCE PROVES that. IN ADDITION

___. Mr. LAuber not working with me, but AGAINST me by

*Insert ¶ #*

confirming the Conspiracy Theory EMAILS (pgs 13+14 Ex. 116); AND

by Officer Gray ALSO violating the DOJ Ruling Bell v. City

of Boise Et Al. 2015, by allowing my tent to be Destroyed

And me to have to illegally move, which would Not have

happened, had Bobby Benson been there As was implied

(Cv 12/1/2020)                          Dated: 11/30/2020

Mr. LAuber PROVED

NO RELATED CASE,               Sign: _____

which is why we

request to Amend        Print Name: DAYNA K. CATCHINGS

back to the

7.5 m)

10

MC-025

SHORT TITLE: CATCHINGS v. City of Los Angeles et.al.    CASE NUMBER: CV19-9480 DSF (AGR)

ATTACHMENT (Number): _____1_____

(This Attachment may be used with any Judicial Council form.)

Item#

TABLE OF CONTENTS

1. LAW ENFORCEMENT CODE OF Ethics (pg.15 ex.116)
EMAILED to Nicholas Lauber on 5/5/2020 6:23pm
RE: NEW CAUSES OF ACTIONS AGAINST the LISTED DEFENDANTS
PAGES 15-44. NEW CAUSES OF ACTION.

2. Affirmative DEFENSE OF LACHES As it pertains to Ofcr. Contez
denying his culpability. The time has long since passed for
him to object to or deny Anything. HE NEVER RESPONDED to
EMAIL dated 10/14/19 before the Filing date of 11/1/19, As stated in the
Interrogatories, Question #9. SEE pgs. 23-25

3. Notice of MAJOR CLEANING dated 4/12/17 re: the Actions of
Ofcr. Abner. He committed both FRAUD AND PERJURY ON TRIAL
DATE 9/22/17 by swearing under oath that there WERE "NO CAMPING"
SIGNS POSTED. I TESTIFIED that there were NOT ANY "NO CAMPING"
SIGNS POSTED, AND the photos on PAGES 9-14 PROVE there were
NO "No camping" SIGNS POSTED Anywhere NEAR the campsite that
Sgt. Miller himself HAD REFERRED me to, supported by the other
TENTS that were Also there. An extremely blatant Violation of the
LAW ENFORCEMENT CODE OF Ethics. Consequently, he Also Violated
the DOJ Ruling of 2015 in Bell v. City of Boise et.al. At the same
time by removing me illegally from the campsite, which in turn
ESTABLISHES A CONFLICT OF INTEREST WITH Sgt. MILLER.

4. EMAIL DATED 9/26/2020 explaining the St. Barnabas complaint AND RELEVANCE
to this present case pgs. 12+13. PAGES 14+15 ADDRESS our objection to
Mr. LAUBER's SEPTEMBER 2, 2020 Submission. He showed a willful disregard
of the Law by DEFYING the COURT'S ORDER for us to work together. By
Attempting to help A PERSON who he ADMITTED both in April AND must
RECENTLY on 12/1/2020 that Bobby BENSON is NOT his client, yet he ADVOCATED
FOR him Anyway. By him doing so, he Attempted to obstruct Justice, showed a
CONFLICT OF INTEREST AND ESTABLISHED A conspiracy between the City,
the LAPD AND the SANITATION Dept. which would EXPLAIN why he
DIDN'T keep the Agreement to help AND protect me AND my PROPERTY when he
showed up AFTER the DAMAGE HAD HAPPENED to me. He ALSO VIOLATED the
LAW ENFORCEMENT CODE OF Ethics.

(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)

Page __1__ of __6__

(Add pages as required)

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

ATTACHMENT
to Judicial Council Form

www.courtinfo.ca.gov

MC-025

SHORT TITLE: Cnatchings v. City of Los Angeles Et. Al.

CASE NUMBER: CV19-9480 DSF (AGR)

ATTACHMENT (Number): 2

(This Attachment may be used with any Judicial Council form.)

ITEM #

## TABLE OF CONTENTS

5. PAGE 41, EX 8A the Front of business cards, For both Bobby Benson w/the Sanitation Dept. and Kimberely Lewis w/ LAHSA

6. PAGE 52 B Ex 6B Are the BACK images of both CARDS.

7. PAGE #1 EMAIL DATED 9/23/2020 4:30pm RE: FORWARDED email to Bobby Benson pgs. 1-3

8. Photos that Support which support the previous email pgs. 50-54 NEW PHOTO EVIDENCE.

9. EMAIL DATED 12/1/2020 10:58 AM RE: MISSING PAGES FROM PARKVIEW Complaint case # 20STCV45298. This was my response back to him AFTER he (MR. LAMBER) EXPLAINED to me EXACTLY how the two cases Are NOT related because it involves other Police Officers who Are not his clients. I did mention to him that I would be Addressing his September 2, 2020 (typo "sequencer") (be not bye), because in that submission he defended Bobby Benson who he admitted in April that he was not his client by Furnishing/Forwarding information. (p. #1)

10. EMAIL DATED 12/1/2020 10:26 AM From MR. LAMBER once AGAIN confirming that Bobby Benson is indeed NOT one of his clients, which Therefore makes him guilty of obstruction of Justice, conflicts of Interests and confirms CONSPIRACY between the LAPD and the Sanitation Dept. in Destroying illegally homeless people's tents and campsites. This is All NEW EVIDENCE that can stand alone, on its own Against both Bobby Benson & MR. Nicholas Lamber DCA.

11. WASHington Post Blog RE: UNConstitutional bAN From the homeless sleeping outside by Emily Badger 8/13/2015, which supports the NEW EVIDENCE Against OFCR, Gras, By Allowing my tent and belongings to be illegally destroyed while both she and her partner just stood by and did nothing to prevent it, which is yet Another LAw Enforcement case of Ethics Violation, AS she, her partner and Bobby Benson were All working under the color of LAw. pgs. 53-55.

12. SOUTHERN CALIFORNIA Public Radio blog DATED 8/14/2015 Explains the DOJ pgs. Ruling of 2015 - BELL V. City of Boise Et. AL confirming that the DOJ does indeed say Also that it is UNConstitutional to ban the homeless from sleeping outside (by Destroying their personal property) 56 + 57 + 58

(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)

Page 2 of 6

(Add pages as required)

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT**
to Judicial Council Form

www.courtinfo.ca.gov

MC-025

SHORT TITLE: CATCHINGS v. City of Los Angeles et. al.

CASE NUMBER: CV19-9480 DSF (AGR)

**ATTACHMENT** *(Number):* 3

TABLE OF CONTENTS

ITEM Number

*(This Attachment may be used with any Judicial Council form.)*

13. EMIAL DATED 5/7/2020 10:33AM to MR. LAUBER RE: the Affirmative Defense of LACHES as it Applies to Officer Cortez and to Bobby Benson (AS PER MR. LAUBER's Submission DATED 9/2/2020). PAGES 22-34 EX. 116

14. EMAIL DATED 9/26/2020 1:10pm re: St. BARNABAS Complaint and its RELEVANCE to this PRESENT complaint, PAGES 11-15 PAGES 14+15 ADDRESS the Conflicts of Interests; Sues between the City of Los ANGELES (the LAPD) AND the SANitation Dept, AND MR. LAUBER'S DEFIANCE of Court ORDER FOR us to work together AND not AGAINST each other, which he did not do or honor that ORDER on 9/2/2020. The PLAINTIFF objected to him, but we were not given permission by the Court to submit anything other than our FAC, which we Are doing now, to object to the Court As well.

15. St. BARNABAS RENT receipt of $850.00 DATED 6/14/18, which Establishes the question of why the FUNDS were not MADE AVAILABLE Long before that which would have Limited or eliminated ANY AND ALL contact with the LAPD which resulted in ADDITIONAL damages caused by the illegal eviction.

16. SBSS CASE MANAGEMENT ASSESSMENT REPORT DATED 11/3/16, PROVING that MARIA DELEON HAD full AND complete knowledge of the SEVERE need FOR housing. In the 14 DAYS that followed, before the involvement of Sgt. Miller on 11/17/16; they could have gotten me into a hotel, motel or shelter, Just AS HERITAGE CLINIC DID FOR me on 11/1/17, AFTER the involvement of Ofcr. GROS AND AFTER the FAILURE, refusal AND neglect of Bobby BENSON to keep his promise to protect my rights AND property as a homeless person by not being present at the clean up.

17. Motel RENT RECEIPT DATED 11/1/17 FROM HERITAGE CLINIC PROVING my point. PGS. 140+141, EXS. 106+107.

18. The RESULTING St. BARNABAS (SBSS) complaint FILED on 9/25/2020, PAGE 55 EX. 117, FRONT AND BACK

19. Summons FILED on 9/25/2020 pg. 56, EX. 116

20. MR. LAUBER'S PROOF of SERVICE of the COURTESY COPY of the SBSS Complaint because the City of Los Angeles is Listed AS WITNESSES, not DEFENDANTS (including the LAPD). His PROOF OF SERVICE is ATTACHED.

---

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page 3 of 6

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT**
to Judicial Council Form

www.courtinfo.ca.gov

MC-025

SHORT TITLE: CAtchings v. City of Los Angeles et al.

CASE NUMBER: CV19-9480 DSF (AGR)

**ATTACHMENT** (Number): 4

*(This Attachment may be used with any Judicial Council form.)*

TABLE of CONTENTS

**Item #**

21. EMAIL DATED 11/12/2020 7:37 pm bottom of the page re: Sgt. MILLER's involvement. This is NEW EVIDENCE that can ALSO STAND ALONE AND ON its OWN. pgs. 5-7 (top of PAGE)

22. EMAIL DATED 9/26/2020 8:33 AM with Attached text message re: Gilbert Gomez AND LAHSA. PAGE 16+17, AND PAGE 68 EX. 17

23. EMAIL DATED 8/26/2017 to ASSEMblyman Miguel Santiago (3:56 pm) confirming my Agreement with Bobby BENSON PAGE 1. PAGE 2 is the ORIGINAL message to Bobby BENSON on 7/19/17 that was FORWARDED to MR. LAUBER, mentioned previously. Therefore, HOW could MR. LAUBER WORK AGAINST me by Requesting him to be REMOVED FROM the COMPLAINT?!

24. LETTER DATED 12/29/2016, by MARIA DELEON CM, who, still after almost 2 months had NOT gotten me inDOORS SOMEWHERE, then I would have NEVER MET OFFICER ABNER in April, 2017, which Therefore continued to contribute to the City's DAMAGES AS. well, consequently.

25. SANITATION DEPT. CLEAN UP NOTICE DATED 11/1/17 - WHERE WAS Bobby BENSON?

26. HAD he been there Ex. 4A AND 4B would NEVER HAVE occurred with OFFICER GRAS, who went AGAINST his ORDERS to me (AND yes I told her, which is why I ASKED to move my tent to the other SIDE of the FENCE, then PLACE it back which would have been in compliance with his Agreement to me. He BREACHED the CONTRACT.

27. Photo 2 of 6 - OFFICER GRAS

28. EX. 10 page 46 - Photo of the DAMAGE to where there was NO PLACE else to go, thereby violating ALSO DOJ Ruling Bell v. City of Boise et. al. by Destroying personal property (allowing) she ALSO has 2012 VIOLATED the LAW ENFORCEMENT CODE OF ETHICS under color of LAW.

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page 4 of 6

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT**
to Judicial Council Form

www.courtinfo.ca.gov

MC-025

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Chtchings v. Cdoy q Los Angeles Et. Al | CV19-9480 DSF (AGR) |

Item # _____ ATTACHMENT (Number): __5__   TABLE OF CONTENTS

*(This Attachment may be used with any Judicial Council form.)*

29. Page 47 could have been avoided as well had Bobby Benson been there, yet Mr. Lauber said on 9/2/2020, he had no responsibility, so he requested him (who is not his client) to be removed from the complaint. Ex. 13.

30. Proof of the State of California's presence, which would not have mattered either had Bobby Benson been there, and officer Gras, had upheld the law Enforcement code of ethics, instead of violating them herself, also. Page 48 Ex. 14. This prior evidence is standing alone against officer Gras, who was not a Defendant in the original complaint, in addition to Mr. Lauber requesting for Bobby Benson to be removed from the complaint on 9/2/2020. He brought that part up again himself, therefore the plaintiff should be allowed to address all aspects of it. He opened the door to this discussion.

31. Page 100 Ex. 73, Dr. Amy Crowder's Letter, the plaintiff's Psychologist, that points directly to the incidents of 11/1/17 and the resulting damage that was also inflicted by NEW Defendant officer Gras. I believe that she had written in December of 2016.

32. Page #107, Ex. 71 - 2 page Letter dated 12/7/17 by both my Mental Health Worker Savay LUanna & Psychiatrist Dr. Garis in the 3rd paragraph it points directly to the fact that the unlawful and wrongful acts committed by both OLCR. Gras and Bobby Benson could have also possibly cost me a chance at permanent housing. Infliction of Severe Emotional Distress. Page 108 Ex. 72

33. Email dated 9/18/2020 8:33 Am — Proving full compliance with my Agreement w/Bobby Benson, witnesses by G. West Gurnez (Previously Entered in Item # 21.) As to how it's relevant to Severe Emotional Distress

34. Medical evidence ps.118 Ex. 83 which marks the beginning request for medical help brought on by the situation w/ Sat. Miller in November 2016. The medical request expires on 4/5/17, but I received an extension until 6/21/17. Good thing I had not just stopped the treatment before the introduction with officer Moyer, But it was desperately needed afterwards.

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page __5__ of __6__

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT**
to Judicial Council Form

www.courtinfo.ca.gov

MC-025

SHORT TITLE: Catchings v. City of Los Angeles et al.    CASE NUMBER: CV19-9480-DSF (AGR)

Item #

**ATTACHMENT** (Number): ___6___

(This Attachment may be used with any Judicial Council form.)

35. EX. 84 PG. 119. I WENT until 6/21/17 WHEN he REFUSED to state exactly what the TREATMENT WAS FOR, but both 1) DRUGS ARE ANTI-DEPRESSANT AND ANXIETY RELATED.

36. The EARLIEST DIAGNOSIS WAS ON 12/21/17. The MAJORITY of THEIR (the HERITAGE C.(INC.'S) TREATMENT is through COUNSELING AS opposed to DRUG THERAPY. BEING in the street AND NOT IN A CONTROLLED ENVIRONMENT (to gauge their effectiveness AND possible SIDE EFFECTS), I held off AS LONG AS I could. But, with the ADDITIONAL PERSONAL Injury committed by OFCR. ALVAREZ something WAS better than nothing. BECAUSE he WAS ACTING UNDER COLOR OF LAW thereby Violation the LAW ENFORCEMENT CODE OF ETHICS himself, AS WELL. DR. STACIA MILLS M.D.

37. EX. 79 PG. 114. DR. DAVID TALLALIAN M.D. who is (WAS. He is NO LONGER there, but my MEDICATIONS ARE CONTINUING) my DOCTOR who PRESCRIBED the following NEW medications that I AM currently taking DUE to pre-EXISTING CONDITIONS that were MENTIONED to ALL OFFICERS involved. AS A homeless PERSON, I HAD NO PLACE Else to go. By SGT. MILLER setting the LAW ENFORCEMENT CODE OF ETHICS Violations into the equation by defying FEDERAL LAW, WHEN OFFICER MUNOZ upheld it.

38. MEDICATION SERTRALINE TABLETS (ZOLOFT) PGS. 1-3

39. MEDICATION GUIDE PAGES 1-6 FOR the SERTRALINE TABLETS.

40. MEDICATION LISINOPRIL (blood pressure medication) PGS. 1-3.

41. EMAIL DATED 8/24/2020 11:19 AM (From bottom to top) & 11:55 A.M. STATING that the Clipul WAS CLOSED. I got the COURT'S ORDER from the MAILBOX ON page SATURDAY 8/22/2020. Therefore, MR. LAUBER himself KNEW that I DID one comply with the COURT'S ORDER within his submission to the Court DATED 9/2/2020. He withheld material FACTS, whether I WAS his CLIENT or not.

42. EMAIL DATED 8/24/2020 12:30 PM Post Script. PAGE ONE ALSO re: PRO SE Clinic

43. EMAIL DATED 8/24/2020 POST, POST Script to EMAIL At 11:19 AM to the PRO SE CLINIC SELF EXPLANATORY. EMAIL 8/23/2020 12.08 pm to MR. LAUBER. PGS. 1 + 2

44. EMAIL DATED 10/29/2019. PAGES 2-5 PROVING PRIOR CONTACT WITH the PRO SE CLINIC, AND AS STATED, A PLACE they REFERRED me to GAVE me the WRONG contact information FOR Bobby BENSON. AND, MR. LAUBER KNEW ALL OF this, yet REMAINED SILENT About his KNOWLEDGE re: the PRO SE Clinic that he DIRECTLY KNEW BEFORE his SUBMISSION ON 9/2/2020. That is most CERTAINLY NOT A SIGN OF WORKING TOGETHER with me.

(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)

Page _6_ of _6_

(Add pages as required)

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT**
to Judicial Council Form

www.courtinfo.ca.gov

**From:** dayna catchings
**Sent:** Monday, June 1, 2020 11:24 AM
**To:** ABC Los Angeles
**Subject:** Fwd: Commission Procedure C-3, Law Enforcement Code of Ethics

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Dayna

---------- Forwarded message ---------
From: **dayna catchings** <catchings.dayna7@gmail.com>
Date: Tue, May 5, 2020, 6:23 PM
Subject: Fwd: Commission Procedure C-3, Law Enforcement Code of Ethics
To: Nicholas Lauber <nicholas.lauber@lacity.org>

...And finally, this second link that's on the State of California's own website regarding Regulation 1013, and Commission Procedure C-3, Law Enforcement Code of Ethics, that supports the previous link.

Both of which I will be submitting as evidence during discovery.

I am so anxious to see YOUR sources that support your own point of view, because I most definitely do NOT see it reflected within the Law itself.

Thank you,

Dayna

---------- Forwarded message ---------
From: **dayna catchings** <catchings.dayna7@gmail.com>
Date: Tue, May 5, 2020, 6:13 PM
Subject: Commission Procedure C-3, Law Enforcement Code of Ethics
To: Dayna R. Catchings <catchings.dayna7@gmail.com>

https://post.ca.gov/commission-procedure-c-3-law-enforcement-code-of-ethics

Dayna



EX.116

**From:** dayna catchings
**Sent:** Monday, June 1, 2020 11:11 AM
**To:** ABC Los Angeles
**Subject:** Fwd: Law Enforcement Code of Ethics

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Dayna

---------- Forwarded message ---------
From: **dayna catchings** <catchings.dayna7@gmail.com>
Date: Tue, May 5, 2020, 6:00 PM
Subject: Fwd: Law Enforcement Code of Ethics
To: Nicholas Lauber <nicholas.lauber@lacity.org>

Mr. Lauber:

For your information and to further illustrate my claim for damages, I will be submitting into evidence this link to the International Association of the Chiefs of Police that PROVES that your last sentence in that first paragraph saying that they have NO duty or obligation to me or anyone else in the general public, is both incorrect and absurd.

Of COURSE they do...
Whether it's written on the doors of the police cars, or not.

It's too large to print each and every link, so I will just refer to this e-mail that contains the link and COMPLETE subsequent links as well, within my next written pleadings, as the physical evidence that HUGELY refutes that first paragraph in your most recent e-mail today.

Thank you,

Dayna

---------- Forwarded message ---------
From: **dayna catchings** <catchings.dayna7@gmail.com>
Date: Tue, May 5, 2020, 5:34 PM
Subject: Law Enforcement Code of Ethics
To: Dayna R. Catchings <catchings.dayna7@gmail.com>

https://www.theiacp.org/resources/law-enforcement-code-of-ethics

16

Ex. 16

Dayna

17

EX.116



BACK TO ALL RESOURCES

# Law Enforcement Code of Ethics

The IACP adopted the Law Enforcement Code of Ethics at the 64th Annual IACP Conference and Exposition in October 1957. The Code of Ethics stands as a preface to the mission and commitment law enforcement agencies make to the public they serve.

## Law Enforcement Code of Ethics

*As a law enforcement officer, my fundamental duty is to serve the community; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation and the peaceful against violence or disorder; and to respect the constitutional rights of all to liberty, equality, and justice.*

*I will keep my private life unsullied as an example to all and will behave in a manner that does not bring discredit to me or to my agency. I will maintain courageous calm in the face of danger, scorn or ridicule; develop self-restraint; and be constantly mindful of the welfare of others. Honest in thought and deed both in my personal and official life, I will be exemplary in obeying the law and the regulations of my department. Whatever I see or hear of a confidential nature or that is confided to me in my official capacity will be kept ever secret unless revelation is necessary in the performance of my duty.*

Ex. 1/6

MENU

**Learn More!**

Privacy Policy

Contact Us



1.800.THE IACP

19

Ex.N6

MENU

20

Ex. 16

# Law Enforcement Code of Ethics

Code of Ethics (Purpose)

Code of Ethics

## Purpose

**Code of Ethics:** To insure that all peace officers are fully aware of their individual responsibilities to maintain their own integrity and that of their agency, every peace officer, during basic training, or at the time of appointment, shall be administered the Law Enforcement Code of Ethics, as prescribed in Regulation 1013.

## Code of Ethics

**AS A LAW ENFORCEMENT OFFICER,** my fundamental duty is to serve mankind; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation, and the peaceful against violence or disorder; and to respect the Constitutional rights of all men to liberty, equality and justice.

I WILL keep my private life unsullied as an example to all; maintain courageous calm in the face of danger, scorn, or ridicule; develop self-restraint; and be constantly mindful of the welfare of others. Honest in thought and deed in both my personal and official life, I will be exemplary in obeying the laws of the land and the regulations of my department. Whatever I see or hear of a confidential nature or that is confided to me in my official capacity will be kept ever secret unless revelation is necessary in the performance of my duty.

I WILL never act officiously or permit personal feelings, prejudices, animosities or friendships to influence my decisions. With no compromise for crime and with relentless prosecution of criminals, I will enforce the law courteously and appropriately without fear or favor, malice or ill will, never employing unnecessary force or violence and never accepting gratuities.

I RECOGNIZE the badge of my office as a symbol of public faith, and I accept it as a public trust to be held so long as I am true to the ethics of the police service. I will constantly strive to achieve these objectives and ideals, dedicating myself before God[1] to my chosen profession...law enforcement.

FOOTNOTE:

[1] *Reference to religious affirmation may be omitted where objected to by the officer.*



Ex. 116

**From:** dayna catchings
**Sent:** Monday, June 1, 2020 12:18 PM
**To:** ABC Los Angeles
**Subject:** Fwd: Initial Disclosure (Courtesy Copy)


CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.


Dayna

---------- Forwarded message ---------
From: **dayna catchings** <catchings.dayna7@gmail.com>
Date: Thu, May 7, 2020, 10:33 AM
Subject: Re: Initial Disclosure (Courtesy Copy)
To: Nicholas Lauber <nicholas.lauber@lacity.org>


Good morning, Mr. Lauber,

Also planned to be submitted at the deposition is the attached AFFIRMATIVE pleading in it's entirety as it pertains to the legal term of LACHES.

This particular rule of law applies MORE to Officer Cortez, and secondly to Bobby Benson.

You did advise me that I do have the right to question your clients as long as I follow procedure.

Well, respectively, there is NO NEED for me to question any of them about what we already KNOW to be true.

It's now, up to each and every one of THEM to explain it to The Court.

Officer Cortez was given over 14 DAYS last October in my email to him to respond back with ANY KIND of objections or denials ESPECIALLY with him knowing that the was amount was going to be TREBLED to $5,010.00 from $1,670.00 (that HE had awarded in behalf of the LAPD), if I had to proceed (which I did); and which he FAILED, neglected and refused to respond back to!

So like I said, here it is SEVEN MONTHS LATER, as he decides to tell me that objects and denies everything until NOW through you?!

Of course, the term and full explanation of Laches as attached, would most DEFINITELY apply to him.

And...the SAME holds true for Bobby Benson.

Ex. 116

In my e-mail confirmation to him (contained within the Exhibits) of our AGREEMENT (based on my introduction to LAHSA), then THAT was his one and ONLY chance to object to or deny ANYTHING which he ALSO failed, neglected and refused to do.

And now, here it is over THREE YEARS LATER?!

Of course, HE is barred as well from objecting to or denying ANYTHING at this point in time by Law.

Thank you,

Dayna

On Tue, May 5, 2020, 5:01 PM dayna catchings <catchings.dayna7@gmail.com> wrote:
Mr. Lauber:

As to your first paragraph, if that's the case, then the LAPD is most certainly guilty of FRAUD!

And, THAT'S a fact.

Because...Right on the doors of police cars are the words "to protect and serve" now, if that's NOT meant for members of the general public, then WHO is it meant for??

As to your second paragraph, I did NOT SAY that I recorded any of our telephone conversations. I was under the impression that ALL City calls are automatically recorded. When we did the meet and confer by phone, I thought that you were at the office and the call was being recorded automatically.

Thank you, and you're welcome.

Dayna

On Tue, May 5, 2020, 2:52 PM Nicholas Lauber <nicholas.lauber@lacity.org> wrote:
Ms.Catchings:

As I have no personal knowledge of the facts, I can neither agree nor disagree with the accuracy of how you have recounted them. I do not agree that any police officer owed you any legal duty as the police do not have a legal duty to members of the public.

I have not consented to the recording of any of our phone calls. If you would like to record our phone conversations, you need to inform me of that fact prior to making the recording.

Thank you.

On Tue, May 5, 2020 at 2:41 PM dayna catchings <catchings.dayna7@gmail.com> wrote:
Mr. Lauber:

Ex.116

I only mention Officer Gras as a witness, in direct opposition to Officer Munoz's involvement as a witness to the contrary of me being forced off the sidewalk.

As I had just mentioned to you, NONE of them were ever there at the same time to tell me anything, which is the MAIN point that I was making in reference to Bobby Benson. He had a DIRECT duty, obligation and responsibility to me which as I stated, in addition to all of the OTHER promises by other Officers, I RELIED upon that to my detriment!

What's for you NOT to agree with?

And yes you DID AGREE with me about the actions of Officer Abner because ALL you objected to was the WORDING as I have stated. I'm pretty sure that the entire call was recorded.
I said "no probable cause" then you said "procedural error...that's just lawyer speak)"
I have NO REASON to lie on you!

And, as I also have just pointed out, Sgt. Miller out ranks Officer Abner, in ADDITION to me being there by HIS ORDERS to me on 11/17/16, CONFIRMING that Officer Abner came out of pocket with me!

Whether you AGREE with me, or NOT.

Therefore again, my arrest WAS wrongful and illegal, in addition to where NO SIGNS were posted as he testified to. (Why WOULD there be. Sgt. Miller himself deemed it as safe to camp there because MINE wasn't the only tent there)

I have a lot to learn about how the different types of procedures actually work. Thanks for the mini law lesson.

I await your response, although it's not going to change the evidence contained within the Exhibits.


You be well also.

Dayna

On Tue, May 5, 2020, 2:03 PM Nicholas Lauber <nicholas.lauber@lacity.org> wrote:
Ms. Catchings:

During our telephone conversation, I did not agree with your version of the facts. I was letting you know that I understood what you had said. I did not submit to the Court any photos you have provided me nor have I submitted to the Court any of the documents included in my disclosure to you. The Court only gets involved in discovery when the parties cannot resolve discovery disputes amongst themselves and only receives evidence when deciding a motion or at trial. To submit any documentary evidence to the Court as part of a status report would have been inappropriate. For that same reason I have not submitted any video to the Court either.

Ex.116

In regards to 11/1/17,in my motion I stated that "City of Los Angeles, Joel Miller, and/or Jason Abner" to indicate any of the three because it was unclear which officer you were claiming was involved on that date. Officer Gras who was mentioned in your opposition was not mentioned in either of your causes of action and was not named as a defendant. The point I was making was that irrespective of who was involved on the most recent date, even it was too long ago to be within the statute of limitations. I have been drafting a reply to your opposition and plan to file it on Friday.

Any questions you would like to direct to my clients can be done through the discovery process outlined in Title V of the Federal Rules of Civil Procedure.

Stay well.

On Tue, May 5, 2020 at 12:59 PM dayna catchings <catchings.dayna7@gmail.com> wrote:
Post Script:

As to Officer Cortez, if and since he apparently feels so STRONGLY that he is not responsible in ANY kind of way for me receiving payment for damages that he HIMSELF awarded me, then...

WHY didn't he object to or deny ANY kind of responsibility last October 14th 2019 when I e-mailed him, and then gave him over two weeks to reply back to me BEFORE I filed this complaint, but he failed, neglected and refused to do so; yet he's objecting NOW, 6 months later?!

Yes, that most DEFINITELY needs to be explained...

Don't you think?

Thanks,

Dayna

On Tue, May 5, 2020, 10:37 AM dayna catchings <catchings.dayna7@gmail.com> wrote:
Good morning Mr. Lauber,

I am in receipt of your document mailed on 4/30/2020.

I have a few questions:

You say in your submission that it WAS a lawful arrest committed by Officer Abner, but yet during our telephone meet and confer you agreed WITH ME, that he had NO probable cause once you actually heard EXACTLY what had transpired how and why.

What you DID DO was to correct my terminology from "probable cause" to "procedural error" which is exactly the SAME THING...

He was lawfully WRONG!!

25
24

Ex. 1/6

In addition, you did not submit to the Court along with your case management update, the photos that were sent to you by e-mail on 4/21/2020 that PROVES on 4/12/17 and on March of 2017, there were not only NO "No Camping" Signs, but also that was the EXACT location where Sgt. Miller had ordered me to move to BECAUSE there was no violation on that particular Ordinance at THAT campsite (yet there was none on Wilshire Blvd. EITHER); yet you didn't disclose that material fact to the Court on 4/30/2020?!

Why NOT...That's you concealing material facts from the Court.

Once AGAIN... Conflicts of Interests (one says that you CAN but the other says that you CAN'T. Even still, Sgt. Miller OUTRANKS Officer Abner, meaning consequently that was NOT a lawful Arrest)!!

And, Speaking of Sgt. Miller:

And as I said in my Response in Opposition, exactly WHY would you place him at the 110 Fwy. location on 11/1/2017 right along with Officer Abner and Bobby Benson (I will see that he is re served at his correct location after the Court House re opens), when you knew perfectly well that those were TWO different situations, at TWO different locations, on TWO separate dates almost one year apart?!

Sgt. Miller's involvement was on 11/17/16 on Wilshire Blvd. and NOT on 11/1/17 at the 110 Fwy. location.

And, WHY wasn't Officer Munoz's tape and information from 10/17/16 turned over ALSO to the Court as I REQUESTED you to do??

These and other questions that I have will be addressed at the deposition and trial.


Thank You,

Dayna


On Fri, May 1, 2020, 6:51 AM dayna catchings <catchings.dayna7@gmail.com> wrote:
Post Post Script:

You will also notice that I had to change the dates on the attached Proof of Service from 3/26/2020 (which coincides with the date of the screenshot of the notice on the Court House door when I had originally attempted to file it) to 4/30/2020, as per the filing extension given by the Court on 4/16/2020.


Thank you,

Dayna

26
30

Ex.1/6

On Fri, May 1, 2020, 6:37 AM dayna catchings <catchings.dayna7@gmail.com> wrote:
Post Script:

And, this is YOUR envelope mailing confirmation.

Dayna

On Fri, May 1, 2020, 6:30 AM dayna catchings <catchings.dayna7@gmail.com> wrote:
Good morning Mr. Lauber:

This is e-mail confirmation of the mailing of my Response in Opposition yesterday.

One thing that I WASN'T able to do (through no fault of my own), was to have the correct hole punching done as you can see in the attached screenshots.

The Manager (not Saul) at ABC Imaging did not have a template for the two holes across the top, which I didn't know until AFTER he had hole punched them and handed them back to me, is when he gave me his explanation. Of course, at THAT point there was nothing that I personally could have done myself to correct it. But the GOOD news is, that I was able to comply by having it stapled correctly.

The original one on your right WOULD have been able to be hole punched and stapled correctly (because the clerk's office has the correct hole puncher AND stapler, but I couldn't get it on March 27th to file it had the Court House been open on 3/27/2020 which it wasn't), even though I got there in PLENTY of time to do all of it correctly. Again, not MY fault.

You will also notice that I had to mail the Court it's copy by Certified instead of Registered Mail, since it was just paper and not an object, at the instruction of the Postmaster.

Both yourself and the Court should be receiving your copies this morning.


Thank You,

Dayna

On Thu, Apr 23, 2020, 11:42 AM dayna catchings <catchings.dayna7@gmail.com> wrote:
Post Script:

Mr. Lauber...

As you can see, in all THREE violations of the DOJ Ruling of 2015 committed against me by the LAPD, was the one common thread...the unlawful and wrongful destruction of my Personal Property, most specifically Officer Abner and Officer Gras.

The Police Report on 11/19/16 is a direct result of Sgt. Miller's involvement and defying the DOJ RULING of 2015 by having me put my tent and belongings in jeopardy of being stolen or



EX. 116

damaged by lowering it completely ( which is EXACTLY what happened, didn't it...), and to
leave the location.
With further Negligence by NOT informing Korean Air of THEIR responsibility and financial
liability if ANYTHING happened to my Property by them defying the LAPD orders of Officer
Munoz given them on 10/17/16, by not leaving both me and the situation
ALONE.

They were ALLOWED to defy a direct Police order for no Legal reason, and my damages from
that point and date forward were a direct result of them being ALLOWED to do so by the
LAPD!


Thank you,

Dayna

On Thu, Apr 23, 2020, 11:09 AM dayna catchings <catchings.dayna7@gmail.com> wrote:
Mr. Lauber,

THANK YOU SO MUCH for the explanation and clarification.

My confusion was most definitely very obvious.

That's why the other video from Witness Officer Abel Munoz that I requested is so CRITICAL
(as I mentioned before) to both the City of Los Angeles, the LAPD and most importantly to
me, based on the THREE violations of the DOJ RULING in Bell v. City of Boise 2015,
committed first by Sgt. Miller on 11/17/16, then by Officer Abner on 4/12/17 by forcing me
off the platform in the encampment that Sgt. Miller had sent me to, and finally by Officer
Gras on 11/1/17, who wouldn't let me move my belongings to the other side of the fence (as
stated) to PREVENT further damage from happening to me, leaving me with no place else to
go and only about 30% of which NEVER would  occurred had Bobby Benson kept both his e-
mail written confirmation of our meeting and arrangement and his verbal agreement to
protect my Rights and to do so as well, by not complying with the DOJ RULING and forcing
me off the sidewalk with no place else to go!

That's correct, you can legally REQUEST them, but that's only payable by me to you IF both
the City of Los Angeles and LAPD prevail.

And, I've already given you my feelings and reasoning on that issue.

(I told you this confusion was going to happen, didn't I...)

Thanks again for the in depth response!


Dayna

Ex. 116

On Thu, Apr 23, 2020, 9:35 AM Nicholas Lauber <nicholas.lauber@lacity.org> wrote:
Ms. Catchings:

I am required by the Federal Rules of Civil Procedure to provide you with a list of all witnesses that may have discoverable information to support my claims or defense and a list of all documents may contain discoverable information to support my claims or defenses. I am not required to explain how I intend to use them to mount a legal defense. If I later discover information that also falls within the criteria for disclosure, then I will provide you with a supplemental disclosure. My investigation is ongoing.

These are initial disclosures from me. The point of them is to put you on notice of what I have that supports my claims and defenses. If you would like to request other documents or information from me, then please do so according to the Federal Rules of Civil Procedure.

The videos, once prepared would, be put on DVD for your review. But as I mentioned in our conversation on Monday, those videos will not be turned over until the Court signs a protective order. I am preparing the protective order now and will send it to you for your signature when it is done.

The request for attorney's fees is pursuant to City of Los Angeles policy. The request is not made in consideration of the realities of collection. It's inclusion in this disclosure is to put you on notice that we may seek attorney fees in this action.

On Wed, Apr 22, 2020 at 8:01 PM dayna catchings <catchings.dayna7@gmail.com> wrote:
Post Post Script:

You are ALSO asking for Attorney's Fees which I also object to, as if I'M going to be the one who is doing the "PAYING", when I'M the one who has been damaged and I'M the one that has been LIED TO (by Sgt. Miller) and LIED ON (by Officer Abner), proven that by my written testimony in these e-mails should match the video footage that was recorded which is WHY I requested the additional video cam footage; the only other question that you should be asking ME is...

"Do you want (YOUR money) in paper or plastic??"

Because I'm definitely getting this vibe from you as if YOU think and feel that you've got this case in the bag...Seriously?!

Based on WHAT...

It CAN'T be based on the the evidence that ALL adds up in my favor and NOT in the favor of the City of Los Angeles or most importantly, the Los Angeles Police Department; and I've already challenged ALL of the Statue of Limitations restrictions in your Motion to Dismiss within my Response in Opposition, that would have prevented me from proceeding and prevailing, in addition to you not objecting to or denying ANYTHING that I have brought up to you during our telephone conversation, or in the e-mails between then and now.



EX. 116

I see NO DEFENSE for the listed Defendants based on the Evidence (visual and/or written) that would allow them or the City of Los Angeles (who had a duty and a responsibility to PAY the damages that the LAPD (through Officer Cortez had awarded, and by that NOT happening that ESTABLISHES Fraud, Breach of Contract, Negligence and Conflicts of Interests between the LAPD and the City of Los Angeles, andthen Officer Cortez was given a deadline to respond in but didn't BEFORE the Federal Complaint was filed) for them to prevail over me!

Thank you.
Dayna

On Wed, Apr 22, 2020, 7:12 PM dayna catchings <catchings.dayna7@gmail.com> wrote:
 Post Script:

 Mr. Lauber,

 I will also need to have a way to VIEW the video body cam footage of Sgt. Miller, Officers Abner and Solorio and Officer Abel Munoz (and probably even officer Gras on 11/1/17); just as you are able to see it and ESPECIALLY since I'm the one who is paying cash money for ALL of that evidence (hopefully you can get as much on one disc as possible like you had suggested) that is ALSO to be submitted to Magistrate Judge Rosenberg.

 I have a Legal Right to be able to view that evidence also.

 Thank you,

 Dayna

On Wed, Apr 22, 2020, 6:23 PM dayna catchings <catchings.dayna7@gmail.com> wrote:
 Mr. Lauber:

 The documents that you listed help ME more than your Clients.

 Just like I have to produce documents and evidence to YOU that YOU ask for, you have the SAME legal obligation to me as well!

 Which so far, up until now, you have NOT complied with, as per my e-mail to you yesterday.

 The Police Report that generated the $1670.00 monetary award by Officer Cortez which it was based on, but never paid;

 The FRAUDULENT ticket written by Officer Abner, when it wasn't TRUE at the time that the ticket was written, and for what it WAS written for was not what ACTUALLY

30
34

EX 116

happened; including all of the Criminal Court proceedings that I had to endure as a DIRECT result of him outright LYING on me, and the PERJURY that he committed on hearing date 9/22/17 in front of Judge May, for which I was found Not Guilty, thereby giving me the opportunity to charge him with Malicious Prosecution!

And, the video from both him and officer Solorio (as you yourself suggested) would give a much BETTER picture of what all happened, based on exactly WHEN both Officer's body cams were turned on and off;

Therefore,

What exactly is your Client's DEFENSE to violating the both the Law and my Constitutional Rights based on the documentation that you have submitted?!

I am not ALLOWED to file a response to what you've filed without the Court's order to do so, which has not been given to me yet.

So, that's why I asked you...what am I supposed to do with it??

Thanks,

On Wed, Apr 22, 2020, 5:31 PM dayna catchings <catchings.dayna7@gmail.com> wrote:
Thank you, Mr. Lauber...

However, since Officer Abel Munoz IS a witness, and I DID ask to have his body cam video footage yesterday also, but yet his wasn't added to the list??

Why not...

Now that you're sending out to to me, exactly what am I supposed to do with it??

Dayna

On Wed, Apr 22, 2020, 4:50 PM Nicholas Lauber <nicholas.lauber@lacity.org> wrote:
Ms. Catchings:

Please find attached a courtesy copy of my clients' initial disclosures. The original has been sent by US mail.

--
Nicholas D. Lauber
Deputy City Attorney
nicholas.lauber@lacity.org
213-978-7025
200 N Main St CHE 600
Los Angeles, CA 90012

EX. 116

*****************Confidentiality Notice *************************

This electronic message transmission contains information
from the Office of the Los Angeles City Attorney, which may be confidential or
protected by the attorney-client privilege and/or the work product doctrine. If you are
not the intended recipient, be aware that any disclosure, copying,
distribution or use of the content of this information is prohibited. If you have
received this communication in error, please notify us immediately by e-mail and
delete the original message and any attachments without reading or saving in any
manner.
********************************************************************

Dayna

--
Nicholas D. Lauber
Deputy City Attorney
nicholas.lauber@lacity.org
213-978-7025
200 N Main St CHE 600
Los Angeles, CA 90012

*****************Confidentiality Notice *************************

This electronic message transmission contains information
from the Office of the Los Angeles City Attorney, which may be confidential or protected by
the attorney-client privilege and/or the work product doctrine. If you are not the intended
recipient, be aware that any disclosure, copying,
distribution or use of the content of this information is prohibited. If you have received this
communication in error, please notify us immediately by e-mail and delete the original
message and any attachments without reading or saving in any manner.
********************************************************************

Dayna

--
Nicholas D. Lauber
Deputy City Attorney
nicholas.lauber@lacity.org
213-978-7025
200 N Main St CHE 600
Los Angeles, CA 90012

*****************Confidentiality Notice *************************

This electronic message transmission contains information
from the Office of the Los Angeles City Attorney, which may be confidential or protected by the
attorney-client privilege and/or the work product doctrine. If you are not the intended recipient, be

Ex.116

aware that any disclosure, copying,
distribution or use of the content of this information is prohibited. If you have received this
communication in error, please notify us immediately by e-mail and delete the original message and
any attachments without reading or saving in any manner.
********************************************************************

--
Nicholas D. Lauber
Deputy City Attorney
nicholas.lauber@lacity.org
213-978-7025
200 N Main St CHE 600
Los Angeles, CA 90012

*****************Confidentiality Notice *************************
This electronic message transmission contains information
from the Office of the Los Angeles City Attorney, which may be confidential or protected by the
attorney-client privilege and/or the work product doctrine. If you are not the intended recipient, be
aware that any disclosure, copying,
distribution or use of the content of this information is prohibited. If you have received this
communication in error, please notify us immediately by e-mail and delete the original message and
any attachments without reading or saving in any manner.
********************************************************************
Dayna



*Ex- 116*

Free Dictionary Org

## laches

**The Collaborative International Dictionary of English v.0.48:**
Laches \Lach"es\ (l[a^]sh"[e^]z), Lache \Lache\ (l[a^]sh), n. [OF. lachesse, fr. lache lax, indolent, F. l[^a]che, ultimately fr. L. laxus loose, lax. See Lax.] (Law) Neglect; negligence; remissness; neglect to do a thing at the proper time; especially, a delay in asserting a claim, sufficient to cause a person to lose the right to adjuducation of the claim by a court. [1913 Webster]

It ill became him to take advantage of such a laches with the eagerness of a shrewd attorney. --Macaulay. [1913 Webster]

**Bouvier's Law Dictionary, Revised 6th Ed (1856):**
LACHES. This word, derived from the French lecher, is nearly synonymous with negligence. 2. In general, when a party has been guilty of laches in enforcing his right by great delay and lapse of time, this circumstance will at common law prejudice, and sometimes operate in bar of a remedy which it is discretionary and not compulsory in the court to afford. In courts of equity, also delay will generally prejudice. 1 Chit. Pr. 786, and the cases there cited; 8 Com. Dig. 684; 6 Johns. Ch. R. 360. 3. But laches may be excused from, ignorance of the party's rights; 2 Mer. R. 362; 2 Ball & Beat. 104; from the obscurity of the transaction; 2 Sch. & Lef. 487; by the pendancy of a suit; 1 Sch. & Lef. 413; and where the party labors under a legal disability, as insanity, coverture, infancy, and the like. And no laches can be imputed to the public. 4 Mass. Rep. 522; 3 Serg. & Rawle, 291; 4 Hen. & Munf. 57; 1 Penna. R. 476. Vide 1 Supp. to Ves. Jr. 436; 2 Id. 170; Dane's Ab. Index, h.t.; 4 Bouv. Inst. n. 3911.

The Shift Network
▷ Your Authentic Voice

OPEN

Ex. 116

**From:** dayna catchings
**Sent:** Tuesday, June 2, 2020 9:24 AM
**To:** ABC Los Angeles
**Subject:** Fwd: June 1st Meeting


CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.


Dayna

---------- Forwarded message ---------
From: **dayna catchings** <catchings.dayna7@gmail.com>
Date: Tue, Jun 2, 2020, 6:50 AM
Subject: Re: June 1st Meeting
To: Nicholas Lauber <nicholas.lauber@lacity.org>


Good morning, Mr. Lauber:

Once again, my apologies for all that happened yesterday, but again, NONE of it was my fault or due to any Negligence on my part.

The 5 hours spent at ABC IMAGING could not have been avoided. When the printer went to lunch at around 11:30, so did I.

I had everything printed in the order of importance, and it STILL cost me almost 20 dollars!

The main difficulty came in printing the emails and photo attachments, as I only had to have the main package of documents that was requested plus the NEW ones (Ex's. 116 and 117) copied in addition to the connected submissions. And speaking of which, I was unable to copy the entire last e-mail folder re: Our June 1st meeting as I had planned for two reasons; the additional costs and there would not have been enough time to have it copied also and STILL made it to the Court House by 4pm. As it was, I left the printers at around 3:20 p.m.

THEN we had the issue with the train.  See the attached screenshots. Obviously the times began EARLIER than 3:56 p.m.
Google took the photo of me at the Train Yard Metro Division 20 at Union Station.

So far as today is concerned, I have 4 deliveries that I had deliberately scheduled for today instead of yesterday, because I KNEW that I wasn't going to be here all day long (and as it turned out, I wasn't) to receive them.

But, I'm now have to try to be here TODAY instead. Yes, what all happened yesterday, this is also a HUGE inconvenience to me too!

35

EX. 116

The printers open around 9. I will have this 41st e-mail printed, copied and attached as another Ex. 116 (e-mails). The new photos are Ex. 117. You will see how it's all laid out when you receive them. I'm going to go and have this additional e-mail printed and attached to the submissions for both you and the Court to see, and then I'm coming back home to see if there is an updated delivery time. Regardless, I will travel by bus instead of train to the Court House to file the documents, and then to the Post Office to mail you yours.

Thank you for your patience and understanding!

Dayna

On Fri, May 29, 2020, 3:14 PM dayna catchings <catchings.dayna7@gmail.com> wrote:
Mr. Lauber:

Sounds good.

Thank you, for understanding!

All I can do is the BEST that I can do...

We just reached 40 emails even... 🍩

Dayna

On Fri, May 29, 2020, 2:30 PM Nicholas Lauber <nicholas.lauber@lacity.org> wrote:
Thank you for clarifying.

That sounds very reasonable and I would agree to that.

If something you identify as already produced is unclear to me what it is referring to then I will just ask you to clarify.

On Fri, May 29, 2020 at 2:06 PM dayna catchings <catchings.dayna7@gmail.com> wrote:
Oh, Okay, thank you.

As an example:

The email to you that contains the photos regarding the campsite and Officer Abner, you already have and you can stipulate to that. Therefore, I would not have to copy and send another one for you again, but I WOULD have to make copies for myself and the Court.

And, for the other documents I can just make ALL necessary copies, to everyone.

What I can afford to have copied that I I don't and you don't already have, and that I can pull off my phone, I will do that.

36                                                        Ex.116

It will be noted as I supply each document that you have requested.

As I further example, I can print and copy this ENTIRE Funder because the emails are short and few. And maybe a couple others.

But NOT the entire folder that contains 19 emails, which you already have and can stipulate to.

Something along those lines...

Dayna

On Fri, May 29, 2020, 1:27 PM Nicholas Lauber <nicholas.lauber@lacity.org> wrote:
Ms. Catchings:

If you want to communicate that to the Court that I have stipulated and agreed to receipt electronically, that works for me.

My apologies, but I do not understand the rest of your request.

On Fri, May 29, 2020 at 11:26 AM dayna catchings <catchings.dayna7@gmail.com> wrote:

Ohhh YES, Mr. Lauber...that would be great!!

And so far as the Court is concerned, it ALREADY knows that I had requested Attorney assistance for these very same issues and reasons at the exact time that I filed the Complaint, because I KNEW just from the illegal eviction case (#BC633373), just how complicated and even MORE involved that this type of Case would be; and it is!!

So, All I could do and can do was to ASK for the help, which I did.

Thank you for your consideration. That really does mean a lot to me!

If you would just Stipulate that you already have most of what you are requesting, then I can just show ALL of those things (documents) in my Answer to the Court, and I can write it up as such before I submit it (we now have 37 emails).

"To the Court...Attorney Lauber is willing to stipulate to the following items in his Demand for the Production of Documents, that he already has received or is willing to receive electronically (through emails) as follows..."

I'm not quite sure how to send ALL of the relevant Facebook posts to you, (many include photos), so all I can do is to make reference to the dates and times regarding the incidents. Once again there is a lot to print (even for the Court...ESPECIALLY because it wants TWO copies of EVERYTHING).

37

Ex.116

For each demand that is pertinent, I could respond "Asked and Answered by the Stipulation" and then just submit as much as I can of EACH Demand to the Court as was requested, and then maybe figure out a way to do it somehow later on after Monday.

That's all that I can do...

Does that work for you??

Your response will make 38 emails.


Thank you,
Dayna

On Fri, May 29, 2020, 10:48 AM Nicholas Lauber <nicholas.lauber@lacity.org> wrote:
  Ms. Catchings:

  If you have the ability to send me something electronically to my email, I agree to accept it by email if that can help you with costs of printing and postage.

  I agree with your math that it adds up to 35 emails.

  I cannot speak for the Court and hope that they are more communicative with you.

  On Fri, May 29, 2020 at 10:39 AM dayna catchings <catchings.dayna7@gmail.com> wrote:
    Good morning Mr. Lauber:


    I'm just finishing up your Demand for Production of Documents, and the Interrogatories have been completed.

    However, on the issue of email documents, I will NOT be financially able to triple copy all 35 of them (which will include this one).


    I have the Folders as follows:

    Folder dated 6/1 -- 3 emails
              5/5 -- 4
              4/22 -- 19
              4/17 -- 5
              4/10 -- 4

    Which equals 35 emails. Please confirm.

38

EX.116

Next, on the issue of Facebook posts re: "the Incident" there is absolutely NO way financially or mechanically that I can copy and print ALL of those postings too. I maybe could forward them to you, and give you the dates etc. or maybe grant you and the Court access to them.
Nevertheless, I have NOTHING to hide.
If I said it, I said it!
If it happened, it happened!

One thing about it... I didn't lie ON anyone or TO anyone about ANYTHING the way that the LAPD did TO me, and ON me!!

In addition, I will also be labeling these updated documents as follows because in case I do have to amended it in any way, all of this NEW evidence and documents will be added as NEW Evidence, Exhibits and Documents in the Amended Complaint:

Exhibit 116 -- All New Emails
Exhibit 117 -- All New Photos
Exhibit 118 -- All New Screenshots
Exhibit 119 -- Facebook Postings

I will however be able to print and copy the few emails that have attachments to them, as they are the most demonstrative. The color photo copies are 50 cent EACH, I believe.

These are the the only issues I see as of today. I did call the Court House and I heard a recording of all of the different Branches locations and hours, so I'm assuming that on Monday I can simply take the Court it's 2 copies of each (the postage I will save can help to make that second set copy), and mail you 1 of each.


Thank you,

Dayna

On Sat, May 23, 2020, 5:37 PM dayna catchings <catchings.dayna7@gmail.com> wrote:
Good evening Mr. Lauber:

Thank you for letting me know yesterday afternoon that City Hall will not be open for us to meet on the 1st.

However, I will still be mailing you your requested Interrogatives and Documents as my answer, on the 1st, and the Proofs of Service to the Court. We can the arrange at still do the Deposition at a later date, but at least you will have all the information that you need and have requested.

Yes, all is still well with me, thank you for asking, and I hope that the same is also true for you as well!

*39*

*Ex 116*

Dayna

On Fri, May 22, 2020, 3:10 PM Nicholas Lauber <nicholas.lauber@lacity.org> wrote:
  Ms. Catchings:

  Thank you for confirming our meeting on June 1st. Unfortunately I was informed today that
  my office at City Hall East will not be reopened to the public at that time. They will not let you
  in the building and have not yet approved for me to go inside the building that day. I have to
  ask that we reschedule the meeting to a future date. I apologize for any inconvenience this
  may cause.

  Hope you are staying well.

  --
  Nicholas D. Lauber
  Deputy City Attorney
  nicholas.lauber@lacity.org
  213-978-7025
  200 N Main St CHE 600
  Los Angeles, CA 90012

  *****************Confidentiality Notice ************************
  This electronic message transmission contains information
  from the Office of the Los Angeles City Attorney, which may be confidential or protected by
  the attorney-client privilege and/or the work product doctrine. If you are not the intended
  recipient, be aware that any disclosure, copying,
  distribution or use of the content of this information is prohibited. If you have received this
  communication in error, please notify us immediately by e-mail and delete the original
  message and any attachments without reading or saving in any manner.
  *******************************************************************

--
Nicholas D. Lauber
Deputy City Attorney
nicholas.lauber@lacity.org
213-978-7025
200 N Main St CHE 600
Los Angeles, CA 90012

*****************Confidentiality Notice ************************
This electronic message transmission contains information
from the Office of the Los Angeles City Attorney, which may be confidential or protected by the
attorney-client privilege and/or the work product doctrine. If you are not the intended recipient,
be aware that any disclosure, copying,
distribution or use of the content of this information is prohibited. If you have received this

40                                                                    Ex. 116

communication in error, please notify us immediately by e-mail and delete the original message and any attachments without reading or saving in any manner.
*******************************************************************

--
Nicholas D. Lauber
Deputy City Attorney
nicholas.lauber@lacity.org
213-978-7025
200 N Main St CHE 600
Los Angeles, CA 90012

*****************Confidentiality Notice *************************
This electronic message transmission contains information
from the Office of the Los Angeles City Attorney, which may be confidential or protected by the attorney-client privilege and/or the work product doctrine. If you are not the intended recipient, be aware that any disclosure, copying,
distribution or use of the content of this information is prohibited. If you have received this communication in error, please notify us immediately by e-mail and delete the original message and any attachments without reading or saving in any manner.
*******************************************************************

--
Nicholas D. Lauber
Deputy City Attorney
nicholas.lauber@lacity.org
213-978-7025
200 N Main St CHE 600
Los Angeles, CA 90012

*****************Confidentiality Notice *************************
This electronic message transmission contains information
from the Office of the Los Angeles City Attorney, which may be confidential or protected by the attorney-client privilege and/or the work product doctrine. If you are not the intended recipient, be aware that any disclosure, copying,
distribution or use of the content of this information is prohibited. If you have received this communication in error, please notify us immediately by e-mail and delete the original message and any attachments without reading or saving in any manner.
*******************************************************************

41

Ex. 116

# Law Enforcement Code of Ethics

Code of Ethics (Purpose)

Code of Ethics

## Purpose

**Code of Ethics:** To insure that all peace officers are fully aware of their individual responsibilities to maintain their own integrity and that of their agency, every peace officer, during basic training, or at the time of appointment, shall be administered the Law Enforcement Code of Ethics, as prescribed in Regulation 1013.

## Code of Ethics

**AS A LAW ENFORCEMENT OFFICER,** my fundamental duty is to serve mankind; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation, and the peaceful against violence or disorder; and to respect the Constitutional rights of all men to liberty, equality and justice.

I WILL keep my private life unsullied as an example to all; maintain courageous calm in the face of danger, scorn, or ridicule; develop self-restraint; and be constantly mindful of the welfare of others. Honest in thought and deed in both my personal and official life, I will be exemplary in obeying the laws of the land and the regulations of my department. Whatever I see or hear of a confidential nature or that is confided to me in my official capacity will be kept ever secret unless revelation is necessary in the performance of my duty.

I WILL never act officiously or permit personal feelings, prejudices, animosities or friendships to influence my decisions. With no compromise for crime and with relentless prosecution of criminals, I will enforce the law courteously and appropriately without fear or favor, malice or ill will, never employing unnecessary force or violence and never accepting gratuities.

I RECOGNIZE the badge of my office as a symbol of public faith, and I accept it as a public trust to be held so long as I am true to the ethics of the police service. I will constantly strive to achieve these objectives and ideals, dedicating myself before God[1] to my chosen profession...law enforcement.

FOOTNOTE:
[1]*Reference to religious affirmation may be omitted where objected to by the officer.*



**ABC Los Angeles**

| | |
|---|---|
| **From:** | dayna catchings <catchings.dayna7@gmail.com> |
| **Sent:** | Monday, October 28, 2019 8:19 AM |
| **To:** | ABC Los Angeles |
| **Subject:** | Fwd: Police Report dated11/19/16 |

Hello, ONE of TWO

I will be in shortly to pick these two emails plus the forwarded screenshot, before noon.

Thanks,

Dayna

---------- Forwarded message ---------
From: **dayna catchings** <catchings.dayna7@gmail.com>
Date: Mon, Oct 14, 2019, 9:22 AM
Subject: Re: Police Report dated11/19/16
To: Armando Cortez <38838@lapd.online>

Hello Armando,

I know that it's been a while since we last spoke about my damages, but neither you, nor ANY Detective that the case was assigned to, have failed, neglected and refused to tell me about the EXACT procedure to collect my money from then until now. I did file the claim as you advised, but there has been absolutely NO follow up or follow through from your Department. Why not??



There appears to be a SEVERE Conflicts of Interests between the City Attorneys Office and the Los Angeles Police Department, where my money is concerned.

The LAPD (through You) has said that after their initial investigation, I was entitled to $1,670.00.
Yet, the City Attorneys Office said no by phone when I called them approximately 6 months later after filing the complaint on March 16, 2018, when I didn't receive an answer by mail.

However, I DID receive an answer by mail to the SECOND Complaint filed on May 17, 2017, under case number C17-11722 (which was also denied by the City Attorney's Office on August 28, 2017), for the Violation of the DOJ Ruling in 2015, that makes it ILLEGAL for the LAPD to remove homeless people from the sidewalks (if they are NOT blocking the either the sidewalk, or entrances to buildings), which I DEFINITELY was NOT doing on Wilshire Blvd. when Sgt. Miller ORDERED me to move on 11/1/16 to the second location down by the 110 Fwy and where James M. Woods connects near the UPS Service center, to which I complied.

The DOJ Citing it as "cruel and unusual punishment" because "they have NOWHERE ELSE to go", and Officer Munoz TOLD Korean Air precisely that on 1017/16 at 1:30 p.m. when out of harassment, they called your Rampart Station AGAIN on me, and he and his partner responded.

*CAtchings V.*
*CALIFORNIA*
*Ex.  1A*

I did site the damages that the LAPD quoted me (through you) to the City Attorneys Office under case number C18-04092, but they did nothing about it either, except to give mgs the run around (which can be very EASILY verified by my phone number on The City's call log).

Consequently, I will be filing my Federal Complaint for that DOJ Ruling as it pertains to BOTH Case Numbers mentioned, within the next couple of weeks by November 1, 2019.

The Compensatory damages will be based on the initial amount trebled plus interest, for BOTH violations by the LAPD (for the Wilshire Blvd. Incident on 11/17/16) and for the SECOND Violation on 11/1/17, which ALSO involved The LAPD and The State of California, through the actions of the Sanitation Department.

Because they BOTH are connected.

Had the FIRST incident not happened, the SECOND one would not have happened EITHER!

The Punitive damages have not yet calculated.

The Attorneys that I have spoken to, have asked me to ask your Department one final time for payment, before I proceed.

I await your response.


Thank you,

Ms. Dayna R. Catchings

On Tue, Nov 22, 2016, 11:01 AM Armando Cortez <38838@lapd.online> wrote:

 Hello Miss Catchings,


 the final total equals $1670.00.   Cosmetics/toiletries $100.  Tent $70.  Clothing $1000.  and shoes $500.  Legal and Personal documents have no dollar value loss.


 Thank You

 Officer Cortez 38838



**From:** dayna catchings <catchings.dayna7@gmail.com>
**Sent:** Sunday, November 20, 2016 10:38 AM
**To:** Armando Cortez
**Subject:** Police Report dated11/19/16

CATchings v.
CALIFORNIA
Ex 1B

**ABC Los Angeles**

| | |
|---|---|
| **From:** | dayna catchings <catchings.dayna7@gmail.com> |
| **Sent:** | Monday, October 28, 2019 8:21 AM |
| **To:** | ABC Los Angeles |
| **Subject:** | Fwd: Police Report dated11/19/16 |
| **Attachments:** | 20171101_104916.jpg; 20171101_110604.jpg; 20161222_144010.jpg; 20161116_101639.jpg; 20161116_101625.jpg |

This message has originated from an **External Source**. Please use proper judgment and caution when opening attachments, clicking links, or responding to this email.

TWO of TWO

Dayna

---------- Forwarded message ----------
From: **dayna catchings** <catchings.dayna7@gmail.com>
Date: Tue, Oct 15, 2019, 9:50 AM
Subject: Re: Police Report dated11/19/16
To: Armando Cortez <38838@lapd.online>

Good morning Armando,

Here are photos that CONFIRM the involvement of the State of California as represented by the presence of not only the Sanitation Department but also of the Sheriff's Department in addition to the LAPD's action of the Constitutional Rights Violation of the DOJ Ruling of 2015, as it pertains to November 1st, 2017, under Complaint case number C18-04092 (which is connected to Complaint case number C17-11722).

Speaking of timeline of events, as I think that I mentioned to you before, NONE of the contact between myself and the Entities mentioned would have NEVER HAPPENED had it not been for the Malicious Prosecution that resulted in the Illegal Eviction that caused me to become homeless in October of 2016, which is how and why I ended up on Wilshire Blvd. to begin with, filed under case number BC633373.

And THEN, we also have the other added elements to this story...

On 4/12/17, I was wrongfully ticketed for illegal camping under case number F94137 by Officer Abner (also from Rampart Division), I pled NOT GUILTY on 7/27/17, and was ultimately found NOT GUILTY on 9/22/17 by Criminal Court Judge Gus T. May and the verdict was entered on 9/25/17 BECAUSE...

"There was NO POSTED NOTICE saying or proving that by me having my tent still up at mid day was illegal"

*CA tchings V.*
*CALIFORNIA*
*EX. 2A*

1

*Oage 23*

(and therefore) I was NOT illegally camping on the sidewalk, just the same as Sgt. Miller had asserted on 11/17/16 when he ordered me to lower my tent and to vacate the sidewalk on Wilshire Blvd.

The attached photo which is time and date stamped PROVED that there was NO SIGN likewise on Wilshire Blvd. (even though there is NOW) at the time of Sgt. Miller's order, thereby representing yet ANOTHER violation of the law and of my rights, committed once again by the LAPD!!

In addition to the Conflicts of interests WITHIN the LAPD itself as represented by Officer Munoz versus Sgt. Miller regarding my Constitutional Rights, also.
What's up with that "good cop, bad cop" routine?!



You all are playing with people's LIVES. How can they not REALIZE that, or they do realize that, but they DON'T CARE!!

THIS is WHY the General Public cannot trust the Police... ONE will tell you one thing, and the NEXT one says that isn't so!!

The damages are far reaching...

Again, all photos are date and time stamped.


Thank you,

Dayna

On Mon, Oct 14, 2019, 9:22 AM dayna catchings <catchings.dayna7@gmail.com> wrote:
Hello Armando,

I know that it's been a while since we last spoke about my damages, but neither you, nor ANY Detective that the case was assigned to, have failed, neglected and refused to tell me about the EXACT procedure to collect my money from then until now. I did file the claim as you advised, but there has been absolutely NO follow up or follow through from your Department. Why not??



There appears to be a SEVERE Conflicts of Interests between the City Attorneys Office and the Los Angeles Police Department, where my money is concerned.

The LAPD (through You) has said that after their initial investigation, I was entitled to $1,670.00.
Yet, the City Attorneys Office said no by phone when I called them approximately 6 months later after filing the complaint on March 16, 2018, when I didn't receive an answer by mail.

However, I DID receive an answer by mail to the SECOND Complaint filed on May 17, 2017, under case number C17-11722 (which was also denied by the City Attorney's Office on August 28, 2017), for the Violation of the DOJ Ruling in 2015, that makes it ILLEGAL for the LAPD to remove homeless people from the sidewalks (if they are NOT blocking the either the sidewalk, or entrances to buildings), which I DEFINITELY was NOT doing on Wilshire Blvd. when Sgt. Miller ORDERED me to move on 11/1/16 to the second location down by the 110 Fwy and where James M. Woods connects near the UPS Service center, to which I complied.

*Catchings v.*
*Catfotornin-*
*2 B*

2
*PAGE 24*

The DOJ Citing it as "cruel and unusual punishment" because "they have NOWHERE ELSE to go", and Officer Munoz TOLD Korean Air precisely that on 1017/16 at 1:30 p.m. when out of harassment, they called your Rampart Station AGAIN on me, and he and his partner responded.

I did site the damages that the LAPD quoted me (through you) to the City Attorneys Office under case number C18-04092, but they did nothing about it either, except to give mgs the run around (which can be very EASILY verified by my phone number on The City's call log).

Consequently, I will be filing my Federal Complaint for that DOJ Ruling as it pertains to BOTH Case Numbers mentioned, within the next couple of weeks by November 1, 2019.

The Compensatory damages will be based on the initial amount trebled plus interest, for BOTH violations by the LAPD (for the Wilshire Blvd. Incident on 11/17/16) and for the SECOND Violation on 11/1/17, which ALSO involved The LAPD and The State of California, through the actions of the Sanitation Department.

Because they BOTH are connected.

Had the FIRST incident not happened, the SECOND one would not have happened EITHER!

The Punitive damages have not yet calculated.

The Attorneys that I have spoken to, have asked me to ask your Department one final time for payment, before I proceed.

I await your response.


Thank you,

Ms. Dayna R. Catchings

On Tue, Nov 22, 2016, 11:01 AM Armando Cortez <38838@lapd.online> wrote:

 Hello Miss Catchings,


 the final total equals $1670.00.  Cosmetics/toiletries $100.  Tent $70.  Clothing $1000.  and shoes $500.  Legal and Personal documents have no dollar value loss.


 Thank You

 Officer Cortez 38838


**From:** dayna catchings <catchings.dayna7@gmail.com>
**Sent:** Sunday, November 20, 2016 10:38 AM

Catchings
C M. January 18
2 a

3

DDEC. 25

_EX. R59_

  

# NOTICE: MAJOR CLEANING

## INCLUDES SIDEWALKS, ALLEYS, PARKS, BEACH, PARKING LOTS, AND OTHER PUBLIC ACCESS AREAS

### AN AREA CLEANING WILL COMMENCE AT THIS LOCATION ON:

## Wednesday, April 12, 2017 at 08:30 a.m.

### PLEASE REMOVE ALL PERSONAL BELONGINGS, INCLUDING BULKY ITEMS BY

## Wednesday, April 12, 2017 by 08:00 a.m.

This effort is designed to clean, improve and maintain a safe environment for the general public. The City may use power wash and street cleaning equipment to clean and disinfect the sidewalks, alleys, parks and other public access areas.

Please remove all personal belongings, including bulky items from sidewalks, alleys, parks, and public access areas. All property remaining may be removed by the City. Property left behind, except for items that pose an immediate threat to public health or safety, trash, and evidence of a crime or contraband, may be collected by the City and kept in a secure location for a period of 90 days during which time it may be retrieved by its rightful owner.

**Items collected by the City may be retrieved at:**

507 Towne Avenue
Los Angeles, CA 90013
Monday - Friday
(9:30 a.m. – 12:30 p.m. and 1:00 p.m. – 5:00 p.m.)
Saturday
(9:00 a.m. – 1:00 p.m)
213-806-6355

The City of Los Angeles greatly appreciates your cooperation as we initiate necessary measures to ensure that your communities are safe and healthy.

**Location:**



_Catching v._
_California_
_EX. 26_



LOS ANGELES POLICE DEPARTMENT
CITY OF LOS ANGELES  ☐ MISDEMEANOR  ☒ INFRACTION  **F94137**
**NOTICE TO APPEAR**  **NONTRAFFIC**  (Citation No.)

| Date of Violation | Time ☐ AM ☐ PM | Day of Week S M T (W) T F S | Arrest DR No. | Evidence DR No. |
|---|---|---|---|---|
| 04/12/17 | 0705 | | | 170209000 |

Name (First, Middle, Last)
DAYNA CATCHINGS

Address
750 W 7TH ST #81161 LA 90081

| City | State | ZIP Code |
|---|---|---|
| LOS ANGELES | CA | 90081 |

| Driver's Lic. No. | State | Class | Age | Birth Date |
|---|---|---|---|---|
| D1467938 | CA | ID | 65 | 04/01/52 |

| Sex | Hair | Eyes | Height | Weight | Race | Other Description |
|---|---|---|---|---|---|---|
| F | BLK | BRN | 602 | 200 | BLK | |

| Code | Ordinance | Description | Misdemeanor or Infraction (Circle) |
|---|---|---|---|
| 56.11 (10)(b) LAMC - SUSP HAD | | | M (I) |
| TENT ERECT (RED & GREY) BTWN | | | M I |
| THE HOURS OF 6AM AND 9PM | | | M I |
| SUSP ALSO ATTEMPTED TO IMPEDE | | | M I |
| THE SCHEDULED CLEAN-UP BY | | | M I |
| LA SANITATION WORKERS | | | M I |
| | | | M I |
| | | | M I |

Location of Violation(s)
JAMES M WOOD @ 110 FWY                City and County of Los Angeles

Comments (Including RD number)
RD0269                               ☐ Booking Required (see reverse)

☐ Violations not committed in my presence, declared on information and belief.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct.

| ABNER | ☐ TE ☐ CI ☐ OT DIV RAMP | 35838 EAST |
|---|---|---|
| Arresting or Citing Officer | | Serial No.   Dates Off |
| 04/12/17 | | to |
| Date | Name of Arresting Officer, if different from Citing Officer | Serial No.   Dates Off |

WITHOUT ADMITTING GUILT, I PROMISE TO APPEAR AT THE TIME AND PLACE INDICATED BELOW.
X Signature

WHEN: ON THIS DATE 01/18/17   Time: 0830 ☒ AM ☐ PM

WHAT TO DO: FOLLOW THE INSTRUCTIONS ON THE REVERSE.
WHERE:
☒ Metropolitan, 1945 South Hill Street, Los Angeles, 90007
☐ Long Beach, 275 Magnolia Avenue, Long Beach, 90802
☐ Van Nuys, 14400 Erwin Street Mall, Van Nuys, 91401
☐ San Fernando, 900 Third Street, San Fernando, 91340
☐ Chatsworth, 9425 Penfield Avenue, Chatsworth, 91311
☐ Airport, 11701 South La Cienega Boulevard, Los Angeles, 90045
☐ East Los Angeles, 4848 E. Civic Center Way, Los Angeles, 90022
☐ Beverly Hills, 9355 Burton Way, Beverly Hills, 90210

☐

☐ TO BE NOTIFIED   ☐ COURT CLERK

‖‖‖‖‖‖‖‖‖‖‖‖‖
✳ F 9 4 1 3 7 ✳

COURT COPY

Notice to Appear form approved by the Judicial Council of California.
Rev. 07-01-13 (Pen. Code, § 853.9)

TR-120
FORM 05.02.02 (06/14)

**LOS ANGELES SUPERIOR COURT -   METROPOLITAN BRANCH**
1945 SO. HILL STREET  LOS ANGELES, CA 90007

Ref:   **AR008**
ISSUE DATE:   **April 12, 2017**
**ARRAIGNMENT DOCKET**

CASE NO.   **F94137**       LEA:   **1942**   VLN: **PED**       DOB:   **04/01/52**   OLN:   **D1467938**

DEFENDANT:  DAYNA CATCHINGS                    TRUE NAME: _____

CHARGE(S):   *L.H. Mun. Code*            DUE AMT: **$ 234.00**
1)  561110B      2)                          3)
*Susp Had Tent Evct Btwn The HR if 6AM and 9AM*            4)
$  35.00          $                        $            $

Type of Bail:   **OR**       DMV Required:   **N**   Priors:   **0**   T/S Eligible:   **N**   Date Posted: _____

DATE: July 27, 2017       TIME: 8:30am   DEPT: **064**   CLERK   Elaine Markulis                CSR#: _____

JUDGE/COMMISSIONER/TEMP JUDGE : ___William Beverly_____   STIP FILED [ ]   PROSECUTOR:_____

INTERPRETER:_____   CERT/REG#:_____   LANGUAGE: SPANISH [ ] _____
FOR: DEF [ ] _____   (THIS COURT HAS VERIFIED INTERPRETER'S BADGE AND OATH IS ON FILE.)

DEFENDANT IN COURT WITHOUT _____COUNSEL, GIVES TRUE NAME AS CHARGED.

( )   INFRACTION: Defendant duly arraigned and informed of the charges against him. Defendant advised that he is entitled to a public trial, within 45 days; to the aid of the Court in producing witnesses in his behalf; to be confronted by and question the witnesses against him; to be admitted to reasonable bail, and to be represented by a lawyer of his own choosing.

( )   MISDEMEANOR: Complaint read and defendant advised that he is entitled to a public trial within  30/45  days; to the aid of the Court in producing witnesses in his behalf; to be confronted with the witnesses against him in the presence of the Court; to a trial by jury; to be admitted to reasonable bail; to be represented by a lawyer of his own choosing or to have counsel provided to him if financially unable to employ counsel.

( )   PURSUANT TO P.C. 17d2: The Court, with the consent of the defendant, determines that the offense is an infraction in which event the case shall proceed as if the defendant has been arraigned on an infraction complaint.

( )   DEFENDANT EXPRESSLY WAIVES HIS RIGHT TO:
      ( ) Remain Silent      ( ) Hire a lawyer
      ( ) Court Trial      ( ) Witnesses, subpoena, confrontation
      ( ) Jury Trial

( )   ATTORNEYS JOIN

( )   DEFENDANT ADVISED OF THE ELEMENTS OF THE CHARGE(S)
      ( ) The maximum and minimum sentence, and other consequences of plea of guilty or nolo contendere
      ( ) Advised of vehicle forfeiture pursuant to 14607.6 V.C.

( ) AFTER INQUIRY BY THE COURT, THE COURT FINDS THAT:
      ( ) All waivers were knowingly, intelligently and understandingly made.
      ( ) The plea is freely and voluntarily made.
      ( ) There is a factual basis for the plea.
      ( ) Plea is accepted by the court

ACCUSED PLEADS ____NG____ BAIL $ _____

COUNT I  $_____   COUNT II  $_____
COUNT III $_____   COUNT IV $_____
COUNT V $_____   COUNT VI $_____

COUNT(S) _____ DISMISSED ___ T/S

( ) Motion to proceed to trial without posting bail is granted. Defendant advised that if he/she fails to appear on the date set for trial, he/she may be tried in absentia.

As part of your sentence, you are ordered to return to satisfy the following conditions:

( ) Fine payment of $_____
      Due on _____   ( ) AM   ( ) PM
( ) Traffic School
      ( ) Fee due on _____
      ( ) Completion due on _____
( ) Community Service _____ hours
      Due on _____   ( ) AM   ( ) PM
( ) Post Bail of $ _____ 7/22/17 _____ on _____
      Trial date _____   Dept __6__
      Time _1:30PM_
( ) Other _Abner / 358358 / Ramp_
( ) Release issued # _____
( ) Commitment issued
( ) Remand issued

( ) Bail Refund card issued # _____

DEFENDANT:
( ) Failed to appear
      ( ) Hold/Warrant to (re)issue
      ( ) Bench Warrant ordered.  Bail $_____
( ) Paid fine in full
( ) Partial payment $_____.  Balance due $_____
( ) Requested continuance for fine payment.
      Continued to _____
( ) Submitted C/S completion
( ) Submitted T/S completion
( ) Satisfied all conditions indicated above
Date:_____   Deputy Clerk_____

CIVIL ASSESSMENT
( ) Civil Assessments in the amount of $300 levied.
( ) Good Cause Shown: Civil Assessment Set Aside.

O.R.              28

Created: 07/19/17

(Page 1 of 1)

Ex.21R.

| 1 previous JDOCs in TRIS |

**LOS ANGELES SUPERIOR COURT - METROPOLITAN BRANCH**              **Ref: CT002**
**1945 SO. HILL STREET  LOS ANGELES, CA  90007**

**TRIAL DOCKET**

CASE NO.: F94137    LEA: 1942    VLN: PED        DOB: 04/01/52  OLN: D1467938

DEFENDANT: DAYNA CATCHINGS                TRUE NAME:_____

CHARGE(S):                                      DUE AMT: $ 234.00
1) 561110B             2)              3)              4)
property blocking sidewalk
    $ 35.00                        $                $

Type of Bail:  OR    DMV Abstractable: Y    Priors: 0        Traffic School Eligible: N

Bail Amount:$      · Receipt #:        Date Posted: //        Date Issued: April 12, 2017

DATE: September 22, 2017    TIME: 1:30pm  DEPT: 067    CLERK:    Keith Ryan        CSR#:

**GUS T. MAY**

JUDGE/COMMISSIONER/TEMP JUDGE: ~~Commissioner M. Acevedo~~    STIP FILED [ ]  PROSECUTOR:_____

INTERPRETER: _____ CERT/REG#: _____ LANGUAGE: SPANISH [ ]_____
FOR: DEF [ ] _____    (THIS COURT HAS VERIFIED INTERPRETER'S BADGE AND OATH IS ON FILE.)

CAUSE CALLED FOR TRIAL

[ ] DEFENDANT NOT IN COURT
  [ ] The court deems that the defendant has elected to proceed by way of Trial by Written Declaration in Absentia pursuant to Ve-
    hicle Code section 40903.
  [ ] The court reviewed the defendant's notice to appear.
  [ ] Bail forfeited. No further proceedings. Time_____ [ ] Bench warrant ordered. Bail $_____ [ ] Hold/Warrant to (re) issue
[ ] DEFENDANT IN COURT  [ ] Without counsel.   [ ] Represented by counsel _____
[ ] Defendant duly arraigned and informed of the charges against him.  Defendant advised of the right to counsel of choice or public
defender, to a speedy trial by court, confrontation and cross-examination of witnesses, process of the court to subpoena witnesses  in
own behalf and against self-incrimination.
[ ] PURSUANT TO P.C. 17d2: The Court, with the consent of the defendant, determines that the offense is an infraction in which
event the case shall proceed as if the defendant had been arraigned on an infraction complaint.
[ ] Defendant personally acknowledges understanding of the above  Defendant pleads not guilty and demands trial forthwith.
[ ] Defendant waives time for trial.
  [ ] Court accepts defendant's change of plea:      [ ] guilty        [ ] nolo contendere
  [ ] People not ready to proceed.  Case dismissed pursuant to 1385 P.C.
  [ ] Dismissed - Officer not present to testify   [ ] Dismissed - Officer has no recollection
  [ ] Dismissed-

  [ ] On motion of (COURT) (PEOPLE ) (DEFENDANT) case reset for trial to _____ m. in Dept._____
[ ] Defendant  [ ] Officer  sworn and examined.                  **ENTERED ETRS**
[ ] Additional witnesses sworn and examined for _____

**SEP 25 2017**

(50)

[ ] Both parties rest.

[ ] DEFENDANT ADJUDGED GUILTY   [ ] Defendant in Court and arraignment and time for judgement and sentence having been
waived and there being no cause why judgement should not now be pronounced, it is adjudged and ordered by the Court that as a sen-
tence for the violations charged, the defendant shall pay a fine in the sum of $_____ plus penalty assessment as
to Count(s) _____. [ ] Cash Bail Applied.

As to remaining Counts _____: [ ] Sentence Suspended [ ] Not Guilty [ ] Dismissed
[ ] DEFENDANT ADJUDGED NOT GUILTY ON ALL COUNTS
  [ ] Bail Ordered Exonerated        [ ] The clerk is ordered to notify the defendant.
[ ] DEFENDANT PERMITTED TO ATTEND 8-HOUR TRAFFIC SCHOOL IF ELIGIBLE PURSUANT TO CRC 4.104

[ ] COMMENTS: _____
_____
_____

Created:09/14/17

24













14

EX 117

PPS;

Mr. Lauber,

So let's compete the ENTIRE timeline of events...

From 11/1/17 to 9/26/18, I was STILL receiving services from them in the hopes of them helping me to complete my legal paperwork (the City of Los Angeles complaint as well) now that I had finally found permanent housing.

But, when I get "anxious" with them over the phone about an "urgent" situation that really NEEDED to be taken care of and responded back to in a timely manner (it had been about a week and a half at that point since I had last talked to Miguel), they then
twist that conversation and outright LIE on me by saying that I "threatened" an employee when I DIDN'T?!

And then for them to use that "excuse" for wrongfully terminating me from the Program on 9/26/18.

And, then for them to CHANGE THAT lie into yet ANOTHER lie about me having an "aggressive attitude" with some employee OTHER than Alice 2 YEARS LATER in their response back to my Complaint, and the DFEH didn't make them clarify WHO else other than Alice that it was?!

THAT'S the lie about Alice being involved that they told back in 2018. Because Alice TOLD them that very lie herself!

(As I've said before...)

They DESERVE to be sued!!

Dayna

On Sat, Sep 26, 2020, 4:39 AM Dayna Catchings <catchings.dayna7@gmail.com> wrote:
Post Script;

Mr. Lauber,

Just so that we are clear on the part of the City of Los Angeles, the LAPD and the Sanitation Department's roles as "witnesses" to the St. Barnabas Complaint; the actual FACT of the matter is that, had I still NOT been in the street after 11/3/16, the date that I OFFICIALLY began receiving services from them (even though I had been going there for lunch around or about October 11th 2016, right immediately after the illegal eviction), then I would have NEVER even met Sgt. Miller on or about 11/17/16.
Officer Munoz, yes I would have met him anyway, but HE did me no harm.

Within that 14 day period they could have VERY EASILY gotten me into a shelter or a hotel or even a motel room. And I've said that to you before.

But instead, they CHOSE to leave me in the street like an animal for almost an entire year AFTER
becoming a Client!

While at the same time CONFIRMING just how badly I needed housing!!

Then why didn't they DO something about it?!

In contrast, it only took Heritage Clinic a total of 3 CALENDAR days from Friday 11/1/17 to Monday
11/4/17, to get me into the Good Shepherd Center not even 5 miles from St. Barnabas, as I've ALSO said
to you before.

But by them NOT doing that, it forced me to be in constant contact with the LAPD and ultimately the
Sanitation Department also, and consequently made them (St. Barnabas) accessories (both before and
after the fact) to the damages that occurred to me 3 TIMES AFTER becoming a Client of theirs on 11/3/16.

So therefore, from 11/3/16 to 11/1/17 almost ONE YEAR later to the day from me officially receiving
services from them; they had failed, neglected and refused to help me secure SOME kind of housing.

My damages could have, would have and should have been avoided, and so could have the damages to
the City of Los Angeles as well.

I hope this clarification helps.



Dayna

On Fri, Sep 25, 2020, 6:32 PM Dayna Catchings <catchings.dayna7@gmail.com> wrote:
  Mr. Lauber,

  As of this date, neither St. Barnabas nor the DFEH have been heard from since my last email to the
  Appeals Division at the beginning of August.

  So, THEREFORE...

  Attached is a screenshot CONFIRMING the filing of my Complaint in Superior Court today, 9/25/2020 as
  was originally planned before the 2 year Statue of Limitations issues expires tomorrow, 9/26/2020,
  against and including both Entities and certain individuals.

  The DFEH is also listed as a separate Defendant.

  The City of Los Angeles is listed as a witness, as I've said before, and NOT a separate Defendant in this
  case also.

  And, speaking of which, the monetary damages for EACH could not be expressed on the filing form, only
  ONE place to enter both Punitive and Compensatory damages for (apparently) only ONE separate
  Defendant.

  St. Barnabas Senior Services is already aware of this through included e-mail evidence within the
  Complaint, of 30K, and exactly why and how I arrived at that figure So, I entered it in the amount of
  10/20K total.

The actual monetary damages against the Department of Fair Employment and Housing, have yet to be determined SEPARATELY from St. Barnabas at a later date, because I could not just pull ANY figure out of thin air without having SOMETHING to base it on, like I did with St. Barnabas, and then just add it to THEIR amount, that that would know nothing about.

I'll see if I can include that addendum with the Sheriff's Department Service instructions.

If not, then I can always address it at either Meditation, Hearing or Trial.

The IMPORTANT thing was to get it timely filed!

Any other adjustments or Modifications can be made along the way.

After it is put on film (probably Monday), I can have yours, theirs and mine made hopefully by the end of next week.

The Sheriff's Department will serve all of theirs to them; and I will mail you your copy as part of the Discovery Process, and then forward a copy of the Proof of Service to you, to the Court.

Dayna

On Tue, Sep 22, 2020, 11:02 AM Dayna Catchings <catchings.dayna7@gmail.com> wrote:
Mr. Lauber,

Attached is the screenshot of the mailing today of the Proof of Service to the Court for the Service to you of the Interrogatories and for the Production of Documents on August 7, 2020.

Dayna

On Wed, Sep 16, 2020, 8:33 AM Dayna Catchings <catchings.dayna7@gmail.com> wrote:
Mr. Lauber,

Attached is the screenshot of the ENTIRE message exchange between myself and Gilbert Jimenez from LAHSA on the morning of November 1, 2017, that I mentioned to you previously.

As of that very 8:00 a.m. on the day of November 1, 2017, I was in FULL COMPLIANCE with my agreement with Bobby Benson.

I was actively STILL seeking housing, and I was actively preparing my campsite for the scheduled clean up that was to occur that morning.

And, for you to even attempt to work AGAINST me on this matter regarding Bobby Benson, by asking the Court to disregard him from the complaint, when it is precisely because of him NOT BEING WHERE he was not only supposed to be, but had also PROMISED me both in writing and verbally in April of 2017, that as long as I kept trying to get housing through him connecting me with LAHSA, that he would continue to protect both me and my property; is very egregious!

14

Well, quite frankly, he DIDN'T DO that, did he??

Nooo....INSTEAD he gets the LAPD and the City of Los Angeles sued for a THIRD incident for habi having unnecessary contact with me, that was SUPPOSED to be AVOIDED by what he said and promised in April of 2017.

Therefore, what you submitted on HIS behalf against ME, is highly "unreasonable, arbitrary and unconscionable" of you to do, and consequently represents a SEVERE Conflicts of Interests on the part of the City of Los Angeles (as he is admittedly NOT one of YOUR clients and you even gave the forwarding information to the Court about him); in addition to Obstruction of Justice by even attempting to PREVENT me from seeking Justice and damages from him because of HIS OWN Negligence, Breach of Contract and Fraud towards me, which then in turn establishes a Conspiracy between the LAPD and the Sanitation Department (because he failed, neglected and refused to appear until AFTER the damage was done), and now by your OWN Submission to the Court on September 2, 2020, that now confirms that fact and to the connection of the City of Los Angeles as well.

I KEPT my part of the agreement up to that very day; but obviously, apparently and evidently HE. DID. NOT!

Which then resulted in ADDITIONAL damages to both myself AND to the City of Los Angeles for yet a THIRD incident?!...which is most DEFINITELY "unintelligible, ambiguous and uncertain" as to exactly WHY you would want him dismissed from the lawsuit, and then WHY you would even SUBMIT something like that against me in the first place?!


Dayna C.

Dayna
Dayna
Dayna
Dayna
Dayna



PAGE 41





52B

Ex. 6B

## ABC Los Angeles

| | |
|---|---|
| **From:** | Dayna Catchings <catchings.dayna7@gmail.com> |
| **Sent:** | Tuesday, December 1, 2020 4:00 PM |
| **To:** | ABC Los Angeles |
| **Subject:** | Fwd: Trash and debris removal. |
| **Attachments:** | 20170719_122009.jpg; 20170719_121957.jpg; 20170719_121952.jpg; 20170705_175613.jpg; 20170729_083649.jpg |

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Dayna

---------- Forwarded message ---------
From: **Dayna Catchings** <catchings.dayna7@gmail.com>
Date: Wed, Sep 23, 2020, 4:30 PM
Subject: Fwd: Trash and debris removal.
To: Nicholas Lauber <nicholas.lauber@lacity.org>

Mr. Lauber,

I am forwarding this e-mail to Bobby Benson dated July 19, 2017, just 3 months after our agreement was made in April, and I never, ever heard back from him!

About either the housing or cleaning follow up.
It's all so VERY self explanatory.

ALL of the alleged elements of my compliant against him are true and correct.

Just this ONE e-mail would have brought it all together for the City of Los Angeles against HIM had you NOT went against me in the manner that you did.

Because, just like now as I am putting together this FAC, all of THIS evidence would have been revealed during his INDIVIDUAL Discovery Process, just like it's all coming out NOW.

It fully explains my involvement with LAHSA at his instruction, and how he blatantly Breached that Contract (the very same one that he had made himself), by first not responding and then AGAIN by not showing up on November 1, 2017 to protect my Rights from his own Office's scheduled cleanup, that he KNEW was going to take place!

I had COMPLIED, but he DIDN'T, and neither had LAHSA...Plain and simple.

But yet, you went against me.

You ALLOWED me to be able to feel and to think that I could TRUST you, but obviously now you have betrayed that Trust.

1

First in April (by providing the forwarding information about Mr. Benson), then AGAIN and most importantly in July by helping ME to put together (yes, with you) the Stipulation which is WHY we both have the extension to November 30th to complete Discovery, because I came to YOU for that help with that extension to which you agreed and did; but you did NOT come to me asking me for an extension and THEN I agreed to do it for YOU, okay? So, let's not get that twisted.

And now just two months later in September, you willfully and deliberately violate the Court's Orders for us to work TOGETHER (just as I had shown and proven to the Court that we did in my submission on August 19th. You and I had spoken together about ALL of it just like I had said that we did); by now working AGAINST me by asking that Bobby Benson be dismissed from my Complaint?!

Which represents EVERYTHING that I have said to you in the very beginning regarding both your involvement, the involvement of the City of Los Angeles and the involvement of the Sanitation Department.

Attached are the actual photos taken on 7/5/17 just 14 days prior to me writing the e-mail of the trash along the guard rail, across the street from our encampment, to which I was referring to in that e-mail to him.

Those that were attached to his e-mail were taken AFTER that with the other one taken on the 5th showing that on OUR side of the street there was nothing except that small amount of trash next to the freeway offramp.


---------- Forwarded message ---------
From: **dayna catchings** <catchings.dayna7@gmail.com>
Date: Wed, Jul 19, 2017, 12:52 PM
Subject: Trash and debris removal.
To: <Bobby.Benson@lacity.org>


 Hello, Mr. Benson,

Attached you will find photos of the huge AMOUNT of trash and debris that really NEEDS TO be removed as quickly and as soon as possible.
As many times as the City of Los Angeles has driven by this stretch of road, then WHY hasn't any clean up efforts been done that protect the homeless from disease and from spreading diseases as well??

On another subject, both yourself and LAHSA guaranteed me that after your last visit, that my tent would no longer be an issue.
But it WAS an issue on 4/25/17 when Officer Victor Gutierrez accompanied the next clean up crew. He knew NOTHING about our prior agreement, which he SHOULD have known about, but didn't. Therefore, I had to disassemble my tent AGAIN and move everything out of it and then back into it again!!
In the hot heat of the mid day sun, DEFINITELY a hazard to my chronic health problems that is already known by both yourself and LAHSA.
But, neither yourself or LAHSA or even officer Christian Guerrero of the homeless outreach proactive engagement unit. REALLY??

Speaking of LAHSA, I have not heard anything back from either Ms. Lewis since April 25th, or her co worker named Darryl since May 22nd, not only about the trash issue, but also about my housing needs issues.
The job and task at hand of helping me to find housing, was on themselves and through no fault of my own that it didn't happen from then until now.
I do have all of the text and photographic information and evidence to back up EVERYTHING that I'm saying to you.

MANY PROMISES were made to me on the day of our meeting, yet NOT EVEN ONE of them has been kept to me, from that date of 4/17/17 until this date of 7/19/17.

This all is TOTALLY unacceptable!!

Please let me know when these issues can be quickly resolved.

The photos are all date and time stamped, PROVING that the problem and health hazards are all ACROSS the street and in close proximity to myself, and NOT from the encampment itself.
Which is being well kept and orderly.

Awaiting your response...


Sincerely,


Ms. Dayna R. Catchings
Dayna

Ex. 117

57

EX. 117



52

EX, 117



53

EX. 117



54

EX. 117

## ABC Los Angeles

**From:** Dayna Catchings <catchings.dayna7@gmail.com>
**Sent:** Thursday, December 3, 2020 9:01 AM
**To:** ABC Los Angeles
**Subject:** Fwd: Missing page from the Parkview Complaint 20STCV45298

**Categories:** Eddie Yam

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Dayna

---------- Forwarded message ---------
From: **Dayna Catchings** <catchings.dayna7@gmail.com>
Date: Tue, Dec 1, 2020, 10:58 AM
Subject: Re: Missing page from the Parkview Complaint 20STCV45298
To: Nicholas Lauber <nicholas.lauber@lacity.org>

Mr. Lauber;

It's very nice to hear from you since your submission of Sequencer 2, 2020 that will bye addressed in my FAC.

It's good to know the differences.

The ONLY similarity is the involvement of the LAPD yet once again.

But it is DIFFERENT police officers in a different case. I get that.

I will instead send it directly to the City Attorney's Office and let them assign someone the case themselves.

Since you were not mentioned in the Complaint itself, you are still a witness to the events as described in my emails to you about this ENTIRE Parkview on the Park Complaint, and I will list you as such..

This actually makes it a lot easier by doing it that way instead of having you personally served for a Complaint that your CLIENTS are not involved in, but the City of Los Angeles still is involved because of this NEW LAPD involvement.

There is nothing to have you personally removed from because you are not a separate Defendant, just a witness.

The service will be to the City of Los Angeles itself, and not to you.

Dayna

On Tue, Dec 1, 2020, 10:26 AM Nicholas Lauber <nicholas.lauber@lacity.org> wrote:
  Ms. Catchings:

1

## ABC Los Angeles

| | |
|---|---|
| **From:** | Dayna Catchings <catchings.dayna7@gmail.com> |
| **Sent:** | Tuesday, December 1, 2020 4:09 PM |
| **To:** | ABC Los Angeles |
| **Subject:** | Fwd: Missing page from the Parkview Complaint 20STCV45298 |

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Dayna

---------- Forwarded message ---------
From: **Nicholas Lauber** <nicholas.lauber@lacity.org>
Date: Tue, Dec 1, 2020, 10:26 AM
Subject: Re: Missing page from the Parkview Complaint 20STCV45298
To: Dayna Catchings <catchings.dayna7@gmail.com>

Ms. Catchings:

I only represent the City of Los Angeles, ARMANDO CORTEZ, JOEL MILLER and JASON ABNER in the federal matter, CV19-9480-DSF-AGR. I do not represent any party in the state case mentioned in the title of your email. I cannot accept service of process or service of any documents on behalf of those parties in any other matter. It does not matter if you believe the matters are related, it has a separate case number and is filed in separate court. Furthermore I am not permitted to discuss any other matters other than CV19-9480-DSF-AGR as I am not the attorney of record in the matter mentioned in this email.

On Tue, Dec 1, 2020 at 7:04 AM Dayna Catchings <catchings.dayna7@gmail.com> wrote:
  Mr. Lauber;

  Just so that you know and that we are CRYSTAL clear;

  I did NOT INTEND for me showing you the images of the corrected Document to be taken as an ELECTRONIC FILING of that particular document, as it has been with ALL of the OTHER e-mails that we have exchanged.

  For TWO reasons:

  1. No OTHER Defendants can be served that particular document, because I was not allowed to file it by itself as an ADDITION to the Original Complaint, without converting it to a FAC;

  2. The Court does not have the ORIGINAL document either, based on Reason #1, which means that the Federal Court won't have access to it either in this present case.

  So, more or less you can consider me telling you within 24 hours after the deadline, as more of a COURTESY e-mail than anything else, because NEITHER of us can do ANYTHING with that particular document, so therefore it Does. Not. Matter. whether you actually found out about this YESTERDAY or not; we can't "DO" anything with it or about it.

21∠

# The Washington Post

**Wonkblog**

# It's unconstitutional to ban the homeless from sleeping outside, the federal government says

**By Emily Badger**  August 13, 2015

We all need sleep, which is a fact of life but also a legally important point. Last week, the Department of Justice argued as much in a statement of interest it filed in a relatively obscure case in Boise, Idaho, that could impact how cities regulate and punish homelessness.

Boise, like many cities — the number of which has swelled since the recession — has an ordinance banning sleeping or camping in public places. But such laws, the DOJ says, effectively criminalize homelessness *itself* in situations where people simply have nowhere else to sleep. From the DOJ's filing:

> When adequate shelter space exists, individuals have a choice about whether or not to sleep in public. However, when adequate shelter space does not exist, there is no meaningful distinction between the status of being homeless and the conduct of sleeping in public. Sleeping is a life-sustaining activity — i.e., it must occur at some time in some place. If a person literally has nowhere else to go, then enforcement of the anti-camping ordinance against that person criminalizes her for being homeless.

Such laws, the DOJ argues, violate the Eighth Amendment protections against cruel and unusual punishment, making them unconstitutional. By weighing in on this case, the DOJ's first foray in two decades into this still-unsettled area of law, the federal government is warning cities far beyond Boise and backing up federal goals to treat homelessness more humanely.



Catches in,
California
Ex. 17

"It's huge," says Eric Tars, a senior attorney for the National Law Center on Homelessness & Poverty, which originally filed the lawsuit against Boise, alongside Idaho Legal Aid Services.

*[Lifting bans on sleeping outside won't stop criminalization of homelessness]*

According to a NLCHP report last year that surveyed 187 cities between 2011 and 2014, 34 percent had citywide laws banning camping in public. Another 43 percent prohibited sleeping in vehicles, and 53 percent banned sitting or lying down in certain public places. All of these laws criminalize the kind of activities — sitting, resting, sleeping — that are arguably fundamental to human existence.

And they've criminalized that behavior in an environment where most cities have far more homeless than shelter beds. In 2014, the federal government estimates, there were about 153,000 unsheltered homeless on the street in the U.S. on any given night.

Laws like these have grown more common as that math has actually grown worse since the recession.

"Homelessness is just becoming more visible in communities, and when homelessness becomes more visible, there's more pressure on community leaders to do something about it," Tars says. "And rather than actually examining what's the best thing to do about homelessness, the knee-jerk response — as with so many other things in society — is 'we'll address this social issue with the criminal justice system.'"

It's also easier, he adds, for elected officials to argue for criminal penalties when the public costs of that policy are much harder to see than the costs of investing in shelters or services for the poor. Ultimately, though, advocates and the federal government have argued, it's much more expensive to ticket the homeless — with the court, prison and health costs associated with it — than to invest in "housing first" solutions that have worked in many parts of the country.

Criminal citations also compound the problem of homelessness, making it harder for people to qualify for jobs or housing in the future.

"You have to check those [criminal] boxes on the application forms," Tars says. "And they don't say 'were you arrested because you were trying to simply survive on the streets?' They say 'if you have an arrest record, we're not going to rent to you.'"



NLCHP's goal, Tars says, isn't to protect the rights of people to live on the street, but to prevent and end homelessness. That means adding a lot more shelter beds and housing options in places like Boise — which has three shelters run by two nonprofits — so people have options other than the street.

The DOJ's argument is based on the logic in an earlier <u>Ninth Circuit decision</u>, striking down a vagrancy law in Los Angeles, that was ultimately vacated in a settlement. That logic specifically says it's unconstitutional to punish people for sleeping outside if there aren't enough beds for them to sleep indoors. If there are, the constitutional question would be different, although the moral and policy implications may remain the same.

"Homelessness never left town because somebody gave it a ticket," Tars says. "The only way to end homelessness is to make sure everybody has access to affordable, decent housing."

 **Comments**

Emily Badger is a reporter for Wonkblog covering urban policy. She was previously a staff writer at The Atlantic Cities. 🐦 Follow @emilymbadger








Southern California Public Radio

LAW

# DOJ Says It's Unconstitutional To Ban The Homeless From Sleeping Outside

Listen · 2:48    ( Queue )  Download
                            Transcript

August 14, 2015 · 4:29 PM ET
Heard on All Things Considered

  CARRIE JOHNSON

The Justice Department weighs in on an Idaho case, arguing that homeless people should not be charged with crimes for sleeping outdoors when there is not enough housing in their communities.

MELISSA BLOCK, HOST:

Many cities with a homeless problem have responded by passing laws that crack down on camping or sleeping in public places. In some places, they've effectively criminalized homelessness. Well, now the Obama administration is weighing in, arguing that for those who have no choice, sleeping in public is not a crime. NPR's Carrie Johnson reports.

CARRIE JOHNSON, BYLINE: Seven homeless people in Boise, Idaho, are suing the city to overturn a ban on camping and sleeping because they've been punished under the local ordinances. This month, the U.S. Justice Department decided it wanted to use the Boise case to send this message.





VANITA GUPTA: Making it a crime for people who are homeless to sleep in public places when there's insufficient shelter space in a city really is a violation of the Eighth Amendment's prohibition of cruel and unusual punishment.

JOHNSON: Vanita Gupta leads the civil rights unit at Justice. She says handing out tickets and fines for an innocent activity like sleeping in public ties up courts and jails, and advocates say that pushing homeless people into the justice system is counterproductive. That's because having a criminal record hurts their chances when they apply for housing and jobs. Eric Tars works at the National Law Center on Homelessness and Poverty. He's involved in the Boise case too.

ERIC TARS: Most homeless people aren't criminals, but if you criminalize the simple acts that we all do every day to survive - sleeping, eating, even going to the bathroom - then you make homeless people into criminals, and then you have the criminal justice system dealing with a social problem.

JOHNSON: Tars says the number of ordinances that make it a crime to sleep, sit on the sidewalk or panhandle has gone up by double digits in the past three years. And he says the Justice Department filing in the Boise case could have wide impact since big cities, including Los Angeles, are still figuring out their approach.

TARS: The DOJ's brief sends a really strong signal to the city of Boise and to communities across the country that homeless people do not lose their constitutional rights when they lose their homes.

JOHNSON: In Boise, city officials say they're doing what they can in the face of a huge challenge. Mike Journee is spokesman for the mayor. Here he is talking to Boise State Public Radio.

(SOUNDBITE OF ARCHIVED BROADCAST)

Catchings v.
California

Ex. 21



51

MIKE JOURNEE: There are confrontations or bad sanitary situations where multiple families are living in the same area. We can't ignore that. That is something that has to be addressed. That is something that our constituents demand to be addressed.

JOHNSON: Journey says police in Boise have changed their behavior since the lawsuit began. He says they no longer hand out tickets when local shelters are full, but advocates say police don't take into account that some homeless people can't get into those shelters because of disabilities and mental illness. Both sides are due in court later this month for a hearing in the case. Carrie Johnson, NPR News, Washington.

Copyright © 2015 NPR. All rights reserved. Visit our website terms of use and permissions pages at www.npr.org for further information.

NPR transcripts are created on a rush deadline by Verb8tm, Inc., an NPR contractor, and produced using a proprietary transcription process developed with NPR. This text may not be in its final form and may be updated or revised in the future. Accuracy and availability may vary. The authoritative record of NPR's programming is the audio record.

## Get The Stories That Grabbed Us This Week

Delivered to your inbox every Sunday, these are the NPR stories that keep us scrolling.

What's your email?

SUBSCRIBE

By subscribing, you agree to NPR's terms of use and privacy policy.



**From:** dayna catchings
**Sent:** Monday, June 1, 2020 12:18 PM
**To:** ABC Los Angeles
**Subject:** Fwd: Initial Disclosure (Courtesy Copy)

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Dayna

---------- Forwarded message ---------
From: **dayna catchings** <catchings.dayna7@gmail.com>
Date: Thu, May 7, 2020, 10:33 AM
Subject: Re: Initial Disclosure (Courtesy Copy)
To: Nicholas Lauber <nicholas.lauber@lacity.org>

Good morning, Mr. Lauber,

Also planned to be submitted at the deposition is the attached AFFIRMATIVE pleading in it's entirety as it pertains to the legal term of LACHES.

This particular rule of law applies MORE to Officer Cortez, and secondly to Bobby Benson.

You did advise me that I do have the right to question your clients as long as I follow procedure.

Well, respectively, there is NO NEED for me to question any of them about what we already KNOW to be true.

It's now, up to each and every one of THEM to explain it to The Court.

Officer Cortez was given over 14 DAYS last October in my email to him to respond back with ANY KIND of objections or denials ESPECIALLY with him knowing that the was amount was going to be TREBLED to $5,010.00 from $1,670.00 (that HE had awarded in behalf of the LAPD), if I had to proceed (which I did); and which he FAILED, neglected and refused to respond back to!

So like I said, here it is SEVEN MONTHS LATER, as he decides to tell me that objects and denies everything until NOW through you?!

Of course, the term and full explanation of Laches as attached, would most DEFINITELY apply to him.

And...the SAME holds true for Bobby Benson.

Ex. 116

In my e-mail confirmation to him (contained within the Exhibits) of our AGREEMENT (based on my introduction to LAHSA), then THAT was his one and ONLY chance to object to or deny ANYTHING which he ALSO failed, neglected and refused to do.

And now, here it is over THREE YEARS LATER?!

Of course, HE is barred as well from objecting to or denying ANYTHING at this point in time by Law.


Thank you,

Dayna

On Tue, May 5, 2020, 5:01 PM dayna catchings <catchings.dayna7@gmail.com> wrote:
  Mr. Lauber:

  As to your first paragraph, if that's the case, then the LAPD is most certainly guilty of FRAUD!

  And, THAT'S a fact.

  Because...Right on the doors of police cars are the words "to protect and serve" now, if that's NOT meant for members of the general public, then WHO is it meant for??

  As to your second paragraph, I did NOT SAY that I recorded any of our telephone conversations. I was under the impression that ALL City calls are automatically recorded. When we did the meet and confer by phone, I thought that you were at the office and the call was being recorded automatically.


  Thank you, and you're welcome.

  Dayna

  On Tue, May 5, 2020, 2:52 PM Nicholas Lauber <nicholas.lauber@lacity.org> wrote:
    Ms.Catchings:

    As I have no personal knowledge of the facts, I can neither agree nor disagree with the accuracy of how you have recounted them. I do not agree that any police officer owed you any legal duty as the police do not have a legal duty to members of the public.

    I have not consented to the recording of any of our phone calls. If you would like to record our phone conversations, you need to inform me of that fact prior to making the recording.

    Thank you.

    On Tue, May 5, 2020 at 2:41 PM dayna catchings <catchings.dayna7@gmail.com> wrote:
      Mr. Lauber:

Ex. 116

I only mention Officer Gras as a witness, in direct opposition to Officer Munoz's involvement as a witness to the contrary of me being forced off the sidewalk.

As I had just mentioned to you, NONE of them were ever there at the same time to tell me anything, which is the MAIN point that I was making in reference to Bobby Benson. He had a DIRECT duty, obligation and responsibility to me which as I stated, in addition to all of the OTHER promises by other Officers, I RELIED upon that to my detriment!

What's for you NOT to agree with?

And yes you DID AGREE with me about the actions of Officer Abner because ALL you objected to was the WORDING as I have stated. I'm pretty sure that the entire call was recorded.
I said "no probable cause" then you said "procedural error...that's just lawyer speak)"
I have NO REASON to lie on you!

And, as I also have just pointed out, Sgt. Miller out ranks Officer Abner, in ADDITION to me being there by HIS ORDERS to me on 11/17/16, CONFIRMING that Officer Abner came out of pocket with me!

Whether you AGREE with me, or NOT.

Therefore again, my arrest WAS wrongful and illegal, in addition to where NO SIGNS were posted as he testified to. (Why WOULD there be. Sgt. Miller himself deemed it as safe to camp there because MINE wasn't the only tent there)

I have a lot to learn about how the different types of procedures actually work. Thanks for the mini law lesson.

I await your response, although it's not going to change the evidence contained within the Exhibits.


You be well also.

Dayna

On Tue, May 5, 2020, 2:03 PM Nicholas Lauber <nicholas.lauber@lacity.org> wrote:
  Ms. Catchings:

  During our telephone conversation, I did not agree with your version of the facts. I was letting you know that I understood what you had said. I did not submit to the Court any photos you have provided me nor have I submitted to the Court any of the documents included in my disclosure to you. The Court only gets involved in discovery when the parties cannot resolve discovery disputes amongst themselves and only receives evidence when deciding a motion or at trial. To submit any documentary evidence to the Court as part of a status report would have been inappropriate. For that same reason I have not submitted any video to the Court either.

Ex. 116

In regards to 11/1/17, in my motion I stated that "City of Los Angeles, Joel Miller, and/or Jason Abner" to indicate any of the three because it was unclear which officer you were claiming was involved on that date. Officer Gras who was mentioned in your opposition was not mentioned in either of your causes of action and was not named as a defendant. The point I was making was that irrespective of who was involved on the most recent date, even it was too long ago to be within the statute of limitations. I have been drafting a reply to your opposition and plan to file it on Friday.

Any questions you would like to direct to my clients can be done through the discovery process outlined in Title V of the Federal Rules of Civil Procedure.

Stay well.

On Tue, May 5, 2020 at 12:59 PM dayna catchings <catchings.dayna7@gmail.com> wrote:
Post Script:

As to Officer Cortez, if and since he apparently feels so STRONGLY that he is not responsible in ANY kind of way for me receiving payment for damages that he HIMSELF awarded me, then...

WHY didn't he object to or deny ANY kind of responsibility last October 14th 2019 when I e-mailed him, and then gave him over two weeks to reply back to me BEFORE I filed this complaint, but he failed, neglected and refused to do so; yet he's objecting NOW, 6 months later?!

Yes, that most DEFINITELY needs to be explained...

Don't you think?

Thanks,

Dayna

On Tue, May 5, 2020, 10:37 AM dayna catchings <catchings.dayna7@gmail.com> wrote:
Good morning Mr. Lauber,

I am in receipt of your document mailed on 4/30/2020.

I have a few questions:

You say in your submission that it WAS a lawful arrest committed by Officer Abner, but yet during our telephone meet and confer you agreed WITH ME, that he had NO probable cause once you actually heard EXACTLY what had transpired how and why.

What you DID DO was to correct my terminology from "probable cause" to "procedural error" which is exactly the SAME THING...

He was lawfully WRONG!!

25

Ex. 116

In addition, you did not submit to the Court along with your case management update, the photos
that were sent to you by e-mail on 4/21/2020 that PROVES on 4/12/17 and on March of 2017,
there were not only NO "No Camping" Signs, but also that was the EXACT location where Sgt.
Miller had ordered me to move to BECAUSE there was no violation on that particular Ordinance at
THAT campsite (yet there was none on Wilshire Blvd. EITHER); yet you didn't disclose that
material fact to the Court on 4/30/2020?!

Why NOT...That's you concealing material facts from the Court.

Once AGAIN... Conflicts of Interests (one says that you CAN but the other says that you CAN'T.
Even still, Sgt. Miller OUTRANKS Officer Abner, meaning consequently that was NOT a lawful
Arrest)!!

And, Speaking of Sgt. Miller:

And as I said in my Response in Opposition, exactly WHY would you place him at the 110 Fwy.
location on 11/1/2017 right along with Officer Abner and Bobby Benson (I will see that he is re
served at his correct location after the Court House re opens), when you knew perfectly well that
those were TWO different situations, at TWO different locations, on TWO separate dates almost
one year apart?!

Sgt. Miller's involvement was on 11/17/16 on Wilshire Blvd. and NOT on 11/1/17 at the 110 Fwy.
location.

And, WHY wasn't Officer Munoz's tape and information from 10/17/16 turned over ALSO to the
Court as I REQUESTED you to do??

These and other questions that I have will be addressed at the deposition and trial.


Thank You,

Dayna


On Fri, May 1, 2020, 6:51 AM dayna catchings <catchings.dayna7@gmail.com> wrote:
Post Post Script:

You will also notice that I had to change the dates on the attached Proof of Service from
3/26/2020 (which coincides with the date of the screenshot of the notice on the Court House
door when I had originally attempted to file it) to 4/30/2020, as per the filing extension given by
the Court on 4/16/2020.


Thank you,

Dayna

On Fri, May 1, 2020, 6:37 AM dayna catchings <catchings.dayna7@gmail.com> wrote:
Post Script:

And, this is YOUR envelope mailing confirmation.

Dayna

On Fri, May 1, 2020, 6:30 AM dayna catchings <catchings.dayna7@gmail.com> wrote:
Good morning Mr. Lauber:

This is e-mail confirmation of the mailing of my Response in Opposition yesterday.

One thing that I WASN'T able to do (through no fault of my own), was to have the correct hole punching done as you can see in the attached screenshots.

The Manager (not Saul) at ABC Imaging did not have a template for the two holes across the top, which I didn't know until AFTER he had hole punched them and handed them back to me, is when he gave me his explanation. Of course, at THAT point there was nothing that I personally could have done myself to correct it. But the GOOD news is, that I was able to comply by having it stapled correctly.

The original one on your right WOULD have been able to be hole punched and stapled correctly (because the clerk's office has the correct hole puncher AND stapler, but I couldn't get it on March 27th to file it had the Court House been open on 3/27/2020 which it wasn't), even though I got there in PLENTY of time to do all of it correctly. Again, not MY fault.

You will also notice that I had to mail the Court it's copy by Certified instead of Registered Mail, since it was just paper and not an object, at the instruction of the Postmaster.

Both yourself and the Court should be receiving your copies this morning.


Thank You,

Dayna

On Thu, Apr 23, 2020, 11:42 AM dayna catchings <catchings.dayna7@gmail.com> wrote:
Post Script:

Mr. Lauber...

As you can see, in all THREE violations of the DOJ Ruling of 2015 committed against me by the LAPD, was the one common thread...the unlawful and wrongful destruction of my Personal Property, most specifically Officer Abner and Officer Gras.

The Police Report on 11/19/16 is a direct result of Sgt. Miller's involvement and defying the DOJ RULING of 2015 by having me put my tent and belongings in jeopardy of being stolen or

Ex. 116

damaged by lowering it completely ( which is EXACTLY what happened, didn't it...), and to leave the location.
With further Negligence by NOT informing Korean Air of THEIR responsibility and financial liability if ANYTHING happened to my Property by them defying the LAPD orders of Officer Munoz given them on 10/17/16, by not leaving both me and the situation ALONE.

They were ALLOWED to defy a direct Police order for no Legal reason, and my damages from that point and date forward were a direct result of them being ALLOWED to do so by the LAPD!


Thank you,

Dayna

On Thu, Apr 23, 2020, 11:09 AM dayna catchings <catchings.dayna7@gmail.com> wrote:
  Mr. Lauber,

  THANK YOU SO MUCH for the explanation and clarification.

  My confusion was most definitely very obvious.

  That's why the other video from Witness Officer Abel Munoz that I requested is so CRITICAL (as I mentioned before) to both the City of Los Angeles, the LAPD and most importantly to me, based on the THREE violations of the DOJ RULING in Bell v. City of Boise 2015, committed first by Sgt. Miller on 11/17/16, then by Officer Abner on 4/12/17 by forcing me off the platform in the encampment that Sgt. Miller had sent me to, and finally by Officer Gras on 11/1/17, who wouldn't let me move my belongings to the other side of the fence (as stated) to PREVENT further damage from happening to me, leaving me with no place else to go and only about 30% of which NEVER would  occurred had Bobby Benson kept both his e-mail written confirmation of our meeting and arrangement and his verbal agreement to protect my Rights and to do so as well, by not complying with the DOJ RULING and forcing me off the sidewalk with no place else to go!

  That's correct, you can legally REQUEST them, but that's only payable by me to you IF both the City of Los Angeles and LAPD prevail.

  And, I've already given you my feelings and reasoning on that issue.

  (I told you this confusion was going to happen, didn't I...)

  Thanks again for the in depth response!


  Dayna

EX. 116

On Thu, Apr 23, 2020, 9:35 AM Nicholas Lauber <nicholas.lauber@lacity.org> wrote:
Ms. Catchings:

I am required by the Federal Rules of Civil Procedure to provide you with a list of all witnesses that may have discoverable information to support my claims or defense and a list of all documents may contain discoverable information to support my claims or defenses. I am not required to explain how I intend to use them to mount a legal defense.  If I later discover information that also falls within the criteria for disclosure, then I will provide you with a supplemental disclosure.  My investigation is ongoing.

These are initial disclosures from me. The point of them is to put you on notice of what I have that supports my claims and defenses. If you would like to request other documents or information from me, then please do so according to the Federal Rules of Civil Procedure.

The videos, once prepared would, be put on DVD for your review.  But as I mentioned in our conversation on Monday, those videos will not be turned over until the Court signs a protective order.  I am preparing the protective order now and will send it to you for your signature when it is done.

The request for attorney's fees is pursuant to City of Los Angeles policy.  The request is not made in consideration of the realities of collection.  It's inclusion in this disclosure is to put you on notice that we may seek attorney fees in this action.

On Wed, Apr 22, 2020 at 8:01 PM dayna catchings <catchings.dayna7@gmail.com> wrote:
Post Post Script:

You are ALSO asking for Attorney's Fees which I also object to, as if I'M going to be the one who is doing the "PAYING", when I'M the one who has been damaged and I'M the one that has been LIED TO (by Sgt. Miller) and LIED ON (by Officer Abner), proven that by my written testimony in these e-mails should match the video footage that was recorded which is WHY I requested the additional video cam footage; the only other question that you should be asking ME is...

"Do you want (YOUR money) in paper or plastic??"

Because I'm definitely getting this vibe from you as if YOU think and feel that you've got this case in the bag...Seriously?!

Based on WHAT...

It CAN'T be based on the the evidence that ALL adds up in my favor and NOT in the favor of the City of Los Angeles or most importantly, the Los Angeles Police Department; and I've already challenged ALL of the Statue of Limitations restrictions in your Motion to Dismiss within my Response in Opposition, that would have prevented me from proceeding and prevailing, in addition to you not objecting to or denying ANYTHING that I have brought up to you during our telephone conversation, or in the e-mails between then and now.



EX. 116

I see NO DEFENSE for the listed Defendants based on the Evidence (visual and/or written) that would allow them or the City of Los Angeles (who had a duty and a responsibility to PAY the damages that the LAPD (through Officer Cortez had awarded, and by that NOT happening that ESTABLISHES Fraud, Breach of Contract, Negligence and Conflicts of Interests between the LAPD and the City of Los Angeles, andthen Officer Cortez was given a deadline to respond in but didn't BEFORE the Federal Complaint was filed) for them to prevail over me!

Thank you.
Dayna

On Wed, Apr 22, 2020, 7:12 PM dayna catchings <catchings.dayna7@gmail.com> wrote:
Post Script:

Mr. Lauber,

I will also need to have a way to VIEW the video body cam footage of Sgt. Miller, Officers Abner and Solorio and Officer Abel Munoz (and probably even officer Gras on 11/1/17); just as you are able to see it and ESPECIALLY since I'm the one who is paying cash money for ALL of that evidence (hopefully you can get as much on one disc as possible like you had suggested) that is ALSO to be submitted to Magistrate Judge Rosenberg.

I have a Legal Right to be able to view that evidence also.

Thank you,

Dayna

On Wed, Apr 22, 2020, 6:23 PM dayna catchings <catchings.dayna7@gmail.com> wrote:
Mr. Lauber:

The documents that you listed help ME more than your Clients.

Just like I have to produce documents and evidence to YOU that YOU ask for, you have the SAME legal obligation to me as well!

Which so far, up until now, you have NOT complied with, as per my e-mail to you yesterday.

The Police Report that generated the $1670.00 monetary award by Officer Cortez which it was based on, but never paid;

The FRAUDULENT ticket written by Officer Abner, when it wasn't TRUE at the time that the ticket was written, and for what it WAS written for was not what ACTUALLY

30
38



Ex. 116

happened; including all of the Criminal Court proceedings that I had to endure as a
DIRECT result of him outright LYING on me, and the PERJURY that he committed on
hearing date 9/22/17 in front of Judge May, for which I was found Not Guilty, thereby
giving me the opportunity to charge him with Malicious Prosecution!

And, the video from both him and officer Solorio (as you yourself suggested) would give
a much BETTER picture of what all happened, based on exactly WHEN both Officer's
body cams were turned on and off;


Therefore,

What exactly is your Client's DEFENSE to violating the both the Law and my
Constitutional Rights based on the documentation that you have submitted?!

I am not ALLOWED to file a response to what you've filed without the Court's order to
do so, which has not been given to me yet.

So, that's why I asked you...what am I supposed to do with it??


Thanks,

On Wed, Apr 22, 2020, 5:31 PM dayna catchings <catchings.dayna7@gmail.com> wrote:
Thank you, Mr. Lauber...

However, since Officer Abel Munoz IS a witness, and I DID ask to have his body cam
video footage yesterday also, but yet his wasn't added to the list??

Why not...

Now that you're sending out to to me, exactly what am I supposed to do with it??

Dayna

On Wed, Apr 22, 2020, 4:50 PM Nicholas Lauber <nicholas.lauber@lacity.org> wrote:
Ms. Catchings:

Please find attached a courtesy copy of my clients' initial disclosures.  The original has
been sent by US mail.

--
Nicholas D. Lauber
Deputy City Attorney
nicholas.lauber@lacity.org
213-978-7025
200 N Main St CHE 600
Los Angeles, CA 90012

EX. 116

****************Confidentiality Notice *************************
This electronic message transmission contains information
from the Office of the Los Angeles City Attorney, which may be confidential or
protected by the attorney-client privilege and/or the work product doctrine. If you are
not the intended recipient, be aware that any disclosure, copying,
distribution or use of the content of this information is prohibited. If you have
received this communication in error, please notify us immediately by e-mail and
delete the original message and any attachments without reading or saving in any
manner.
***********************************************************************
Dayna

--
Nicholas D. Lauber
Deputy City Attorney
nicholas.lauber@lacity.org
213-978-7025
200 N Main St CHE 600
Los Angeles, CA 90012

****************Confidentiality Notice *************************
This electronic message transmission contains information
from the Office of the Los Angeles City Attorney, which may be confidential or protected by
the attorney-client privilege and/or the work product doctrine. If you are not the intended
recipient, be aware that any disclosure, copying,
distribution or use of the content of this information is prohibited. If you have received this
communication in error, please notify us immediately by e-mail and delete the original
message and any attachments without reading or saving in any manner.
***********************************************************************
Dayna

--
Nicholas D. Lauber
Deputy City Attorney
nicholas.lauber@lacity.org
213-978-7025
200 N Main St CHE 600
Los Angeles, CA 90012

****************Confidentiality Notice *************************
This electronic message transmission contains information
from the Office of the Los Angeles City Attorney, which may be confidential or protected by the
attorney-client privilege and/or the work product doctrine. If you are not the intended recipient, be

Ex. 116

aware that any disclosure, copying,
distribution or use of the content of this information is prohibited. If you have received this
communication in error, please notify us immediately by e-mail and delete the original message and
any attachments without reading or saving in any manner.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

--
Nicholas D. Lauber
Deputy City Attorney
nicholas.lauber@lacity.org
213-978-7025
200 N Main St CHE 600
Los Angeles, CA 90012

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*Confidentiality Notice \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
This electronic message transmission contains information
from the Office of the Los Angeles City Attorney, which may be confidential or protected by the
attorney-client privilege and/or the work product doctrine. If you are not the intended recipient, be
aware that any disclosure, copying,
distribution or use of the content of this information is prohibited. If you have received this
communication in error, please notify us immediately by e-mail and delete the original message and
any attachments without reading or saving in any manner.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Dayna

Ex. 116



≡  Free Dictionary Org

laches 🎤 🔍

### The Collaborative International Dictionary of English v.0.48: 🔊

Laches \Lach"es\ (l[a^]sh"[e^]z), Lache \Lache\ (l[a^]sh), n. [OF. lachesse, fr. lache lax, indolent, F. l[^a]che, ultimately fr. L. laxus loose, lax. See Lax.] (Law) Neglect; negligence; remissness; neglect to do a thing at the proper time; especially, a delay in asserting a claim, sufficient to cause a person to lose the right to adjuducation of the claim by a court. [1913 Webster]

It ill became him to take advantage of such a laches with the eagerness of a shrewd attorney. --Macaulay. [1913 Webster]

### Bouvier's Law Dictionary, Revised 6th Ed (1856):

LACHES. This word, derived from the French lecher, is nearly synonymous with negligence. 2. In general, when a party has been guilty of laches in enforcing his right by great delay and lapse of time, this circumstance will at common law prejudice, and sometimes operate in bar of a remedy which it is discretionary and not compulsory in the court to afford. In courts of equity, also delay will generally prejudice. 1 Chit. Pr. 786, and the cases there cited; 8 Com. Dig. 684; 6 Johns. Ch. R. 360. 3. But laches may be excused from, ignorance of the party's rights; 2 Mer. R. 362; 2 Ball & Beat. 104; from the obscurity of the transaction; 2 Sch. & Lef. 487; by the pendancy of a suit; 1 Sch. & Lef. 413; and where the party labors under a legal disability, as insanity, coverture, infancy, and the like. And no laches can be imputed to the public. 4 Mass. Rep. 522; 3 Serg. & Rawle, 291; 4 Hen. & Munf. 57; 1 Penna. R. 476. Vide 1 Supp. to Ves. Jr. 436; 2 Id. 170; Dane's Ab. Index, h.t.; 4 Bouv. Inst. n. 3911.

34

The Shift Network
▷ Your Authentic Voice

OPEN

CX/16

After that, you will receive my First Amended Complaint hopefully by November 7th or very shortly thereafter, long before the November 30th Discovery Process deadline.

Dayna

On Sat, Sep 26, 2020, 1:10 PM Dayna Catchings <catchings.dayna7@gmail.com> wrote:
Mr. Lauber,

As I an preparing for the upcoming hearing, I just came across this rent deposit receipt from St. Barnabas dated 6/14/18 for $250.00 in the attached screenshot. TWO months and I day AFTER I was already inside!

But yet on November 4th, 2016 (or on the very next business day), why could they have not taken that SAME $250.00 and applied it to another hotel or motel, to have gotten me off the street IMMEDIATELY just like Heritage Clinic did on 11/1/17?!

Heritage Clinic actually put me in a motel that SAME afternoon, and then took me themselves to the Good Shepherd Center on Monday morning 11/4/17.

Why didn't St. Barnabas do at least that much for me THEMSELVES, knowing that I was living on the street in a tent for 13 MONTHS (from October 2016 to November 2017), yet they did absolutely NOTHING about it but just leave me out there?!

One waiting list position, and one Housing referral (the Hotel Dieu) and one networking attempt, is ALL that they have to show for it?!

Not until 5 months LATER after I'm ALREADY indoors (for a grand total of 18 MONTHS with no housing assistance or advocating for housing either), and THEN for them to step forward with housing assistance??

Sounds pretty self serving of them to me.

Because, If it were really for MY OWN benefit that they paid it, then why did they WAIT to assist me?? Why didn't they assist me just like that IMMEDIATELY!

Because, attached is the PROOF that they could have did SOMETHING about it, from long BEFORE 18 months later from the time that they FIRST found out about my homelessness in October of 2016, and before I actually became a Client of theirs in November of 2016, to the time that they finally stepped forward.

This ADDITIONAL evidence enhances the CCP 430.10 (a)(e)(f) violation.

"Unintelligible, ambiguous and uncertain" as to exactly WHY NO financial assistance to secure some kind of housing, was not given MUCH sooner and quicker, just as it was on 6/14/18.

Dayna

On Sat, Sep 26, 2020, 5:51 AM Dayna Catchings <catchings.dayna7@gmail.com> wrote:

PPS;


Mr. Lauber,

So let's compete the ENTIRE timeline of events...


From 11/1/17 to 9/26/18, I was STILL receiving services from them in the hopes of them helping me to complete my legal paperwork (the City of Los Angeles complaint as well) now that I had finally found permanent housing.

But, when I get "anxious" with them over the phone about an "urgent" situation that really NEEDED to be taken care of and responded back to in a timely manner (it had been about a week and a half at that point since I had last talked to Miguel), they then
twist that conversation and outright LIE on me by saying that I "threatened" an employee when I DIDN'T?!

And then for them to use that "excuse" for wrongfully terminating me from the Program on 9/26/18.

And, then for them to CHANGE THAT lie into yet ANOTHER lie about me having an "aggressive attitude" with some employee OTHER than Alice 2 YEARS LATER in their response back to my Complaint, and the DFEH didn't make them clarify WHO else other than Alice that it was?!

THAT'S the lie about Alice being involved that they told back in 2018. Because Alice TOLD them that very lie herself!

(As I've said before...)


They DESERVE to be sued!!



Dayna

On Sat, Sep 26, 2020, 4:39 AM Dayna Catchings <catchings.dayna7@gmail.com> wrote:
 Post Script;


 Mr. Lauber,

 Just so that we are clear on the part of the City of Los Angeles, the LAPD and the Sanitation Department's roles as "witnesses" to the St. Barnabas Complaint; the actual FACT of the matter is that, had I still NOT been in the street after 11/3/16, the date that I OFFICIALLY began receiving services from them (even though I had been going there for lunch around or about October 11th 2016, right immediately after the illegal eviction), then I would have NEVER even met Sgt. Miller on or about 11/17/16.
 Officer Munoz, yes I would have met him anyway, but HE did me no harm.

 Within that 14 day period they could have VERY EASILY gotten me into a shelter or a hotel or even a motel room. And I've said that to you before.

But instead, they CHOSE to leave me in the street like an animal for almost an entire year AFTER becoming a Client!

While at the same time CONFIRMING just how badly I needed housing!!

Then why didn't they DO something about it?!

In contrast, it only took Heritage Clinic a total of 3 CALENDAR days from Friday 11/1/17 to Monday 11/4/17, to get me into the Good Shepherd Center not even 5 miles from St. Barnabas, as I've ALSO said to you before.

But by them NOT doing that, it forced me to be in constant contact with the LAPD and ultimately the Sanitation Department also, and consequently made them (St. Barnabas) accessories (both before and after the fact) to the damages that occurred to me 3 TIMES AFTER becoming a Client of theirs on 11/3/16.

So therefore, from 11/3/16 to 11/1/17 almost ONE YEAR later to the day from me officially receiving services from them; they had failed, neglected and refused to help me secure SOME kind of housing.

My damages could have, would have and should have been avoided, and so could have the damages to the City of Los Angeles as well.

I hope this clarification helps.



Dayna

On Fri, Sep 25, 2020, 6:32 PM Dayna Catchings <catchings.dayna7@gmail.com> wrote:
Mr. Lauber,

As of this date, neither St. Barnabas nor the DFEH have been heard from since my last email to the Appeals Division at the beginning of August.

So, THEREFORE...

Attached is a screenshot CONFIRMING the filing of my Complaint in Superior Court today, 9/25/2020 as was originally planned before the 2 year Statue of Limitations issues expires tomorrow, 9/26/2020, against and including both Entities and certain individuals.

The DFEH is also listed as a separate Defendant.

The City of Los Angeles is listed as a witness, as I've said before, and NOT a separate Defendant in this case also.

And, speaking of which, the monetary damages for EACH could not be expressed on the filing form, only ONE place to enter both Punitive and Compensatory damages for (apparently) only ONE separate Defendant.

St. Barnabas Senior Services is already aware of this through included e-mail evidence within the Complaint, of 30K, and exactly why and how I arrived at that figure So, I entered it in the amount of 10/20K total.

The actual monetary damages against the Department of Fair Employment and Housing, have yet to be determined SEPARATELY from St. Barnabas at a later date, because I could not just pull ANY figure out of thin air without having SOMETHING to base it on, like I did with St. Barnabas, and then just add it to THEIR amount, that that would know nothing about.

I'll see if I can include that addendum with the Sheriff's Department Service instructions.

If not, then I can always address it at either Meditation, Hearing or Trial.

The IMPORTANT thing was to get it timely filed!

Any other adjustments or Modifications can be made along the way.

After it is put on film (probably Monday), I can have yours, theirs and mine made hopefully by the end of next week.

The Sheriff's Department will serve all of theirs to them; and I will mail you your copy as part of the Discovery Process, and then forward a copy of the Proof of Service to you, to the Court.

Dayna

On Tue, Sep 22, 2020, 11:02 AM Dayna Catchings <catchings.dayna7@gmail.com> wrote:
Mr. Lauber,

Attached is the screenshot of the mailing today of the Proof of Service to the Court for the Service to you of the Interrogatories and for the Production of Documents on August 7, 2020.

Dayna

On Wed, Sep 16, 2020, 8:33 AM Dayna Catchings <catchings.dayna7@gmail.com> wrote:
Mr. Lauber,

Attached is the screenshot of the ENTIRE message exchange between myself and Gilbert Jimenez from LAHSA on the morning of November 1, 2017, that I mentioned to you previously.

As of that very 8:00 a.m. on the day of November 1, 2017, I was in FULL COMPLIANCE with my agreement with Bobby Benson.

I was actively STILL seeking housing, and I was actively preparing my campsite for the scheduled clean up that was to occur that morning.

And, for you to even attempt to work AGAINST me on this matter regarding Bobby Benson, by asking the Court to disregard him from the complaint, when it is precisely because of him NOT BEING WHERE he was not only supposed to be, but had also PROMISED me both in writing and verbally in April of 2017, that as long as I kept trying to get housing through him connecting me with LAHSA, that he would continue to protect both me and my property; is very egregious!

Well, quite frankly, he DIDN'T DO that, did he??

Nooo....INSTEAD he gets the LAPD and the City of Los Angeles sued for a THIRD incident for habi having unnecessary contact with me, that was SUPPOSED to be AVOIDED by what he said and promised in April of 2017.

Therefore, what you submitted on HIS behalf against ME, is highly "unreasonable, arbitrary and unconscionable" of you to do, and consequently represents a SEVERE Conflicts of Interests on the part of the City of Los Angeles (as he is admittedly NOT one of YOUR clients and you even gave the forwarding information to the Court about him); in addition to Obstruction of Justice by even attempting to PREVENT me from seeking Justice and damages from him because of HIS OWN Negligence, Breach of Contract and Fraud towards me, which then in turn establishes a Conspiracy between the LAPD and the Sanitation Department (because he failed, neglected and refused to appear until AFTER the damage was done), and now by your OWN Submission to the Court on September 2, 2020, that now confirms that fact and to the connection of the City of Los Angeles as well.

I KEPT my part of the agreement up to that very day; but obviously, apparently and evidently HE. DID. NOT!

Which then resulted in ADDITIONAL damages to both myself AND to the City of Los Angeles for yet a THIRD incident?!...which is most DEFINITELY "unintelligible, ambiguous and uncertain" as to exactly WHY you would want him dismissed from the lawsuit, and then WHY you would even SUBMIT something like that against me in the first place?!


Dayna C.

Dayna
Dayna
Dayna
Dayna
Dayna

ST. BARNABAS SENIOR CENTER OF LOS ANGELES / OPERATING ACCOUNT

PARKVIEW ON THE PARK

Check Number    9127
Check Date    Jun 14, 2018

Check Amount    $250.00

| Invoice | Date | Discount Taken | Amount Paid | Quantity | Description |
|---|---|---|---|---|---|
| CCF D CATCHINGS 2 | 6/11/18 | | 250.00 | | CCF: DAYNA CATCHINGS - RENT UNIT JULY 2018 |

| DATE | SBSS Care Plan for Entire Term of Service |
|---|---|
| INTAKE CONDUCTED BY: Marla De Leon | DATE OF INTAKE: 11/03/16 |
| IN-HOME ASSESSMENT DATE: | |

### CLIENT'S NEEDS AND DESIRED RESULTS/OUTCOMES FROM CASE MANAGEMENT SERVICES

- Client is currently homeless and looking for affordable housing due to being evicted from Clark Residence unlawfully. Client is currently in trial with property management. Client needs assistance locating permanent housing
- Client will need financial assistance once apartment is found to move in.
- Client needs referral to legal services.
- CH scored "6" on GDS; CM referred client to PCP.

### SERVICES TO BE PROVIDED ACCORDING TO CLIENT'S NEEDS

| Start Date | Completion Date | Type of Service | Service Provider | Contact Person's Phone |
|---|---|---|---|---|
| 11/03/16 | 05/03/17 | CM | SBSS | (213) 383-4444 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Additional comments:

### Required Signatures:

| I agree to these services. | I agree to support client in obtaining these services |
|---|---|
| X _Dayna Catchings_  11/3/16  Client signature    Date | X _____  For client (surrogate decision maker)    Date |
| CASE MGR: & Phone: | CASE MANAGER'S SUPERVISOR'S APPROVAL |
| X _Marla De Leon_  11/03/16  Case Manager's Signature    Date | X _____  12/6/16  Supervisor's Signature    Date |

This confidential information is provided to you in accordance with applicable Welfare and Institutions Code Section. Duplication of this information for further disclosure is prohibited without the prior written consent of the client/authorized representative to whom it pertains unless otherwise permitted by law.

CLIENT NAME:

Catchings, Dayna

Expenditure Request Form.

Page 1 of 2

Ex. 219

## Expenditure Request Form

Heritage CLINIC

| Your Name * | Your Email * | Expected Expense Date * | Form ID |
|---|---|---|---|
| Jessie Torres | jtorres@heritageclinic.org | 11/1/2017 | 2,246 |

**Is this Uber or Transportation?**
No
*Client must sign before leaving.*

**Is this housing/rent?**
No
*All rent requests go to Jamie Garis.*

**Is this a non-client request?**
No
*For internal fixed assets.*

**Request Approval to Purchase (list item/s) ***
Motel-2 nights

**Amount ***
$180.00

*Obtain written or verbal approval before making purchases for clients.*

**Supervisor ***
Jamie Garis

**Supervisor Email ***
jgaris@cfar1.org

**Client Name ***
Dayna Catchings

**IBHIS No. ***
4405860

☐ Client Can/Cannot Sign

*Check this box if client CANNOT or refuses to sign and put the reason in the note.*

By signing electronically below, I acknowledge that I received the items or services listed above from Heritage Clinic. I also understand that my name and phone number may be given and used by a third party to aid in transportation services.

**Date**
11/2/17

**Signature**
Dayna Catchings

01/09/2018

**For Supervisor Approval**

**Supervisor Name**          **Date**          **Approve or Deny request**

CATchings
v. CALiFoRNiA
Ex.106

https://www.cognitoforms.com/HeritageClinic1/ExpenditureRequestForm

11/2/2017



140   Doc# 1 Page# 167 - Doc ID = 1724336029 - Doc Type = OTHER

Expenditure Request Fo.

| Jamie Garis | 11/1/2017 | 📅 | ⦿ Approved    ○ Denied |

**Signature**



❌

**Supervisor Note to Staff**

[ Submit ]

Cutchings v.
Cali Forun'a
Ex. 107

11/2/2017



# SUMMONS
## *(CITACION JUDICIAL)*

**SUM-100**

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**FILED**
Superior Court of California
County of Los Angeles

SEP 25 2020

Sherri R. Carter, Executive Officer/Clerk of Court

By _____ Deputy
Glorietta Robinson

**NOTICE TO DEFENDANT:** St. Barnabas Senior Services
*(AVISO AL DEMANDADO):* Gordon Gibb, Miguel Valasquez, Maria Deleon, Et. Al., and the Department of Fair Employment and Housing and Does 1-10

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Dayna R. Catchings

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (*www.sucorte.ca.gov*), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (*www.lawhelpcalifornia.org*), en el Centro de Ayuda de las Cortes de California, (*www.sucorte.ca.gov*) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| The name and address of the court is: *(El nombre y dirección de la corte es):* 111 N. Hill St. Los Angeles, CA. 90012 | CASE NUMBER *(Número del Caso):* 20STCV36717 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):* Dayna R. Catchings, 626 S. Alvarado St. #411, L.A. CA. 90057 - 323-373-5355

DATE: 9/24/2020   SEP 25 2020   SHERRI R. CARTER   Clerk, by _____, Deputy
*(Fecha)*   *(Secretario)*   Glorietta Robinson   *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010).)

[SEAL]
SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)   ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date)*

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Page 1 of 1

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

pg. 56

Ex. 116

As per my voicemails to you last night, this is the follow up with attachments.

First we have all 3 Police Department Contact Cards, beginning with the most recent visit back to the first visit involving the upstairs neighbor named Franz in Apartment #511.

Then we have my written letter to management dated August of 2020 about the noisy neighbor upstairs.

As to both Officers Campbell (#37222) and Calzadillas (#26540), of the Violation of the Law regarding the Assault against me by Susanna, based on Wikipedia (and other) DICTIONARY definitions, is INDEED not only a Crime but a Tort as well, due to the Infliction of Severe Emotional Distress (Physical harm)!

So, then why would BOTH Officers swear in writing that it WASN'T?!

Conflicts of Interests yet once AGAIN.

As I stated to Officer Calzadillas, if I had came downstairs and went at HER the way that she went after ME (especially after she had hung up on me thereby ending the conversation), then I would be guilty of assaulting HER.

To which he raised no objections to or denial of that fact.

Yet, when she gets up out of her chair from behind her desk and then leaves her Office to come at me, after she had already ENDED the conversation herself, comes out into the Lobby to further Assault me after I had told her when she first opened her Office window and I told her THEN that I didn't want to talk to her after she had hung up on ME, and the Guard Tyrone was handling the noisy neighbor issue; yet there is NO CRIME when she does the exact same thing to me??

How is that POSSIBLE?!

Different types of Justice for different types of People, huh.

Apparently SO!!


I have other evidence that I will have to forward in another e-mail because I'm reaching the Attachment limit...



Dayna

On Thu, Nov 12, 2020, 7:37 PM Dayna Catchings <catchings.dayna7@gmail.com> wrote:
 Mr. Lauber;

 To ANYONE who might say to me:

 "Sgt. Miller has not been tried and found guilty of breaking the law, so WHY would you say that he did?!"

 My response...

Ex. 116

"I said that because Sgt. Miller made HIMSELF guilty by his OWN words and actions which are a matter of Public record.

He willfully and deliberately said that I had NO RIGHTS as a homeless person, and that there were NO Legal Precedents that gave me the Right to remain on the sidewalk, and that I was to lower my tent and move it to a NEW location that he allegedly had control over, yet we all see just how well that worked out for me on 4/12/17 with Officer Abner, didn't we?!

However, in direct OPPOSITION to what Sgt. Miller alleged, we have the testimony of one of the Witnesses Officer Able Munoz who just one month before on 10/17/16, told both Korean Air and myself that my Rights for being there WAS covered under the DOJ Ruling of 2015 (Bell v. City of Boise et. al.) and that with my being there, I was doing nothing wrong or illegal, and that the harassment was to stop (which apparently they failed, neglected and refused to do).

So...Since Sgt. Miller DISAGREED with Officer Munoz so strongly, then WHY didn't he call Officer Munoz and have him come on scene personally and tell him to his FACE that 'he was new' and 'that he was wrong' and that 'he didn't know what he was talking about', just like he said to ME about him!

But yet, he chose NOT to.

So instead, he decides to MAKE HIMSELF Guilty by violating the DOJ Ruling, and thereby violating mine and every other homeless Person's Rights, by saying what he did, and then by doing what he did.

Either the Laws apply to EVERYONE, or they apply to NO ONE.


He had OTHER alternatives...


By SUPPORTING Officer Munoz!

I.e. Citing Korean Air for violating a direct Police Order to leave me and my tent alone on 10/17/16, after he learned of Officer Munoz's involvement, and that I was complying with his Orders, and if ANYTHING were to happen to my tent or any of my other Personal Property, that THEY Korean Air were going to be held legally responsible.

But yet, he chose NOT to do that either!

I am willing to bet you that when I did get back there that day, EVERYTHING would have been still there just like I had left it!!

That would have been HIM protecting My Rights, just as Officer Munoz did back THEN, and most recently once again just a few days ago on November 10, 2020."

So, this is WHY I said what I did, because it's true and all of it was PROVEN to be true by Sgt. Miller himself on November 17, 2016.

Therefore, I did not have to say that he "allegedly" said or did anything wrong; because he had proven that indeed he did do and say a whole lot wrong, all by HIMSELF.

And his wrongdoing caused my harm.

He violated both My Rights and Federal Law, and he undermined a fellow Police Officer's Orders, thereby setting into motion a string of events that brought about even MORE damages to both Myself, the LAPD, and to the City of Los Angeles, all brought on by his unnecessary involvement, because (based on the DOJ Ruling of 2015), he had absolutely NO probable cause to take ANY kind of action towards me for "allegedly" illegally camping, because in ADDITION there were no posted signs of "No Camping", to which Officer Munoz was a witness to!

Now, What part of that ISN'T true...


Dayna

On Tue, Nov 10, 2020, 8:36 PM Dayna Catchings <catchings.dayna7@gmail.com> wrote:
Post Script,


The NEW complaint didn't attach, so here it is again...

On Tue, Nov 10, 2020, 8:29 PM Dayna Catchings <catchings.dayna7@gmail.com> wrote:
Mr. Lauber;

Yet ANOTHER theft of my groceries happened AGAIN last night from Amazon Fresh!

I attached the screenshot of the new Incident Complaint to the Management that I filed with them today; you already have the one from the incident on 9/11/2020.

They were delivered at 10:46 p.m. (see screenshot). I fell asleep while waiting on the order around 9 p.m. and woke up at 1:30 a.m. to find one of the 3 bags missing.
They replaced my order AGAIN earlier this evening.

I spoke to Operators 462, 426 and 810. I mentioned that the City Attorney's Office KNEW of what had happened before on 9/11/2020, yet failed, neglected and refused to respond to my Complaint (through You). However, I did NOT mention your name to them.

THIS TIME the officers did indeed show up, and guess who ONE of the responding Officers was??

Officer Abel Munoz (HIMSELF) and his partner Officer Romero!!

Not until towards the end of the conversation did I mention knowing an "Officer Munoz" is when he spoke up and said...

"That's ME"

We both had a big laugh about it, and I mentioned two things that both he and his partner AGREED ON...

Sgt. Miller should have NEVER went against what Officer Munoz had ORDERED Korean Air to do which was to honor the DOJ Ruling; and that Korean Air VIOLATED that direct Police Order by continuing the harassment and further involving the LAPD.

out of thin air without having SOMETHING to base it on, like I did with St. Barnabas, and then just add it to THEIR amount, that that would know nothing about.

I'll see if I can include that addendum with the Sheriff's Department Service instructions.

If not, then I can always address it at either Meditation, Hearing or Trial.

The IMPORTANT thing was to get it timely filed!

Any other adjustments or Modifications can be made along the way.

After it is put on film (probably Monday), I can have yours, theirs and mine made hopefully by the end of next week.

The Sheriff's Department will serve all of theirs to them; and I will mail you your copy as part of the Discovery Process, and then forward a copy of the Proof of Service to you, to the Court.


Dayna

On Tue, Sep 22, 2020, 11:02 AM Dayna Catchings <catchings.dayna7@gmail.com> wrote:
Mr. Lauber,

Attached is the screenshot of the mailing today of the Proof of Service to the Court for the Service to you of the Interrogatories and for the Production of Documents on August 7, 2020.


Dayna

On Wed, Sep 16, 2020, 8:33 AM Dayna Catchings <catchings.dayna7@gmail.com> wrote:
Mr. Lauber,

Attached is the screenshot of the ENTIRE message exchange between myself and Gilbert Jimenez from LAHSA on the morning of November 1, 2017, that I mentioned to you previously.

As of that very 8:00 a.m. on the day of November 1, 2017, I was in FULL COMPLIANCE with my agreement with Bobby Benson.

I was actively STILL seeking housing, and I was actively preparing my campsite for the scheduled clean up that was to occur that morning.

And, for you to even attempt to work AGAINST me on this matter regarding Bobby Benson, by asking the Court to disregard him from the complaint, when it is precisely because of him NOT BEING WHERE he was not only supposed to be, but had also PROMISED me both in writing and verbally in April of 2017, that as long as I kept trying to get housing through him connecting me with LAHSA, that he would continue to protect both me and my property; is very egregious!

Well, quite frankly, he DIDN'T DO that, did he??

16

Nooo....INSTEAD he gets the LAPD and the City of Los Angeles sued for a THIRD incident for habi having unnecessary contact with me, that was SUPPOSED to be AVOIDED by what he said and promised in April of 2017.

Therefore, what you submitted on HIS behalf against ME, is highly "unreasonable, arbitrary and unconscionable" of you to do, and consequently represents a SEVERE Conflicts of Interests on the part of the City of Los Angeles (as he is admittedly NOT one of YOUR clients and you even gave the forwarding information to the Court about him); in addition to Obstruction of Justice by even attempting to PREVENT me from seeking Justice and damages from him because of HIS OWN Negligence, Breach of Contract and Fraud towards me, which then in turn establishes a Conspiracy between the LAPD and the Sanitation Department (because he failed, neglected and refused to appear until AFTER the damage was done), and now by your OWN Submission to the Court on September 2, 2020, that now confirms that fact and to the connection of the City of Los Angeles as well.

I KEPT my part of the agreement up to that very day; but obviously, apparently and evidently HE. DID. NOT!

Which then resulted in ADDITIONAL damages to both myself AND to the City of Los Angeles for yet a THIRD incident?!...which is most DEFINITELY "unintelligible, ambiguous and uncertain" as to exactly WHY you would want him dismissed from the lawsuit, and then WHY you would even SUBMIT something like that against me in the first place?!


Dayna C.

Dayna
Dayna
Dayna
Dayna
Dayna
Dayna
Dayna

17

11:03

G    **Gilbert Jimenez...**

Good Morning, Mr. Jimenez... that would be okay.

But right now, I'm preparing to the clean-up scheduled for this morning.

There have been some new developments with AJ last Liz that happened yesterday. So, in ADDITION to them....

It would be advisable for you to contact my mental health worker at the Heritage Clinic.

Her name is Amy, and her phone number is...

.

Let me know what you find out.

Thank you,


Dayna

(IF in bETWEEN PAGE NumbErs ANd missing, its hard for me to remember ALL of them as I am writing. The TAble of contents confirms the correct ORDER)

12/4/ 2020

68

EX. 117

Ex. L₁

**Maria De Leon**

| | |
|---|---|
| **From:** | dayna catchings <catchings.dayna7@gmail.com> |
| **Sent:** | Wednesday, August 15, 2018 12:18 PM |
| **To:** | Maria De Leon |
| **Subject:** | Fwd: Trash and debris removal. |
| **Attachments:** | 20170719_122009.jpg; 20170719_121957.jpg; 20170719_121952.jpg |

Dayna

---------- Forwarded message ---------
From: **dayna catchings** <catchings.dayna7@gmail.com>
Date: Sat, Aug 26, 2017, 3:56 PM
Subject: Fwd: Trash and debris removal.
To: <assembly.ca.gov/Santiago@gmail.com>

Good afternoon Mr. Santiago

It was such a PLEASURE to meet you at St. Barnabus on the 10th of August. I did give Lizeth all of the information regarding my present living situation as you had suggested that I do, but as of this writing I have not heard back from her or anyone else from your office as she had promised me that I would.

The e-mail information that I'm forwarding to you is regarding the clean-up due to take place on Monday.

As you can see, I was promised by BOTH the Sanitation Department through Mr. Bobby Benson, and by LAHSA that due to my medical conditions that I would NOT have to move my tent in order for them to clean and sanitize the area. As you can see, the area around MY tent is clean.
The problem is that they (the City of Los Angeles) obviously cannot be trusted to keep their word to me, which is why I'm informing you myself of this serious breakdown in communication.

I don't want nor am I expecting ANY problems from either the LAPD, or the Sanitation Department on Monday.

I am OBVIOUSLY in no position to move my entire tent with its contents, nor based on our agreement, should I have to.

Your help and attention to this matter is GREATLY appreciated and needed by me.

If we as Citizens cannot TRUST what we are told, then everyone's rights are violated.

Looking forward to hearing back from you.

Thank you,

1

Dayna

---------- Forwarded message ----------
From: "dayna catchings" <catchings.dayna7@gmail.com>
Date: Jul 19, 2017 12:52 PM
Subject: Trash and debris removal.
To: <Bobby.Benson@lacity.org>
Cc:


 Hello, Mr. Benson,

Attached you will find photos of the huge AMOUNT of trash and debris that really NEEDS TO be removed as quickly and as soon as possible.
As many times as the City of Los Angeles has driven by this stretch of road, then WHY hasn't any clean up efforts been done that protect the homeless from disease and from spreading diseases as well??

On another subject, both yourself and LAHSA guaranteed me that after your last visit, that my tent would no longer be an issue.
But it WAS an issue on 4/25/17 when Officer Victor Gutierrez accompanied the next clean up crew. He knew NOTHING about our prior agreement, which he SHOULD have known about, but didn't. Therefore, I had to disassemble my tent AGAIN and move everything out of it and then back into it again!!
In the hot heat of the mid day sun, DEFINITELY a hazard to my chronic health problems that is already known by both yourself and LAHSA.
But, neither yourself or LAHSA or even officer Christian Guerrero of the homeless outreach proactive engagement unit.
REALLY??

Speaking of LAHSA, I have not heard anything back from either Ms. Lewis since April 25th, or her co worker named Darryl since May 22nd, not only about the trash issue, but also about my housing needs issues.
The job and task at hand of helping me to find housing, was on themselves and through no fault of my own that it didn't happen from then until now.
I do have all of the text and photographic information and evidence to back up EVERYTHING that I'm saying to you.

MANY PROMISES were made to me on the day of our meeting, yet NOT EVEN ONE of them has been kept to me, from that date of 4/17/17 until this date of 7/19/17.

This all is TOTALLY unacceptable!!

Please let me know when these issues can be quickly resolved.

The photos are all date and time stamped, PROVING that the problem and health hazards are all ACROSS the street and in close proximity to myself, and NOT from the encampment itself.
Which is being well kept and orderly.

Awaiting your response...


Sincerely,


Ms. Dayna R. Catchings



# SBSS
## St. Barnabas Senior Services
Live Well • Feel Well • Age Well

PLE Exhibit 49

December 29, 2016

To whom it may concern,

My name is Maria De Leon, I am a case manager at St. Barnabas Senior Services located in Los
Angeles. Dayna Catchings became my client in November 03, 2016 in which I conducted an
assessment to learn Ms. Catchings areas of assistance. It was clear Ms. Catchings would need
assistance locating affordable housing and referrals to legal agencies that would guide her
through the eviction process. Ms. Catchings and I have been working collaboratively with
locating housing to get her off the street during this harsh cold weather. Our main goal is getting
her off the street and in a safe place where she can rest and not cause her medical conditions to
worsen. I have been assisting Dayna with making copies and organizing all her documents that
show how she was evicted illegally and wrongfully. I am aware that organizing all these
documents has not been an easy task for her and her health as I am not always available to help
her due to having other clients. I have also assisted her with mailing the Proof of Service and
serving The Lee Law Group, P.C. firm with important documents regarding the case. I have not
provided any legal advice or services as law is out of my scope but have been here to provide her
with emotional support or any assistance that is in my field. Our agency hopes this case finds
resolution quickly to get Ms. Catchings off the street in a safe and warm place during the
holidays.

*Maria De Leon, BSW.*
*Case Manager/ Care Manager for BALLAD*
*St. Barnabas Senior Services (Mid-City)*
*675 S. Carondelet St.*
*Los Angeles, CA 90057*
*Tel: 213-388-4444 ext 228*
*Fax: 213-738-9467*
*Email: mdeleon@sbssla.org*

675 S. Carondelet Street Los Angeles • California 90057-3309
Telephone (213) 388-4444 Fax (213) 739-2972 E-mail info@sbssla.org
www.sbssla.org

Doc# 1 Page# 15 - Doc ID = 1711350129 - Doc Type = OTHER

Doc# 1 Page# 187 - Doc ID = 1724336029 - Doc Type = OTHER




EX 59A

# NOTICE:

## MAJOR SIDEWALKS, ALLEYS, PARKS, AND OTHER PUBLIC ACCESS AREAS

### AN AREA CLEANING WILL COMMENCE AT THIS LOCATION ON:
### Wednesday, November 1, 2017 at 08:30 AM

### PLEASE REMOVE ALL PERSONAL BELONGINGS, INCLUDING BULKY ITEMS BY
### Wednesday, November 1, 2017 by 08:00 AM

This effort is designed to clean, improve and maintain a safe environment for the general public. The City may use power wash and street cleaning equipment to clean and disinfect the sidewalks, alleys, parks and other public access areas.

Please remove all personal belongings, including bulky items from sidewalks, alleys, parks, and public access areas. All property remaining will be removed by the City. Property left behind, except for items that pose an immediate threat to public health or safety, trash, and evidence of a crime or contraband, will be collected by the City and kept in a secure location for a period of 90 days during which time it may be retrieved by its rightful owner.

Items collected by the City may be retrieved at:

507 Towne Avenue
Los Angeles, CA 90013
Monday - Friday
(9:30 a.m. – 12:30 p.m. and 1:00 p.m. – 4:00 p.m.)
213-806-6355

The City of Los Angeles greatly appreciates your cooperation as we initiate necessary measures to ensure that your communities are safe and healthy.



*Ex. 4A*



DATE: 11/01/17    TIME: 1115    INC. NO.: 2311

POSTED CLEAN UP LOC 8TH
E/OF GARLAND W/OF 110 FWY
SANITATION / WATER SHED IN
CHARGE OF CLEAN UP
CALTRANS & CHP ON CALTRANS PROP

If you wish to comment on the level of service you received, please
contact a Department supervisor or telephone 800-339-6868, or
TTY for the hearing-impaired (213) 485-3604.
LOC FOR CLEAN UP

Ex. 4
B





H e r i t a g e   C l i n i c      *Ex. R65*

**Heritage Clinic**

447 N. El Molino Ave.
Pasadena, CA 91101
(626) 577-8480
Fax (626) 577-8978

3939 Atlantic Ave.
Suite 103
Long Beach, CA 90807
(562) 264-6001
Fax (562) 264-6006

155 N. Occidental Blvd.
Suite 243
Los Angeles, CA 90026
(213) 382-4400
Fax (213) 382-4494

1037 West Avenue N
Suite 205
Palmdale, CA 93551
(661) 575-9365
Fax (661) 575-9502

**CAPS Alzheimer's
Day Care Centers**

3740 E. Sierra Madre Blvd.
Pasadena, CA 91107
(626) 351-5427
Fax (626) 351-2308

2501 E. Cortez Street
West Covina, CA 91791
(626) 917-4484
Fax (626) 917-4475

**Website**
www.heritageclinic.org

To Whom it may concern,

This letter is on behalf of Dayna Catchings who has been a client with Heritage Clinic since her intake date of October 19th, 2017. I had my first session with Ms. Catchings on October 25th, 2017 and have seen Ms. Catchings in six face-to-face therapy sessions to date. Ms. Catchings initially presented as highly frustrated and agitated specifically regarding her history related to homelessness and the injustices she feels she has experienced related to these events below. I helped assist Ms. Catchings on November 1st, 2017 when her belongings were reportedly removed from the street by the sanitation department. Since the incident Ms. Catchings has displayed increasing psychological distress related to the reported loss of her belongings and experience of being forcibly removed from her home (Ms. Catchings' tent dwelling). Ms. Catchings has clearly been impacted by the events on November 1st and she reported that her rights have been violated by the sanitation department which reportedly removed her belongings without her expressed permission. Further Ms. Catchings reported the "caseworkers at Homeless Healthcare, People Concern, LAHSA willfully failed to do their due diligence and broke confidences with [Ms. Catchings] by not being present during the event on November 1st and that LAHSA disobeyed the order from the state of California through the offices  city counsel member Gil Cedillo office" by removing her belongings.  Ms. Catchings has spent a great deal of time and energy in session expressing anger, frustration, anxiety, and escalation when discussing these issues which would indicate they have been traumatic for her.

Respectfully yous,

Amy Crowder, Psy.D.
Wavered Psychologist

*Psy.D*

Supervisor:
Jamie Garis, Psy.D. PSY 17307

*Catchings v.
California
Ex. 73*

*a nonprofit agency*



109

*PAGE 132.02*

*EX R 67*



**Heritage Clinic**

447 N. El Molino Ave.
Pasadena, CA 91101
(626) 577-8480
Fax (626) 577-8978

3939 Atlantic Ave.
Suite 103
Long Beach, CA 90807
(562) 264-6001
Fax (562) 264-6006

155 N. Occidental Blvd.
Suite 243
Los Angeles, CA 90026
(213) 382-4400
Fax (213) 382-4494

1037 West Avenue N
Suite 205
Palmdale, CA 93551
(661) 575-9365
Fax (661) 575-9502

**CAPS Alzheimer's
Day Care Centers**

3740 E. Sierra Madre Blvd.
Pasadena, CA 91107
(626) 351-5427
Fax (626) 351-2308

2501 E. Cortez Street
West Covina, CA 91791
(626) 917-4484
Fax (626) 917-4475

Website
www.heritageclinic.org

### Heritage Clinic

December 7, 2017

Barker Management, Inc
P.O. Box 148
Anaheim, Ca 92815

Appeal Letter for letter of ineligibility
Re: Dayna Catching, SS# ~~████████~~  *Dc 5/13/18*

To: Vichaka Tang

This letter is in support of Dayna Catchings, a client of our Full Service Partnership (FSP) program since October 19th, 2017. FSP is a program sponsored by the Los Angeles County Department of Mental Health that provides in-home psychotherapy, case management, and medication support (psychiatry). Ms. Catchings was referred to Heritage Clinic by Homeless Healthcare LA, an outreach team assisting Ms. Catchings with housing.

Ms. Catchings received a letter of ineligibility on on 11/30/2017 due to missing her housing interview appointment on 11/27/17 and requesting to reschedule for 2 weeks later. Ms. Catchings is asking that this decision be reconsidered due to missing her appointment due to circumstances outside of her control.

Client reports that in early November the police and sanitation department came out to the street she was sleeping in a tent and gave her "10 minutes" to remove all of her belongings or they would remove her belongings. Client reported that prior to that day she had received a notice from the court that her things were not to be taken and she would be left alone, but on the day the police and sanitation department came to remove her from the street they did not allow her to provide any documentation.

Client reports that she had notified the outreach team of the sanitation department coming out to remove her items from the street and had provided support for her a couple days prior to the incident; however, were not present on the day of the incident. Client reports that due to the lack of support on the day the sanitation department came to clean the street she lost most of her belongings, including clothing, her tent, and other items.

Client reports that due to the loss of her items she has had to replace clothing for the cold whether which has caused her to fall behind on her storage unit payment and has focused most of her attention and time on trying to get compensation for the personal items she lost so that she can pay the past due balance for her storage unit and prevent loss of more items.

*a nonprofit agency*

*107*

*Catchings v.*
*California*
*Catchings v-California Ex 71*

# Heritage Clinic

Furthermore, client would like to explain that the reason for missing the appointment for her housing interview was not due to being "irresponsible or sleeping in" but rather because she has been trying to prepare for a court hearing for an eviction and has also been trying to survive through her homeless status. Client is very interested in becoming housed but is asking for further assistance with allowing her to complete the application process in a more timely manner due to many challenges she faces as a homeless individual.

I appreciate your time in reviewing this appeal and if you have further questions please feel free to contact me at 626-577-8480 ext 0.

Sincerely,

Sandra Llamas, BA
MHRS

J Garis, Psy.D   PSY 17307

Jamie Garis, PsyD
FSP Program Director

a nonprofit agency

108

Holmes v.
California

EX.72

The City of Los Angeles is listed as a witness, as I've said before, and NOT a separate Defendant in this case also.

And, speaking of which, the monetary damages for EACH could not be expressed on the filing form, only ONE place to enter both Punitive and Compensatory damages for (apparently) only ONE separate Defendant.

St. Barnabas Senior Services is already aware of this through included e-mail evidence within the Complaint, of 30K, and exactly why and how I arrived at that figure So, I entered it in the amount of 10/20K total.

The actual monetary damages against the Department of Fair Employment and Housing, have yet to be determined SEPARATELY from St. Barnabas at a later date, because I could not just pull ANY figure out of thin air without having SOMETHING to base it on, like I did with St. Barnabas, and then just add it to THEIR amount, that that would know nothing about.

I'll see if I can include that addendum with the Sheriff's Department Service instructions.

If not, then I can always address it at either Meditation, Hearing or Trial.

The IMPORTANT thing was to get it timely filed!

Any other adjustments or Modifications can be made along the way.

After it is put on film (probably Monday), I can have yours, theirs and mine made hopefully by the end of next week.

The Sheriff's Department will serve all of theirs to them; and I will mail you your copy as part of the Discovery Process, and then forward a copy of the Proof of Service to you, to the Court.


Dayna

On Tue, Sep 22, 2020, 11:02 AM Dayna Catchings <catchings.dayna7@gmail.com> wrote:
Mr. Lauber,

Attached is the screenshot of the mailing today of the Proof of Service to the Court for the Service to you of the Interrogatories and for the Production of Documents on August 7, 2020.


Dayna

On Wed, Sep 16, 2020, 8:33 AM Dayna Catchings <catchings.dayna7@gmail.com> wrote:
Mr. Lauber,

Attached is the screenshot of the ENTIRE message exchange between myself and Gilbert Jimenez from LAHSA on the morning of November 1, 2017, that I mentioned to you previously.

As of that very 8:00 a.m. on the day of November 1, 2017, I was in FULL COMPLIANCE with my agreement with Bobby Benson.

I was actively STILL seeking housing, and I was actively preparing my campsite for the scheduled clean up that was to occur that morning.

And, for you to even attempt to work AGAINST me on this matter regarding Bobby Benson, by asking the Court to disregard him from the complaint, when it is precisely because of him NOT BEING WHERE he was not only supposed to be, but had also PROMISED me both in writing and verbally in April of 2017, that as long as I kept trying to get housing through him connecting me with LAHSA, that he would continue to protect both me and my property; is very egregious!

Well, quite frankly, he DIDN'T DO that, did he??

Nooo....INSTEAD he gets the LAPD and the City of Los Angeles sued for a THIRD incident for habi having unnecessary contact with me, that was SUPPOSED to be AVOIDED by what he said and promised in April of 2017.

Therefore, what you submitted on HIS behalf against ME, is highly "unreasonable, arbitrary and unconscionable" of you to do, and consequently represents a SEVERE Conflicts of Interests on the part of the City of Los Angeles (as he is admittedly NOT one of YOUR clients and you even gave the forwarding information to the Court about him); in addition to Obstruction of Justice by even attempting to PREVENT me from seeking Justice and damages from him because of HIS OWN Negligence, Breach of Contract and Fraud towards me, which then in turn establishes a Conspiracy between the LAPD and the Sanitation Department (because he failed, neglected and refused to appear until AFTER the damage was done), and now by your OWN Submission to the Court on September 2, 2020, that now confirms that fact and to the connection of the City of Los Angeles as well.

I KEPT my part of the agreement up to that very day; but obviously, apparently and evidently HE. DID. NOT!

Which then resulted in ADDITIONAL damages to both myself AND to the City of Los Angeles for yet a THIRD incident?!...which is most DEFINITELY "unintelligible, ambiguous and uncertain" as to exactly WHY you would want him dismissed from the lawsuit, and then WHY you would even SUBMIT something like that against me in the first place?!


Dayna C.

Dayna
Dayna
Dayna
Dayna
Dayna

**Notice of Authorization for Medical Services**



.12/05/2016

DAYNA CATCHINGS                                          Member ID:820991694
306 LOMA DR APT 519
LOS ANGELES, CA 90017, UNITED STATES

Dear DAYNA R CATCHINGS:

PHP (HMO SNP) has approved the referral request from IRIELE, CLIFFORD I. for you to get the medical services described from the provider(s) below:

**Approved Service**                 **Approved Provider**            **Phone**
PSYCH DIAG EVAL W/MED SRVCS          IRIELE, CLIFFORD I               213-483-0246

If you have not contacted the provider(s) above to make an appointment, please do so now. The approval for these services expires on 04/05/2017.

Only the services above are approved. If you need more services, your provider(s) will need to contact us to get another approval.

If you have questions about this referral, please contact IRIELE, CLIFFORD I at
213-483-0246

If you have any questions about this approval, please call Member Services at (800) 263-0067. TTY users should call 711. We are open 8:00 a.m. to 8:00 p.m., seven days a week.

PHP is an HMO plan with a Medicare contract. Enrollment in PHP depends on contract renewal.

This information is available for free in other languages. Please call our Member Services number at (800) 263-0067. 8:00 a.m. to 8:00 p.m., seven days a week.

Esta información está disponible de forma gratuita en otros idiomas. Por favor, llame a nuestro número del Departamento de servicios para miembros a (800) 263-0067. 8:00 a.m. hasta 8:00 p.m., siete días a la semana.

MEMBER SERVICES P.O. Box 46160, Los Angeles, CA 90046 • (800) 263-0067 • TTY 711 • www.php-ca.org

Catchings
v, California
Ex83

118

*ITEM 81 - PLE 82*



## CLIFFORD I. IRIELE, M.D., INC.
*Psychiatrist*

1711 W. Temple Street, Suite 6642
Los Angeles, CA 90026
Telephone: (213) 483-0246
Fax: (213) 483-0249

To whom it may concern,

RE: Catchings, Dayna

The above named attends my clinic for her anxiety disorder.

Currently, she is taking Wellbutin SR 100mg PO daily ,Klonopin 0.5 mg PO  Q 120 prx.
Patients last visit was on 06/21/17.

Please, direct your questions to (213)483-0246.

Dr.Iriele

EX C #20
(Ex.C20)



12/21/17

To Whom It May Concern:

447 N. El Molino Ave.
Pasadena, CA 91101
(626) 577-8480
Fax (626) 577-8978

I psychiatrically assessed Ms. Dayna Catchings on 12/19/17. During that assessment, I diagnosed Ms. Catchings with Bipolar I Disorder, most recent episode manic as she demonstrated the symptoms as indicated in the Diagnostic and Statistical Manual, 5th Edition, which is used for all psychiatric diagnoses.

If there are further questions, please feel free to contact me at the number indicated in the letterhead.

Los Angeles Office
(213) 382-4400
Fax (213) 382-4494

Sincerely,

_____, M.D.

1037 W. Avenue N
Suite 205
Palmdale, CA 93551
(661) 575-9365
Fax (661) 575-9502

Stacia Mills, M.D.
Lic #A124146
Staff Psychiatrist
Heritage Clinic

3939 Atlantic Ave.
Suite 103
Long Beach, CA 90807
(562) 264-6001
Fax (562) 264-6006

The Community Assistance
Program for Seniors
Alzheimer's Day Care Centers

3740 E. Sierra Madre Blvd.
Pasadena, CA 91107
(626) 351-5427
Fax (626) 351-2308

2501 E. Cortez St.
North Wing 14-16
West Covina, CA 91791
(626) 917-4484
Fax (626) 917-4475

Website
www.heritageclinic.org

a nonprofit agency

Catchings v.
California
Ex 68

104

PLE Exhibit--twenty-three



**AHF DOWNTOWN HEALTHCARE CENTER**
1400 S. Grand Ave., Suite 801
Los Angeles, CA 90015
Tel 213.741.9727
Fax 213.741.0867

To whom it may concern,

Dayna Catchings (DOB 4/1/1952) is a patient of our clinic. Due to multiple chronic health conditions, as defined in the attached documents, we feel it would be beneficial for her to obtain housing, and that her medical condition would deteriorate if she were to be homeless. Please see the attached medication list, problem list, and recent progress note for documentation purposes. If there is further information that is required please contact our office.

D. Tellalian, MD

Medical Director

AIDS Healthcare Foundation

Date 1/6/2017

Catchings v.
California
Ex 79

114

Integrated Patient Education – Medication Leaflets

Read this medicine information sheet carefully each time you get this medicine filled. You must carefully read the "Consumer Information Use and Disclaimer" below in order to understand and correctly use this information.

# Sertraline Tablets
**Pronunciation** (SER tra leen)
**Brand Names: US** Zoloft.

## Warning

- Drugs like this one have raised the chance of suicidal thoughts or actions in children and young adults. The risk may be greater in people who have had these thoughts or actions in the past. All people who take this drug need to be watched closely. Call the doctor right away if signs like low mood (depression), nervousness, restlessness, grouchiness, panic attacks, or changes in mood or actions are new or worse. Call the doctor right away if any thoughts or actions of suicide occur.

## What is this drug used for?

- It is used to treat low mood (depression).
- It is used to treat obsessive-compulsive problems.
- It is used to treat panic attacks.
- It is used to treat post-traumatic stress.
- It is used to treat mood problems caused by monthly periods.
- It is used to treat social anxiety problems.
- It may be given to you for other reasons. Talk with the doctor.

## What do I need to tell my doctor BEFORE I take this drug?

- If you have an allergy to sertraline or any other part of this drug.
- If you are allergic to this drug; any part of this drug; or any other drugs, foods, or substances. Tell your doctor about the allergy and what signs you had.
- If you have liver disease.
- If you are taking any of these drugs: Linezolid or methylene blue.
- If you are taking pimozide.
- If you have taken certain drugs for depression or Parkinson's disease in the last 14 days. This includes isocarboxazid, phenelzine, tranylcypromine, selegiline, or rasagiline. Very high blood pressure may happen.
- If you are taking any drugs that can cause a certain type of heartbeat that is not normal (prolonged QT interval). There are many drugs that can do this. Ask your doctor or pharmacist if you are not sure.

This is not a list of all drugs or health problems that interact with this drug.

Tell your doctor and pharmacist about all of your drugs (prescription or OTC, natural products, vitamins) and health problems. You must check to make sure that it is safe for you to take this drug with all of your drugs and health problems. Do not start, stop, or change the dose of any drug without checking with your doctor.

## What are some things I need to know or do while I take this drug?

- Tell all of your health care providers that you take this drug. This includes your doctors, nurses, pharmacists, and dentists.
- Avoid driving and doing other tasks or actions that call for you to be alert until you see how this drug affects you.
- Do not stop taking this drug all of a sudden without calling your doctor. You may have a greater risk of side effects. If you need to stop this drug, you will want to slowly stop it as ordered by your doctor.
- Avoid drinking alcohol while taking this drug.
- Talk with your doctor before you use other drugs and natural products that slow your actions.
- In depression, sleep and appetite may get better soon after starting this drug. Other low mood signs may take up to 4 weeks to get better.
- This drug may raise the chance of a broken bone. Talk with the doctor.
- This drug may raise the chance of bleeding. Sometimes, bleeding can be life-threatening. Talk with the doctor.
- This drug can cause low sodium levels. Very low sodium levels can be life-threatening, leading to seizures, passing out, trouble breathing, or death.
- Some people may have a higher chance of eye problems with this drug. Your doctor may want you to have an eye exam to see if you have a higher chance of these eye problems. Call your doctor right away if you have eye pain, change in eyesight, or swelling or redness in or around the eye.
- A severe and sometimes deadly problem called serotonin syndrome may happen. The risk may be greater if you also take certain other drugs. Call your doctor right away if you have agitation; change in balance; confusion; hallucinations; fever; fast or abnormal heartbeat; flushing; muscle twitching or

Integrated Patient Education – Medication Leaflets

stiffness; seizures; shivering or shaking; sweating a lot; severe diarrhea, upset stomach, or throwing up; or very bad headache.

- This drug may affect certain lab tests. Tell all of your health care providers and lab workers that you take this drug.

- If you are 65 or older, use this drug with care. You could have more side effects.

- This drug is not approved for use in all children. Talk with the doctor to be sure that this drug is right for your child.

- Use with care in children. Talk with the doctor.

- This drug may affect growth in children and teens in some cases. They may need regular growth checks. Talk with the doctor.

- Taking this drug late in pregnancy may raise the chance of breathing or feeding problems, low body temperature, or withdrawal symptoms in the newborn. Talk with the doctor.

- Tell your doctor if you are pregnant, plan on getting pregnant, or are breast-feeding. You will need to talk about the benefits and risks to you and the baby.

### What are some side effects that I need to call my doctor about right away?

WARNING/CAUTION: Even though it may be rare, some people may have very bad and sometimes deadly side effects when taking a drug. Tell your doctor or get medical help right away if you have any of the following signs or symptoms that may be related to a very bad side effect:

- Signs of an allergic reaction, like rash; hives; itching; red, swollen, blistered, or peeling skin with or without fever; wheezing; tightness in the chest or throat; trouble breathing, swallowing, or talking; unusual hoarseness; or swelling of the mouth, face, lips, tongue, or throat.

- Signs of low sodium levels like headache, trouble focusing, memory problems, feeling confused, weakness, seizures, or change in balance.

- Signs of bleeding like throwing up or coughing up blood; vomit that looks like coffee grounds; blood in the urine; black, red, or tarry stools; bleeding from the gums; abnormal vaginal bleeding; bruises without a cause or that get bigger; or bleeding you cannot stop.

- Signs of a very bad skin reaction (Stevens-Johnson syndrome/toxic epidermal necrolysis) like red, swollen, blistered, or peeling skin (with or without fever); red or irritated eyes; or sores in the mouth, throat, nose, or eyes.

- Seizures.

- Not able to control bladder.

- A big weight gain or loss.

- Sex problems like lowered interest in sex or ejaculation problems.

- Liver problems have rarely happened with this drug. Sometimes, this has been deadly. Call your doctor right away if you have signs of liver problems like dark urine, feeling tired, not hungry, upset stomach or stomach pain, light-colored stools, throwing up, or yellow skin or eyes.

- A type of abnormal heartbeat (prolonged QT interval) has happened with this drug. Sometimes, this has led to another type of unsafe abnormal heartbeat (torsades de pointes). Call your doctor right away if you have a fast or abnormal heartbeat, or if you pass out.

### What are some other side effects of this drug?

All drugs may cause side effects. However, many people have no side effects or only have minor side effects. Call your doctor or get medical help if any of these side effects or any other side effects bother you or do not go away:

- Feeling dizzy, sleepy, tired, or weak.

- Constipation, diarrhea, stomach pain, upset stomach, throwing up, or feeling less hungry.

- Dry mouth.

- Trouble sleeping.

- Sweating a lot.

- Shakiness.

These are not all of the side effects that may occur. If you have questions about side effects, call your doctor. Call your doctor for medical advice about side effects.

You may report side effects to the FDA at 1-800-332-1088. You may also report side effects at https://www.fda.gov/medwatch.

### How is this drug best taken?

Use this drug as ordered by your doctor. Read all information given to you. Follow all instructions closely.

- Take with or without food.

- Keep taking this drug as you have been told by your doctor or other health care provider, even if you feel well.

### What do I do if I miss a dose?

- Take a missed dose as soon as you think about it.

- If it is close to the time for your next dose, skip the missed dose and go back to your normal time.

- Do not take 2 doses at the same time or extra doses.

Integrated Patient Education – Medication Leaflets

## How do I store and/or throw out this drug?

- Store at room temperature.
- Keep lid tightly closed.
- Store in a dry place. Do not store in a bathroom.
- Keep all drugs in a safe place. Keep all drugs out of the reach of children and pets.
- Throw away unused or expired drugs. Do not flush down a toilet or pour down a drain unless you are told to do so. Check with your pharmacist if you have questions about the best way to throw out drugs. There may be drug take-back programs in your area.

## General drug facts

- If your symptoms or health problems do not get better or if they become worse, call your doctor.
- Do not share your drugs with others and do not take anyone else's drugs.
- This drug comes with an extra patient fact sheet called a Medication Guide. Read it with care. Read it again each time this drug is refilled. If you have any questions about this drug, please talk with the doctor, pharmacist, or other health care provider.
- If you think there has been an overdose, call your poison control center or get medical care right away. Be ready to tell or show what was taken, how much, and when it happened.

## Consumer Information Use and Disclaimer

This information should not be used to decide whether or not to take this medicine or any other medicine. Only the healthcare provider has the knowledge and training to decide which medicines are right for a specific patient. This information does not endorse any medicine as safe, effective, or approved for treating any patient or health condition. This is only a brief summary of general information about this medicine. It does NOT include all information about the possible uses, directions, warnings, precautions, interactions, adverse effects, or risks that may apply to this medicine. This information is not specific medical advice and does not replace information you receive from the healthcare provider. You must talk with the healthcare provider for complete information about the risks and benefits of using this medicine.

Issue Date: September 2, 2020
Database Edition 20.3.1.003
Copyright © 2020 UpToDate, Inc. and/or its affiliates.

**Medication Guide**

**Sertraline Hydrochloride (ser' tra leen hye'' droe klor' ide) Tablets**

**What is the most important information I should know about sertraline hydrochloride tablets?**
**Sertraline hydrochloride tablets and other antidepressant medicines may cause serious side effects. Call your healthcare provider right away if you have any of the following symptoms, or call 911 if there is an emergency.**

1. **Suicidal thoughts or actions:**
   - **Sertraline hydrochloride tablets and other antidepressant medicines may increase suicidal thoughts or actions** in some people 24 years of age and younger, especially within the **first few months of treatment or when the dose is changed.**
   - Depression or other serious mental illnesses are the most important causes of suicidal thoughts or actions.
   - Watch for these changes and call your healthcare provider right away if you notice new or sudden changes in mood, behavior, actions, thoughts, or feelings, especially if severe.
     - Pay particular attention to such changes when sertraline hydrochloride tablets are started or when the dose is changed.
     - Keep all follow-up visits with your healthcare provider and call between visits if you are worried about symptoms.

**Call your healthcare provider right away if you have any of the following symptoms, or call 911 if an emergency, especially if they are new, worse, or worry you:**
   - attempts to commit suicide
   - acting aggressive or violent
   - new or worse depression
   - feeling agitated, restless, angry or irritable
   - an increase in activity or talking more than what is normal for you
   - acting on dangerous impulses
   - thoughts about suicide or dying
   - new or worse anxiety or panic attacks
   - trouble sleeping
   - other unusual changes in behavior or mood

2. **Serotonin Syndrome**. This condition can be life-threatening and symptoms may include:
   - agitation, hallucinations, coma, or other changes in mental status
   - racing heartbeat, high or low blood pressure
   - coordination problems or muscle twitching (overactive reflexes)
   - nausea, vomiting, or diarrhea
   - sweating or fever
   - muscle rigidity

3. **Increased chance of bleeding**: Sertraline hydrochloride tablets and other antidepressant medicines may increase your risk of bleeding or bruising, especially if you take the blood

thinner warfarin (Coumadin®, Jantoven®), a non-steroidal anti-inflammatory drug (NSAIDs, like ibuprofen or naproxen), or aspirin.

4. **Manic episodes**. Symptoms may include:
   - greatly increased energy
   - racing thoughts
   - unusually grand ideas
   - severe trouble sleeping
   - reckless behavior
   - excessive happiness or irritability
   - talking more or faster than usual

5. **Seizures or convulsions.**

6. **Glaucoma (angle-closure glaucoma).** Many antidepressant medicines including sertraline hydrochloride tablets may cause a certain type of eye problem called angle-closure glaucoma. Call your healthcare provider if you have eye pain, changes in your vision, or swelling or redness in or around the eye. Only some people are at risk for these problems. You may want to undergo an eye examination to see if you are at risk and receive preventative treatment if you are.

7. **Changes in appetite or weight**. Children and adolescents should have height and weight monitored during treatment.

8. **Low salt (sodium) levels in the blood**. Elderly people may be at greater risk for this. Symptoms may include:
   - Headache
   - weakness or feeling unsteady
   - confusion, problems concentrating or thinking, memory problems

**Do not stop sertraline hydrochloride tablets without first talking to your healthcare provider**. Stopping sertraline hydrochloride tablets too quickly may cause serious symptoms including:
   - anxiety, irritability, high or low mood, feeling restless or changes in sleep habits
   - headache, sweating, nausea, dizziness
   - electric shock-like sensations, shaking, confusion

**What are sertraline hydrochloride tablets?**
Sertraline hydrochloride tablet is a prescription medicine used to treat:
   - Major Depressive Disorder (MDD)
   - Panic Disorder
   - Social Anxiety Disorder
   - Obsessive Compulsive Disorder (OCD)
   - Posttraumatic Stress Disorder (PTSD)
   - Premenstrual Dysphoric Disorder (PMDD)

It is important to talk with your healthcare provider about the risks of treating depression and also the risks of not treating it. You should discuss all treatment choices with your healthcare provider.

Sertraline hydrochloride tablets are safe and effective in treating children with OCD age 6 to 17 years.

It is not known if sertraline hydrochloride tablets are safe and effective for use in children under 6 years of age with OCD or children with other behavior health conditions.

Talk to your healthcare provider if you do not think that your condition is getting better with sertraline hydrochloride tablets treatment.

**Who should not take sertraline hydrochloride tablets?**
**Do not take sertraline hydrochloride tablets if you:**
- take a monoamine oxidase inhibitor (MAOI). Ask your healthcare provider or pharmacist if you are not sure if you take an MAOI, including the antibiotic linezolid.
- have taken an MAOI within 2 weeks of stopping sertraline hydrochloride tablets unless directed to do so by your healthcare provider.
- have stopped taking an MAOI in the last 2 weeks unless directed to do so by your healthcare provider.
- take any other medicines that contain sertraline (such as sertraline HCl or sertraline hydrochloride).
- take the antipsychotic medicine pimozide (Orap®) because this can cause serious heart problems.
- are allergic to sertraline or any of the ingredients in sertraline hydrochloride tablets. See the end of this Medication Guide for a complete list of ingredients in sertraline hydrochloride tablets.
- take Antabuse® (disulfiram) (if you are taking the liquid form of sertraline hydrochloride tablets) due to the alcohol content.

**People who take sertraline hydrochloride tablets close in time to an MAOI may have serious or even life-threatening side effects. Get medical help right away if you have any of these symptoms:**
- high fever
- rapid changes in heart rate or blood pressure
- uncontrolled muscle spasms
- confusion
- stiff muscles
- loss of consciousness (pass out)

**What should I tell my healthcare provider before taking sertraline hydrochloride tablets?**
**Before starting sertraline hydrochloride tablets, tell your healthcare provider:**
- **if you have:**
  - liver problems
  - heart problems

- o  bipolar disorder or mania
- o  kidney problems.
- o  or have had seizures or convulsions
- o  low sodium levels in your blood
- o  a history of a stroke
- o  high blood pressure
- o  or have had bleeding problems
- **are pregnant or plan to become pregnant**. Your baby may have withdrawal symptoms after birth or may be at increased risk for a serious lung problem at birth. Talk to your healthcare provider about the benefits and risks of taking sertraline hydrochloride tablets during pregnancy.
- **are breastfeeding or plan to breastfeed**. A small amount of sertraline hydrochloride may pass into your breast milk. Talk to your healthcare provider about the best way to feed your baby while taking sertraline hydrochloride tablets.

**Tell your healthcare provider about all the medicines that you take,** including prescription and over-the-counter medicines, vitamins, and herbal supplements.

Sertraline hydrochloride tablets and some medicines may interact with each other, may not work as well, or may cause serious side effects.

Your healthcare provider or pharmacist can tell you if it is safe to take sertraline hydrochloride tablets with your other medicines. **Do not** start or stop any medicine while taking sertraline hydrochloride tablets without talking to your healthcare provider first.

**How should I take sertraline hydrochloride tablets?**
- Take sertraline hydrochloride tablets exactly as prescribed. Your healthcare provider may need to change the dose of sertraline hydrochloride tablets until it is the right dose for you.
- Sertraline hydrochloride tablets may be taken with or without food.
- If you miss a dose of sertraline hydrochloride tablets, take the missed dose as soon as you remember. If it is almost time for the next dose, skip the missed dose and take your next dose at the regular time. **Do not** take two doses of sertraline hydrochloride tablets at the same time.

**If you take too much sertraline hydrochloride tablets, call your healthcare provider or poison control center right away, or go to the nearest hospital emergency room right away.**

**What should I avoid while taking sertraline hydrochloride tablets?**
Sertraline hydrochloride tablets can cause sleepiness or may affect your ability to make decisions, think clearly, or react quickly. You should not drive, operate heavy machinery, or do other dangerous activities until you know how sertraline hydrochloride tablets affect you. **Do not** drink alcohol while you take sertraline hydrochloride tablets.

**What are the possible side effects of sertraline hydrochloride tablets?**
Sertraline hydrochloride tablets may cause serious side effects, including:

- **See "What is the most important information I should know about sertraline hydrochloride tablets?"**
  **The most common side effects in adults who take sertraline hydrochloride tablets include:**
  - nausea, loss of appetite, diarrhea, or indigestion
  - increased sweating
  - tremor or shaking
  - agitation
  - change in sleep habits including increased sleepiness or insomnia
  - sexual problems including decreased libido and ejaculation failure
  - feeling tired or fatigued
  - anxiety

**The most common side effects in children and adolescents who take include** abnormal increase in muscle movement or agitation, nose bleeds, urinary incontinence, aggressive reaction, possible slowed growth rate, and weight change. Your child's height and weight should be monitored during treatment with sertraline hydrochloride tablets.

Tell your healthcare provider if you have any side effect that bothers you or that does not go away. These are not all the possible side effects of sertraline hydrochloride tablets. For more information, ask your healthcare provider or pharmacist.

Call your doctor for medical advice about side effects. You may report side effects to the FDA at 1-800-FDA-1088.

**How should I store sertraline hydrochloride tablets?**
- Store sertraline hydrochloride tablets at room temperature, 68°F to 77°F (20°C to 25°C).
- Keep sertraline hydrochloride tablets bottle closed tightly.

**Keep sertraline hydrochloride tablets and all medicines out of the reach of children.**

**General information about the safe and effective use of sertraline hydrochloride tablets**
Medicines are sometimes prescribed for purposes other than those listed in a Medication Guide. Do not use sertraline hydrochloride tablets for a condition for which it was not prescribed. Do not give sertraline hydrochloride tablets to other people, even if they have the same condition. It may harm them.

This Medication Guide summarizes the most important information about sertraline hydrochloride tablets. If you would like more information, talk with your healthcare provider. You may ask your healthcare provider or pharmacist for information about sertraline hydrochloride tablets that is written for healthcare professionals.

For more information about sertraline hydrochloride tablets call Lupin Pharmaceuticals, Inc. at 1-800-399-2561 or visit at www.lupinpharmaceuticals.com.

**What are the ingredients in sertraline hydrochloride tablets?**
**Active ingredient**: sertraline hydrochloride

**Inactive ingredients:**
D&C Yellow #10 (in 25 mg tablet), dibasic calcium phosphate anhydrous, FD&C Blue #1 (in 25 mg tablet), FD&C Blue #2 (in 50 mg tablet), FD&C Red #40 (in 25 mg tablet), hydroxypropyl cellulose, hypromellose, iron oxide yellow (in 100 mg tablet), magnesium stearate, microcrystalline cellulose, polyethylene glycol, polysorbate 80, sodium starch glycolate and titanium dioxide.

This Medication Guide has been approved by the U.S. Food and Drug Administration

The brands listed are trademarks of their respective owners and are not trademarks of Lupin Pharmaceuticals, Inc. The makers of these brands are not affiliated with and do not endorse Lupin Pharmaceuticals, Inc. or its products.

Manufactured for:
**Lupin Pharmaceuticals, Inc.**
Baltimore, Maryland 21202
United States

**MADE IN INDIA**

Revised: September 2017                                                    ID#: 252898

Integrated Patient Education – Medication Leaflets

Read this medicine information sheet carefully each time you get this medicine filled. You must carefully read the "Consumer Information Use and Disclaimer" below in order to understand and correctly use this information.

## Lisinopril Tablets
**Pronunciation** (lyse IN oh pril)
**Brand Names: US** Prinivil; Zestril.

### Warning

- Do not take if you are pregnant. Use during pregnancy may cause birth defects or loss of the unborn baby. If you get pregnant or plan on getting pregnant while taking this drug, call your doctor right away.

### What is this drug used for?

- It is used to treat high blood pressure.
- It is used to treat heart failure (weak heart).
- It is used to help heart function after a heart attack.
- It may be given to you for other reasons. Talk with the doctor.

### What do I need to tell my doctor BEFORE I take this drug?

For all patients taking this drug:

- If you are allergic to this drug; any part of this drug; or any other drugs, foods, or substances. Tell your doctor about the allergy and what signs you had.
- If you have ever had a very bad or life-threatening reaction called angioedema. Signs may be swelling of the hands, face, lips, eyes, tongue, or throat; trouble breathing; trouble swallowing; unusual hoarseness.
- If you have kidney problems.
- If you are taking a drug that has aliskiren in it and you also have diabetes or kidney problems.
- If you have taken a drug that has sacubitril in it in the last 36 hours.
- If you are breast-feeding. Do not breast-feed while you take this drug.

Children:

- If your child is younger than 6 years of age. Do not give this drug to a child younger than 6 years of age.

This is not a list of all drugs or health problems that interact with this drug.

Tell your doctor and pharmacist about all of your drugs (prescription or OTC, natural products, vitamins) and health problems. You must check to make sure that it is safe for you to take this drug with all of your drugs and health problems. Do not start, stop, or change the dose of any drug without checking with your doctor.

### What are some things I need to know or do while I take this drug?

- Tell all of your health care providers that you take this drug. This includes your doctors, nurses, pharmacists, and dentists.
- Avoid driving and doing other tasks or actions that call for you to be alert until you see how this drug affects you.
- To lower the chance of feeling dizzy or passing out, rise slowly if you have been sitting or lying down. Be careful going up and down stairs.
- If you have high blood sugar (diabetes), you will need to watch your blood sugar closely.
- Check your blood pressure as you have been told.
- Have blood work checked as you have been told by the doctor. Talk with the doctor.
- If you are taking a salt substitute that has potassium in it, a potassium-sparing diuretic, or a potassium product, talk with your doctor.
- If you are on a low-salt or salt-free diet, talk with your doctor.
- If you are taking this drug and have high blood pressure, talk with your doctor before using OTC products that may raise blood pressure. These include cough or cold drugs, diet pills, stimulants, non-steroidal anti-inflammatory drugs (NSAIDs) like ibuprofen or naproxen, and some natural products or aids.
- Talk with your doctor before you drink alcohol.
- Be careful in hot weather or while being active. Drink lots of fluids to stop fluid loss.
- Tell your doctor if you have too much sweat, fluid loss, throwing up, or loose stools. This may lead to low blood pressure.
- This drug may not work as well to lower blood pressure in Black patients. Sometimes another drug may need to be given with this drug. If you have any questions, talk with the doctor.
- A severe and sometimes deadly reaction called angioedema has happened. The chance of angioedema may be higher in Black patients.
- Low white blood cell counts have happened with captopril, a drug like this one. This may lead to more chance of getting an infection. Most of the time, this has happened in people with kidney problems, mainly if they have certain other health problems. Call your

Integrated Patient Education – Medication Leaflets

doctor right away if you have signs of infection like fever, chills, or sore throat.

- If you are 65 or older, use this drug with care. You could have more side effects.

## What are some side effects that I need to call my doctor about right away?

WARNING/CAUTION: Even though it may be rare, some people may have very bad and sometimes deadly side effects when taking a drug. Tell your doctor or get medical help right away if you have any of the following signs or symptoms that may be related to a very bad side effect:

- Signs of an allergic reaction, like rash; hives; itching; red, swollen, blistered, or peeling skin with or without fever; wheezing; tightness in the chest or throat; trouble breathing, swallowing, or talking; unusual hoarseness; or swelling of the mouth, face, lips, tongue, or throat.
- Signs of kidney problems like unable to pass urine, change in how much urine is passed, blood in the urine, or a big weight gain.
- Signs of a high potassium level like a heartbeat that does not feel normal; change in thinking clearly and with logic; feeling weak, lightheaded, or dizzy; feel like passing out; numbness or tingling; or shortness of breath.
- Very bad dizziness or passing out.
- Cough that does not go away.
- Very bad belly pain.
- Very upset stomach or throwing up.
- Chest pain or pressure.
- Liver problems have happened with drugs like this one. Sometimes, this has been deadly. Call your doctor right away if you have signs of liver problems like dark urine, feeling tired, not hungry, upset stomach or stomach pain, light-colored stools, throwing up, or yellow skin or eyes.

## What are some other side effects of this drug?

All drugs may cause side effects. However, many people have no side effects or only have minor side effects. Call your doctor or get medical help if any of these side effects or any other side effects bother you or do not go away:

- Dizziness or headache.
- Cough.

These are not all of the side effects that may occur. If you have questions about side effects, call your doctor. Call your doctor for medical advice about side effects.

You may report side effects to the FDA at 1-800-332-1088. You may also report side effects at

https://www.fda.gov/medwatch.

## How is this drug best taken?

Use this drug as ordered by your doctor. Read all information given to you. Follow all instructions closely.

- Take with or without food.
- Take this drug at the same time of day.
- Keep taking this drug as you have been told by your doctor or other health care provider, even if you feel well.
- Drink lots of noncaffeine liquids unless told to drink less liquid by your doctor.
- A liquid (suspension) can be made if you cannot swallow pills. Talk with your doctor or pharmacist.

Liquid (suspension):

- If a liquid (suspension) is made, shake well before use.
- Measure liquid doses carefully. Use the measuring device that comes with this drug. If there is none, ask the pharmacist for a device to measure this drug.

## What do I do if I miss a dose?

- Take a missed dose as soon as you think about it.
- If it is close to the time for your next dose, skip the missed dose and go back to your normal time.
- Do not take 2 doses at the same time or extra doses.

## How do I store and/or throw out this drug?

- Store at room temperature in a dry place. Do not store in a bathroom.
- Keep lid tightly closed.
- If a liquid (suspension) is made from the tablets, throw away any part not used after 28 days.
- Keep all drugs in a safe place. Keep all drugs out of the reach of children and pets.
- Throw away unused or expired drugs. Do not flush down a toilet or pour down a drain unless you are told to do so. Check with your pharmacist if you have questions about the best way to throw out drugs. There may be drug take-back programs in your area.

## General drug facts

- If your symptoms or health problems do not get better or if they become worse, call your doctor.
- Do not share your drugs with others and do not take anyone else's drugs.
- Some drugs may have another patient information leaflet. Check with your pharmacist. If you have any

## Integrated Patient Education – Medication Leaflets

questions about this drug, please talk with your doctor, nurse, pharmacist, or other health care provider.

- If you think there has been an overdose, call your poison control center or get medical care right away. Be ready to tell or show what was taken, how much, and when it happened.

### Consumer Information Use and Disclaimer

This information should not be used to decide whether or not to take this medicine or any other medicine. Only the healthcare provider has the knowledge and training to decide which medicines are right for a specific patient. This information does not endorse any medicine as safe, effective, or approved for treating any patient or health condition. This is only a brief summary of general information about this medicine. It does NOT include all information about the possible uses, directions, warnings, precautions, interactions, adverse effects, or risks that may apply to this medicine. This information is not specific medical advice and does not replace information you receive from the healthcare provider. You must talk with the healthcare provider for complete information about the risks and benefits of using this medicine.

Issue Date: September 2, 2020
Database Edition 20.3.1.003
Copyright © 2020 UpToDate, Inc. and/or its affiliates.

## ABC Los Angeles

| | |
|---|---|
| **From:** | Dayna Catchings <catchings.dayna7@gmail.com> |
| **Sent:** | Tuesday, December 1, 2020 3:49 PM |
| **To:** | ABC Los Angeles |
| **Subject:** | Fwd: Intake Form - Dayna Catchings |

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Dayna

---------- Forwarded message ---------
From: **DO NOT REPLY. PRO SE CLINIC** <noreply.fedproseclinic@gmail.com>
Date: Mon, Aug 24, 2020, 11:55 AM
Subject: Re: Intake Form - Dayna Catchings
To: Dayna Catchings <catchings.dayna7@gmail.com>

Ms. Catchings,

Due to the Coronavirus pandemic, the Clinic is not making appointments at this time.  We are still answering questions remotely via our online intake system.

Please be aware that our intake process requires you to submit a fully completed intake form each time you seek additional assistance.  If you need assistance in the future, please complete a new submission form, which is available at:
http://www.publiccounsel.org/seminars_clinics?id=0043.

-- Pro Se Clinic Staff

DO NOT REPLY TO THIS EMAIL.
If you need further assistance, you must submit a new online intake form: www.tinyurl.com/fedproseclinicintake.

On Sun, Aug 23, 2020 at 11:19 AM Dayna Catchings <catchings.dayna7@gmail.com> wrote:
>
> Hello,
>
> Is the Clinic open?
>

1

## ABC Los Angeles

| | |
|---|---|
| **From:** | Dayna Catchings <catchings.dayna7@gmail.com> |
| **Sent:** | Tuesday, December 1, 2020 3:39 PM |
| **To:** | ABC Los Angeles |
| **Subject:** | Fwd: Intake Form - Dayna Catchings |

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Dayna

---------- Forwarded message ---------
From: **Dayna Catchings** <catchings.dayna7@gmail.com>
Date: Mon, Aug 24, 2020, 12:30 PM
Subject: Re: Intake Form - Dayna Catchings
To: Nicholas Lauber <nicholas.lauber@lacity.org>

Post Script;

Since I do NOT have actual access to the Pro Se Clinic, exactly what does Magistrate Judge Rosenberg expect me to do NOW??

They are not open and neither is the Clerk's office, in addition to not having ANY online access like you do.

Maybe at least that way, I could have downloaded the forms through the Portal, but now I can't even do that!

Without having the CORRECT forms, how can I possibly COMPLY and Amended the Complaint for Armando Cortez like the Court ordered on August 7th (into the first Cause of Action), or for Officer Gras to be added in the second cause of action??

This just isn't right...

Dayna C.

On Mon, Aug 24, 2020, 12:06 PM Dayna Catchings <catchings.dayna7@gmail.com> wrote:
Hello Mr. Lauber,

This is the response that I just received from the Pro Se Clinic.

Dayna C.

---------- Forwarded message ---------
From: **DO NOT REPLY. PRO SE CLINIC** <noreply.fedproseclinic@gmail.com>
Date: Mon, Aug 24, 2020, 11:55 AM

1

## ABC Los Angeles

**From:**        Dayna Catchings <catchings.dayna7@gmail.com>
**Sent:**        Tuesday, December 1, 2020 3:43 PM
**To:**          ABC Los Angeles
**Subject:**     Fwd: Intake Form - Dayna Catchings

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Dayna

---------- Forwarded message ---------
From: **Dayna Catchings** <catchings.dayna7@gmail.com>
Date: Sun, Aug 23, 2020, 12:35 PM
Subject: Re: Intake Form - Dayna Catchings
To: Nicholas Lauber <nicholas.lauber@lacity.org>

PPS;

And then come to think of it... exactly why would they REFER me to some place else, when they THEMSELVES are the Federal Court Pro Se Clinic??

Who could possibly know MORE than them?!

(That's when I got the feeling that I was just getting the runaround from them. Way back then.)

So, That part didn't make sense to me but I went on with THEIR advice anyway, and now we can see what the outcome was with the Bobby Benson service situation, as a direct result of me listening to them!

Thank you,

Dayna C.

On Sun, Aug 23, 2020, 12:08 PM Dayna Catchings <catchings.dayna7@gmail.com> wrote:
 Post Script;

 As both you AND the Court can now very plainly see, in addition to the damage that the legal clinic on Adams Boulevard that I mentioned to you, that have me the WRONG service information to Bobby Benson.; can you now just imagine how angry both you and she would have been of I HAD WAITED until November 6TH before I was even able to see them next, much less FILE it?!

 Of course, THEN I would have been wrong because the circumstances were NOT out of my control as of October 30th 2019, but NOW we all know that they were out of my control by October 30th.

1

(Even though I would have been FOLLOWING the Court's orders by going to the Pro Se Clinic for help, which might also happen NOW, and quite frankly that's a chance that I do not want to take, when there is the other alternative of Legal assistance. I've already been given wrong advice once, maybe not directly from them but from someone else that THEY referred me to)

Then, YES...under THOSE circumstances you would have deserved to have your Motion to Dismiss GRANTED based on the Statue of Limitations issues due to my OWN Negligence for not taking the matter into my OWN hands by seeing to it as best that I could have (which I did) that it was filed ON TIME since it was completed on 10/30/19 by my own admission; you would have been entitled to that Dismissal.

But, not NOW and not like this.


Thank you,

Dayna C.

On Sun, Aug 23, 2020, 11:32 AM Dayna Catchings <catchings.dayna7@gmail.com> wrote:
  And, this is the last one that I just sent to them this morning.

  We will see what they reply.


  Thank you,

  Dayna C.

  ---------- Forwarded message ---------
  From: **Dayna Catchings** <catchings.dayna7@gmail.com>
  Date: Sun, Aug 23, 2020, 11:19 AM
  Subject: Re: Intake Form - Dayna Catchings
  To: DO NOT REPLY. PRO SE CLINIC <noreply.fedproseclinic@gmail.com>


  Hello,

  Is the Clinic open?


  Dayna C.

  On Tue, Oct 29, 2019, 6:14 PM dayna catchings <catchings.dayna7@gmail.com> wrote:
    Hi,

    Sorry for the late reply, but I'm finishing up my document to be filed on Friday.

    I will cancel next week's appointment, and reschedule later on.


    Thank you,

    Dayna

On Mon, Oct 28, 2019, 2:15 PM DO NOT REPLY. PRO SE CLINIC <noreply.fedproseclinic@gmail.com> wrote:
 Ms. Catchings,

We can offer you a 30 minute appointment with the Federal Pro Se Clinic on Friday, November 6, 2019 at 10:30
a.m.  You must reply directly to this email within 24 hours to confirm and secure your appointment time.

-- Pro Se Clinic Staff

**No-Show Policy**:  If you fail to notify us that you will be missing an appointment at least 24 hours prior to your
appointment time, we will not provide you with any services for 14 calendar days following your missed
appointment.  If you miss two or more appointments without notifying us at least 24 hours in advance, we will not
provide you with any services for 30 calendar days following your missed appointment. Many people are waiting for
appointments, and we have set aside this time/date for you.

On Wed, Oct 23, 2019 at 2:41 PM Dayna Catchings <noreply@jotform.com> wrote:

 Intake Form

| | |
|---|---|
| Name: | Dayna Catchings |
| Date of Birth: | It/1/52 |
| Address: | Street Address: 626 S. Alvarado St.<br>Street Address Line 2: Apt.411<br>City: Los Angeles<br>State / Province: California<br>Postal / Zip Code: 90057 |
| Phone Number: | (323) 3735355 |
| Do you consent to receive text reminders of any upcoming appointments? | Yes |
| Cell Phone Number For Text Reminders | (323) 3735355 |
| Email: | Catchings.dayna7@Gmail.com |
| Race/Ethnicity: | Black/African American |
| Gender: | Transgender |
| Do you have an open case in the Central District of California? | No |
| Please select one of the following: | I am the Plaintiff (I have filed a lawsuit or I am considering starting a lawsuit) |
| What kind of case is this? | Civil Rights complaint Pursuant to 42 U.S.C. § 1983 |

| | |
|---|---|
| This intake form is intended to assist individuals with specific legal questions about their case. Please describe your legal question. | Civil rights complaint Pursuant to 42 U.S.C. § 1983 violation of the DOJ Ruling 2015 |
| Were you represented by an attorney at any point in your litigation? | No |
| Are you represented by an attorney now? | No |
| I certify that the above statements are true. I understand that by making this form available, Public Counsel has only agreed to review my matter to determine whether I am eligible for Public Counsel's services. I understand that (1) the decision regarding eligibility for services is Public Counsel's decision alone; (2) Public Counsel is not my attorney at this time; and (3) Public Counsel will not become my attorney unless a separate written agreement for legal representation is signed. | I understand and agree |

You can edit this submission and view all your submissions easily.

--

This message contains information that may be confidential and privileged.  Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose the message or any information

contained in the message. If you have received this message in error, please delete any version, response or reference to it. Thank you.

## ABC Los Angeles

| | |
|---|---|
| **From:** | Dayna Catchings <catchings.dayna7@gmail.com> |
| **Sent:** | Friday, December 4, 2020 9:06 AM |
| **To:** | ABC Los Angeles |
| **Subject:** | Re: First Amended Complaint. |
| **Attachments:** | 20201204_085536.jpg |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Mr. Lauber,

Since you have previously agreed to allow me to file Documents with you electrically, I submit my First Amended Complaint.

Attached is the screenshot of the verification of the mailing today (since there is no option on the Proof of Service document to say that I filed it electronically, only that I mailed it).

I made the agreed upon changes as you requested.

The Court's copy will be mailed today as well.


Dayna

On Mon, Nov 30, 2020, 5:40 PM Dayna Catchings <catchings.dayna7@gmail.com> wrote:
  Mr. Lauber;

  Attached are the screenshots of EVERYTHING that has been done by today, November 30, 2020.

  First of all, the Proofs of Service for St. Barnabas and the DFEH were filed today.

  Next, the Summons for the Parkview on the Park Complaint (and for the City of Los Angeles) we're also filed today, and Sheriff's Department Service has been initiated though Deputy Vincent Estrada who gave me the complete instructions with an ADDITIONAL 3 Copies for each of the 3 Defendants:

  1. Parkview on the Park LP;

  2. Parkview on the Park, Susanna Serobyan and EAH Housing; and

  3. The City of Los Angeles (re:LAPD)

  I already have the original 3, all I need are the additional 3 which makes 6 in total, 2 for each Defendant.

1    80    EF.116

1  DAYNA R. CATCHINGS (Full Name)
2  6265 Alvarado St #41 (Address Line 1)
3  Los Angeles, CA. 90057 (Address Line 2)
4  323-373-5355 _____ (Phone Number)
5  Plaintiff in Pro Per
6
7
8  **UNITED STATES DISTRICT COURT**
9  **CENTRAL DISTRICT OF CALIFORNIA**
10
11  DAYNA R. Catchings.          ) Case No.: CV19-9480DSF(AGR)
                                  )          (To be supplied by the Clerk)
12         **Plaintiff,**        )
                                  )  **Civil Rights Complaint Pursuant to**
13     vs.                       )  **42 U.S.C. § 1983 (non-prisoners)**
14  The City of Los Angeles,     )
15  The LAPD, the Sanitation     )  **Jury Trial Demanded:** ☒ Yes   ☐ No
16  Dept                         ) Plaintiffs First Amended
                                  ) Complaint, which is now
17  _____      ) connected to CASE number
18         **Defendant(s).**     ) 20STCV45298. In Los Angeles
                                       Superior Court
19  (MR. LAUBER CORRECTED the submission on 12/1/2020. NO
                                                    CONNECTION)
20              (All paragraphs and pages must be numbered.)
21                    **I. JURISDICTION**
22  1.      This court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.
23  Federal question jurisdiction arises pursuant to 42 U.S.C. § 1983.
24
25                    **II. VENUE**
26  2.      Venue is proper pursuant to 28 U.S.C. § 1391 because ALL submitted
27  evidence and supporting documents and Exhibits did indeed
28  happen in the City of Los Angeles, and the State of California

1

Pro Se Clinic Form                    Page Number

1 | **MICHAEL N. FEUER**, City Attorney
2 | **KATHLEEN A. KENEALY**, Chief Assistant City Attorney – SBN 212289
| **SCOTT MARCUS**, Senior Assistant City Attorney - SBN 184980
3 | **CORY M. BRENTE**, Senior Assistant City Attorney – SBN 115453
4 | **NICHOLAS LAUBER**, Deputy City Attorney – SBN 288499
| 200 North Main Street, 6th Floor, City Hall East
5 | Los Angeles, CA 90012
| Phone No.: (213) 978-7025
6 | Fax No.:    (213) 978-8785
7 | Email: nicholas.lauber@lacity.org

8 | *Attorneys for Defendants*, **CITY OF LOS ANGELES, ARMANDO CORTEZ,**
9 | **JOEL MILLER,** and **JASON ABNER**

10

11 | **UNITED STATES DISTRICT COURT**

12 | **CENTRAL DISTRICT OF CALIFORNIA**

13

| DAYNA R. CATCHINGS, | **CASE NO.: CV19-9480 DSF (AGR)**
| | *Hon. Judge Dale S. Fischer, Ctrm 7D, 7th Fl.*
| Plaintiffs, | *Hon. Mag. Judge Alicia G. Rosenberg, Ctrm 550*
| | **DEFENDANTS' REPLY TO**
| vs. | **PLAINTIFF OBJECTION TO REPORT AND RECOMMENDATION**
| THE CITY OF LOS ANGELES |
| THE STATE OF CALIFORNIA |
| SANITATION DEPARTMENT, |
| LAPD THE SHERIFF'S DEPT, |
| |
| Defendants. |

25 | TO THE HONORABLE COURT, TO ALL PARTIES AND TO THEIR
26 | ATTORNEYS OF RECORD:
27 | ///
28 | ///

-i-

1          Defendants CITY OF LOS ANGELES, ARMANDO CORTEZ, JOEL

2    MILLER, and JASON ABNER submit the following Response to Plaintiff's

3    Objection to the Report and Recommendation of Magistrate Judge Alicia G.

4    Rosenberg.

5

6    Dated: September 2, 2020        **MICHAEL N. FEUER**, City Attorney
                                  **KATHLEEN A. KENEALY**, Chief Asst. City Atty

7                                      **SCOTT MARCUS**, Senior Assistant City Attorney

8                                      **CORY M. BRENTE**, Senior Assistant City Attorney

9

                          By:   /S/ *Nicholas Lauber*

10                             **NICHOLAS LAUBER**, Deputy City Attorney

11                             *Attorneys for Defendants*, **CITY OF LOS ANGELES.**
                          **ARMANDO CORTEZ, JOEL MILLER,** and **JASON**

12                             **ABNER**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-ii-

1   <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2   **I.    PLAINTIFF'S OBJECTION ADDRESSES SEVERAL MATTERS**
3   **UNRELATED TO THE REPORT AND RECOMMENDATION**

4       The Report and Recommendation grants the motion for judgment on the
5   pleadings with leave to amend to allege facts to show timely filing and allege a
6   theory of municipal liability.   Many parts of Plaintiff's objection address other
7   matters including the denial of her request for attorney assistance, the service or lack
8   thereof of Bobby Benson, and disruptions in court accessibility due to COVID-19.
9   These concerns do not go to the merits of the motion for judgment on the pleadings
10  and therefore should be disregarded in considering the adoption of the Report and
11  Recommendation.

12  **II.    PLAINTIFF'S ARGUMENT THAT THE COURT SHOULD HAVE**
13  **ACTED AT THE TIME OF FILING IS CONTRARY TO THE PLAIN**
14  **LANGUAGE OF 28 USC § 1915**

15      Plaintiff, in their opposition, states that is unclear why their case was allowed
16  to proceed past the date of case assignment if the case was not timely filed.  28 USC
17  § 1915(e)(2) states "Notwithstanding any filing fee, or any portion thereof, that may
18  have been paid, the court shall dismiss the case at any time if the court determines
19  that … (B) the action or appeal … (ii) fails to state a claim on which relief may be
20  granted …" The plain language of the statute on in forma pauperis proceedings thus
21  allows the Court to dismiss this proceeding "at any time" and is not required to
22  evaluate the case at the time of filing nor is it prohibited from dismissing the
23  complaint at a later time, including at this stage of the proceedings.

24  **III.    PLAINTIFF APPEARS TO ACCEPT THE REPORT AND**
25  **RECOMMENDATION IN THEIR OBJECTION**

26      Plaintiff, in their objection, describes that certain additional information will be
27  included in their First Amended Complaint.  Plaintiff also request additional time to
28  file their First Amended Complaint.  Thus Plaintiff appears to accept the Report and

1  Recommendation in spite of filing an objection to it.  Plaintiff's First Amended
2  Complaint should comply with Fed. Rules of Civ. Proc. (8) and be a "short and plain
3  statement."  Additionally Defendants do not object to granting Plaintiff additional
4  time to file their First Amended Complaint.

5  **IV.    CONCLUSION**

6         Based on the foregoing, City Defendants City of Los Angeles, Armando
7  Cortez, Joel Miller, and Jason Abner request that this Court accept the Report and
8  Recommendation of Magistrate Judge Alicia G. Rosenberg and grant the motion for
9  judgment on the pleadings with leave to amend.

10

11  Dated: September 2, 2020        **MICHAEL N. FEUER**, City Attorney
12                                 **KATHLEEN KENEALY**, Chief Asst. City Atty
                                   **SCOTT MARCUS,** Senior Assistant City Attorney
13                                 **CORY M. BRENTE**, Senior Assistant City Attorney

14
                                   By:_____ /S/ *Nicholas Lauber*
15
                                   **NICHOLAS LAUBER**, Deputy City Attorney
16                                 *Attorneys for Defendants,* **CITY OF LOS**
17                                 **ANGELES, ARMANDO CORTEZ, JOEL**
                                   **MILLER,** and **JASON ABNER**
18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

1

2      I, CAROLINE CASTILLO, declare as follows:

3

4      I am over the age of 18 years, and not a party to this action. My business address is 200 North Main Street, City Hall East, 6th Floor, Los Angeles, California

5  90012, which is located in the county where the mailing described below took place.

6

      On September 2, 2020, I served the foregoing document(s) described as:

7  **DEFENDANTS'  REPLY TO PLAINTIFF'S OBJECTION TO REPORT AND**

8  **RECOMMENDATION** on all interested parties in this action:

9  **<u>Plaintiff in Pro Per</u>**

10  **Dayna Catchings**

    **626 South Alvarado Street, Apt 411**

11  **Los Angeles, CA 90057**

12

  I served a true copy of the document(s) above by:

13

  ☒    **BY MAIL**

14

      ☐    *I deposited such envelope in the mail at Los Angeles, California. The

15  envelope was mailed with postage thereon fully prepaid.

16      ☒    As follows:  I am "readily familiar" with my employer's business practice for collection and processing of correspondence for mailing with the

17  United States Postal Service. I am aware that on motion of the party served, service

18  is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing affidavit.

19

20      I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I hereby certify under the penalty of

21  perjury that the foregoing is true and correct.

22

      Executed on September 2, 2020 at Los Angeles, California.

23

24

25               /S/ *Caroline Castillo*

                  CAROLINE CASTILLO

26

27

28

# COD Work Order

Thank you for the opportunity to be of service to you.

```
              +001
       ABC LOS ANGELES
       3550 WILSHIRE BLVD
       LOS ANGELES, CA 90010
12/04/2020                15:20:43
MID: XXXXXXXXXXX264    TID: XXXXX871

         DEBIT CARD

         DEBIT SALE

Card # Token      XXXXXXXXXXXX4529
Network:              MAESTRO
                      US DEBIT
Chip Card:         A0000000980840
AID:
SEQ #:                        1
Batch #:                     951
INVOICE                  4145026
CLERK                       4001
Approval Code:            002610
Entry Method:          Chip Read
Mode:           Issuer - PIN Verified

SALE AMOUNT           $34.60

      Signature Not Required
       DAYNA CATCHINGS

        MERCHANT COPY
```

ABC Imaging - Los Angeles, CA Store
3550 Wilshire Blvd, Suite 124
Los Angeles, CA 90010
Phone: 213-624-9626

| Date | Work Order No. |
|------|----------------|
| 12/04/2020 | 20393387 |
| **Store** | **Ticket No.** |
| 4001 | 21295052 |
| **CSR** | **P.O. Number** |
| EDILBERTO.YAM | B/W Copies |
| **Status** | Open |

**Job Name**
B/W Copies
**Job Number**
B/W Copies

| | Unit Size | Originals | Copies | Unit Price | Extended Price |
|---|---|---|---|---|---|
| r impression | -- | 158 | 2 | $ 0.10 | $ 31.60 |
| | | | | Subtotal | $ 31.60 |
| | | 90010 - LOS ANGELES (CA) (9.50000%) | | | $ 3.00 |
| | | | | Total | $ 34.60 |
| | | | | Payments | $ 34.60 |
| | | | | Balance | $ 0.00 |

## This is not a bill. Invoice to follow.

DAYNA R. CATCHINGS
626 S. ALVARADO St. #411
LOS ANGELES, CA. 90057
323-373-5365
PLAINTIFF IN PRO PER

UNITED STATES District Court
CENTRAL District OF CALIFORNIA

DAYNA R. CATCHINGS                    CASE NO.: CV19-9480 DSF (AGR)
        PLAINTIFF
                                      PROOF OF SERVICE
VS.                                        by MAIL

City of Los ANGELES, Et. AL.
        DEFENDANTS

I, DAYNA R. CATCHINGS _____, DECLARE AS FOLLOWS:

my ADDRESS is 626 S. ALVARADO St. Apt. #411
L.A. CA. 90057 _____ which is LOCATED IN the County
Where the MAILING DESCRIBED BELOW, took PLACE,

25 DC

ON November 24, 2020, I SERVED the
DOCUMENTS DESCRIBED AS: Notice of CASE Assignment
1. St. BARNABAS Senior Services Center AND the Department
of Fair Employment AND Housing, the Complaint
AND both PROOFS of SERVICE
ON ALL INTERESTED PARTIES in this Action by pLACING A
true AND correct COPIES thereof IN A SEALED ENVELOPE,
with FIRST CLASS POSTAGE PAID THEREON, AND DEPOSITED
SAID ENVELOPE in the UNITED STATES MAIL AT OR in
Los Angeles, California,
ADDRESSED to:
Nicholas Lauber DCA
Office of the City Attorney, Police Litigation Unit
200 N. Main St. Room 100
Los Angeles, CA. 90012

  I DECLARE UNDER penalty of perjury that the
Foregoing is true AND correct.
EXECUTED on November 25, 2020       At Los Angeles
California

Dawna R. Catchings

DAYNA R. CATCHINGS
626 S. ALVARADO St. # 411
LOS ANGELES, CA. 90057
323-373-5355
Plaintiff in Pro Per

UNITED States District Court
CENTRAL District of CALIFORNIA

DAYNA R. CATCHINGS                CASE NO:: CV19-9480 DSF (AGR)
         PLAINTIFF
                                  PROOF OF SERVICE by
                                        MAIL
VS.

City of Los ANGELES et.AL
         DEFENDANTS

I, DAYNA R. CATCHINGS _____, DECLARE As Follows:
my ADDRESS is 626 S. ALVARADO St. APARTMENT 411
L.A. CA. 90057 _____ which is Located in the County
Where the MAILING DESCRIBED below, took pLACE,

ON DECEMBER 4, 2020, I SERVED the documents DESCIBED AS:

1. Plaintiff's First Amended Complaint

ON ALL INTERESTED PARTIES IN this ACTION by placing A true AND CORRECT COPY thereof IN A SEALED ENVELOPE with First CLASS POSTAGE PAID thereon, AND DEPOSITED SAID ENVELOPE IN the UNITED STATES MAIL At or in Los Angeles, California, ADDRESSED to:

Nicholas Lauber DCA

Office of the City Attorney, Police Litigation UNIT

200 N. MAIN St Rm 600

Los Angeles, CA. 90012

I DECLARE, UNDER PENALTY OF PERJURY that the FOREGOING IS TRUE AND CORRECT.

EXECUTED ON DECEMBER 4, 2020 At Los Angeles California

DAYNA R. Catchings



USPS TRACKING® NUMBER

9505 5125 0642 0339 3886 22

SHIP
TO:
256 E TEMPLE ST
Los Angeles CA 90012-3332

C032

EXPECTED DELIVERY DAY: 12/05/20

1006
1 Lb 8.30 Oz

PRIORITY MAIL 1-DAY®

Origin: 90057
12/04/20
0451700717-02

$8.25

US POSTAGE PAID

Retail

UNITED STATES POSTAL SERVICE






CSO ROYBAL
X-RAYED

MAILING ENVELOPE

AGR





UNITED STATES POSTAL SERVICE®

Dayna R. Catchings
6210 S. Alvarado St. #411
Los Angeles, CA 90005

United States District Court
Central District of California
255 E. Temple St. Room 180
Los Angeles, CA 90012



RECEIVED
CLERK U.S. DISTRICT COURT

DEC – 7 2020

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

PRIORITY MAIL





11/1/17 - The Aftermath of the illegal and wrongful actions committed against a senior citizen, disabled black transgender person, who was illegally evicted into the streets, due to malicious prosecution. The city and the state are visibly present. The chain link fence seperates the city sidewalk from the state grassy area coming of the 110 fwy. Catchings v. My flattered tent (Home), represents California not being able to move from one side to the other. Ex. 10

(446)

EX. 72A



Photo taken 11/1/17 - LA Dept. of Sanitation Cleanup. Was rescued by Heritage Clinic who placed me at Hawke's Transitional Living Center (Good Shepherd) until April 2018

47

Catchings,
California
EX. 13



11-1-17- The SANITATION AND Sheriff's DEPTS. APPEAR IN this photo.

48

Cotchings v.
California
EX, 14

